1  SPENCER FANE BRITT & BROWNE LLP

2  Denise K. Drake        KS # 15800
   9401 Indian Creek Parkway
3  Indian Creek Parkway, Suite 700, Bldg. 40
   Overland Park, Kansas  66210
4  Telephone:  (913) 345-8100
   Facsimile:  (913) 345-0736

5
   Eric P. Kelly          KS # 22503
6  1000 Walnut Street, Suite 1400
   Kansas City, Missouri  64106
7  Telephone:  (816) 474-8100
   Facsimile:  (816) 474-3216

8
   *Lead Counsel for Defendants*

9

10

11                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF CALIFORNIA

12                                      )
13  In re:                              )    MDL No: 07-CV-1841
                                        )
14  WELLS FARGO LOAN PROCESSOR          )    **DEFENDANTS' MOTION AND**
    OVERTIME PAY LITIGATION             )    **NOTICE OF MOTION TO DISMISS**
                                        )    **PLAINTIFFS' 17200 CLAIMS AND**
15                                      )    **MEMORANDUM OF POINTS AND**
                                        )    **AUTHORITIES IN SUPPORT**
16                                      )
                                        )
17  This document relates to ALL CASES  )    Date: April 28, 2008
                                        )    Time: 2:00 P.M.
18                                      )    Dept: 15
                                        )    Judge: Hon. Marilyn Hall Patel
19  _____ )

20

21

22

23

24

25

## NOTICE AND STATEMENT OF REQUESTED RELIEF

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Notice is hereby given that on April 28, 2008, at 2:00 PM, a hearing on matters raised in this Motion will take place before the Honorable Marilyn Hall Patel, District Court Judge for the Northern District of California.  The hearing will be at Courtroom 15 in the United States Courthouse located at 450 Golden Gate Avenue, San Francisco, California.

Defendant Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A., and Defendant Wells Fargo Bank, N.A., will move and hereby does move this Court to dismiss Plaintiffs' claims brought pursuant to California Business and Professions Code §§ 17200 *et seq.* with respect to non-California putative class members for the following reasons:

(1)    Section 17200 does not apply to claims where no alleged misconduct or injuries to the putative class members even arguably occurred in California.

(2)    Application of Section 17200 to non-California employees would plainly violate Wells Fargo's due process rights.

(3)    The FLSA expressly preempts the certification of a class pursuant to Fed. R. Civ. P. 23 for alleged Section 17200 violations based solely on alleged FLSA violations.

(4)    Section 17200 violates the Commerce Clause of the United States Constitution, on its face and by nationwide application.

(5)    A class action for alleged Section 17200 violations, based solely on alleged FLSA violations, violates the Rules Enabling Act, 29 U.S.C. §§ 2072 *et seq.*

For these reasons, as set forth and discussed in their Memorandum of Points and Authorities that follows and any and all supporting exhibits, Defendants' respectfully request that this Motion be granted in its entirety.

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... iii

TABLE OF AUTHORITIES ............................................................................................ vi

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................1

I.    PROCEDURAL BACKGROUND........................................................................2

      A.    THE *BOWNE* ACTION (No. 06-2020) (D. Kan., filed Jan. 19, 2006). ..................2

      B.    THE *BASORE* ACTION (No. 07-0461) (N.D. Cal., filed Jan. 23, 2007). ..............3

      C.    MDL PROCEEDINGS. .......................................................................................3

II.   ARGUMENT ........................................................................................................4

      A.    NON-CALIFORNIA PLAINTIFFS' SECTION 17200 CLAIMS FOR
              ALLEGEDLY UNLAWFUL CONDUCT DO NOT "EMANATE FROM"
              CALIFORNIA. ....................................................................................................4

            1.    California Federal And State Courts, Including This Court, Have
                   Consistently Held That Section 17200 Does Not Apply To Non-
                   Residents Injured By Conduct Occurring Outside Of California. ...............4

            2.    Non-California Plaintiffs' Section 17200 Claim In This Litigation
                   Presents Drastically Different Facts Than The Classification
                   Decision At Issue In The Loan Originator Litigation And Requires
                   A Different Result.....................................................................................5

            3.    Wells Fargo Requires All Non-Exempt Employees To Record All
                   Time Worked. ..........................................................................................6

            4.    Managers And Non-California Plaintiffs Understood Wells Fargo's
                   Policy. 7

            5.    Local Managers Instructed Non-California Plaintiffs To Record
                   All Hours Worked Accurately. ..................................................................9

            6.    Only Local Managers Review Time Recorded By Loan Processors.........10

            7.    Misconduct Or Injuries Alleged By Non-California Plaintiffs Did
                   Not, And Simply Could Not, Occur In Or Emanate From
                   California. ...............................................................................................12

            8.    To The Extent Plaintiffs Allege A Systems-Based Failure To Pay
                   *Recorded* Overtime, Any Such Alleged Failure Did Not And Could
                   Not Have Emanated From California. ........................................................14

9.    To The Extent Any Loan Processor Has Not Yet Been Paid For Worked And *Recorded* Overtime, A Decision Has Been Made To Pay All Overtime. ...................................................................................16

B.    NON-CALIFORNIA PLAINTIFFS DID NOT HAVE SUFFICIENT CONTACTS WITH CALIFORNIA TO SATISFY DUE PROCESS....................17

1.    Non-California Plaintiffs Did Not Have Any Contact with California. ...............................................................................18

2.    Non-California Plaintiffs Could Not Have Reasonably Expected That California Law Would Govern Their Employment Relationships...............................................................................19

C.    APPLICATION OF SECTION 17200 TO A NATIONWIDE RULE 23 CLASS, BASED ON ALLEGED FLSA VIOLATIONS, IS PROHIBITED BY THE FLSA.........................................................20

1.    Non-California Plaintiffs' Class Action For Alleged Section 17200 Violations, Based Solely On The FLSA, Circumvents The FLSA And Is, Therefore, Preempted....................................................21

2.    The History Of 29 U.S.C. § 216(b) Demonstrates Congress' Intent To Prohibit FLSA Class Actions Under Rule 23.........................22

3.    *Harris v. Investor's Business Daily, Inc.* Was Wrongly Decided. ...........24

a.    Non-California Plaintiff's Putative Class Directly Impedes Congress' Intent To Prevent Runaway Damage Awards Under The FLSA.............................................................24

b.    Plaintiffs Should Be Allowed To Be Masters Of Their Own Claims. .........................................................................24

c.    The FLSA Savings Clause Does Not Permit State Law Claims Based Solely On The FLSA. ....................................27

D.    SECTION 17200 VIOLATES THE COMMERCE CLAUSE..............................27

1.    The 1992 Amendments To Section 17200................................28

2.    Section 17203 Of The Unfair Competition Law Is Invalid Per Se. ..........28

3.    Section 17203 Of The Unfair Competition Law Is An Affront To Regulation By Other States.........................................................29

4.    Section 17200, As Applied, Violates The Commerce Clause. .................30

1          E.     NON-CALIFORNIA PLAINTIFFS' NATIONWIDE CLASS ACTION FOR ALLEGED UCL VIOLATIONS, BASED ONLY ON ALLEGED FLSA VIOLATIONS, VIOLATES THE RULES ENABLING ACT. .................31

3    III.     CONCLUSION.......................................................................................................32

1

## TABLE OF AUTHORITIES

2

**Federal Cases**
*Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981).....................................................17

3

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)..............................................22

4

*Aquilino v. Home Depot U.S.A. Inc.*, 2006 WL 2023539 (D.N.J. 2006)...........................25

5

*Arrington v. Nat'l Broad. Co.*, 531 F.Supp. 498 (D.D.C. 1982).......................................23, 24

6

*Automotive Products, PLC v. Tilton Engineering, Inc.*, No. 90-CV-5500, 1993
    WL 660164 (C.D. Cal. Sept. 16, 1993) ..............................................................29

7

8

Brief of Amici Curiae United States Department of Labor, *Long John Silver's
    Rest., Inc. v. Cole*, 409 F.Supp.2d 682 (D.S.C. 2006) ...........................................31

9

*Cameron-Grant v. Maxim Healthcare Sers., Inc.*, 347 F.3d 1240 (11th Cir. 2003)..........23

10

*Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908 (9th Cir. 2003).......................................25, 26

11

*Churchill Village, L.L.C. v. General Electric Co.*, 169 F.Supp.2d 1119 (N.D. Cal.
    2000) ...............................................................................................5, 6, 15, 16, 19

12

*Clark v. Dollar General Corp.*, No. 3:00-0729, 2001 WL 878887, at *5 (M.D.
    Tenn. May 23, 2001).....................................................................................12

13

14

*De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003).......................................22

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982) ..........................................21, 27, 28, 29, 30

15

*Edwards v. City of Long Beach*, 467 F.Supp.2d 986 (C.D. Cal. 2006) ...........................22

16

*EEOC v. Peabody Western Coal Co.*, No. CV 01-01050, 2006 WL 2816603, at
    *8-*9 (D.Ariz. Sept. 30, 2006) ....................................................................31

17

*Ellis v. Edward D. Jones & Co., L.P.*, 527 F.Supp.2d 439 (W.D. Pa. 2007)...................22, 32

18

*Freightliner Corp. v. Myrisk*, 514 U.S. 280 (1995) ........................................................21

19

*Garner v. Regis Corp..*, No. 03-CV-5037, 2004 U.S. Dist. Lexis 29167, at *8
    (W.D. Mo. Aug. 5, 2004).................................................................................12

20

21

*Healy v. Beer Inst.*, 491 U.S. 324 (1989).........................................................................27, 29

22

*Hoffman-LaRouche, Inc. v. Sperling*, 493 U.S. 165 (1989)...........................22, 23, 24, 31, 32

23

*LaChappelle v. Owens-Illinois, Inc.*, 513 F.2d 286 (5th Cir. 1975) .................................22

24

*Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S.Ct. 2162 (2007)..................................26

25

*Leuthold v. Destination America, Inc.*, 224 F.R.D. 462 (N.D. Cal. 2004) .......................22, 25

*Lindsay v. Government Employee Ins. Co.*, 355 F.Supp.2d 119 (D.D.C. 2004) ...............22

*McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574 (N.D. Ill. 2006)................................21, 22

*Meridian Project Systems, Inc. v. Hardin Construction Company*, LLC, 404 F.Supp.2d 1214 (E.D. Cal. 2005)...............................................................................5

*Moeck v. Gray Supply Corp.*, No. 03-CV-1950, 2006 WL 42368, at *5 (D.N.J. Jan. 5, 2006)...............................................................................................21, 22

*Montalvo v. Spirit Airlines*, 508 F.3d 464 (9th Cir. 2007)................................................21

*NCAA v. Miller*, 10 F.3d 633 (9th Cir. 1993) ................................................27, 28, 29, 30

*Otto v. Pocono Health System*, 457 F.Supp.2d 522 (M.D. Penn. 2006)..........................22

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ...................................17, 18, 19, 26

*Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1960) ............................................................30

*Qwest Communications, Inc. v. City of Berkeley*, 433 F.3d 1253 (9th Cir. 2006)............21

*Ray v. Atlantic Richfield Co.*, 425 U.S. 151 (1978) .........................................................21

*S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461 (9th Cir. 2001) ...................................................................................................................29

*Smith v. T-Mobile USA, Inc.*, No. CV 05-5274, 2007 WL 2385131 (C.D. Cal. Aug. 15, 2007) ...............................................................................................6

*Sperling v. Hoffman-La Roche, Inc.*, 347 F.3d 463 (3d Cir. 1994)................................23

*United Food & Comm'l Workers Union, Local 1564 of N.M. v. Albertson's, Inc.*, 207 F.3d 1193 (10th Cir. 2000) ........................................................................31

*Valley Bank of Nevada v. Plus System, Inc.*, 914 F.2d 1186 (9th Cir. 1990)...................27, 28

*Williams v. Trendwest Resorts, Inc.*, No. 05-CV-0605, 2007 WL 2429149, at *2 (D. Nev. Aug. 20, 2007) ...................................................................................20, 22

**State Cases**

*Alvarez v. May Dept. Stores Co*, 49 Cal.Rptr.3d 892 (Cal. Ct. App. 2006) .....................25

*Clothesrigger v. GTE Corp.*, 191 Cal.App.3d 605 (1987)..............................................27

*Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 999 P.2d 706 (Cal. 2000) ...........................................................................................................25

*Diamond Multimedia Systems, Inc. v. Superior Court*, 80 Cal.Rptr.2d 828, 968 P.2d 539 (1999)..................................................................................................5

*Farmers Ins. Exch. v. Superior Court of Los Angeles County*, 2 Cal.4th 377, 826
    P.2d 730 (1992)....................................................................................................19

*Harris v. Investor's Business Daily*, 41 Cal.Rptr.3d 108 (Cr. App. 2006).......................20, 24, 28

*North Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 162 P. 93 (1916).................................5, 6

*Norwest Mortgage, Inc. v. Superior Court*, 85 Cal.Rptr.2d 18 (Ct. App. 1999)..............6, 17, 19

*People v. One 1953 Ford Victoria*, 48 Cal.2d 595, 311 P.2d 480 (1957) ...........................5

*Shadoan v. World Sav. & Loan Ass'n*, 268 Cal.Rptr. 207 (Ct. App. 1990) ......................26

*Washington Mutual Bank v. Superior Court*, 24 Cal.App.4th 906 (2001) ........................27

*Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224 (2001)........................................27

**Federal Statutes**
28 U.S.C. § 1407 .................................................................................................3

28 U.S.C. § 2072 ................................................................................................31

29 U.S.C. § 201 ..................................................................................................1

29 U.S.C. § 2072 .......................................................................................... ii, 2, 3

29 U.S.C. § 2072(b) .......................................................................................31, 32

29 U.S.C. § 218(a) .............................................................................................27

29 U.S.C. § 252(a) .............................................................................................23

29 U.S.C. §255(a) ..............................................................................................21

**State Statutes**
Cal. Bus. & Prof. Code § 17200 .........................................................................1

Cal. Bus. & Prof. Code § 17203 .................................................................29, 32, 33

Cal. Bus. & Prof. Code § 17208 ........................................................................33

Ky. Rev. Stat. Ann. § 337.385 ...........................................................................29

Me. Rev. Stat. Ann. tit. 26 ................................................................................29

N.Y. Lab. Law § 663(1)-(3)................................................................................29

Vt. Stat. Ann. tit. 12 .........................................................................................29

## MEMORANDUM OF POINTS AND AUTHORITIES [1]

This MDL proceeding involves "loan processors" for Wells Fargo Home Mortgage. Wells Fargo has always classified these employees as non-exempt and paid them regular and overtime wages. As such, this proceeding is dramatically different than the other Wells Fargo MDL litigation pending before this Court.[2] That litigation involves loan originators. The core legal issue in that case is whether loan originators were properly classified as exempt from state and federal overtime requirements. Unlike that litigation, there is no one-size-fits-all legal or factual issue involved in this proceeding.

The loan processors[3] in this proceeding generally claim unpaid, "off-the-clock" overtime work in violation of the Fair Labor Standard Act, 29 U.S.C. 201 §§ *et. seq.* More specifically, in spite of never having lived or worked in California, Plaintiff Brenda McMillian purports to represent a putative nationwide class action based on the extraterritorial application of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et. seq.* ("Section 17200").

In seeking a nationwide Section 17200 class, Plaintiffs want to expand the breadth of coverage under the FLSA and lengthen its statute of limitations. Plaintiffs essentially ask this Court to "federalize" California law. For at least the following reasons, no such result is allowed—factually or legally:

(1)    California's Section 17200 does not apply to claims where no alleged misconduct or injuries to the putative class members (let alone the Plaintiff representative) even arguably occurred in California.

---

[1]  Defendants filed an Unopposed Administrative Motion to Exceed Page Limits and an accompanying Stipulation and Proposed Order in the morning of March 20, 2008. As of the date and time of the filing of this Motion and Memorandum in Support, which is scheduled for filing on or before March 21, 2008, the Court has not yet entered an Order on the Unopposed Administrative Motion.

[2]  *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, MDL No. 06-CV-1770 (N.D. Cal.) (Patel, J.) [hereinafter, "the Loan Originator Litigation"].

[3]  Plaintiffs have used the generic term "loan processors" to refer to all of the employees at issue in this matter. However, there are actually three positions at issue: "mortgage sales associate," "mortgage assistant," and "loan document specialist" (formerly known as "mortgage loan specialist"). Their duties for Wells Fargo Home Mortgage markedly differ, but all have been classified and treated as non-exempt employees during the relevant time period.

(2)     Application of Section 17200 to non-California employees would plainly violate Wells Fargo's due process rights.

(3)     The FLSA expressly preempts the certification of a class pursuant to Fed. R. Civ. P. 23 for alleged FLSA violations.

(4)     Section 17200 violates the Commerce Clause of the United States Constitution, on its face and by nationwide application, and offends the most fundamental principles of federalism.

(5)     A class action for alleged Section 17200 violations based solely on alleged FLSA violations violates the Rules Enabling Act, 29 U.S.C. § 2072.

As explained fully below, Plaintiff McMillian's Section 17200 claims as to non-California employees must be dismissed.

## I.     PROCEDURAL BACKGROUND

### A.     THE *BOWNE* ACTION (No. 06-2020) (D. Kan., filed Jan. 19, 2006).

On January 19, 2006, Plaintiffs Trudy Bowne (who worked in Kansas), Elishia Hesterberg (Kansas), and Kristen Anderson (Kansas and Missouri) filed an FLSA collective action in the District of Kansas against Wells Fargo Home Mortgage for alleged failures to pay overtime to loan processors nationwide.  *See Bowne* Complaint [Doc. 1].  Before Plaintiffs filed a motion for conditional certification, Plaintiffs Amie Lovrien, Jamie Hejlik, and Nicole Gering, all from Iowa, joined the action. *See Bowne* Amended Complaint [Doc. 9].

Wells Fargo engaged in extensive informal discovery.  On July 7, 2006, the *Bowne* Plaintiffs moved for conditional certification of a nationwide collective action.  Wells Fargo filed comprehensive opposition papers on August 3, 2006.  Wells Fargo provided forty-five declarations from loan processors who worked in retail and fulfillment center locations across the United States.  Plaintiffs did not file reply papers.  Instead, Plaintiffs stipulated to the conditional certification of a substantially-limited class on October 23, 2006.  *See Bowne* Stipulation [Doc. 22].  The parties submitted an agreed notice to the court on November 9, 2006.  Notice was sent to the 532 class members in early December 2006.

B.    **THE *BASORE* ACTION (No. 07-0461) (N.D. Cal., filed Jan. 23, 2007).**

On January 23, 2007, while the notice period in *Bowne* was still open (less than two months after class notice was sent), Plaintiffs in *Basore* filed five putative class actions and one putative collective action in this Court.  *See Basore* Complaint [Doc. 1].[4]  Plaintiffs named Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A., and Wells Fargo Bank, N.A., as Defendants [collectively and hereinafter, "Wells Fargo" or "Defendants"].

One putative class action, brought by Plaintiff McMillian pursuant to California's Section 17200 but predicated solely on alleged FLSA violations, purports to represent "[a]ll current and former for Wells Fargo Loan Processors employed by Defendants nationwide within the previous four years" [hereinafter, "Non-California Plaintiffs"].  *Id.* at ¶35.  Plaintiff McMillian, a North Carolina resident and former loan processor at a fulfillment center in Charlotte, North Carolina, *never worked in California*. *See id.* at ¶4; Deposition of Barbara McMillian ("McMillian Dep.") 13:14-14:4.[5]  Likewise, Plaintiff Barbara Powell, an Ohio resident and former loan processor in a retail branch in Columbus, Ohio, *never worked in California*.  Deposition of Barbara Powell ("Powell Dep.") 20:7-15, 29:2-5, 126:4-12.[6]

C.    **MDL PROCEEDINGS.**

On June 22, 2007, the Judicial Panel on Multidistrict Litigation transferred *Bowne* to this Court for coordinated pretrial proceedings with *Basore*, pursuant to 28 U.S.C. § 1407.

---

[4]    Plaintiffs in *Basore* and *Bowne* are represented by the same counsel—George Hanson and Eric Dirks of Stueve Siegal Hanson LLP of Kansas City, Missouri.  Mr. Hanson and Mr. Dirks also represent nationwide plaintiffs in the Loan Originator Litigation.

[5]    Portions of the transcripts of the depositions of Brenda McMillian and Barbara Powell are attached as Exhibits 1 and 2, respectively, to the Declaration of Eric P. Kelly ("Kelly Decl."), filed concurrently herewith, as required by Local Rules 7-2 and 7-5.

[6]    Plaintiff Powell joined *Basore* on September 17, 2007, when she filed a notice of consent captioned for *Basore* that had been executed almost six months earlier on March 23, 2007.  [Doc. 6]. However, Plaintiff Powell testified that she executed only one notice, to join *Bowne*.  *See* Powell Dep. 84:18-87:23.

## II.    **ARGUMENT**

Pursuant to Fed. R. Civ. P. 23(c), this Court must determine whether to certify Plaintiff McMillian's Section 17200 action as a class action "at an early practicable time." At this stage, Plaintiff McMillian bears the burden of demonstrating that the Section 17200 claims of all non-California residents are properly included in the putative class action. *See, e.g.*, Mem. & Order, *In re Wells Fargo Home Mortgage Overtime Pay Litigation,* MDL Case No. MDL-1770, at 3:10-12 (N.D. Cal. Aug. 13, 2007) (Patel, J.) [Doc. 76, hereinafter "Orig. Order"]. As set forth below, in Parts III.A and III.B, neither Plaintiff McMillian nor any other Non-California Plaintiff has met this burden.[7]

Furthermore, irrespective of Fed. R. Civ. P. 23(c), Non-California Plaintiffs have failed to state any Section 17200 claims upon which relief may be granted, as discussed in Parts III.C, III.D, and III.E. Non-California Plaintiffs' Section 17200 claims should be dismissed under Fed. R. Civ. P. 12(b)(6).

A.    **NON-CALIFORNIA PLAINTIFFS' SECTION 17200 CLAIMS FOR ALLEGEDLY UNLAWFUL CONDUCT DO NOT "EMANATE FROM" CALIFORNIA.**

1.    **California Federal And State Courts, Including This Court, Have Consistently Held That Section 17200 Does Not Apply To Non-Residents Injured By Conduct Occurring Outside Of California.**

There is a long-held presumption among California courts against the extraterritorial application of California's statutes. *See Diamond Multimedia Systems, Inc. v. Superior Court,* 80 Cal.Rptr.2d 828, 842-43, 968 P.2d 539, 553-54 (1999); *People v. One 1953 Ford Victoria*, 48 Cal.2d 595, 598-99, 311 P.2d 480, 482 (1957); *North Alaska Salmon Co. v. Pillsbury,* 174 Cal. 1, 4-7, 162 P. 93, 94-95 (1916). "[S]tate statutory remedies may be invoked by out-of-state parties [only] when they are harmed by ***wrongful*** conduct occurring in California." *Norwest Mortgage, Inc. v. Superior Court,* 85 Cal.Rptr.2d 18, 25 (Ct. App. 1999) (emphasis added). Accordingly, this Court recognized that Section 17200 may

---

[7]    In the alternative, Wells Fargo posits that this Court may appropriately consider Parts III.A and III.B of its Motion to Dismiss as one for Summary Judgment pursuant to Fed. R. Civ. P. 56, as Wells Fargo presents evidence outside of the pleadings. *See* Fed. R. Civ. P. 12(b). Parts III.C through III.E, however, are properly considered pursuant to Fed. R. Civ. P. 12(b)(6).

1   not be invoked by non-California residents where none of the alleged **misconduct** or **injuries** occurred in

2   California.  Orig. Order at 3:14-4:4; *Meridian Project Systems, Inc. v. Hardin Construction Company,*

3   *LLC,* 404 F.Supp.2d 1214, 1225 (E.D. Cal. 2005); *see also Churchill Village, L.L.C. v. General Electric*

4   *Co.,* 169 F.Supp.2d 1119, 1126 (N.D. Cal. 2000) (Patel, J.).  Further, "[t]he alleged **wrongful** conduct

5   itself, beyond activities which are simply related to or assisting in the wrongful conduct, must occur in

6   California."  Orig. Order at 3:20-21 (emphasis added).

7          **2.      Non-California Plaintiffs' Section 17200 Claim In This Litigation Presents**
           **Drastically Different Facts Than The Classification Decision At Issue In The**
8          **Loan Originator Litigation And Requires A Different Result.**

9          On August 13, 2007, this Court entered an order denying Defendant's Motion to Dismiss 17200

10  Claims of Non-California Putative Class Members in the Loan Originator Litigation.  Orig. Order at 8:7-

11  9.  The Court based its order on "the decision-making process related to the classification of HMCs" and

12  peripheral involvement of in-house counsel from California.  *Id.* at 6:19.  This processor litigation

13  presents entirely different facts and allegations—which require a different result.

14         Most importantly, Plaintiffs in this proceeding do not claim that they were misclassified under

15  the FLSA. *See*, *e.g.*, *Basore* Complaint ¶19; *see also infra* Part III.A.4 (noting that Non-California

16  Plaintiffs testified that they were aware that Wells Fargo policy required them to record all hours

17  worked).   Loan processors at Wells Fargo are and have been classified as non-exempt employees.

18  Plaintiffs' own personnel records, for one, demonstrate that they were classified as non-exempt

19  employees.  *See* Plaintiff Personnel Records.[8]

20         Furthermore, the classification of a group of employees (as in the Loan Originator Litigation), at

21  least arguably, may involve a core decision made by company managers.  In contrast, a case alleging

22  off-the-clock work in locations spread throughout the country, contrary to an employer's express policy

23  of requiring non-exempt employees to record all time worked – as is precisely the case here – is

24

25

---

[8]   Documents from the Plaintiffs' personnel records are attached as Exhibit 1 of the Declaration of
      Elise Reiser ("Reiser Decl."), field concurrently herewith, as required by Local Rules 7-2 and 7-5.

fundamentally different than a classification action.  *See infra* Part III.A.3.  Off-the-clock actions demand inherently more individualized inquiries.[9]  Here, such an inquiry reveals that the misconduct and injuries alleged by Non-California Plaintiffs simply have no connection to California sufficient to support any Section 17200 claims.

### 3.    Wells Fargo Requires All Non-Exempt Employees To Record All Time Worked.

Wells Fargo requires that all loan processors accurately record all hours worked, including overtime.  Wells Fargo's employee handbooks outline this policy:

> In order to meet the needs of our customers and business, ***you may occasionally need to work overtime*** or on one of Wells Fargo's common holidays.  Whether you receive overtime or holiday pay for this depends on whether your position is classified as exempt or nonexempt.
>
> * * *
>
> If you're nonexempt, you receive overtime pay of 1 1/2 times your pay (including any shift differential), or "time-and a half," if you work more than 40 hours in a workweek.  Paid Time Off and holidays are not counted as "work" hours for overtime purposes.  ***You must report all hours you work,*** and you need to get your supervisor's approval before you work overtime…

2004 Employee Handbook, Section 5.7 (emphasis added).[10]  The policy further states:

> If you're a nonexempt team member, ***you must fill out and submit timely, accurate timecards*** (using Webtime online timesheets or another method if approved for your group) ***in order to receive proper pay, including overtime***.

*Id.* at Section 5.12 (emphasis added); *see also id.* at Section 5.6 ("[Y]ou must report *all* hours worked." (emphasis in original)).[11]  Further, Wells Fargo pays loan processors for all hours worked.  Deposition of Elise Reiser ("Reiser Dep.") 36:8-13.[12]

---

[9]    *See, e.g., Smith v. T-Mobile USA, Inc.*, No. CV 05-5274, 2007 WL 2385131 (C.D. Cal. Aug. 15, 2007) (Collins, J.) (noting the inherently individualized analysis in an off-the-clock FLSA action where the plaintiffs were "clearly subject to disparate employment settings").

[10]    Portions of the 2004 Employee Handbook are attached as Exhibit 4 of Reiser Decl.

[11]    The 2001 version of the Wells Fargo employee handbook for "team members" similarly provided:

> If you're in a nonexempt position, you must report *all* hours worked.  And if you think you're going to need to work overtime, you need to get your supervisor's authorization before you work additional hours.  Overtime affects you business

The employee handbook is always available online.  *See* Deposition of Trudy Bowne ("Bowne Dep.") 50:14-16; Deposition of Nicole Gering ("Gering Dep.") 44:12-21; Deposition of Mary Basore ("Basore Dep.") 58:3-5; Deposition of Amie Lovrien ("Lovrien Dep.") 47:6-48:19.[13]  A hard copy is also provided to new employees, which Non-California Plaintiffs received.  *See*, *e.g.*, Bowne Dep. 48:24-50:13; McMillian Dep. 41:16-43:9; Deposition of Elishia Hesterberg ("Hesterberg Dep.") 29:13-20; Powell Dep. 66:14-24.; Lovrien Dep. 47:6, 47:22-24.[14]

### 4. Managers And Non-California Plaintiffs Understood Wells Fargo's Policy.

Supervising managers throughout Wells Fargo understood that loan processors were non-exempt employees who were expected to record all hours worked accurately.  *See*, *e.g.*, Declaration of Sandy Holobaugh ("Holobaugh Decl.") ¶9; Declaration of Jeff Messner ("Messner Decl.") ¶23; Declaration of Julie Winchell ("Winchell Decl.") ¶19; Declaration of Anthony Adamczak ("Adamczak Decl.") ¶18; Declaration of John Sherer ("Sherer Decl.") ¶9; Declaration of Charles Dahlgren ("Dahlgren Decl.") ¶10; Declaration of Michael Grace ("Grace Decl") ¶10; Declaration of Caroline Corey ("Corey Decl.")

---

unit's plan and budget, so it's important that your supervisor approves it in advance.

*Important:  While you'll be paid for all overtime hours worked, if you work unauthorized overtime it can be grounds for corrective action.*

2001 Employee Handbook for Team Members, Section 5.6 (emphases in original).  The 2001 version of the Wells Fargo employee handbook for "supervisors" likewise stated, "*Nonexempt team members must be paid for all overtime work, even if it is unauthorized.*"  2001 Employee Handbook for Supervisors, Section 5.6 (emphases in original); *see also id.* at Section 5.8 ("Supervisor's Guidelines: Overtime Pay & Holiday Pay").  The relevant portions of the 2001 employee handbooks for team members and supervisors are attached as Exhibits 5 and 6 of Reiser Decl.

The more recent, 2007 and 2006 versions of the Wells Fargo employee handbook contain almost identical provisions.  *See* 2007 Employee Handbook, Sections 5.6-5.7; 2006 Employee Handbook, Sections 5.6-5.7.  The relevant portions of each are attached as Exhibits 2 and 3 of Reiser Decl.

[12]  Portions of the transcript of the Deposition of Elise Reiser are attached as Exhibit 3 to Kelly Decl.

[13]  Portions of the transcripts for these four depositions are attached to Kelly Decl., as follows: (1) Exhibit 4, Bowne Dep.; (2) Exhibit 5, Gering Dep.; (3) Exhibit 6, Basore Dep.; and (4) Exhibit 7, Lovrien Dep.

[14]  Portions of the transcript of the deposition of Elishia Hesterberg are attached as Exhibit 8 to Kelly Decl.

¶10; Declaration of Gina Duncan ("Duncan Decl.") ¶18; Declaration of Jack Emkes ("Emkes Decl.") ¶5;

Declaration of Mark Cadham ("Cadham Decl.") ¶5; Declaration of Lucy Marques ("Marques Decl.") ¶5;

Declaration of David Barnes ("Barnes Decl.") ¶10; Declaration of Dixon Sewell ("Sewell Decl.") ¶10;

Declaration of Suzanne Denise Smithson ("Smithson Decl.") ¶8; Declaration of Michael Shackford

("Shackford Decl.") ¶¶9, 11; Declaration of Lee Ann Lange ("Lange Decl.") ¶¶9, 11.[15]

In fact, former Wells Fargo branch manager Jason Moxness (the supervising manager for

Plaintiffs Bowne and Hesterberg in Kansas and a witness identified by Plaintiffs) testified that he

instructed loan processors to follow this policy:

> Q. When you had a conversation with Ms. Bowne and Ms. Hesterberg about
> Webtime, did you advise them one way or another as to whether their time entries
> should be accurate?
>
> A. Yes. I encouraged accuracy on everything they did and honesty. You know,
> "***Please record the exact hours that you worked***," and they were both great
> employees and I trusted them. And they had no issues with that.

Deposition of Jason Moxness ("Moxness Dep.") 60:1-9 (emphasis added).[16]

Equally important, Non-California Plaintiffs understood Wells Fargo's policy that requires all

loan processors to accurately record all hours worked. Plaintiff McMillian testified:

> Q. And, if I'm reading correctly it reads, "If you're in a nonexempt position you
> must report all hours worked." Did I read that correctly?
>
> A. Yes.
>
> Q. And did you understand that to be the policy of Wells Fargo when you were a
> mortgage loan specialist?
>
> A. Yes.

McMillian Dep. 106:11-18. Plaintiffs Bowne and Hesterberg understood and complied with their

manager's instructions and Wells Fargo's policy. Bowne Dep. 36:9-38:16; Hesterberg Dep. 41:3-9.

---

[15]  All manager declarations are attached in alphabetical order as Exhibit 9 to Kelly Decl.

[16]  Portions of the transcript for the deposition of Jason Moxness are attached as Exhibit 10 to Kelly Decl.

Indeed, loan processors across the country understood and followed Wells Fargo's policy requiring them to record all hours worked accurately. *See, e.g.*, Declaration of Paula Paglia ("Paglia Decl.") ¶12 (New Jersey); Declaration of Kristen Poat ("Poat Decl.") ¶¶4-5 (Kentucky); Declaration of Amber Leatherman ("Leatherman Decl.") ¶¶4-5 (Illinois); Declaration of Lori Malewiski ("Malewiski Decl.") ¶¶4-5(Colorado).[17]

### 5. Local Managers Instructed Non-California Plaintiffs To Record All Hours Worked Accurately.

Many loan processors, including several Non-California Plaintiffs, declared or testified that their managers expressly instructed them to record all hours worked accurately, as required by Wells Fargo's policies. Plaintiff Hesterberg, who worked in Overland Park, Kansas, testified that Jason Moxness instructed her to start using Webtime to accurately record her hours worked:

> Q.  Now, when Jason told you to start using, or keeping track of your hours, did he give that same instruction to everyone?
>
> A.  To Trudy and Tracy, yes.
>
> Q.  Okay.  And, to your knowledge, did they track their hours also?
>
> A.  Yes.

Hesterberg Dep. 41:3-9. Plaintiff Bowne testified that Moxness gave her the same instruction:

> Q.  Did he say why he wanted you to start recording your time?
>
> A.  He just said that he wanted to keep track of the hours we were working.
>
> Q.  Did he tell you that that information was going to be used for anything?
>
> A.  No.
>
> Q.  How was it that you were to be recording your time?
>
> A.  He showed us the web site for Webtime.  And we would go in, enter in when we came in, when we left for lunch, if we left for a break.  And it was done daily.
>
> Q.  How would you go about doing that?  When was the first time during the course of the day that you would access this web site and make an entry?

---

[17]  All loan processor declarations are attached in alphabetical order as Exhibit 11 to Kelly Decl.

1    A.  I would come in in the morning and put what time I came in.  And then if I
     left for any reason, lunch, errands, whatever, I would go in and clock out.  And
2    when I get back in, and then when I left, I would clock out.

3    Q.  So it sounds like you did these as they were happening?

4    A.  Correct.

5    Bowne Dep. 36:19-37:17.  Moxness, by his own account, "encouraged accuracy on everything they did

6    and honesty."  Moxness Dep. 60:1-9.  Moxness' testimony is echoed across the country.  *See, e.g.*,

7    Paglia Decl. ¶¶14, 16, 17; Poat Decl.") ¶¶9, 12; Leatherman Decl. ¶¶19, 23; Malewiski Decl. ¶¶19, 23.

8        In addition, Non-California Plaintiffs also consistently testified that, to the extent that they ever

9    complained internally regarding time reporting or any alleged unpaid overtime, they never complained

10   to anyone other than a manager to whom they reported or co-workers in their location.  McMillian Dep.

11   68:14-24, 72:22-73:4, 74:4-11;  Gering Dep. 15:6-10, 25:24-26:8;  Deposition of Jeni Fisher ("Fisher

12   Dep.") 25:5-15; Hesterberg Dep. 34:16-23; Deposition of Jamie Hejlik ("Hejlik Dep.") 36:7-11, 40:23-

13   25; Basore Dep. 56:19-21; Powell Dep. 49:13-50:1; Lovrien Dep. 54:19-56:22.[18]

14       **6.    Only Local Managers Review Time Recorded By Loan Processors.**

15       Managers in retail and fulfillment center locations nationwide approve requests to work overtime

16   from loan processors who report to them. *See* Holobaugh Decl. ¶8; Peterson Decl. ¶8; Sherer Decl. ¶12;

17   Emkes Decl. ¶5; Smithson Decl. ¶¶6-8; Cadham Decl. ¶6; Messner Decl. ¶¶14, 25; Marques Decl. ¶6;

18   Adamczak Decl. ¶16; Shackford Decl. ¶¶10, 14; Sewell Decl. ¶12; Barnes Decl. ¶12; Winchell Decl.

19   ¶12; Grace Decl. ¶11; Dahlgren Decl. ¶11; Corey Decl. ¶¶11-12, Duncan Decl. ¶21.

20       In addition, managers in retail and fulfillment centers nationwide review the time recorded by

21   loan processors, unless they have delegated this task to their administrative assistant.  *See* Holobaugh

22   Decl. ¶¶7-8; Peterson Decl. ¶¶7-8; Emkes Decl. ¶6; Smithson Decl. ¶6; Cadham Decl. ¶¶6, 8; Messner

23   Decl. ¶¶15, 25-26; Lange Decl. ¶¶8-9; Marques Decl. ¶¶6, 9, 15; Shackford Decl. ¶¶13-14 Barnes Decl.

24
25   [18]   Portions of the transcripts for the depositions of Jeni Fisher and Jamie Hejlik are attached as Exhibits
          12 and 13, respectively, to Kelly Decl.

¶¶12-13; Winchell Decl. ¶¶22-23; Adamczak Decl. ¶21; Sherer Decl. ¶¶11-12; Dahlgren Decl. ¶¶12-13; Grace Decl. ¶¶12-13; Corey Decl. ¶¶12-13. Indeed, these manager tasks are consistent with the individual responsibilities for managers outlined in Wells Fargo's 2001 employee handbook for supervisors:

> Complete and submit time records promptly, so that your nonexempt team members are paid on time for overtime or hourly work. Use the online timekeeping tool if it's available in your area.
>
> *Note:* Overtime and hourly payments are processed based on your instructions and approval; any error or omission in payment could result in a violation of the labor codes and could subject the company to penalties.

2001 Employee Handbook for Supervisors, Section 5.8 (emphasis in original).

Precisely how managers carry out or perform these review and approval responsibilities varies significantly by manager and location. For example, Sandra Holobaugh, a branch manager in a retail location in Denver, Colorado, directly reviews the time recorded by the four mortgage sales associates who report to her. Holobaugh Decl. ¶8. In contrast, some branch managers only periodically, rarely, or never review the hours worked and recorded by the loan processors that report to them. Mark Cadham, a manager of a fulfillment center in Minneapolis, Minnesota, typically delegates the responsibility for reviewing and approving time to supervisors in his location. Cadham Decl. ¶6. Jason Moxness never reviewed time records:

> Q. I know you've said that you didn't have any responsibility for reviewing that time, but did you ever review that time –
>
> A. I.
>
> Q. – that they were recording?
>
> A. I did not have access to Webtime, so I never saw what hours they were recording. It went right to Jean Scheckenger.
>
> Q. So if I were to hand you a record of either Ms. Hesterberg's or Ms. Bowne's time entries, you wouldn't be able to tell me one way or another if those were accurate?
>
> A. No.

Q.  Is that correct?

A.  Correct.

Moxness Dep. 59:11-25.  Instead, that task was delegated to his area manager's assistant in Omaha, Nebraska.  *Id.* at 58:2-59:18.

### 7.    Misconduct Or Injuries Alleged By Non-California Plaintiffs Did Not, And Simply Could Not, Occur In Or Emanate From California.

Even if Non-California Plaintiffs worked off-the-clock overtime in ignorance, because of a misunderstanding, or as a result of a local, non-California manager's direction – in direct violation of Wells Fargo's policies – those alleged violations of Wells Fargo's policies occurred only at a local level.[19]  Again, Plaintiffs' witness, Jason Moxness, testified that he never discussed the number of hours his loan processors worked with anyone in management:

> Q. Did anyone in management, meaning anyone above you in the chain of command, ever talk to you about any expectation for the number of hours that loan processors should be working?
>
> A. No.

Moxness Dep. 57:3-7.  Moxness, in fact, simply understood that management wanted loan processors to keep "accurate time of when [they] worked."  *Id.* at 62:5-10.

Equally important, Non-California Plaintiffs consistently testified that they received instructions regarding time recording and overtime hours exclusively from their ***on-site*** managers.  Plaintiff McMillian testified that the alleged instructions she received to not record all hours worked or refusals to approve overtime, came from a supervisor, Sonya Moore, and a manager, Sarah Froedge – both in

---

[19]  *See e.g., Garner v. Regis Corp.*, No. 03-CV-5037, 2004 U.S. Dist. Lexis 29167, at *8 (W.D. Mo. Aug. 5, 2004)  ("The written corporate payment plan does not on its face encourage inappropriate behavior.  Any inappropriate behavior rested on the interpretation and implementation of that plan by individual Regional Managers and Area Supervisors."); *Clark v. Dollar General Corp.*, No. 3:00-0729, 2001 WL 878887, at *5 (M.D. Tenn. May 23, 2001) ("[T]he illegal overtime plan alleged by Plaintiffs is not necessarily carried out through central management.  Defendant's official written policy dictates that overtime will be paid in compliance with the FLSA.  Based on the evidence before the Court at this time, if an illegal scheme exists at all, it appears to be implemented on a decentralized level.").

1   Charlotte, North Carolina.  McMillian Dep. 64:13-65:2.  McMillian further testified that she complained

2   to an individual in Charlotte, Lori Hooper.  *Id.* at 74:4-11.  The result following the alleged complaint

3   demonstrates that **both** McMillian **and** her local manager believed it was the local manager alone who

4   addressed and controlled issues regarding time reporting and overtime compensation:

5           Q.  Did you ever follow up with Miss Hooper?

6           A.  No, not after we had that -- Sarah [local manager] and I had that conversation.

7           Q.  So after you complained to Miss Hooper you said Sarah returned?

8           A.  Yes, she was –

9           Q.  What do you mean by that?

10          A.  She was out of the office when Lori had gotten back to me on the overtime
            pay, and so I went and I followed up with Sarah because it actually turned out that
11          Sarah had not approved it.  And she asked me why did I have that conversation
            with Lori?  And I told her because Lori is the HR rep.  And she said, "No, she's
12          here to assist me, and ***I make the decisions on the pay***."

13  McMillian Dep. 76:2-16 (emphasis added).  Plaintiff Powell, who worked exclusively in Columbus,

14  Ohio, testified that she received instructions from her on-site manager and a loan originator in her office:

15          Q.  Okay.  You stated that it had been made clear to you that it was a 40-hour
            position -- or a 40-hour salaried position.  What do you mean – Can you describe
16          for me what you mean by "it had been made clear to you"

17          A.  We just simply didn't get paid for anything over 40 hours.

18          Q.  Who told you that?

19          A.  Wayne [Knisely] and Mike [Mockler] both.

20          Q.  Can you recall exactly what they told you?

21          A.  Initially, on my first couple of time sheets, I had turned in with the actual
            hours that I had worked, and they brought them back and had me make the
22          adjustments down to 40 hours.

23          Q.  What did you say to them in response?

24          A.  That I would go ahead and do it.

25  Powell Dep. 42:12-43:20.  In short, Non-California Plaintiffs own testimony reveals the entirely local

    nature of the complained-of conduct—with no connections to California.

1

2

**8.    To The Extent Plaintiffs Allege A Systems-Based Failure To Pay *Recorded* Overtime, Any Such Alleged Failure Did Not And Could Not Have Emanated From California.**

3

4

In 1998, Norwest Corporation, with its headquarters in Minneapolis, Minnesota, "merged" with

5

Wells Fargo & Company, which maintained its headquarters in San Francisco, California.  *See*

6

Deposition of Pat Cahalan ("Cahalan Dep.") 10:15-19.[20]  In fact, Wells Fargo & Company became a

7

wholly-owned subsidiary of Norwest Corporation.  *See* 1999 WF Annual Report at 34, 56; *see also*

8

Norwest Corporation Amendment 1 to S-4 Registration Statement under The Securities Act of 1933 at

9

17-18 (Sept. 29, 1998), *available at* http://www.sec.gov/Archives/edgar/data/72971/0001045969-98-

10

000726.txt.[21]  Nonetheless, Norwest Corporation adopted the Wells Fargo & Company name and brand

identity.  1999 WF Annual Report at 34, 56.

11

Relative to Wells Fargo & Company prior to the merger, Norwest Corporation had a

12

substantially larger home mortgage division, which maintained its headquarters in Des Moines, Iowa.

13

*See* Deposition of Teresa Swanson ("Swanson Dep.") 75:19-76:15 (regarding the relative size of

14

Norwest Mortgage); *see* Cahalan Dep. 10:15-19 (regarding headquarters of Norwest Mortgage).[22]  In

15

2000, the home mortgage division of the combined entity changed its name from Norwest Mortgage to

16

Wells Fargo Home Mortgage, the only division implicated in this case.[23]  *See* Cahalan Dep. 12:9-17; *see*

17

*also* 1999 WF Annual Report at 7, 29; 2000 WF Annual Report 2, 28.[24]  Wells Fargo Home Mortgage

18

---

19

[20]  Portions of the transcript for the deposition of Pat Cahalan are attached as Exhibit 14 to Kelly Decl.

[21]  Portions of the 1999 Wells Fargo Annual Report are attached as Exhibit 8 of Reiser Decl.  The

20

complete version is available at https://www.wellsfargo.com/invest_relations/annual.

[22]  Portions of the transcript for the deposition of Teresa Swanson are attached as Exhibit 15 to Kelly

21

Decl.

22

[23]  Indeed, all of the named Plaintiffs in *Bowne* and *Basore*—(1) Trudy Bowne; (2) Elishia Hesterberg; (3) Kristen Dugan; (4) Amie Lovrien; (5) Jamie Hejlik; (6) Nicole Gering; (7) Mary Basore; (8)

23

Brenda McMillian; and (9) Barbara Powell—worked as loan processors (mortgage sales associates, mortgage assistants, or mortgage loan specialists) only for Wells Fargo Home Mortgage within the

24

Home and Consumer Finance Group.  *See supra* n.8 (referring to Plaintiffs' personnel records).

[24]  Portions of the 2000 Wells Fargo Annual Report are attached as Exhibit 9 of Reiser Decl.  The

25

complete version is available at https://www.wellsfargo.com/invest_relations/annual.

1    retained its Iowa headquarters as part of the Home and Consumer Finance Group, which also maintains

2    its headquarters in Des Moines.  Cahalan Dep. 88:2-11.  Wells Fargo Home Mortgage's current co-

3    presidents, Cara Heiden and Mike Heid, work in Des Moines.  Deposition of Cara Heiden ("Heiden

4    Dep.") 18:13-15.[25]  Further, the Home and Consumer Finance Group's president, Mark Oman, also

5    works in Des Moines.  Cahalan Dep. 88:18-89:2.

6            Wells Fargo's Human Resources Data Services ("HRDS") is responsible for the processing of

7    time recorded by non-exempt employees of Wells Fargo Home Mortgage, such as its loan processors, in

8    compliance with applicable wage and hour laws.  Swanson Dep. 34:2-35:12, 45:1-19.  HRDS is located

9    exclusively in Minneapolis, Minnesota, and Des Moines, Iowa.  Declaration of Teresa Swanson

10   ("Swanson Decl.") ¶4.[26]  HRDS developed the time-recording software used by Wells Fargo's non-

11   exempt employees, Webtime, in conjunction with a third-party vendor in 1999.  Swanson Dep. 17:9-18,

12   20:13-17, 36:4-37:4.  HRDS based Webtime's initial design and functionality on the "standard hours"

13   protocol for time reporting and processing used by Wells Fargo's predecessor, Norwest.  *Id.* at 75:19-

14   81:20.  The Webtime application resides on servers located in Minneapolis, Minnesota.  *Id.* at 68:13-

15   69:17.

16           In particular, HRDS incorporated a manager approval requirement into Webtime's initial design

17   and functionality, based on Norwest's standard hours protocol.  *Id.* at 83:7-84:16.  This design required

18   that each non-exempt employee's manager review and approve of all overtime recorded in Webtime

19   before it was processed by HRDS.  *Id.*; *see* 2004 Webtime Manager Training Guide at 5-8 (noting the

20   "Weekly Webtime Tasks for Managers"); *see also supra* Part III.A.6 (discussing the varying practices

21   among individual managers regarding the review and approval process).[27]  Without a manager's review

22   and approval, the overtime recorded in Webtime was not processed for payment by HRDS and a non-

23

24   [25]   Portions of the transcript for the deposition of Cara Heiden are attached as Exhibit 16 to Kelly Decl.

     [26]   The Declaration of Teresa Swanson has been filed concurrently herewith.

25   [27]   The 2004 Webtime training guide for Wells Fargo managers is attached as Exhibit 7 of Reiser Decl.

exempt employee would simply be paid their "standard hours," which was designated by their manager. Swanson Dep. 117:19-118:20. This function was based entirely on procedures followed by Norwest prior to its merger with Wells Fargo. *Id.* at 75:19-81:20.

HRDS was responsible for the initial implementation and roll-out of Webtime nationwide. *Id.* at 45:17-19. In addition, HRDS was and remains responsible for any upgrades or modifications to Webtime. *Id.* Thus, in September 2005, HRDS released and implemented a new version of Webtime that removed the manager approval requirement. *Id.* at 114:1-17. As a result, a manager's approval is no longer required for the processing of overtime recorded by a non-exempt employee. *Id.* at 126:10-127:11. In short, HRDS processes all time recorded by non-exempt employees, regardless of whether a manager has approved of the time entries.

Consequently, to the extent that Plaintiffs allege any systems-based failure to pay overtime recorded by loan processors—which is not readily apparent on the face of Plaintiffs' Complaint—such conduct did not (and could not) emanate from California. Prior to September 2005, individual managers across the country were required to approve of all time recorded by non-exempt employees such as loan processors. Any failure to follow this protocol was inherently local in nature. Furthermore, HRDS is solely responsible for the processing of any time recorded by non-exempt employees, and HRDS is and has always been based in Minneapolis and Des Moines. Thus, the procedures implemented by HRDS for the processing of recorded overtime originated with, and thereby emanated from, Wells Fargo's predecessor entity in Minneapolis.

### 9. To The Extent Any Loan Processor Has Not Yet Been Paid For Worked And *Recorded* Overtime, A Decision Has Been Made To Pay All Overtime.

During informal discovery in the *Bowne* proceedings, Wells Fargo became aware that some of the named Plaintiffs recorded, but may not have been paid for, certain overtime hours worked. This discrepancy appears to have resulted from the failures of certain local managers to review and approve of time recorded by loan processors in Webtime prior to September 2005. *Id.* at 116:11-118:20.

Thereafter, on October 23, 2006, Wells Fargo agreed to the conditional certification of a class of loan processors in *Bowne* with recorded but unpaid overtime hours, subject to various criteria and the opt-in requirements of the FLSA. *See Bowne* Stipulation [Doc. 22].

Wells Fargo is committed to paying all employees for all hours worked. Reiser Dep. 36:8-37:6; *see also supra* Part III.A.3 (including citations to various versions of Wells Fargo's employee handbook). In fact, on January 12, 2007—during the notice period in *Bowne* and before the *Basore* action was filed—Wells Fargo made the decision that any loan processor with recorded but unpaid overtime hours worked would be paid. Reiser Dep. 29:20-30:4, 38:19-39:1.

Wells Fargo's decision was lawful and intended to correct any errors in timekeeping and payroll processing. Reiser Dep. 43:10-17. However, within eleven days of the decision and during the notice period in *Bowne*, Plaintiffs—represented by the same counsel as in *Bowne*—filed *Basore* on January 23, 2007, on behalf of "all current and former" loan processors within the previous four years. *See Basore* Complaint [Doc. 1]. Due to the various issues raised by *Basore*, the precise timing and means of payment of recorded but unpaid overtime hours to loan processors has not yet been determined. Reiser Dep. 36:2-38:25, 43:10-44:17.

### B.    NON-CALIFORNIA PLAINTIFFS DID NOT HAVE SUFFICIENT CONTACTS WITH CALIFORNIA TO SATISFY DUE PROCESS.

In *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 821-22 (1985), the Supreme Court held that for a forum state to apply its law to claims of non-resident class members, and satisfy due process, the state "must have 'a significant contact or significant aggregation of contacts' to the claims asserted by ***each*** member of the ***plaintiff*** class, contacts 'creating state interest,' in order to ensure that the choice of [state] law is not arbitrary or unfair." *Id.* at 821-22 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981)) (emphasis added). In addition, the Court noted that an "important element" in assessing fairness is "the expectation of the parties." *Shutts*, 472 U.S. at 822. Significantly, "[t]he existence of

1    personal jurisdiction over a defendant does not alone permit application of the forum law to the claims

2    of nonresident plaintiffs." *Norwest Mortgage*, 85 Cal.Rptr.2d at 26.

3         Here, none of the Non-California Plaintiffs has any "significant contact or significant

4    aggregation of contacts" such that any Non-California Plaintiff or Wells Fargo reasonably expected that

5    Section 17200 or any other California law would govern the employment relationship. *Shutts,* 472 U.S.

6    at 821-22. Moreover, there is no indication that any Non-California Plaintiff or Wells Fargo reasonably

7    expected that Section 17200 or any other California law would govern the employment relationship. *See*

8    *id.* As a result, application of Section 17200 to claims of Non-California Plaintiffs violates due process

9    limitations. *Norwest Mortgage,* 85 Cal.Rptr.2d at 25-27. Due process requires that Non-California

10   Plaintiffs' Section 17200 claims be dismissed.

## 1.      Non-California Plaintiffs Did Not Have Any Contact with California.

12        Based on *Shutts,* the court in *Norwest Mortgage* held that application of the UCL to claims based

13   on alleged conduct occurring outside of California and allegedly injuring non-California residents,

14   "would be arbitrary and unfair and transgress due process limitations." *Norwest Mortgage,* 85 Cal.

15   Rptr.2d at 26-27. In particular, the court reasoned that although the defendant was incorporated in

16   California and did business in California: (1) its headquarters and principal place of business were in

17   Iowa; (2) the non-resident plaintiffs were allegedly injured outside of California; and (3) all decisions

18   regarding the alleged unlawful program were made by the defendant's employees in Iowa or Minnesota.

19   *Id.*[28] The court, accordingly, reversed certification of a class of non-California residents

20        The circumstances in the present action are virtually identical to those assessed in *Norwest*

21   *Mortgage*. Wells Fargo Home Mortgage maintains its headquarters and principal place of business in

22   Iowa. See *Basore* Complaint ¶8; *Bowne* Am. Complaint ¶10. Non-California Plaintiffs (by definition,

---

[28]  Norwest Mortgage was the predecessor entity of Wells Fargo Home Mortgage, the division of Wells
      Fargo at issue in these proceedings. *See supra* Part III.A.8.

as pled, and as sworn) allege injuries that occurred solely outside of California.  *See Basore* Complaint

¶4, 16-23; McMillian Dep. 13:14-14:4; Powell Dep. 20:7-15, 29:2-5, 126:4-12.

Moreover, there is no evidence that the misconduct alleged by Non-California Plaintiffs –

instructions to work off-the-clock or practices that permitted loan processors to work off the clock –

occurred in or emanated from California.  In fact, Plaintiff McMillian testified that her on-site manager

in North Carolina stated that she "ma[de] the decisions on the pay."  McMillian Dep. 76:2-16.[29]

Plaintiff Powell testified that she received instructions regarding time reporting exclusively from a loan

originator and branch manager in her Ohio office.  Powell Dep. 42:12-43:20.  The *Bowne* Plaintiffs, all

of whom are Non-California Plaintiffs, do not even allege any involvement of Wells Fargo Bank in

California.  *Bowne* Am. Complaint ¶10.

> **2.      Non-California Plaintiffs Could Not Have Reasonably Expected That California Law Would Govern Their Employment Relationships.**

"When considering fairness in [the due process] context an important element is the expectation

of the parties."  *Shutts*, 472 U.S. at 822.  Thus, in *Shutts,* the Supreme Court recognized there was no

indication that, when the contracts at issue were executed, the parties "had any idea that Kansas law

would control."  *Id*. at 822.  Consequently, Kansas "could not abrogate the rights of parties beyond its

borders having no relation to anything done or to be done within them."  *Id*. (quotation omitted).

Similarly, in *Norwest*, the court noted that there was "no basis to conclude any non-Californian expected

California law would govern his [or her] claim" because "the contractual relationship between Norwest

Mortgage and the borrowers specified the law of place of the encumbered property would govern."

*Norwest*, 85 Cal.Rptr.2d at 27 n.16.

---

[29]   Thus, even if Wells Fargo policies emanate from California (which they do not), this Court must consider that the policies requiring non-exempt employees to record all hours worked, much like the decision to pay for recorded overtime, do not constitute misconduct.  *See Churchill Village*, 169 F.Supp.2d at 1126 (noting that the **misconduct** must occur in California).  Indeed, such policies are consistent with applicable state and federal laws.

In this case, neither Non-California Plaintiffs nor Wells Fargo could have reasonably expected that California law might apply to any wage and hour complaint made by loan processors nationwide. In fact, the at-will employment agreements with loan processors nationwide specified that the law of Iowa, where Wells Fargo Home Mortgage has its headquarters, governs the agreement. *See, e.g.*, Employment Agreement with Barbara Powell ¶16; Employment Agreement with Nicole Gering ¶16.[30] There is simply no evidence that any Non-California Plaintiff expected that California law would afford them remedies for wage and hour claims.

### C. APPLICATION OF SECTION 17200 TO A NATIONWIDE RULE 23 CLASS, BASED ON ALLEGED FLSA VIOLATIONS, IS PROHIBITED BY THE FLSA.

As discussed, Plaintiff McMillian purports to represent a nationwide class of loan processors who never worked in California under Section 17200, based solely on alleged FLSA violations. As such, Non-California Plaintiffs are simply trying to "repackage their underlying FLSA allegations" as alleged UCL violations. *Williams v. Trendwest Resorts, Inc.*, No. 05-CV-0605, 2007 WL 2429149, at *2 (D. Nev. Aug. 20, 2007). Section 17200 does not create any "independent substantive rights" that Non-California Plaintiffs seek to enforce. *Id.* (citing *Farmers Ins. Exch. v. Superior Court of Los Angeles County*, 2 Cal.4th 377, 383, 826 P.2d 730, 734 (1992)). Accordingly, Non-California Plaintiffs' action is "identical in substance" to an FLSA action. *Id.*; *see also Basore* Complaint ¶¶ 61-70 [Doc. 1].

The FLSA, however, expressly preempts what the Non-California Plaintiffs seek here – certification of a class pursuant to Fed. R. Civ. P. 23(c) based on alleged violations of the FLSA. Therefore, pursuant to Fed. R. Civ. P. 12(b)(6), the Non-California Plaintiffs' Section 17200 claims must be dismissed.

---

[30] The employment agreements are included in the personnel records included in Exhibit 1 of Reiser Decl.

1.     **Non-California Plaintiffs' Class Action For Alleged Section 17200 Violations, Based Solely On The FLSA, Circumvents The FLSA And Is, Therefore, Preempted.**

The Supremacy Clause of Article VI of the United States Constitution gives Congress the power to preempt state law.  *Qwest Communications, Inc. v. City of Berkeley*, 433 F.3d 1253, 1256 (9th Cir. 2006).  There are three types of preemption under federal law: express preemption, field preemption, and conflict preemption.  *Montalvo v. Spirit Airlines,* 508 F.3d 464, 470 (9th Cir. 2007).  Conflict preemption "occurs: (1) where it is impossible for a private party to comply with both a state and federal requirement; or (2) [where] the state law stands as an obstacle to the accomplishment of the congressional objectives."  *Harris v. Investor's Business Daily, Inc.*, 41 Cal.Rptr.3d 108, 112 (Ct. App. 2006)  (citing *Freightliner Corp. v. Myrisk*, 514 U.S. 280, 287 (1995)).  "[A] state statute is void to the extent that it actually conflicts with a valid federal statute; and '[a] conflict will be found…where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Edgar v. MITE Corp.*, 457 U.S. 624, 631 (1982) (quoting *Ray v. Atlantic Richfield Co.*, 425 U.S. 151, 158 (1978) ).

Non-California Plaintiffs' putative class action under Section 17200 based solely on alleged FLSA violations, cannot be maintained under principles of conflict preemption.  Non-California Plaintiffs' action is an obvious attempt to avoid the opt-in requirement of the FLSA and lengthen the statute of limitations Congress intended to govern FLSA claims.[31]  Allowing Non-California Plaintiffs to "circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon state statutes similar to the FLSA would undermine Congress's intent to limit these types of claims to collective action."  *Moeck v. Gray Supply Corp.,* No. 03-CV-1950, 2006 WL 42368, at *5 (D.N.J. Jan. 5, 2006) (citing *McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 577 (N.D. Ill. 2004) ).

---

[31]  The FLSA provides a two-year statute of limitations for claims, except where the violation has been found to be willful, a three-year statute of limitations applies.  29 U.S.C. §255(a).  In contrast, the Section 17200 provides for a four-year statute of limitations.  Cal. Bus. & Prof. Code § 17208.

Congress expressed a clear intent to limit FLSA actions to opt-in collective actions.  *See infra*

Part III.C.2.  This policy "would largely 'be thwarted if a plaintiff were permitted to back door the

shoehorning in of unnamed parties through the vehicle calling upon similar state statutes that lack such

an opt-in requirement."  *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 470 (N.D. Cal. 2004)

(Walker, J.) (quotation omitted).  "The absurdity of allowing Congress's purpose in amending the FLSA

to be thwarted by the maintenance of a state claim that exists solely by reference to the language of the

FLSA is manifest."  *Ellis v. Edward D. Jones & Co., L.P.*, 527 F.Supp.2d 439, 453 (W.D. Pa. 2007).

Indeed, there is a growing chorus of decisions from across the country rejecting such maneuvering by

plaintiffs and their counsel.[32]

### 2. The History Of 29 U.S.C. § 216(b) Demonstrates Congress' Intent To Prohibit FLSA Class Actions Under Rule 23.

Under the FLSA, any employee may bring an action "on behalf of himself…and other

employees similarly situated."  29 U.S.C. § 216(b).  The FLSA also provides, however that "[n]o

employee shall be a party plaintiff to any such action unless he gives his consent in writing to become

such a party and such consent is filed in the court in which such action is brought."  *Hoffman-LaRouche,*

*Inc. v. Sperling,* 493 U.S. 165, 173 (1989).

Congress passed Section 216(b) as part of the Portal to Portal Act of 1947, 61 Stat. 87, in

response to *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).  The Supreme Court's

construction of the FLSA in *Anderson* brought on the possibility of "virtually unlimited liability" for

---

[32]  *See De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003); *Ellis v. Edward D. Jones & Co., L.P.*, No. 06-66, 2007 WL 4426615, at *13 (W.D. Pa. Dec. 18, 2007); *Williams v. Trendwest Resorts, Inc.*, No. 2:05-CV-0605-RCJ-LRL, 2007 WL 2429149 (D. Nev. Aug. 20, 2007); *Harden v. WIS Holding Corp.*, No. 07-4076, (W.D. Mo. June 27, 2007) (Wright, J.) (attached hereto as Exhibit 11 of Kelly Decl.); *Moeck v. Gray Supply Corp.*, No. 03-1950, 2006 WL 42368 (D.N.J. Jan. 6, 2006); *Otto v. Pocono Health System*, 457 F.Supp.2d 522 (M.D. Penn. 2006); *Edwards v. City of Long Beach*, 467 F.Supp.2d 986 (C.D. Cal. 2006); *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462 (N. D. Cal. 2004); *McClain v. Leon's Pizzeria, Inc.*, 222 F.R.D. 574 (W.D. Ill. 2004); *Lindsay v. Government Employee Ins. Co.*, 355 F.Supp.2d 119 (D.D.C. 2004); *see also LaChappelle v. Owens-Illinois, Inc.*, 513 F.2d 286 (5th Cir. 1975) ("Rule 23(c) provides for 'opt out' class actions. FLSA s 16(b) allows as class members only those who 'opt in.'  These two types of class actions are mutually exclusive and irreconcilable.").

1    employers.  *Sperling v. Hoffman-La Roche, Inc.*, 347 F.3d 463, 469 (3d Cir. 1994).  Believing this result

2    to be a bad idea, Congress passed the Portal to Portal Act (originally titled "**Representative Actions**

3    **Banned**"), explicitly to "prevent large group [FLSA] actions, with their vast allegations of liability, from

4    being brought on behalf of employees who had no real involvement in, or knowledge of, the lawsuit."

5    *Arrington v. Nat'l Broad. Co.*, 531 F.Supp. 498, 501 (D.D.C. 1982).[33]

6          To that end, the Portal to Portal Act added Section 216(b)'s opt-in requirement and the statute of

7    limitations for FLSA claims.  29 U.S.C. §§ 252(a).  The Chairman of the Senate Judiciary Committee,

8    Senator Donnell of Missouri, explained the rationale for adopting the opt-in provision:

9          Obviously, Mr. President, this is a wholesome provision, for it is certainly
10         unwholesome to allow an individual to come into court alleging that he is suing
           on behalf of 10,000 persons and actually not have a solitary person behind him,
11         and then later on have 10,000 men join in the suit, which was not brought in good
           faith, was not brought by a party in interest, and was not brought with the actual
12         consent or agency of the individuals for whom an ostensible plaintiff filed the
           suit.

13         So we have provided, as I say, that no employee shall be made a party plaintiff to
           any such action unless he gives his consent in writing and unless such consent is
14         filed in the court in which the action is brought.

15         Certainly there is no injustice in that, for if a man wants to join in the suit, why
           should he not give his consent in writing, and why should not that consent be filed
16         in court?

17   *Arrington's*, 531 F.Supp. at 502 (quoting 93 Cong. Rec. S2182 (1947)).  More recently, the Supreme

18   Court explained that "the representative action by plaintiffs not themselves possessing claims was

19   abolished, and the requirement that an employee file a written consent was added" to address "excessive

20   litigation spawned by plaintiffs lacking a personal interest in the outcome."  *Hoffman-La Roche, Inc. v.*

21   *Sperling,* 493 U.S. at 173.  The Court further explained that Congress created the opt-in procedure "for

22

23
---
[33]  *See United Food & Commercial Workers Union v. Albertson's, Inc.,* 207 F.3d 1193, 1201 (10th Cir.
24         2000) (noting that *Arrington's* interpretation of the legislative history of the Portal to Portal Act "has
           since been embraced by all courts"); *see also Cameron-Grant v. Maxim Healthcare Sers., Inc.,* 347
25         F.3d 1240, 1248 (11th Cir. 2003).

the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions." *Id*.

### 3. *Harris v. Investor's Business Daily, Inc.* Was Wrongly Decided.

There is a line of authority, summarized in *Harris v. Investor's Business Daily, Inc.*, 41 Cal.Rptr.3d at 112, that holds that a class action pursuant to Fed. R. Civ. P. 23 for Section 17200 claims and an FLSA collective action may be brought simultaneously. The decision in *Harris*, however, is wrong; its analysis is woefully short-sighted. This Court is not bound to follow its misguided path.

#### a. Non-California Plaintiff's Putative Class Directly Impedes Congress' Intent To Prevent Runaway Damage Awards Under The FLSA.

In *Harris*, the California Court of Appeals held that Section 17200 does not implicate Congress' concern that led to the enactment of the Portal to Portal Act because the UCL provides for restitution only. 41 Cal.Rptr.3d at 112. The court stated that Congress' basis for the Act was to prevent "windfall payments" in runaway judgments. *Id*. Further, the court stated that since the restitution sought by each plaintiff on their Section 17200 claim amounted only to overtime compensation for a few hours, a run-away judgment was not possible with such a claim under Section 17200. *Id*.

While many FLSA wage and hour lawsuits involve modest sums of money on behalf of each individual, a nationwide class action under Fed. R. Civ. P. 23 for such claims would, in cases such as the present, aggregate the claims of thousands of absent class members and lead to extremely high damage awards. Thus, Congress expressly counseled against aggregate claims by absent class members by requiring class members to affirmatively opt-in. This Court is bound by Congress' directive.

#### b. Plaintiffs Should Be Allowed To Be Masters Of Their Own Claims.

The court in *Harris* ignored Congress' concern that individuals should be the master of their own wage and hour claims. Congress created the opt-in right in the FLSA, in part, so a class member would need to affirmatively opt-in for his or her rights to be adjudicated. *Arrington's*, 531 F.Supp. at 502 (quoting 93 Cong. Rec. S2182 (1947)); *see also Aquilino v. Home Depot U.S.A., Inc.*, 2006 WL

1   2023539 (D.N.J. 2006), at *2 (noting "(t)he purpose of the written consent to opt-in was to prevent suits

2   instituted by persons who have 'no direct stake in the outcome'" (citing 93 Cong. Rec. S2182 (1947)).

3   Simply put, "the FLSA class action allows individuals to control their participation in this litigation in a

4   far more expeditious fashion than does a Rule 23 class action." *Leuthold*, 224 F.R.D. at 469.

5       The opt-in right, in turn, prevents plaintiffs from having potentially more beneficial state claims

6   precluded or waived through *res judicata* or the rule against claim splitting if he or she simply ignores

7   the class action opt-out form. *See, e.g., Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 923 (9th Cir.

8   2003) (affirming dismissal of FLSA claim of an employee where she had previously litigated state law

9   claims for overtime against her employer); *Alvarez v. May Dep't Stores Co*., 49 Cal.Rptr.3d 892, 903

10  (Cal. Ct. App. 2006)  (barring employees who filed class action for failure to pay under the California

11  Labor Code and Section 17200 from relitigating the issue of class certification because named plaintiffs

12  in prior action were "virtual representatives" of the employees and because the purported class

13  complaint in the previous lawsuit alleged same general misconduct during the same time period.).

14      More specifically, relief for Non-California Plaintiffs' Section 17200 action is limited to

15  restitution or an injunction, with a four-year statute of limitations. *See* Cal. Bus. & Prof. Code §§ 17203,

16  17208; *see also Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal.4th 163, 176-78, 999 P.2d 706,

17  715 (Cal. 2000).  Section 17200 does not expressly provide for attorneys' fees. *Shadoan v. World Sav.*

18  *& Loan Ass'n*, 268 Cal.Rptr. 207, 212 n.7 (Ct. App. 1990).  This contrasts with several other states' laws

19  providing putative class members broader remedies than available under Section 17200.

20      **Vermont:** Vermont state law permits recovery of back pay, liquidated damages
    equal to 200 percent of unpaid wages, attorneys' fees and costs, and provides a six
21      year statute of limitations.  See Vt. Stat. Ann. tit. 12, § 511, tit. 21, § 395.

22      **Maine:**    Maine law provides for the recovery of back pay, liquidated damages
        equal to unpaid wages, attorneys' fees, and a six-year statute of limitations.  Me.
23      Rev. Stat. Ann. tit. 26, § 752.

24      **Kentucky:**    Kentucky state law permits recovery of back pay, liquidated
        damages equal to unpaid wages, attorneys' fees, and offers a five-year statute of
25      limitations.  Ky. Rev. Stat. Ann., §§ 337.385, 413.120(2).

**New York:**    New York law authorizes awards of back pay, liquidates damages equal to 25-percent of unpaid wages, attorneys' fees, and a six-year statute of limitations.  N.Y. Lab. Law § 663(1)-(3).

Such remedies, which are more generous than those available under Section 17200 (or in some cases the FLSA), would be unavailable to the Non-California Plaintiffs who do not opt-out of a nationwide, Rule 23 class action.  *See Chao,* 346 F.3d at 923; *Alvarez,* 49 Cal.Rptr.3d at 903.[34]  Moreover, nationwide application of Section 17200 will inevitably impair sister-state interests in having their own wage and hour laws applied to employees working within their respective borders, thereby violating important choice-of-law rules and the most basic principles of federalism.[35]

In fact, before the Judicial Panel on Multidistrict Litigation, Plaintiffs Basore and McMillian agreed with this concern in arguing that the basis for filing *Basore* rather than joining *Bowne*, was to assert and protect the full "panoply" of rights allegedly available.  *See* Plaintiffs Consolidated. Response to Motion for Transfer at 2 n.1.[36]  Plaintiff McMillian's attempt to apply Section 17200 nationwide (precluding other Non-California Plaintiffs who fail to opt-out from obtaining potential remedies available under more generous state wage and hour laws) flies in the face of the very motive allegedly underlying the *Basore* action—the full rights available to Wells Fargo's loan processors nationwide.  Surely, neither Plaintiff McMillian nor her counsel intends such a result.

---

[34]  These apparent conflicts between state remedies cannot be overlooked.  As *Shutts* makes clear, any conflicts between state remedies is a factor in the due process analysis.  472 U.S. at 816-18 (assessing differences in statutory interest rates available in various states); *see supra* Part III.B.

[35]  "Under choice-of-law rules, the trial court determines whether the law of other states is materially different and whether other states have an interest in having their law applied, and if so which state's interest would be more impaired if its policy were subordinated to the law of another state."  *Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 241 (2001) (citing *Clothesrigger Inc. v. GTE Corp.*, 191 Cal.App.3d 605, 614 (1987) ; *Washington Mutual Bank v. Superior Court*, 24 Cal.4th 906, 919 (2001) ).  Here, Non-California Plaintiff's are attempting to impose a four-year statute of limitations through nationwide application of the UCL, regardless of what another state's statute of limitations permits for wage and hour claims.  Statutes of limitations "represent a pervasive legislative judgment…that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.'"  *Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S.Ct. 2162, 2170 (2007) (quotation omitted).  Legislative judgments across the country are rendered inconsequential if this Court permits Non-California Plaintiffs to pursue alleged UCL claims.

[36]  Plaintiffs' Consolidated Response to Motion for Transfer is attached as Exhibit 17 to Kelly Decl.

c.    **The FLSA Savings Clause Does Not Permit State Law Claims Based Solely On The FLSA.**

Finally, contrary to the *Harris*, the savings clause of the FLSA is very limited in scope and does not permit Section 17200 claims based solely on alleged FLSA violations. The FLSA provides:

> No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance *establishing a minimum wage higher* than the minimum wage established under this chapter or a *maximum workweek lower* than the maximum workweek established under this chapter, and no provision of this chapter *relating to the employment of child labor* shall justify noncompliance with any Federal or State law or municipal ordinance establishing a higher standard than the standard established under this chapter…

29 U.S.C. § 218(a) (emphasis added). This savings clause is expressly limited to state wage and hour laws that provide for a higher minimum wage, a lower maximum workweek, and more stringent child labor standards. The statute, on its face, does not save from preemption Section 17200 claims that merely use the FLSA as a predicate on which to piggyback additional remedies and rights Congress did not provide. In *Harris*, the court ignored these express limitations and remarked, without qualification, that "[t]he FLSA establishes a floor for wage-and-hour requirements." 41 Cal.Rptr.3d at 111. "The language of the saving clause simply cannot be stretched so far." *Ellis*, 527 F.Supp.2d at 451.

**D.    SECTION 17200 VIOLATES THE COMMERCE CLAUSE.**

The Commerce Clause of the United States Constitution "permits only *incidental* regulation of interstate commerce by the States; direct regulation is prohibited." *Edgar v. MITE Corp.*, 457 U.S. 624, 640 (1982) (emphases in original). "'Direct regulation' occurs when a state law directly affects transactions that 'take place across state lines' or entirely outside of the state's borders." *Valley Bank of Nevada v. Plus System, Inc.*, 914 F.2d 1186, 1189 (9th Cir. 1990). "[A] statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority...." *NCAA v. Miller*, 10 F.3d 633, 639 (9th Cir. 1993); *see also Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989) (reciting Commerce Clause principles for assessing extraterritorial effects of state

regulations). "Such a statute is invalid per se, regardless of whether the state intended to inhibit interstate commerce." *Valley Bank*, 914 F.2d at 1189 (emphasis added).

Section 17203 of the Unfair Competition Law, as amended in 1992, purports to prohibit acts of "unfair competition," without regard for location. Cal. Bus. & Prof. Code § 17203. Regardless of the California legislature's intent, the Commerce Clause prohibits such direct, extraterritorial regulation. Non-California Plaintiff's claims, therefore, must be dismissed for failure to state a claim.

### 1.    The 1992 Amendments To Section 17200.

Prior to 1992, Section 17203 of the Unfair Competition Law – pursuant to which Non-California Plaintiffs seek relief – provided: "Any person performing or proposing to perform an act of unfair competition *within this state* may be enjoined in any court of competent jurisdiction…." Cal. Bus. & Prof. Code § 17203 (1992) (emphasis added); *see also Basore* Complaint ¶33. In 1992, however, the California legislature amended this statute and removed the phrase "within this state."[37] As a result, Section 17203 now provides: "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code § 17203.

### 2.    Section 17203 Of The Unfair Competition Law Is Invalid Per Se.

A statute violates the Commerce Clause per se where it either (1) directly regulates interstate commerce or commerce entirely outside of a state's borders; (2) discriminates against interstate commerce; or (3) favors in-state economic interests over out-of-state interests. *NCAA v. Miller,* 10 F.3d 633, 638 (9th Cir. 1993); *Valley Bank*, 914 F.2d at 1189; *see also Edgar*, 457 U.S. at 642-43 ("The Commerce Clause also precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the state."). "The

---

[37]    Interestingly, California Senate Bill 1586, which amended various portions of the Unfair Competition Law in 1992, originally included the phrase "within this state." However, in an apparent effort to appease the concerns of California prosecutors that the phrase would be a "narrowing of unfair competition laws" and "limit prosecutions where the act … is performed wholly out-of-state," the phrase was removed from the final version passed and signed into law. *See* Kelly Decl., Exhibit 19 (including excerpts of the legislative history for the 1992 amendments obtained from the California Secretary of State, California State Archives).

1   Supreme Court has emphasized that the 'practical effect' of a challenged statute is 'the critical inquiry'

2   in determining whether [a] statute constitutes direct regulation."  *S.D. Myers, Inc. v. City and County of*

3   *San Francisco*, 253 F.3d 461, 467 (9th Cir. 2001) (citing *Healy*, 491 U.S. at 336).

4          With the removal of "within this state," Section 17203 expressly targets those that engage in

5   "unfair competition" ***anywhere***, including "either out-of-state entities or entities engaged in interstate

6   commerce."  *S.D. Myers*, 253 F.3d at 468.  Indeed, the court in *Automotive Products, PLC v. Tilton*

7   *Engineering, Inc.*, No. 90-CV-5500, 1993 WL 660164 (C.D. Cal. Sept. 16, 1993), observed that

8   "[a]lthough [it] can only surmise about the reasons the legislature limited the reach of section 17203

9   [pre-1992 Amendments] to acts which occur 'within the state,' the desire to avoid violating the

10  Commerce Clause was probably the paramount concern."  *Id.* at *14 (citing *Edgar*, 457 U.S. at 642-43).

11  Consequently, by later removing "within this state," Section 17203's practical effect is to impose the

12  UCL beyond California and thereby regulate commerce occurring wholly outside of California.

13         More specifically, the effect in this case is to regulate the employment of every Wells Fargo loan

14  processor nationwide pursuant to Section 17200.  *See Basore* Complaint ¶33 (invoking Section 17203

15  "to enforce the provisions of the California Labor Code and Fair Labor Standards Act pursuant to

16  Business and Professions Code § 17202" for "[a]ll current and former Wells Fargo Loan Processors

17  employed nationwide within the previous four years"); *see also* Cal. Bus. & Prof. Code § 17208.  "That

18  sort of extraterritorial effect is forbidden by the Commerce Clause."  *NCAA*, 10 F.3d at 639.

19         **3.     Section 17203 Of The Unfair Competition Law Is An Affront To Regulation**
             **By Other States.**

20

21          "Practical effect must be evaluated not only by considering the consequences of the statute

22  itself, but also by considering how the challenged statute may interact with the legitimate regulatory

23  regimes of other States."  *S.D. Myers*, 253 F.3d at 467 (quoting *Healy*, 491 U.S. at 336).  Thus, this

24  Court must consider "what effect would arise if not one, but many or every, State adopted similar

25  legislation."  *Healy*, 491 U.S. at 337.  "Generally speaking, the Commerce Clause protects against

1  inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of

2  another State." *NCAA*, 10 F.3d at 639 (citing *Healy*, 491 U.S. at 336-37).

3      Here, Section 17203's extraterritorial reach "also violates the Commerce Clause because of its

4  potential interaction or conflict with similar statutes in other jurisdictions." *NCAA,* 10 F.3d at 639.  As

5  outlined, at least four states have wage and hour regulatory regimes that provide for greater remedies

6  than Section 17200  *See supra* Part III.C.3.b.  Application of Section 17200 outside of California

7  forecloses these remedies and tramples the interests of several sister states.  "Nor would it do to say that

8  [an entity like Wells Fargo] need only comply with the most stringent burden…, for a state with a less

9  stringent standard might well consider its standard a maximum as well as a minimum." *NCAA,* 10 F.3d

10  at 639-40.  In short, "[t]he serious risk of inconsistent obligations wrought by the extraterritorial effect

11  of [Section 17203] demonstrates why it constitutes a per se violation of the Commerce Clause." *Id.*

12          **4.    Section 17200, As Applied, Violates The Commerce Clause.**

13      Even if not invalid on its face, a state statute will be deemed invalid under the Commerce Clause

14  where, by application, it imposes burden on interstate commerce that are "clearly excessive in relation to

15  the putative local benefits." *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142(1960).  The Supreme Court

16  has instructed that while protecting local residents is "plainly a legitimate state objective," a State has

17  "no legitimate interest in protecting nonresident[s]." *Edgar*, 457 U.S. at 644.  Here, because Non-

18  California Plaintiffs seek to apply Section 17200 to non-resident loan processors for alleged conduct and

19  injuries wholly outside of and removed from California, "there is nothing to be weighed in the balance

20  to sustain the law." *Id*.; *cf. Diamond Multimedia*, 19 Cal.4th at 1063-65, 968 P.2d at 556 (holding that

21  California has a legitimate interest in preventing fraudulent practices within California, irrespective of

22  where the effects of such practices are felt).  Section 17200, therefore, cannot be sustained.[38]

23

24  ───────────────
[38]  Nonetheless, Non-California Plaintiffs will likely assert that California has an interest in regulating
the affairs of Wells Fargo Home Mortgage, as a division of Wells Fargo Bank, because Wells Fargo
Bank, is incorporated in California.  *See Basore* Complaint ¶7.  This Court should summarily

25  dismiss any such argument.  As Plaintiffs allege, Wells Fargo Home Mortgage (the only Wells Fargo

1

2

### E.    NON-CALIFORNIA PLAINTIFFS' NATIONWIDE CLASS ACTION FOR ALLEGED UCL VIOLATIONS, BASED ONLY ON ALLEGED FLSA VIOLATIONS, VIOLATES THE RULES ENABLING ACT.

3

Finally, Non-California Plaintiffs' putative Section 17200 class action also plainly violates the

4

Rules Enabling Act, 28 U.S.C. § 2072.  The Rules Enabling Act ("REA") provides that the Federal

5

Rules of Civil Procedure "shall not abridge, enlarge, or modify any substantive right."  29 U.S.C. §

6

2072(b).[39]  "All laws in conflict with such rules shall be of no further force or effect after such rules

7

have taken effect."  29 U.S.C. § 2072(b).  These proscriptions are clear.  Non-California Plaintiffs'

8

Section 17200 claims based on alleged FLSA violations, however, abridge substantive rights for **both**

9

employees and employers.  Non-California Plaintiffs' Section 17200 claims must be dismissed.

10

Through its opt-in requirement, "section 16(b) [of the FLSA] grants employees a distinct

11

substantive right to participate in a collective adjudication of their claims if, and only if, they provide a

12

written consent that is filed in court."  Brief of Amici Curiae United States Department of Labor, *Long*

13

*John Silver's Rest., Inc. v. Cole,* 409 F.Supp.2d 682 (D.S.C. 2006).[40]  Simply put, each employee has the

14

substantive right to be master of his or her own FLSA claim.[41]  In turn, employers have the substantive

15

right to be free of representative actions "brought on behalf of employees who [have] no real

16

involvement in, or knowledge of, the lawsuit."  *United Food & Comm'l Workers Union, Local 1564 of*

17

*N.M. v. Albertson's, Inc.*, 207 F.3d 1193, 1200 (10th Cir. 2000); *see also Hoffman-LaRoche*, 493 U.S. at

18

173.  "These are clearly substantive rights."  *Ellis*, 527 F.Supp.2d at 554.

19

20

---

division at issue) is incorporated in the State of Iowa, where it also maintains its principal place of business.  *See Basore* Complaint ¶1.

21

22

[39]    *See also EEOC v. Peabody Western Coal Co.*, No. CV 01-01050, 2006 WL 2816603, at *8-*9 (D.Ariz. Sept. 30, 2006) (dismissing action where EEOC was "in fact seeking to enlarge or modify its substantive rights under Title VII").

23

24

[40]    The Brief of Amici Curiae from the United States Department of Labor is available at http://www.dol.gov/sol/media/briefs/LJSbrief-12-13-2005.htm and attached hereto as Exhibit 18 of Kelly Decl.

25

[41]    *See supra* Part III.C.3.b.

1    Non-California Plaintiffs' putative class action for alleged FLSA violations (thinly veiled by

2    Section 17200) abridges—or, more precisely, "abridges and modifies … to the point of extinction"—

3    these substantive rights. *Id.* at *18. Unless an employee affirmatively opts-out of the Non-California

4    Plaintiffs' action, he or she will be bound by the final disposition of *Basore*. *See supra* Part III.C.3.b.

5    Further, Wells Fargo will be forced to defend a purely representative action, the precise burden that

6    Congress removed. *Hoffman-La Roche,* 493 U.S. at 173. This Court should dismiss Non-California

7    Plaintiffs' Section 17200 action accordingly.[42]

8    **III.    CONCLUSION**

9    Section 17200 does not provide remedies where, as here, the conduct alleged by Non-California

10   Plaintiffs occurred solely outside of California. Non-California Plaintiffs simply cannot point to any

11   wrongful conduct that emanated from California. Further, application of Section 17200 to the claims of

12   Non-California Plaintiffs, as sought here, offends due process; similarly, Section 17200 violates the

13   Commerce Clause of the United States Constitution. Finally, application of Section 17200 to the

14   putative class of Non-California Plaintiffs sought pursuant to Fed. R. Civ. P. 23 violates the express

15   prohibitions of the FLSA and the Rules Enabling Act. Non-California Plaintiffs' Section 17200 claims

16   should be dismissed accordingly.

17

18

19

20

21

22

23

---

24   [42]   As keenly observed by the court in *Ellis v. Edward D. Jones & Co.*, "the REA argument has received

25   perfunctory analysis at best, much of it ignoring the fact that if *lack* of precedent were binding the law neither would nor could evolve and the courts' function, to the extent that they could function at all, would be essentially ministerial." 2007 WL 442615, at *15 (emphasis in original).

1   Dated:  March 20, 2008

2                                   Respectfully submitted,

3                                   SPENCER FANE BRITT & BROWNE LLP

4

5                                   s/ Eric P. Kelly
                                    Denise K. Drake          KS # 15800
6                                   *ddrake@spencerfane.com*
                                    9401 Indian Creek Parkway
7                                   Indian Creek Parkway, Suite 700, Bldg. 40
                                    Overland Park, Kansas  66210
8                                   Telephone:     (913) 345-8100
                                    Facsimile:     (913) 345-0736
9
                                    Eric P. Kelly           KS # 22503
10                                  *ekelly@spencerfane.com*
                                    1000 Walnut Street, Suite 1400
11                                  Kansas City, Missouri  64106
                                    Telephone:     (816) 474-8100
12                                  Facsimile:     (816) 474-3216

13                                  *Lead Counsel for Defendants*

14

15

16

17

18

19

20

21

22

23

24

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 20, 2008, I electronically filed the foregoing and all affiliated declarations and exhibits referenced herein with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the attorneys of record, including but not limited to the following:

George A. Hanson
hanson@stuevesiegel.com
Eric L. Dirks
dirks@stuevesiegel.com
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, Missouri  64112

*Lead Counsel for Plaintiff*

s/ Eric P. Kelly
*Attorney for Defendants*