# EXHIBIT

# 2

```
         IN THE UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
                         - - -
In re:  Wells Fargo Loan    :
Processor Overtime Pay      :
Litigation                  :
                            :
Mary Basore and Brenda      :
McMillian, each             :
individually and on         :
behalf of all others        :
similarly situated,         :
                            :  MDL Docket No. 1841
        Plaintiffs,         :
                            :
        vs.                 :  Case No.
                            :  C-07-0461-MHP
Wells Fargo Home            :
Mortgage, a division of     :
Wells Fargo Bank,           :
National Association and    :
Wells Fargo Bank,           :
National Association,       :
                            :
        Defendants.         :
                         - - -
      VIDEOTAPED DEPOSITION OF BARBARA J. POWELL
                         - - -
                    Friday, January 18, 2008
                    9:59 o'clock a.m.

                    Powell Residence

                    8038 Smoky Row Road

                    Powell, Ohio  43065

                         - - -

              JODY M. THEADO

         PROFESSIONAL COURT REPORTER



                         - - -
```

MIDWEST LITIGATION SERVICES
www.midwestlitigation.com    Phone: 1.800.280.DEPO(3376)    Fax: 314.644.1334
ca6a592a-72a1-4e91-b8d8-e39c2c66a2fd

1   Q.      Is that correct?
2   A.      Yes.
3   Q.      Okay.
4   A.      That's correct.
5   Q.      As a first level manager?
6   A.      Yes.
7   Q.      Was Mr. Mockler the branch manager that
8   you reported to?
9   A.      Yes.
10  Q.      Okay. And did Mr. Mockler work in the
11  same retail location that you worked in?
12  A.      Yes, sir.
13  Q.      Okay. And where was that retail location?
14  A.      That was located on East Wilson Bridge
15  Road, Columbus, Ohio.
16  Q.      Okay. And right below that you see
17  another signature. And, again, I'm not asking you
18  about the signature, but in print, it seems to say
19  T. David Dewey.
20  A.      Okay.
21  Q.      Was that the area manager that that --
22  A.      I believe.
23  Q.      Okay.
24  A.      I don't -- I think I met him only one
25  time.

MIDWEST LITIGATION SERVICES
www.midwestlitigation.com   Phone: 1.800.280.DEPO(3376)   Fax: 314.644.1334
ca6a592a-72a1-4e91-b8d8-e39c2c66a2fd

1    A.          That is correct.
2    Q.          Okay. Did you work at any other
3 Wells Fargo location during the eight months that you
4 were a mortgage sales associate?
5    A.          No, sir.
6    Q.          The subprime loans that you worked on,
7 were they primarily for home buyers within this
8 region -- within the Columbus, Ohio, area -- or was
9 there -- what region were the loans for?
10   A.          Primarily in Columbus, Ohio.
11   Q.          Any other areas that you recall?
12   A.          No.
13   Q.          I'd like to talk a little bit about your
14 day-to-day tasks and duties and the role that you
15 played as a mortgage sales associate.
16               As a mortgage -- When you worked as a
17 mortgage sales associate, what time did you typically
18 arrive at the location that you worked?
19   A.          I would typically get there about --
20 between 7:30, 7:45.
21   Q.          And where -- Were you living at the same
22 address that we're at today when you were a mortgage
23 sales associate?
24   A.          No.
25   Q.          What was the address you lived at during

MIDWEST LITIGATION SERVICES
www.midwestlitigation.com   Phone: 1.800.280.DEPO(3376)   Fax: 314.644.1334
ca6a592a-72a1-4e91-b8d8-e39c2c66a2fd

BARBARA J. POWELL 1/18/2008

Page 42

1       THE VIDEOGRAPHER:  On the record at 10:56.
2  BY MR. KELLY:
3  Q.        Ms. Powell, we've just returned from a
4  break.  During the break, you obviously had a chance
5  to think about what we've already talked about during
6  the course of this deposition.
7           Given the responses and the answers that
8  you've given me so far, is there anything about any
9  of the prior testimony that you think needs to be
10 clarified?
11 A.        No.
12 Q.        Okay.  You stated that it had been made
13 clear to you that it was a 40-hour position -- or a
14 40-hour salaried position.  What do you mean -- Can
15 you describe for me what you mean by "it had been
16 made clear to you"?
17 A.        We just simply didn't get paid for
18 anything over 40 hours.
19 Q.        Who told you that?
20 A.        Wayne and Mike both.
21 Q.        Can you recall exactly what they told you?
22 A.        Initially, on my first couple of time
23 sheets, I had turned in with the actual hours that I
24 had worked, and they brought them back and had me
25 make the adjustments down to 40 hours.

MIDWEST LITIGATION SERVICES
www.midwestlitigation.com   Phone: 1.800.280.DEPO(3376)      Fax: 314.644.1334
ca6a592a-72a1-4e91-b8d8-e39c2c66a2fd

1  Q.        And then you stated that -- or I'm sorry.
2           And if I understand you correctly, you
3  said that was the first few time sheets that that
4  happened on?
5  A.        Um-hum.
6  Q.        Okay.
7  A.        That's correct.
8  Q.        And then after that -- Well, first of all,
9  can you -- How many time sheets did that occur on?
10 A.        I'd say two or three.
11 Q.        Was it the first two to three time sheets?
12 A.        Yes.
13 Q.        Okay.  And then after they told you to --
14 to -- to -- to change it -- I'm sorry.
15          Do you recall exactly what they told you
16 to do when they brought the time sheet back to you?
17 A.        They just stated that they needed to be
18 adjusted to the 40 hours.
19 Q.        What did you say to them in response?
20 A.        That I would go ahead and do it.
21 Q.        Did they tell you why it needed to be
22 adjusted to 40 hours?
23 A.        Because it was a salaried position.
24 Q.        Did you have that discussion more than
25 once each time on those two to three time sheets?

MIDWEST LITIGATION SERVICES
www.midwestlitigation.com   Phone: 1.800.280.DEPO(3376)   Fax: 314.644.1334
ca6a592a-72a1-4e91-b8d8-e39c2c66a2fd

1  Q.      Okay.
2  A.      And then I just recorded, you know, what I
3  worked.
4  Q.      Okay. So the only time that you varied
5  from 40 hours a week was when you actually worked
6  less than 40 hours a week?
7  A.      Right.
8  Q.      Okay. And that was true for -- from the
9  point that you got -- that they told you to make that
10 final change through the rest of your employment with
11 Wells Fargo?
12 A.      That's correct.
13 Q.      Okay. Did you ever complain to anyone
14 about the fact that you were working more than 40
15 hours but only recording 40 hours?
16 A.      No, not really.
17 Q.      What do you mean by "not really"?
18 A.      Just, I mean, if I complained to anybody,
19 it would be my husband.
20 Q.      Our spouses very often are the --
21 A.      The brunt --
22 Q.      -- on the receiving end of those sorts of
23 complaints.
24 A.      Yes, they are.
25 Q.      Anyone else besides your husband?

MIDWEST LITIGATION SERVICES
www.midwestlitigation.com   Phone: 1.800.280.DEPO(3376)   Fax: 314.644.1334
ca6a592a-72a1-4e91-b8d8-e39c2c66a2fd

1   A.          No.
2   Q.          Okay.  Throughout the remainder of your
3   employment -- and it looks like we're talking about
4   another seven months until you left for the other
5   mortgage company -- can you give me an estimate of
6   the number of hours that you worked per week on
7   average?
8   A.          I would say -- On average, I would say
9   approximately 60.
10  Q.          What were the office hours for the retail
11  location that you worked at?
12  A.          They were 8:00 to 5:00.
13  Q.          And by 8:00 to 5:00 as office hours, do --
14  Well, tell me what you understand when I use the term
15  "office hours."  I want to make sure we're on the
16  same page.
17  A.          The hours of operation of the office.
18  Q.          Okay.  So based on the times that you have
19  given me, was there anyone else in the office when
20  you arrived in the morning?
21  A.          Oftentimes I let myself in.
22  Q.          You had a key to the office?
23  A.          Yes, I did.
24  Q.          Was there anyone that was there in the
25  evening when you left?

MIDWEST LITIGATION SERVICES
www.midwestlitigation.com   Phone: 1.800.280.DEPO(3376)          Fax: 314.644.1334
ca6a592a-72a1-4e91-b8d8-e39c2c66a2fd

1  recovery from that, do you anticipate that the visual
2  impairment that you now have will improve with time?
3  Is this something that -- that -- that, you know, we
4  could perhaps take a look at on a later occasion if
5  we need to?
6      A.        It could be years.  They -- They have no
7  speculation because it's all a matter of what the
8  optical -- the optic nerves are going to do, whether
9  they're going to reroute, whether they're going to
10 repair or if they're going to do nothing at all.
11     Q.        Okay.  Okay.
12     A.        It's just kind of like a poker game right
13 now.
14     Q.        Without looking at the documents then
15 given some of the difficulty with the fine print, do
16 you recall receiving an employee handbook when you
17 joined Wells Fargo Home Mortgage?
18     A.        Yes.
19     Q.        Okay.  Did you read that handbook?
20     A.        No.
21     Q.        Do you recall signing an acknowledgment
22 form saying that you received that handbook and that
23 would read -- that you would read the handbook?
24     A.        Yes.
25     Q.        Did you also -- Do you recall receiving a

MIDWEST LITIGATION SERVICES
www.midwestlitigation.com   Phone: 1.800.280.DEPO(3376)   Fax: 314.644.1334
ca6a592a-72a1-4e91-b8d8-e39c2c66a2fd

1   referred to document request No. 1.  Just to make
2   sure that you have no objections to what I asked
3   and -- and paraphrased, but at this point you have
4   not located any documents related to your employment
5   with Wells Fargo Home Mortgage?
6   A.        No, sir.
7             THE COURT REPORTER:  Did you want that to
8   be 47 or 48?  Because I have the time sheets as 47.
9             MR. KELLY:  Yeah.  Let's make it 48.
10            THE COURT REPORTER:  Okay.
11            MR. KELLY:  Thank you for clarifying that.
12            THE COURT REPORTER:  No problem.
13                          - - -
14            And, thereupon, Exhibit No. 48 was marked
15  for purposes of identification.
16                          - - -
17  BY MR. KELLY:
18  Q.        Okay.  Ms. Powell, when did you first
19  contact the attorneys at Stueve, Siegel & Hanson?
20  A.        That was via mail.  It was quite some time
21  ago.  I had received information in the mail and had
22  responded to that.
23  Q.        How did you respond to that?  Did --
24  A.        Just I filled out what it was that they
25  had sent me to fill out and just mailed it back.

Page 85

1                          - - -
2             And, thereupon, Exhibit No. 49 was marked
3    for purposes of identification.
4                          - - -
5    BY MR. KELLY:
6    Q.         I'm handing you what I've marked as
7    Exhibit No. 49.  Is this what you received in the
8    mail?  And I want you to make every -- make every
9    effort that you need to -- to -- to see if you
10   recognize it.  I know that fortunately some of the
11   text is in larger print.
12             MR. LEHR:  Can you read this?
13             THE WITNESS:  Some of the larger I can
14   read.
15   A.         This appears to be what I did receive in
16   the mail.
17   Q.         Okay.  And if I may, I want to make sure
18   that I'm looking at the same thing that I was
19   referring to.  Okay.  That has all of the pages.
20   Thank you.
21             And you said that you responded by mail by
22   sending this in?
23   A.         Right.
24   Q.         On the first page I'll read to you the
25   first line that is underlined.  And hopefully you can

MIDWEST LITIGATION SERVICES
www.midwestlitigation.com    Phone: 1.800.280.DEPO(3376)    Fax: 314.644.1334
ca6a592a-72a1-4e91-b8d8-e39c2c66a2fd

Page 86

1  read this.  But I'll state that it reads, "United
2  States District Court for the District of Kansas."
3  Do you see that?
4     A.      Yes.
5     Q.      Okay.  Did you, in fact, join this
6  lawsuit -- the lawsuit that was filed in the District
7  of Kansas?
8     A.      I sent the initial paper in.  I believe
9  how it went was I sent it in and somehow through the
10 mail it didn't make it in time.  And then that -- it
11 went to the California court, I believe, if I'm
12 correct there with the way everything went.
13    Q.      And I don't want to know what you talked
14 about, but did you meet with the attorneys or discuss
15 this with the attorneys after sending in the initial
16 form?
17    A.      Not -- No, not for quite some time.
18    Q.      Okay.  After you -- And if you'll refer to
19 the last page of Exhibit No. 49.
20    A.      Okay.
21    Q.      And if you need some help turning to it --
22    A.      The last page, yes.
23    Q.      This is actually -- that's another page on
24 a different exhibit.
25    A.      Oh, that's -- Okay.

MIDWEST LITIGATION SERVICES
www.midwestlitigation.com   Phone: 1.800.280.DEPO(3376)   Fax: 314.644.1334
ca6a592a-72a1-4e91-b8d8-e39c2c66a2fd

BARBARA J. POWELL 1/18/2008

Page 87

```
1    Q.         Right.
2    A.         I was going to say that looks like my
3    current signature, not my old one.  Okay.
4    Q.         Again, without reading the smaller font --
5    or the smaller text, does this generally look like
6    what you initially signed and sent in?
7    A.         Yes.
8    Q.         Okay.
9    A.         Yeah.
10   Q.         Was that the only form that you signed and
11   sent in?
12   A.         Like I said, the first one that I signed
13   and sent in, it -- I believe it was to Kansas.  And
14   then from there I got notification that it didn't
15   make it on time and that it went to the California
16   courts.
17   Q.         Okay.  That same document did?  In other
18   words, did you sign more than one of these forms?
19   A.         No.  This was, I think, the only one I had
20   to sign.  I just received the notice in the mail.
21   Q.         Okay.  So you signed only one of these
22   notices to join the lawsuit?
23   A.         Yeah.  To my knowledge, yes.
24                          - - -
25              And, thereupon, Exhibit No. 50 was marked
```

MIDWEST LITIGATION SERVICES
www.midwestlitigation.com    Phone: 1.800.280.DEPO(3376)    Fax: 314.644.1334
ca6a592a-72a1-4e91-b8d8-e39c2c66a2fd

BARBARA J. POWELL 1/18/2008

Page 126

1    A.         Sawmill, S-A --
2    Q.         Oh, Sawmill?
3    A.         Sawmill Parkway.
4    Q.         When you were a mortgage sales associate,
5    you worked only in Ohio; is that correct?
6    A.         That is correct.
7    Q.         When you interviewed for the job, it was
8    in Ohio; is that correct?
9    A.         Yes.
10   Q.         You never went outside of Ohio for
11   Wells Fargo Home Mortgage?
12   A.         No.
13              MR. LEHR: Objection. That's outside the
14   scope of my cross [sic].
15              Go ahead and answer.
16   A.         No.
17   Q.         Okay. You stated that your husband on
18   occasion would sit in the parking lot for up to two
19   hours waiting for you to finish your work at
20   Wells Fargo Home Mortgage; is that correct?
21   A.         That's correct.
22   Q.         You testified earlier today that your
23   commute at the time to the workplace -- to where you
24   worked for Wells Fargo Home Mortgage was 10 to 15
25   minutes; is that correct?

MIDWEST LITIGATION SERVICES
www.midwestlitigation.com    Phone: 1.800.280.DEPO(3376)    Fax: 314.644.1334
ca6a592a-72a1-4e91-b8d8-e39c2c66a2fd