# EXHIBIT

# 3

```
 1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA
 2

 3     IN RE:  WELLS FARGO LOAN
       PROCESSOR OVERTIME PAY          MDL Docket No. 1841
 4     LITIGATION

 5

 6

            THE 30(b)(6) DEPOSITION OF ELISE REISER,
 7    on behalf of the Plaintiffs, between the hours
      of eight o'clock in the forenoon and six o'clock
 8    in the afternoon of Wednesday, March 12, 2008, at
      the law offices of Spencer, Fane, Britt & Browne,
 9    1000 Walnut, Suite 1400, in the City of Kansas
      City, in the County of Jackson and State of
10    Missouri, before me,

11                  SAUNDRA A. TIPPINS, CCR
                             of
12             JOHN M. BOWEN & ASSOCIATES,
                    Shorthand Reporters,
13
      court reporter, in a certain cause now
14    pending in the U.S. District Court of the
      Northern District of California, in the WELLS
15    FARGO LOAN PROCESSOR OVERTIME PAY LITIGATION.

16

17              A p p e a r a n c e s

18

19       For the Plaintiffs:

20          STUEVE SIEGEL HANSON
            460 Nichols Road, Suite 200
21          Kansas City, Missouri  64112
            By Mr. George A. Hanson
22          By Ms. Ashlea Schwarz

23

24

25
```

```
 1         as not having been paid properly?
 2   A     Yes.  It's not just team members who come
 3         forward.
 4   Q     So the policy is any team members who are
 5         owed money will be taken seriously and will
 6         be paid?
 7   A     Yes.
 8   Q     The 293 individuals that were identified
 9         pursuant to the stipulation are all
10         classified as nonexempt employees?  You're
11         aware of that?
12   A     Yes.
13   Q     And you're aware that nonexempt employees,
14         if they work overtime, they need to be
15         compensated for their overtime, correct?
16   A     Yes.
17   Q     Whether it's an hour or two or 20 or 30,
18         correct?
19   A     Yes.
20   Q     So that as a backdrop, the 293 that were
21         identified as having worked overtime but
22         not being paid it you would agree should be
23         paid their overtime, correct?
24   A     The decision has been made that they will
25         be paid.
```

```
 1   Q   Who has made that decision?
 2   A   Brad Blackwell.
 3   Q   When was that decision made?
 4   A   In January of 2007.
 5   Q   So have any of the 293 loan processors who
 6       should have been paid overtime but weren't,
 7       have any of them been paid to date?
 8   A   We've made the decision to pay them.  We
 9       have not paid them to date.
10   Q   Mr. Blackwell is -- I don't remember his
11       job title, but he is a VP in charge of the
12       Western Distributed Retail organization?
13   A   Yes.
14   Q   I've actually taken his deposition.
15   A   Oh, so you've met Brad.
16   Q   I had a nice chat.  Were you -- did you
17       participate in that decision, or did you
18       participate in the process that led to the
19       decision to go ahead and pay those 293
20       their overtime?
21   A   I did.
22   Q   What was your role?
23   A   I participated in a conference call where
24       it was discussed, and Brad made the
25       decision that they should be paid.
```

```
 1                    MS. DRAKE:  Same objection.
 2   Q   (By Mr. Hanson) When are these 293 individuals
 3       going to be paid?
 4   A   It hasn't been determined.
 5   Q   How much are these 293 individuals going to
 6       be paid?
 7   A   It hasn't been determined.
 8   Q   Is it Wells Fargo's policy to pay
 9       everything an individual who worked
10       overtime but wasn't paid for it, is it the
11       policy to pay everything they're owed?
12   A   It's Wells Fargo's policy to pay for all
13       hours worked.
14   Q   Is it Wells Fargo's policy to pay employees
15       everything they're owed under the law?
16   A   Yes.
17   Q   So is it the intention to pay everything
18       these 293 individuals are owed under the
19       law?
20                    MS. DRAKE:  Objection, form.
21   A   It's Wells Fargo's intention to pay for all
22       hours worked.
23   Q   (By Mr. Hanson) Is it Wells Fargo's intention
24       to pay everything these 293 individuals are
25       owed under the law?
```

```
 1              MS. DRAKE:  Objection, form.
 2   A    It's Wells Fargo's policy to pay them for
 3        all hours worked, and so if they worked and
 4        they're owed under the law, it's Wells
 5        Fargo's policy to pay them for all hours
 6        worked.
 7   Q    Is it Wells Fargo's policy to comply with
 8        the law?
 9   A    Yes, absolutely.
10   Q    You acknowledge that these 293, the records
11        show that they worked overtime that they
12        should have been paid for, correct?
13   A    Yes.
14   Q    And that was an error, correct?
15   A    Yes.
16   Q    Legally they're entitled to be paid?
17   A    Yes.
18   Q    My question is, is it the intention of the
19        company to pay them everything they're
20        owed?
21   A    Yes.
22   Q    Since January of 2007, what has been the
23        process for getting these 293 individuals
24        paid everything they're owed?
25   A    I think my testimony was that we made the
```

```
 1         decision to pay.  We haven't made the
 2         decision when or how to pay.
 3   Q     Well, when are you going to make a decision
 4         regarding when and how to pay?
 5   A     When we have more understanding about this
 6         particular litigation and the impacts to
 7         it.
 8   Q     And who's responsible for determining when
 9         these individuals will be paid?
10   A     It would be a business decision.
11   Q     And who's responsible for that?  Is it
12         Mr. Blackwell still?
13   A     I would say Mr. Blackwell, but I also think
14         that with him reporting to Susie Davis,
15         Susie Davis may or may not get involved.
16   Q     Do you know if Ms. Davis has been involved
17         to date?
18   A     Not that I'm aware of.
19   Q     So the phone conference in January of 2007
20         with Mr. Blackwell resulted in a decision
21         to pay the 293.  And how was that
22         articulated?  What was said?
23   A     I actually recall Brad saying if they
24         worked, we need to pay them.
25   Q     Okay.
```

```
 1  A    I think it was that simple.
 2            MS. DRAKE:  I was actually
 3       there, not that I want to testify.
 4  Q    (By Mr. Hanson) Did anyone say when that may
 5       occur or how that may occur?
 6  A    No.  And I think at that point there may
 7       have been some -- I do recall some -- one
 8       of the -- maybe Tim or one of the
 9       employment attorneys talking to us about
10       that, so I don't think that's -- to me
11       that's attorney/client privileged
12       information.
13  Q    And that's, I guess, where we need to go
14       next.  Did the attorneys provide legal
15       counsel or advice on the call?
16  A    Yes.
17  Q    And you mentioned Mr. Grubb as one of the
18       attorneys who provided legal counsel?
19  A    Yes.
20  Q    Is Mr. Grubb the Wells Fargo attorney
21       responsible for managing this litigation?
22  A    Yes.
23  Q    Did the Kansas City attorneys provide legal
24       counsel on that call?
25  A    I'm sure they did.  I don't recall
```

1   you guys. While we're talking, I will let
2   you know that I have been informed that the
3   date of that conversation was January 12 of
4   2007.
5              MR. HANSON: January 12?
6              MS. DRAKE: Yes.
7  Q  (By Mr. Hanson) Do you have any reason to
8     disagree with your counsel's --
9  A  None whatsoever.
10 Q  And returning to the last piece of number
11    33, why did the company decide to pay the
12    293?
13 A  I think I've already told you. I mean, we
14    pay for all hours worked. It's something
15    the company takes very, very seriously. We
16    don't want team members to work for free.
17    We pay for all hours worked.
18 Q  Why are you waiting? Why has 14 months
19    passed?
20 A  I think I already testified as well to
21    that, that we're waiting because of this
22    litigation.
23 Q  Why are you waiting because of the
24    litigation?
25             MS. DRAKE: Objection to the

```
 1        extent it gets into any attorney/client
 2        privileged communications, and instruct the
 3        witness not to answer anything that came
 4        from an attorney with regard to that.
 5    A   Because this case may or may not have
 6        impacts to the timing of when it's paid,
 7        broadly.
 8    Q   (By Mr. Hanson) By whom?  What do you mean?
 9    A   There's a litigation right now with these
10        293, as you said earlier.  Some have opted
11        in; some have not, right?  And so those who
12        have opted in, for example, we may -- I
13        don't know.  We may need a judge to approve
14        whether we do or don't, or when we do or
15        when we don't.  So the timing of when to
16        pay has not been made.  And we absolutely
17        will pay.  We just don't know when.
18    Q   Are there any documents that summarized or
19        memorialized that January 12th, 2007,
20        conversation?
21    A   Not that I recall.
22             (The reporter marked Exhibit No.
23        73).
24    Q   (By Mr. Hanson) I hand you what I've marked as
25        Exhibit 73.  And Ms. Reiser, let me represent
```