# EXHIBIT

# 5

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                NORTHERN DISTRICT OF CALIFORNIA

 3   In re WELLS FARGO LOAN    )  MDL Docket 1841
     PROCESSOR OVERTIME        )  VIDEOTAPE DEPOSITION
 4   PAY LITIGATION            )  OF NICOLE GERING

 5

 6           THE VIDEOTAPE DEPOSITION OF NICOLE GERING,

 7   taken before Connie Overberg, Certified Shorthand

 8   Reporter and Notary Public of the State of Iowa,

 9   commencing at 9:06 a.m., Thursday, November 29,

10   2007, at 666 Walnut, Suite 2000, Mason City, Iowa.

11
                                                    COPY
12                  A P P E A R A N C E S

13   Plaintiffs by:      ERIC L. DIRKS
                         Attorney at Law
14                       460 Nichols Road
                         Suite 200
15                       Kansas City, MO 64112

16   Defendants by:      DENISE K. DRAKE
                         Attorney at Law
17                       9401 Indian Creek Parkway
                         Suite 700
18                       Building 40
                         Overland Park, KS 66210
19
     Videographer:       Video Specialties, David Hellberg
20

21

22

23
     Reported by:        Connie Overberg, RPR, CSR
24

25
```

1  did your job ever change in any way?

2  A.     No.

3  Q.     Were Shawn, Kenneth and Chad all HMC's the

4  entire time you worked for Wells Fargo?

5  A.     Yes.

6  Q.     Who were your direct supervisors and

7  managers while you worked for Wells Fargo?

8  A.     John Beschen, the branch manager, and Mark

9  Hoffschneider was the overall manager of the

10 telesales center.

11 Q.     Could you spell Mr. Hoffschneider's last

12 name?

13 A.     Not in a million years.  It was a very

14 long, complicated name.

15 Q.     Anyone else you recall being a manager

16 while you worked at Wells Fargo?

17 A.     No.  Marta Codina took Mark

18 Hoffschneider's position the last few months I was

19 there.

20 Q.     Is it fair to say that Marta Codina --

21 A.     I believe that's how you pronounce it.

22 Q.     -- started some time in early 2004?

23 A.     I believe so.

24 Q.     Do you recall having a conversation with

25 Ms. Codina about being concerned that you might lose

1  basis. It was just, you know, every two weeks
2  before payday you went in and plugged some numbers
3  in.
4  Q.     And up to that point in time you had been
5  acting as a receptionist; is that right?
6  A.     Yes.
7  Q.     Is it possible you just weren't working
8  any overtime?
9  A.     I was working. I wasn't working a lot, a
10 whole lot of overtime. A little. There were files
11 that needed to go out on a daily basis. It wasn't
12 at that point.
13 Q.     More sporadic?
14 A.     That's correct.
15 Q.     Do you have any way of knowing how much
16 overtime you might have worked before May 17 of
17 2003?
18 A.     I would probably -- it would be very hard
19 to guess an exact figure, maybe half hour, 45
20 minutes, an hour. It varied.
21 Q.     Okay. Did you ever receive training on
22 Web time from anyone?
23 A.     No.
24 Q.     Other than talking to Kenneth Dodd, the
25 HMC, and hearing about overtime from Jennifer

```
 1   Jorgenson, is there anyone else at Wells Fargo with
 2   whom you spoke about working or recording or being
 3   paid overtime?
 4   A.      No.
 5   Q.      Did you ever think about calling Human
 6   Resources to complain?
 7   A.      Not at the time.  I just thought it was
 8   the way it was.
 9   Q.      Did John Beschen himself ever talk with
10   you or make any statements about working overtime?
11   A.      No.
12   Q.      How about Marta Codina, did she ever speak
13   with you about working or anything related to
14   overtime?
15   A.      No.
16   Q.      And Mark Hoffschneider, did he ever speak
17   with you or talk with you in any way about anything
18   related to overtime?
19   A.      No.
20                  (Deposition Exhibit Number 23
21                  was marked for identification
22                  by the court reporter.)
23   Q.      (By Ms. Drake) If I am tracking numbers
24   right, you should be handed Deposition Exhibit 23,
25   and I'll represent to you, I believe these are your
```

1  A.      Yes. I believe she also did taxes. It
2  was a tax specialist. Maybe she was a customer
3  service rep on the tax team. I don't exactly know
4  her job duties.
5  Q.      Did she work at the same location or a
6  different location?
7  A.      A different location.
8  Q.      Did you have any interactions with your
9  mom as a normal course of your duties as a loan
10 processor?
11 A.      No.
12 Q.      When you first started at Wells Fargo, do
13 you recall receiving a handbook?
14 A.      I believe we did.
15 Q.      Did you read it?
16 A.      No, not so much.
17 Q.      Did you know the handbook was available
18 on-line to you if you needed to find something?
19 A.      Uh-huh.
20 Q.      Is that a yes?
21 A.      Yes.
22 Q.      Did you ever go on-line to try to figure
23 out whether or not you should be paid overtime?
24 A.      No. Once I was told not to, I didn't
25 really question it.