1    Denise K. Drake
     Eric P. Kelly
2    SPENCER FANE BRITT & BROWNE LLP
     1000 Walnut, Suite 1400
3    Kansas City, MO 64106
     Telephone:  816-474-8100
4    Facsimile:  816-474-3216

5    Joan B. Tucker Fife (SBN: 144572)
     jfife@winston.com
6    Robert Spagat (SBN: 157388)
     rspagat@winston.com
7    WINSTON & STRAWN LLP
     101 California Street
8    San Francisco, CA  94111-5894
     Telephone:     415-591-1000
9    Facsimile:     415-591-1400

10   Attorneys for Defendants Wells Fargo
     Mortgage, a Division of Wells Fargo, N.A.
11   and Wells Fargo, N.A.

12

13                    **UNITED STATES DISTRICT COURT**

14                  **NORTHERN DISTRICT OF CALIFORNIA**

15

16   IN RE WELLS FARGO LOAN PROCESSOR          **MDL Docket No. 1841 (MHP)**
     OVERTIME PAY LITIGATION
17

18   THIS DOCUMENT RELATES TO ALL            **DEFENDANTS' REPLY BRIEF IN**
     CASES                                    **SUPPORT OF MOTION TO STRIKE**
19                                            **CONSOLIDATED COMPLAINT AND/OR**
                                              **PORTIONS OF CONSOLIDATED**
20                                            **COMPLAINT PURSUANT TO**
                                              **FED.R.CIV.P. 15(a)(2) AND 12(f)**
21
                                              **Date:  April 14, 2008**
22                                            **Time:  2:00 p.m.**
                                              **Ctrm:  15**
23                                            **Judge:  Hon. Marilyn Hall Patel**

24

25

26

27

28

*Winston & Strawn LLP*
*101 California Street*
*San Francisco, CA 94111-5894*

DEFENDANTS' REPLY BRIEF ISO MOTION TO STRIKE CONSOLIDATED COMPLAINT AND/OR PORTION
OF CONSOLIDATED COMPLAINT, MDL DOCKET NO. 1841 (MHP)

SF:203587.4

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................1

II.   PROCEDURAL ARGUMENT ..........................................................................2

       A.    Plaintiffs Provide No Pertinent Legal Authority To Support Their Untenable
             Contention That They Could Amend The Complaints Without Complying
             With Fed. R. Civ. P. 15(a)(2)...................................................................2

       B.    Plaintiffs' Request In The Alternative For Leave To File The Consolidated
             Complaint Does Not Cure The Defect........................................................3

       C.    Even If The Court Were To Treat Plaintiffs' Opposition As A Motion For
             Leave To Amend The Complaint, Plaintiffs Have Not Established That Leave
             Should Be Granted.....................................................................................3

       D.    If The Court Allows Plaintiffs To File The "Consolidated" Complaint, The
             Court Should Strike The Expanded Class And Relation Back Allegations. .................5

III.  IN ADDITION TO THE PROCEDURAL PROBLEMS WITH PLAINTIFFS'
      COMPLAINT, THE RECORD DOES NOT SUPPORT ANY OF PLAINTIFFS'
      UNFOUNDED ACCUSATIONS AGAINST WELLS FARGO. ..........................6

       A.    Wells Fargo Produced Documents in 2006 Describing Its Standard Hours
             Reporting System And Clearly Identifying It As Applicable To All Team
             Members. ...................................................................................................6

       B.    The Standard Hours Policy Is Lawful........................................................8

       C.    Wells Fargo Has Not Failed To Pay Overtime to "Vast" Numbers Of
             Employees, And Has Never Admitted Otherwise. ......................................9

       D.    Wells Fargo Did Not "Know" Its Pay Reporting System Was "Illegal" Due To
             The Issuance Of An Opinion Letter By The California Division Of Labor
             Standards Enforcement. ............................................................................10

IV.   CONCLUSION................................................................................................11

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

i

DEFENDANTS' REPLY BRIEF ISO MOTION TO STRIKE CONSOLIDATED COMPLAINT AND/OR PORTION
OF CONSOLIDATED COMPLAINT, MDL DOCKET NO. 1841 (MHP)

SF:203587.4

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Akzana, Inc.* v. *E. I. Du Pont De Nemours & Co.*,
    607 F.Supp. 227, 238 (D. Del. 1984)..................................................................5

*Averbach v. Rival Mfg.*,
    879 F.2d 1196 (3d Cir. 1989)..........................................................................3

*Blackwell v. SkyWest Airlines, Inc.*,
    245 F.R.D. 453 (S.D. Cal. 2007) ...................................................................10

*In re Union Exploration Partners*,
    1992 WL 203812 .............................................................................................5

*Kay v. Wells Fargo & Co. N.A.*,
    2007 WL 2141292 ...........................................................................................5

*Moore v. Kayport Package Express, Inc.*,
    885 F.2d 531 (9th Cir. 1989) ........................................................................10

*Murphy v. Kenneth Cole Productions, Inc.*,
    40 Cal. 4th 1094 (Cal. 2007)........................................................................10

*Solis v. Lincoln Electric Co.*,
    2006 WL 266530 (N.D. Ohio, Feb. 1, 2006) ..................................................2

*Wolgin v. Simon*,
    722 F.2d 389 (8th Cir. 1983) ..........................................................................3

**STATUTES**

Cal. Code of Civ. Proc. § 340(a)..........................................................................10

Cal. Labor Code § 226 ........................................................................................10

Cal. Bus. & Prof. Code § 17200 ...........................................................................3

**RULES**

Fed. R. Civ. P. 12(f)..............................................................................................5

Fed. R. Civ.P. 15(a)(2)..............................................................................1, 2, 3, 5

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

ii

DEFENDANTS' REPLY BRIEF ISO MOTION TO STRIKE CONSOLIDATED COMPLAINT AND/OR PORTION
OF CONSOLIDATED COMPLAINT, MDL DOCKET NO. 1841 (MHP)

SF:203587.4

Fed. R.Civ. P. 30(b)(6)....................................................................................................6

Fed. R. Evid. 407 ..........................................................................................................10

Northern District of California Local Rule 7-2...............................................................3

**OTHER AUTHORITIES**

Manual for Complex Litigation § 20.132 .....................................................................10

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

iii

DEFENDANTS' REPLY BRIEF ISO MOTION TO STRIKE CONSOLIDATED COMPLAINT AND/OR PORTION
OF CONSOLIDATED COMPLAINT, MDL DOCKET NO. 1841 (MHP)

SF:203587.4

1  **I.    INTRODUCTION**

2      Plaintiffs' Opposition to the Motion to Strike of Defendants Wells Fargo Home Mortgage, a

3  Division of Wells Fargo Bank, National Association, and Wells Fargo Bank National Association

4  (collectively "Wells Fargo") all but ignores Wells Fargo's legal arguments and supporting authorities

5  as to:  (1) why the filing of the "Consolidated" (*i.e.,* amended) Complaint violates Fed. R. Civ. P.

6  15(a)(2); (2) why deeming the amended complaint filed on the eve of the class filing of Plaintiffs'

7  class certification motion would unduly prejudice Wells Fargo and undermine the nature of the

8  consolidated proceedings; and (3) why the allegations dramatically expanding the class definition

9  and relating it back to the filing of the original complaint(s) should be stricken.  Instead of opposing

10  the legal arguments on the merits, Plaintiffs attempt to discredit Wells Fargo with a series of

11  inflammatory and unsupported accusations which Plaintiffs assert – erroneously – are "undisputed"

12  and "admitted" by Wells Fargo.

13      Wells Fargo certainly does dispute all of Plaintiffs' accusations, including their unfounded

14  claims that Wells Fargo's Standard Hours pay system was "illegal" (let alone that Wells Fargo "knew

15  it"), and that Wells Fargo has failed to compensate "vast numbers" of non-exempt employees for

16  overtime.  Moreover, the record belies Plaintiffs' spurious accusation that Wells Fargo "concealed"

17  the Standard Hours time reporting system from them as part of a "cover-up":  Wells Fargo produced

18  documents in 2006 that clearly described Standard Hours in an Employee Handbook applicable to

19  *all Wells Fargo Team Members.*

20      Plaintiffs knew they were changing the game with their amended complaint and knew it

21  would create an undue burden on Wells Fargo.  Their counsel confirmed as much the day before

22  they filed it:

23          I wanted to give you advanced notice that we are planning on filing a
           consolidated complaint tomorrow. . . . The complaint also expands the
24          class definition.  The timing of the amendment obviously creates some
           procedural issues. . . .
25

26  (Declaration of Eric P. Kelly ISO Defendants Wells Fargo Mortgage , a Division of Wells Fargo,

27  N.A. and Wells Fargo N.A.'s Motion to Strike Consolidated Complaint and/or Portions of

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1

1  Consolidated Complaint ("Kelly Original Decl."), ¶ 5, Exh. 1.)    Plaintiffs' attempt to slide this

2  dramatically expanded complaint past the Court and the Defendants, including the purportedly

3  newly added Wells Fargo & Co., should not be permitted.

4       As set forth below, Plaintiffs' further attempt to discredit Wells Fargo's business practices

5  and litigation tactics is utterly unsupported in the record.  Their Opposition fails to meaningfully

6  rebut Wells Fargo's legal arguments.  Accordingly, for the reasons set forth in Wells Fargo's

7  Opening Brief, the Consolidated Complaint should be stricken.

8  **II.    PROCEDURAL ARGUMENT**

9       **A.    Plaintiffs Provide No Pertinent Legal Authority To Support Their Untenable
10            Contention That They Could Amend The Complaints Without Complying With
             Fed. R. Civ. P. 15(a)(2).**

11      Plaintiffs' Opposition offers no authorities or persuasive argument to establish that Fed. R.

12  Civ. P. 15(a)(2) means anything other than what it says – *i.e.,* that after the time to amend a pleading

13  as a matter of course has run, "a party may amend its pleading *only* with the opposing party's written

14  consent or the court's leave."  (Emphasis added.)  Plaintiffs do not dispute that the Consolidated

15  Complaint would affect material amendments to the operative complaints, and that they filed it

16  without the consent of Defendants or leave of court.  Instead, Plaintiffs assert that the Court's Case

17  Management Order [Doc 12] somehow authorized them file it.  (Plaintiffs' Opp., at 9:3-12.)  Even if

18  the Court's Order were construed as an order to file a "consolidated" complaint rather merely

19  acknowledging that the filing of such a complaint is a responsibility of lead counsel, nothing in the

20  Order states or suggests that Plaintiffs can file a consolidated complaint that materially amends the

21  complaints without complying with Rule 15(a)(2).  Nor are the authorities cited by Plaintiff relevant

22  to this analysis.  *See* Plaintiffs' Opp., at 9:12-15, citing *Solis v. Lincoln Electric Co.*, 2006 WL

23  266530 (N.D. Ohio, Feb. 1, 2006) (requiring parties to "bellwether" trials in MDL proceedings to

24  waive venue objections; not addressing or discussing the propriety of, or procedures for, filing

25  amended complaints in MDL proceedings); Manual for Complex Litigation § 20.132, n. 668

26  (transferee court in multidistrict litigation can order plaintiff to file an amended complaint asserting

27  venue lies in the transferee district).  This Court did not order Plaintiffs to amend their complaint to

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

2

SF:203587.4

1   waive venue objections or for any other purpose, so Plaintiffs cannot hide behind the Order to justify

2   their non-compliance with Rule 15(a)(2). Accordingly, for the reasons set forth in Wells Fargo's

3   Opening Brief (at 10:4-22), the Consolidated Complaint is a legal nullity and should be stricken.

**B.    Plaintiffs' Request In The Alternative For Leave To File The Consolidated Complaint Does Not Cure The Defect.**

6   When the adverse party will not agree to an amendment, the party must file a written motion

7   for leave to amend. *Averbach v. Rival Mfg.*, 879 F.2d 1196, 1202 (3d Cir. 1989); *Wolgin v. Simon*,

8   722 F.2d 389, 392 (8th Cir. 1983). Here, Plaintiffs' bare "request" does not meet *any* of the

9   requirements of the  Northern District of California Local Rule for a motion, including but not

10  limited to the timing requirements. *See* L.R. 7-2(a) (motions must be set for hearing not less than 35

11  days after service of the motion).

12  Plaintiffs here seek a hearing on their motion three court days after making their request.

13  Plaintiffs offer no legal authority holding (or suggesting) that they can meet the requirement of Rule

14  15(a)(2) by making "request" as part of an opposition brief heard on such shortened time. Under the

15  briefing schedule, Wells Fargo had only two days to respond to Plaintiffs' Opposition. That can

16  hardly be deemed adequate time to be in a position to be heard on the issues, particularly where, as

17  here, the urgency was caused by Plaintiffs' delay in amending the complaint in the first place.

**C.    Even If The Court Were To Treat Plaintiffs' Opposition As A Motion For Leave To Amend The Complaint, Plaintiffs Have Not Established That Leave Should Be Granted.**

20  Plaintiffs' "Consolidated" Complaint attempts to vastly expand the size and definition of the

21  class, yet Plaintiffs filed it at the close of two years of formal and informal class discovery, after

22  Wells Fargo's last day to file its motion challenging the claims of the non-California plaintiffs under

23  California Business and Professions Code § 17200, and on the eve of Plaintiffs' last day to file their

24  motion for class certification. They filed it months after the deadline to amend the complaint in the

25  *Bowne* actions expired. And they added a new defendant.

26  Plaintiffs do not, and cannot, dispute Wells Fargo's evidence establishing that changing the

27  nature and scope of the class definitions at this time would unduly prejudice Wells Fargo. Instead,

3

DEFENDANTS' REPLY BRIEF ISO MOTION TO STRIKE CONSOLIDATED COMPLAINT AND/OR PORTION OF CONSOLIDATED COMPLAINT, MDL DOCKET NO. 1841 (MHP)

SF:203587.4

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1    they assert that they diligently amended the complaint after Wells Fargo's alleged "cover-up" came

2    to light, and that Wells Fargo therefore cannot be heard to complain. But Plaintiffs' accusations of a

3    "cover-up" are a fabrication. As discussed in Section III(A) below, Plaintiffs knew, or should have

4    known, that the Standard Hours compensation system applied to all Team Members in 2006, when

5    Wells Fargo produced the "Handbook for Wells Fargo Team Members" making this plain. (*See*

6    Supplemental Declaration of Eric P. Kelly in Support of Defendants Wells Fargo Mortgage, a

7    Division of Wells Fargo, N.A., and Wells Fargo, N.A.'s Motion to Strike Consolidated Complaint

8    and/or Portions of Consolidated Complaint (Kelly Supp. Decl., ¶ 4, and Exhs. 2-4.) Indeed,

9    Plaintiffs have not disputed Wells Fargo's contention that they knew these facts in January 2006,

10    when they alleged they were victims of a "uniform and company-wide compensation policy" in the

11    original *Bowne* complaint. [Doc 1, ¶ 25.]

12    　　　　Absent evidence that Plaintiffs were diligent or that Wells Fargo withheld from them the

13    information they needed to amend the complaint, there is no basis to excuse Plaintiffs' failure to seek

14    leave to amend the complaints to change the class definition prior to the close of class discovery.

15    Wells Fargo's evidence of undue prejudice – that it conducted discovery and has been preparing to

16    oppose Plaintiffs' class certification motion for months in reliance upon the existing class definitions

17    – is substantial and unrebutted. Nor can Plaintiffs explain their delay in seeking to amend, or their

18    repeated failure to cure this defect by previous amendments, including but not limited to the filing of

19    the *Basore* complaint, which Plaintiffs filed well after Wells Fargo produced the Handbook.

20    　　　　Nor do Plaintiffs offer any convincing argument as to how allowing them to amend at this

21    late date would serve the interest of streamlining the consolidated litigation. Such an amendment

22    would result in a massive broadening of the scope of the litigation after the close of class discovery,

23    and at the very time when the propriety of class certification will be addressed. It would undermine

24    months of substantial efforts by Wells Fargo to marshal its case in anticipation of the class

25    certification motion. In short, allowing Plaintiffs to file the "Consolidated" Complaint would

26    complicate, rather than streamline, the pre-trial proceedings, to Wells Fargo's substantial prejudice.

27

28

DEFENDANTS' REPLY BRIEF ISO MOTION TO STRIKE CONSOLIDATED COMPLAINT AND/OR PORTION
OF CONSOLIDATED COMPLAINT, MDL DOCKET NO. 1841 (MHP)

SF:203587.4

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1    Plaintiffs' contention that the *Bowne* order requiring them to amend their complaint by

2    August 31, 2007 is a nullity is without merit.  Plaintiffs cite no authority in support of the

3    proposition that the MDL transfer order or this Court's scheduling order somehow superseded it

4    without actually addressing it.  Wells Fargo has not asserted that the Court cannot grant leave to

5    amend the complaint; only that Plaintiffs must establish a heightened standard of "good cause" to

6    amend.  Here, Plaintiffs cannot not meet either standard.

7    Finally, Plaintiffs assert, without citation to a single legal authority, that they should be able

8    to add a new defendant, Wells Fargo & Co., because Wells Fargo markets its 80+ business as a

9    single brand.  That is not the law.  Plaintiffs are not entitled to mix and match legal entities by the

10    mere filing of an amended complaint without seeking or obtaining leave of court (and without

11    serving the new defendant).  *Akzana, Inc. v. E.I. Du Pont De Nemours & Co.*, 607 F.Supp. 227,238

12    (D. Del. 1984) (blurring of corporate separateness in annual report insufficient to disregard corporate

13    separateness); *Gammino v. SBC Communications, Inc.*, 2005 U.S. Dist. LEXIS 5077 (D.Pa. 2005)

14    ("unified marketing brand, image, identity or logo" insufficient to disregard corporate separateness).

15    As discussed in Wells Fargo's Opening Brief, this is additional, unrebutted evidence of prejudice,

16    which supports striking the Consolidated Complaint without leave to amend.

17    **D.    If The Court Allows Plaintiffs To File The "Consolidated" Complaint, The
       Court Should Strike The Expanded Class And Relation Back Allegations.**

18

19    Plaintiffs offer no argument or evidence to oppose Wells Fargo's contentions that the

20    expanded class and relation back allegations should be stricken.  Plaintiffs' sole contention is that

21    these issues are not ripe for adjudication on a motion to amend.  Plaintiffs misconstrue Wells Fargo's

22    contention.  Wells Fargo does not assert these arguments as part of a request to deny leave to amend

23    pursuant to Fed. R. Civ. P. 15(a)(2); it asserts them as part of its motion to strike pursuant to Fed. R.

24    Civ. P. 12(f).  As explicitly set forth in Wells Fargo's Opening Brief: "Should the court decide to

25    allow Plaintiffs' Consolidated Complaint to be filed notwithstanding their failure to obtain (or seek)

26    leave of Court before filing it, Wells Fargo requests that the Court strike the allegations expanding

27    the size of the class pursuant to Fed. R. Civ. P. 12(f)."  (Opening Brief, at 17:16-18.)

28

5

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1    Allegations in an amended complaint expanding a class definition and relation back

2    allegations may be the subject of a motion to strike. *In re Union Exploration Partners*, 1992 WL

3    203812 (striking allegations expanding class definition pursuant to a motion to strike); *Kay v. Wells*

4    *Fargo & Co. N.A.*, 2007 WL 2141292, * 1 (N.D. Cal. 2007) (striking allegations of equitable tolling

5    from complaint). Here, Plaintiffs brought these issues squarely before the Court by including

6    allegations in the Consolidated Complaint *itself*: (1) defining the class period for this newly

7    expanded class as extending back to January 2003; and (2) seeking equitable tolling . (*See*

8    Consolidated Complaint, ¶¶ 32-43.)

9    Plaintiffs' opposition offers no evidence or argument as to why the allegations should not be

10    stricken. Therefore, if the Court decides to allow Plaintiffs to file the Consolidated Complaint, it

11    should strike the expanded class and relation back allegations, as set forth in Wells Fargo's notice of

12    motion, for all the reasons set forth in Wells Fargo's Opening Brief.

13    **III.    IN ADDITION TO THE PROCEDURAL PROBLEMS WITH PLAINTIFFS'**
         **COMPLAINT, THE RECORD DOES NOT SUPPORT ANY OF PLAINTIFFS'**
14        **UNFOUNDED ACCUSATIONS AGAINST WELLS FARGO.**

15

16    Throughout their Opposition brief, Plaintiffs attempt to discredit Wells Fargo through a

17    series of spurious accusations, alleging everything from "knowing" and "admitted" illegal conduct

18    on "vast" scale to a purported "cover-up." (*See, e.g.,* Plaintiff's Opp., at 1:22-2:19, 6:4-7:6, 10:17-

19    23; 11:10-11; 12:1-3, 15-18.) Plaintiffs provide no evidentiary support in the record for their many

20    serious accusations.[1] As set forth below, *none* of their accusations are true.

21    **A.    Wells Fargo Produced Documents in 2006 Describing Its Standard Hours**
         **Reporting System And Clearly Identifying It As Applicable To All Team**
22        **Members.**

23    Perhaps Plaintiffs' most inflammatory accusation against Wells Fargo is that it engaged in a

24    "cover-up" and "concealed" the Standard Hours pay reporting system from Plaintiffs. Plaintiffs'

25    _____

26    [1] Defendants object to the Declaration of George Hanson in Support of Plaintiffs' Memorandum in
        Opposition to Defendants' Motion to Strike Plaintiffs' Consolidated Complaint, and in the
27        Alternative, Motion for Leave to Amend the Complaint ("Hanson Decl.") because it is unsigned, and
        therefore unsworn. There is, in fact, no admissible evidence whatsoever in the record on this motion
28        to support Plaintiffs' many accusations.

6

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1    level this accusation against Wells Fargo to justify why they waited until the close of class discovery

2    and the eve of their deadline to file a class certification motion to amend the complaint to expand the

3    class from Loan Processors and equivalent positions to all Wells Fargo Team members nationwide.

4    They represent to the Court that they only became aware of the Standard Hours system and its

5    application to all Team Members when they took a deposition pursuant to Fed. R. Civ. P. 30(b)(6)

6    and when the Payroll Process Incentive Executive Overview ("PPI") document was produced in

7    January and February 2008, respectively. The record belies this representation.

8        On August 14, 2006, Wells Fargo produced to counsel for the *Bowne* Plaintiffs the *Bowne*

9    Plaintiffs' personnel files and three iterations of its "Handbook for Wells Fargo Team Members" (the

10   "Handbook"). (Kelly Supp. Decl., ¶ 4, and Exhs. 1-4.) The personnel files contained an "Employee

11   Profile" for each Plaintiff, which expressly identifies the Standard Hours allocated to each of them,

12   and explains that "Standard Hours" are "[t]he number of hours the position is regularly paid for each

13   week." (*Id.*, Exh. 1.)   The Handbook also explicitly addresses Standard Hours. It defines "Standard

14   Hours" as follows:

15           A set number of hours that a team member works each week, which
             will be paid without the need to process a timecard. Standard hours
16           are *not* the same as scheduled hours – for example, a team member
             may have standard hours of nine hours per week, but based on
17           business needs may be scheduled for 3 hours on Monday, Wednesday
             and Friday one week and 4 ½ hours on Tuesday and Thursday the
18           next.

19
20   *Id.*, Exh.2, (WF001175). The Handbook goes on to explain Wells Fargo's overtime policies in

     relevant part as follows:
21

22           Reporting Overtime

23           If you're in a nonexempt position, you are entitled to pay for all hours
             actually worked, even those that exceed your regular schedule.
24           Therefore, you must report *all* hours worked. And if you're
             going to need to work overtime, you need to get your supervisor's
25           authorization before you work additional hours. Overtime affects your
             business unit's plan and budget, so it's important that your supervisor
26           approves it in advance.

27                                    *   *   *

28           Nonexempt Overtime

                                    7

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Weekly – If you're nonexempt, you receive overtime pay of 1½ times your pay (including any shift differential), or "time and a half," if you work more than 40 hours in a workweek. Paid Time Off and holidays are not counted as "work" hours for overtime purposes. You must report all the hours you work, and you need to get your supervisor's approval before you work any overtime (see "Overtime" on page 51).

Daily – Some states also have provisions for paying nonexempt overtime pay based on daily work hours – for example, if you work more than 12 hours in one day. Check with your supervisor or HR consultant to see if this applies in your area. Overtime requirements for your state are also posted in your workplace.

(*Id.*) Prior versions of the Handbook, which also were produced to Plaintiffs, contain comparable language. (Kelly Decl., Exh. 3 (WF000941-42, WF001025); Exh. 4 (WF000773-74, WF000844).) Thus, Plaintiffs indisputably knew (or certainly should have known) in August 2006 at the latest what "Standard Hours" was, how it operated, and that it applied to all non-exempt Wells Fargo Team Members.[2] In fact, Plaintiffs demonstrated they were aware of these facts in January 2006, when they alleged in the *Bowne* complaint that "Plaintiffs and all similarly situated employees are victims of a uniform and company-wide compensation policy." [Doc 1; ¶ 25.] Plaintiffs' Opposition offers no evidence to dispute this fact.

**B.    The Standard Hours Policy Is Lawful.**

Plaintiffs assert that Wells Fargo's "Standard Hours" time reporting system was "illegal" and Wells Fargo to failed to pay overtime to "vast numbers of non-exempt employees," yet they make no attempt to explain to the Court what the Standard Hours system was or how it worked. "Standard Hours" was simply a payroll system, developed and administered by PeopleSoft, that recorded a pre-set number of hours for non-exempt employee (*e.g.,* 40 hours per week), unless the employee reported working a different number of hours. Wells Fargo's Standard Hours system allowed, and its policies *required*, that non-exempt employees accurately reported all overtime hours work, and that such hours be paid. (Kelly Decl., Exhs. 2-4.)

---

[2]  Wells Fargo also has produced compensation documents for all Plaintiffs during discovery, which refers to and applies Standard Hours.

8

DEFENDANTS' REPLY BRIEF ISO MOTION TO STRIKE CONSOLIDATED COMPLAINT AND/OR PORTION OF CONSOLIDATED COMPLAINT, MDL DOCKET NO. 1841 (MHP)

SF:203587.4

1    There is nothing inherently unlawful about a Standard Hours reporting system.  Arguably, *all*

2    time reporting systems are "Standard Hours" systems:  they assume the employee works a set

3    number of hours – *i.e.,* zero – unless the employee enters a different amount of time.  Wells Fargo's

4    system was different only in that the assumed number was pre-set to reflect the normal number of

5    hours the employee was expected to work rather than zero.  Despite their inflammatory rhetoric,

6    Plaintiffs have not offered a shred of evidence to establish that this system was intended to prevent,

7    or that it generally prevented, employees from recording and being paid for all overtime hours

8    worked.

9    **C.    Wells Fargo Has Not Failed To Pay Overtime to "Vast" Numbers Of Employees,**
         **And Has Never Admitted Otherwise.**

10

11    According to Plaintiffs' Opposition, "Wells Fargo provided [to Plaintiffs' counsel] (what it

12    represented to be) a list of Loan Processors who recorded at least some overtime, but were not paid

13    for it.  Wells Fargo identified approximately 293 individuals." (Plaintiffs' Opp., at 5:13-16.)  The

14    parties agreed to make these individuals conditional class members in the *Bowne* action, and they

15    received class notice accordingly.  (*Id.*)  For the reasons explained above, to the extent any failure to

16    pay overtime occurred, it was not pursuant to any policy of Wells Fargo or any requirement of the

17    Standard Hours time reporting system.  Rather, it was a *violation* of the Wells Fargo's policies.

18    Plaintiffs now attempt to characterize Wells Fargo's candor in identifying the instances it discovered

19    and its agreement to include the affected Loan Processors in a conditional class as evidence of an

20    "admission" that it had an "illegal" compensation policy.  That is not the case.  The Standard Hours

21    system was not *per se* unlawful for the reasons described above.  Wells Fargo has never admitted

22    (and Plaintiffs have not proffered any admissible evidence to establish) that "vast numbers" of

23    employees were not compensated for overtime, as Plaintiffs now represent.  Wells Fargo has always

24    contended that any violations that may have occurred were isolated, individual occurrences based on

25    the acts of individual supervisors, and do not reflect a system-wide "policy."  Despite the

26    inflammatory rhetoric in their Opposition Brief, Plaintiffs offer no admissible evidence whatsoever

27    to rebut this contention.

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

9

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

**D.     Wells Fargo Did Not "Know" Its Pay Reporting System Was "Illegal" Due To The Issuance Of An Opinion Letter By The California Division Of Labor Standards Enforcement.**

Plaintiffs' assertion that Wells Fargo "knew" its Standard Hours system was "illegal" in 1992, based on an opinion letter of the California State Labor Commissioner, is similarly misplaced. The Opinion Letter, a copy of which is attached as Exhibit A to this brief, did not consider Wells Fargo's policy and was not directed at Wells Fargo. On its face, it addresses only California law requirements governing information reported on pay stubs, an issue that is not raised in either the *Bowne* or the *Basore* complaints.[3] The Opinion Letter does not find that "Standard Hours" pay reporting systems are *per se* unlawful; rather, it provides a fact intensive analysis of one hypothetical "Standard Hours" system. Even if the hypothetical system described in the letter could be deemed comparable to Wells Fargo's system, which Wells Fargo does not concede, the Opinion Letter is not a legally binding statement of the law. *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094, 1106 (Cal. 2007) ("[w]hile the DLSE's construction of a statute is entitled to consideration and respect, it is not binding and it is ultimately for the judiciary to interpret this statute.")

Plaintiffs assert that the PPI document produced by Wells Fargo "admits" (in 2005, not 2002) that its Standard Hours system was "illegal." Plaintiffs' assertion is incorrect. The PPI was created as part of Wells Fargo's rollout of a time reporting system to replace Standard Hours as of January 1, 2006. The PPI explains some of the reasons for the change, and notes the Opinion Letter as a reason for "concern" justifying a change. (As discussed above, the "concern" had to do with pay stub reporting; *not* payment of overtime.) That Wells Fargo would change its Standard Hours reporting system to remove all doubt as to its legality is not the same thing as admitting that it is "illegal." Nor

---

[3] The Consolidated Complaint attempts to add a claim for relief for violation of Cal. Labor Code § 226. This claim is futile because it is barred by the statute of limitations. According to the PPI, proffered by Plaintiffs, Wells Fargo superseded its Standard Hours system on January 1, 2006, with paychecks issued under the new system starting January 13, 2006. (Hanson Decl., Exh. D., WF011482). Plaintiffs filed the *Basore* complaint on January 23, 2007. The remedy for violation of Labor Code § 226 is a civil penalty; therefore the applicable statute of limitations is one year. *Blackwell v. SkyWest Airlines, Inc.*, 245 F.R.D. 453, 462 (S.D. Cal. 2007) ("Recovery under § 226(a) constitutes a penalty and is therefore governed by a one-year statute of limitations under California Code of Civil Procedure § 340(a)"). Leave to amend should be denied where, as here, amendment would be futile. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

10

DEFENDANTS' REPLY BRIEF ISO MOTION TO STRIKE CONSOLIDATED COMPLAINT AND/OR PORTION OF CONSOLIDATED COMPLAINT, MDL DOCKET NO. 1841 (MHP)

SF:203587.4

is there anything suspect about Wells Fargo's decision to do supersede it.  If anything, the law

encourages persons to take measures to eliminate potentially non-compliant conditions by making

evidence of such a measures inadmissible to prove fault.[4]  Fed. R. Evid 407.

## IV.    CONCLUSION

Plaintiffs attempted to file an amended complaint dramatically expanding the nature and

scope of these consolidated proceedings without filing a duly noticed motion to obtain leave of

court.  When Wells Fargo objected and filed the instant motion, Plaintiffs opposed it by raising wild,

unsupportable accusations against it.  There is no valid reason why Plaintiffs' proposed amended

complaint could not have been filed in 2006.  Allowing it to be filed now would unduly prejudice

Wells Fargo.  Accordingly, Wells Fargo respectfully requests that the Court strike Plaintiffs'

Consolidated (*i.e.,* amended) Complaint.


Dated:  April 11, 2008                           SPENCER FANE BRITT & BROWNE
                                                 LLP



                                         By:    /s/ Denise K. Drake
                                                Denise K. Drake
                                                Eric P. Kelly


---

[4]  Plaintiffs also leave the misimpression that Wells Fargo "refused" to produce the PPI in response to a request for production served by Plaintiffs on August 8, 2006.  (*See* Plaintiffs Opp., at 4:16-20; Hanson Decl., Exh. B.)  In fact, Plaintiffs narrowed these requests during meet and confer discussions with Wells Fargo's counsel over this and other discovery served by Plaintiffs after agreeing *not* to serve discovery until after the Court ruled on their then-pending motion for conditional class certification.  (Declaration of Denise K. Drake in Support of Defendants Wells Fargo Mortgage, a Division of Wells Fargo, N.A., and Wells Fargo, N.A.'s Motion to Strike Consolidated Complaint and/or Portions of Consolidated Complaint (¶¶ 6-20, and Exhs. 1-8.) As a result of the parties' agreement, Wells Fargo produced, *inter alia*, the Plaintiffs' personnel files and Team Member Handbooks.  The PPI was produced, by agreement of the parties, as part of a rolling production in response to a document request served in October 2007.  (*Id.*, ¶¶23-24.)

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

11

DEFENDANTS' REPLY BRIEF ISO MOTION TO STRIKE CONSOLIDATED COMPLAINT AND/OR PORTION OF CONSOLIDATED COMPLAINT, MDL DOCKET NO. 1841 (MHP)

SF:203587.4

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Dated:  April 11, 2008                    WINSTON & STRAWN LLP


By:   /s/ Robert Spagat
      Joan B. Tucker Fife
      Robert Spagat

      ATTORNEYS FOR DEFENDANTS
      WELLS FARGO MORTGAGE, A
      DIVISION OF WELLS FARGO,
      NATIONAL ASSOCIATION AND
      WELLS FARGO, NATIONAL
      ASSOCIATION

DEFENDANTS' REPLY BRIEF ISO MOTION TO STRIKE CONSOLIDATED COMPLAINT AND/OR PORTION
OF CONSOLIDATED COMPLAINT, MDL DOCKET NO. 1841 (MHP)

SF:203587.4

# EXHIBIT A

STATE OF CALIFORNIA                                                        GRAY DAVIS, Governor

DEPARTMENT OF INDUSTRIAL RELATIONS
**DIVISION OF LABOR STANDARDS ENFORCEMENT**
*LEGAL SECTION*
320 W. 4th Street, Suite 430
Los Angeles, CA 90013
(213) 897-1511

ANNE STEVASON, *Acting Chief Counsel*



                              May 17, 2002


        Richard J. Simmons
        Sheppard, Mullin, Richter & Hampton
        333 South Hope Street, 48th Floor
        Los Angeles, California 90071-1448


               Re: Labor Code §226 -- Semi-Monthly Pay Periods for
                   Non-Exempt Salaried Employees

Dear Mr. Simmons:


        This is in response to your letter of January 2, 2002,
concerning the application of Labor Code section 226 to the use
of semi-monthly pay periods for non-exempt salaried employees.
You state that your client pays its non-exempt salaried employees
twice each month, and that they are paid 1/24th of their annual
salaries on each payday. The paydays are the 15th (or last
working day before the 15th) and the last working day of each
month. As is the case with all semi-monthly payrolls, the number
of actual work days and thus, non-overtime work hours, varies
from pay period to pay period.

        You further state that "adjustments for overtime pay and
missed work are incorporated within the paycheck for the
following payday," which you assert is "as specified in Labor
Code section 204." These "adjustments," are based on an hourly
rate, which you explain is computed by dividing the annual salary
by 2,080 hours (i.e., 40 hours per week X 52 weeks per year).

        Next, you state that your client, in seeking to comply with
Labor Code section 226's requirement for listing hours worked on
the itemized statement attached to a paycheck, lists 86.67 hours
as the hours worked per semi-monthly pay period, unless the
employee works overtime or misses work. The 86.67 hours is based
on dividing the total number of non-overtime hours in a year
(2,080) by the number of pay periods in a year (24). You
acknowledge, however, that because the number of work days and
non-overtime work hours consistently varies from one semi-monthly

                                                          2002.05.17

Richard J. Simmons
May 17, 2002
Page 2

pay period to another, pay periods never consist of precisely
86.67 hours. Yet, you suggest that because the hourly rate (also
known as the "regular rate of pay" for purposes of computing
overtime compensation) is calculated by dividing the annual
salary by 2,080 hours, "it will confuse employees" if your client
were to use a number other than 86.67 hours as the number of non-
overtime hours worked each pay period.

It seems that some of this confusion is caused by your
client's use of semi-monthly instead of bi-weekly pay periods
(which do not result in varying amounts of scheduled non-overtime
hours), and your client's practice of issuing pay checks on the
last day of the pay period (thereby necessitating "adjustments"
for missed work or for overtime), rather than issuing paychecks
after the close of the pay period within the time permitted by
Labor Code §204, with all appropriate deductions for missed work
and extra payments for overtime encompassed in those paychecks.
To be sure, the use of semi-monthly pay periods and payment of
employees on the last day of the pay period are lawful pay
practices. However, the confusion that may be caused by
following such lawful practices cannot be ameliorated by non-
compliance with the explicit requirements of Labor Code §226,
namely: 1) the obligation to list "the total hours worked by the
employee" during the period for which the employee is paid, and
2) the obligation to list "all applicable hourly rates in effect
during the pay period and the corresponding number of hours
worked at each hourly rate by the employee."

Labor Code §204 provides, in relevant part, that wages
earned during the course of employment must be paid no less
frequently than "twice during each calendar month, on days
designated in advance by the employer as regular paydays.  Labor
performed between the 1st and 15th days, inclusive, of any
calendar month shall be paid for between the 16th and the 26th of
the month during which the labor was performed, and labor
performed between the 16th and last day inclusive, of any
calendar month shall be paid for between the 1st and 10th day of
the following month."  However, not all wages earned during the
pay period must be paid on the next regular payday, as section
204 further states: "Notwithstanding any other provision of this
section, all wages earned for labor in excess of the normal work
period shall be paid no later than the payday for the next
regular payroll period."  The term "labor in excess of the normal
work period" means all non-regularly scheduled overtime.  All
other hours worked – i.e., all non-overtime work and all
regularly scheduled overtime – does not constitute "labor in
excess of the normal work period" within the meaning of section
204, and thus, must be paid on the payday for the pay period in
which the work was performed.

2002.05.17

Richard J. Simmons
May 17, 2002
Page 3

Your client's practice of paying its employees on the last day of the pay period, rather than sometime during the 10 or 11 day period after the end of the pay period (as permitted by Labor Code §204), is clearly authorized by Labor Code §219, which provides: "Nothing in this article shall in any way limit or prohibit the payment of wages at more frequent intervals, or in greater amounts, or in full when or before due. . . ."

As a general rule, the obligation to list the total hours worked during the pay period can only be satisfied by listing the precise, actual number of hours worked. The only express exception to this requirement is that hours worked need not be listed for "any employee whose compensation is solely based on a salary *and who is exempt from payment of overtime under subdivision (a) of section 515 or any applicable order of the Industrial Welfare* Commission." (Labor Code §226(a)(2), emphasis added.) With the enactment of AB 2509, the Legislature amended Labor Code §226 to require the listing of hours worked for all non-exempt employees, whether they are paid by salary, commission, piece rate, or on an hourly basis. The reason for this requirement is simple enough--it is designed to provide the employee with a record of hours worked, and to assist the employee in determining whether he has been compensated properly for all of his or her hours worked. The failure to list the precise number of hours worked during the pay period conflicts with the express language of the statute and stands in the way of the statutory purpose. Thus, the answer to the first question posed by your letter -- whether it is permissible under section 226 to list 86.67 hours in the itemized wage statement when that is not a precise reflection of the number of hours worked in the pay period -- is no, this practice violates Labor Code §226.

Prior to the enactment of AB 2509, Labor Code §226 did not apply to any employees who were paid by salary, even if they were non-exempt. But with the amendment of section 226, which took effect on Janaury 1, 2001, the procedure followed by your client of listing "averaged" hours each pay period that do not reflect actual hours worked became unlawful. Although we do not read section 226 as prohibiting an employer from paying its employees in advance of the date that wages are due under Labor Code §204, it is fairly obvious that such advance payments (if made on the last day or prior to the last day of the pay period) would make it impossible for the employer to accurately list all hours worked (as some of those hours would not yet have been worked) on the itemized wage statement attached to the paycheck. We can think of two possible solutions to this dilemma. Of course, the simplest solution would be to change the paydays so that paychecks are issued after the close of the pay period, within the time permitted under section 204, so as to allow the employer to accurately list all hours worked during the pay period.

2002.05.17

Richard J. Simmons
May 17, 2002
Page 4

Alternatively, if the employer decides to continue its practice
of making advance payments, it would still need to list the
"total hours worked" during the pay period, which would have to
include both the hours that were worked prior to the time the
paystub is prepared, and the scheduled hours yet to be worked for
the remainder of the pay period.  Obviously, to the extent that
these "hours worked" would be based, in part, on a projection of
hours not yet worked, the paystub attached to the next regular
paycheck should contain a category showing corrections to hours
worked that were listed on the prior paystub.  These
"corrections" should reflect missed scheduled work that had been
listed as "hours worked" on the prior paystub, and unscheduled
overtime work that had not been listed as "hours worked" on the
prior paystub.  Any corrections set out in a subsequently issued
paystub must state the inclusive dates of the pay period for
which the employer is correcting its initial report of hours
worked.

    You also ask whether the requirement of section 226(a)(9)
for listing "all applicable hourly rates in effect during the pay
period" can be satisfied by reporting one hourly rate each pay
period (i.e., that determined by dividing the annual salary by
2,080 hours) even though the number of work days and non-overtime
hours varies from one pay period to another.  The hourly rate for
a non-exempt salaried employee must be determined in accordance
with Labor Code §515(d), which codifies the DLSE enforcement
practice that was upheld in *Skyline Homes v. Department of
Industrial Relations* (1985) 165 Cal.App.3d 239.  Labor Code
§515(d) provides: "For purposes of computing the overtime rate of
compensation required to be paid to a non-exempt full time
salaried employee, the employee's regular hourly rate shall be
1/40 the employee's weekly salary."  A non-exempt full time[1]
employee compensated by an annual salary would have his or her
weekly salary determined by dividing the annual salary by 52, and
then, the hourly rate would be determined by dividing that weekly
salary by 40, i.e, the annual salary would be divided by 2,080.
Thus, the "applicable hourly rate," within the meaning of section
226(a)(9), would remain constant as long as the full-time
employee's annual salary remains unchanged, regardless of
variations in the number of workdays and non-overtime work hours
in each semi-monthly pay period.

---

[1] For purposes of computing the regular hourly rate of pay, the term "full
time employment" means employment in which the employee is employed for 40 hours
per week.  (Labor Code §515(c).)  In accordance with *Skyline Homes*, the regular
hourly rate of a part time non-exempt salaried employee would be determined by
dividing the employee's weekly salary by the number of weekly hours the employee
is regularly scheduled to work.  For example, a non-exempt employee who is
employed to normally work 30 hours a week, and who is paid a salary of $600 a
week, is employed at a regular hourly rate of $20 per hour.

2002.05.17

Richard J. Simmons
May 17, 2002
Page 5

To minimize the possibility of confusion on the part of any non-exempt salaried employee, it may be advisable for the employer to specify, on the itemized wage statement, that this hourly rate is based on the employee's annual (or monthly, or weekly) salary, and to then set out the amount of that salary. The employer may further choose to specify that overtime pay, based on this hourly rate, is required for all hours worked in excess of 8 in any workday or 40 in any workweek, and that otherwise, this salary is deemed to compensate the employee for all non-overtime hours worked, and that the amount of non-overtime hours worked will vary each semi-monthly pay period.

By way of example: Assume a full-time non-exempt employee is paid a salary of $52,000 a year.  The regular hourly rate is determined by dividing that annual salary by 52, for a weekly salary of $1,000, and dividing that by 40, for a regular rate of $25 an hour.  Overtime must be paid at the rate of $37.50 an hour for those hours for which the employee is entitled to one and a half times the regular rate, and at $50 an hour for those hours for which the employee is entitled to twice the regular rate. This employee is paid 1/24 of his annual salary, $2,166.67, each semi-monthly pay period for all scheduled non-overtime work, despite the fact that the amount of scheduled non-overtime varies from semi-monthly pay period to semi-monthly pay period.  In accordance with Labor Code §204, all overtime worked during the pay period must be paid, no later than the payday for the next regular pay period, at the rate of $37.50 or $50 an hour, as applicable.  Please note, however, that while Labor Code §204 permits this brief delay in payment of overtime, Labor Code §226 requires that all hours worked, including overtime hours, shall be listed as part of the itemized wage and deduction statement attached to the paycheck issued for the pay period in which the work was performed--i.e., there cannot be a delay in reporting overtime hours worked.  We would thus recommend that if the overtime hours are not paid until the pay period following the pay period in which they are worked and reported, that the employer advise the employees, in writing on the itemized wage and deduction statement, that the overtime hours worked in this pay period will be paid on the next paycheck.

Other issues are presented by the "adjustments," at the employee's regular hourly rate, for missed non-overtime work.  We will caution you by quoting from an opinion letter authored by then Labor Commissioner Lloyd W. Aubry, Jr. on April 27, 1987:

> Your client's plan to pay wages bi-monthly without regard to number of days actually worked and then deduct any overpayments; i.e., for time not worked during the previous pay period, from the subsequent pay period, would not be violative of Section 204.  However,

2002.05.17

Richard J. Simmons
May 17, 2002
Page 6

> any deductions representing overpayments made for the
> previous pay period should be agreed to in writing by
> the affected employee and specify the pay period, the
> date or dates and reason for the lost time, i.e.,
> unearned or unauthorized vacation, illness not covered
> by sick leave, etc.

Absent such voluntary written authorization, we would view these
"adjustments" as violative of Labor Code §221 and inconsistent
with *CSEA v. State of California* (1988) 198 Cal.App.3d 374.

You next ask whether the requirements of section 226 could
be met, as to employees who receive "adjustments" for overtime
work or missed work in the paycheck issued following the pay
period during which the work was performed (or missed), by
providing those employees, on the day they are paid, with a copy
of their time records or time cards disclosing their actual hours
worked. As discussed above, section 226 requires that the
employer list the employee's *total hours worked* during the pay
period for which the employee is being paid -- *total hours worked*
necessarily includes all actual non-overtime hours and all
overtime hours worked. Section 226 expressly requires an
"itemized statement in writing showing ... total hours worked."
Time cards or other time records, if attached to a paycheck,
would satisfy section 226's requirement for a statement of *total
hours worked* if the *total hours worked* during the pay period are
separately listed on the time cards or other time records prior
to the time these records are provided to the employee. If it is
left to the employee to add up the daily hours shown on the time
cards or other records so that the employee must perform
arithmetic computations to determine the *total hours worked*
during the pay period, the requirements of section 226 would not
be met.

Finally, you ask whether the $4,000 limit on penalties in
Section 226(b) is a limit on the total liability that an employer
can face regardless of the number of employes involved (i.e.,
$4,000 per employer), or whether it is a maximum of $4,000 per
employee (e.g., an employer with 10 employees would face a
maximum liability of $40,000). Prior to the passage of AB 2509,
section 226(b) provided: "Any employee suffering injury as a
result of a knowing and intentional failure by an employer to
comply with subdivision (a) shall be entitled to recover all
actual damages or $100, whichever is greater, plus costs and
reasonable attorney fees." The statute now provides: "Any
employee . . . shall be entitled to recover the greater of all
actual damages or $50 for the initial pay period in which a
violation occurs and $100 per employee for each violation in a
subsequent pay period, not exceeding an aggregate penalty of
$4,000, and shall be entitled to an award of costs and reasonable

2002.05.17

Richard J. Simmons
May 17, 2002
Page 7


attorney's fees."

        The maximum "aggregate penalty" that the statute now
references is one that, based on the plain language of the
statute, is owed to "any employee." It is not a maximum for *all
of the employer's employees*. Indeed, the latter interpretation
flies in the face of AB 2509's legislative history, and in
particular, the final Senate bill analysis which explains that
the bill "entitles an aggrieved employee . . . to the greater of
actual damages or penal damages . . . up to $4,000." To
interpret this statute as establishing a $4,000 maximum penalty
for an employer, rather than a $4,000 maximum penalty per
aggrieved employee, would fail to provide any sort of meaningful
compensation to the employees of a large employer. Such an
interpretation would fail to effectuate the purpose of this law.

        Thank you for your ongoing interest in California wage and
hour law. Feel free to contact us with any other questions.


                              Sincerely,



                              Anne Stevason
                              Acting Chief Counsel



AS/mel


cc:  Arthur Lujan
     Tom Grogan
     Assistant Chiefs
     Regional Managers
     DLSE Attorneys
     Bridget Bane, IWC


2002.05.17