# EXHIBIT 3

### Drake, Denise K.

| | |
|---|---|
| **From:** | Leitch, Michael |
| **Sent:** | Thursday, August 10, 2006 4:57 PM |
| **To:** | 'Hanson, George'; Dirks, Eric |
| **Cc:** | Drake, Denise K.; Kelly, Eric |
| **Subject:** | Bowne v. Wells Fargo |

Gentlemen:

Please see attached.

-Mike

Michael C. Leitch, Esq.
**Spencer Fane Britt & Browne LLP**
1000 Walnut, Suite 1400
Kansas City, Missouri 64106
Tel: 816-474-8100
Fax: 816-474-3216
www.spencerfane.com
mleitch@spencerfane.com

# SPENCER FANE
## BRITT & BROWNE LLP
ATTORNEYS & COUNSELORS AT LAW

MICHAEL C. LEITCH
DIRECT DIAL: (816) 292-8146
mleitch@spencerfane.com

File No. 5012500-1

August 10, 2006

**VIA ELECTRONIC MAIL AND U.S. MAIL**

George A. Hanson, Esq.
Eric L. Dirks, Esq.
Stueve Siegel Hanson Woody LLP
330 W. 47th Street
Suite 250
Kansas City, MO 64112-1621

Re: *Trudy Bowne, et al., v. Wells Fargo Bank, N.A.*

Dear George and Eric:

This letter responds to your Notice of Deposition and discovery served by email at approximately 5:30 p.m. on August 8, 2006, and Mr. Hanson's email the morning of August 9, 2006.

As you may recall, on July 25, 2006, the parties submitted a Report of Parties Planning Conference to the Court on July 25. At page 4 of the Report, we reported the parties agreement (at your suggestion) that *"formal discovery is unnecessary until the collective action notice period has closed and the scope of the class is clarified . . . ."* At page 6 of the Report, we reported to the court again "the parties do not anticipate problems regarding the scope of discovery during this phase of the litigation, because *the parties have agreed that formal discovery is unnecessary until the court rules on plaintiffs' pending Motion to Conditionally Certify a Class*, and if a class is conditionally certified, until after the notice and opt-in period has closed." Indeed, the parties' agreement that *"formal discovery is unnecessary until the court rules on plaintiffs' pending motion,"* appears three additional times on page 6 of the Report. Again, this language was based on your suggestion. Yesterday, the Court ordered – based on that agreement – that "The parties shall be accorded limited but reasonable time to complete discovery *after resolution of the pending Motion to Certify Class*."

In light of your suggestion and our agreement reported only two weeks ago, we were greatly surprised to receive a deposition notice seeking a corporate representative to testify as to 18 separate categories of information – with only eight calendar days notice. As you recognized, it is impossible to comply with this discovery at this stage, it would be overly burdensome, and outrageously costly. We view your deposition notice and your Interrogatories and Request for Production of Documents as a breach of your proposed and our accepted agreement and we do not intend to comply until after the court has ruled on the motion – as we agreed.

1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106-2140
(816) 474-8100   www.spencerfane.com   Fax (816) 474-3216

WA 864251.2

Kansas City, Missouri   St. Louis, Missouri   Overland Park, Kansas   Omaha, Nebraska

**SPENCER FANE**
**BRITT & BROWNE LLP**
ATTORNEYS & COUNSELORS AT LAW

George A. Hanson, Esq.
August 10, 2006
Page 2

In considering this issue, you perhaps should recall that you filed your motion before the parties met, without any notice to Wells Fargo that such motion would be filed a that time, and without any consideration of the timing Wells Fargo might face in responding to your unannounced motion. Contrary to the suggestion of Mr. Hanson's email, at no time did Wells Fargo agree that it would not be filing an opposition to plaintiffs' Motion for Conditional Certification.

When we met at your offices, we discussed the possibility of reaching an agreement as to the scope of a class. The Report jointly submitted to the court explained that such an agreement would render *a ruling* on the conditional certification unnecessary. Thus, the parties agreement about postponing discovery was reached with the full knowledge and expectation that Wells Fargo would be filing an opposition. Thus, our brief is not in any way a "change of heart;" it was a step required by the timing of the plaintiffs' motion. The plaintiffs' decision to proceed with the motion in the absence of conducting any discovery was a strategic litigation decision on the plaintiffs' part. You said so yourself. The parties' agreement is not rendered void by the fully predictable use by Wells Fargo of declarations and other evidence to oppose the motion. Indeed, nothing stopped plaintiffs from obtaining declarations of their own in the nearly six months preceding the unilateral decision to file the motion. Plaintiffs apparently elected not to do so.

Plaintiffs should in no way be surprised that Wells Fargo has filed an opposition brief. As you may recall, during our conversation at your offices, we explicitly explained that Wells Fargo was a huge and complicated company, well beyond that represented in your motion. Mr. Hanson then requested vast quantities of information – essentially the time and payment records for **every** "loan processor" in the country – in order for him to even contemplate an agreement. This broad requirement also came in spite of our explanation of the differences between retail offices and fulfillment centers – and the lack of any plaintiff who worked in or had any connection whatsoever to a fulfillment center. Those demands – and the limited time Wells Fargo had to respond to the motion – made a quick agreement unlikely. Moreover, I specifically told Mr. Hanson that we would be filing our opposition while we were on the phone prior to the court's adoption of our proposed scheduling plan.

Wells Fargo remains amenable to reaching an agreement as to the scope of a potential class. The numerous documents and declarations attached to our opposition brief are fully consistent with discussing such an agreement. Indeed, they are precisely the type of evidence we discussed producing to advance those discussions. Plaintiffs have received those documents in the manner most consistent with Wells Fargo's need to respond to plaintiffs' unannounced motion. Indeed, plaintiffs made it clear that no additional time would be agreed upon by plaintiffs without some sort of tolling agreement. Nevertheless – as the declarations demonstrate (and we explained), no employees of any fulfillment center should be included in any notice. Moreover, the documents demonstrate that – whatever your clients may have believed about their FLSA exemption status –

WA 864251.2

SPENCER FANE
BRITT & BROWNE LLP
ATTORNEYS & COUNSELORS AT LAW

George A. Hanson, Esq.
August 10, 2006
Page 3

employees holding the positions of "mortgage loan specialist" and "mortgage sales associate" from Washington to Florida have been paid for recorded overtime and consistently classified as non-exempt employees throughout the limitations period relevant here. Thus, this is not the exemption case that you apparently believed it was when plaintiffs filed the motion (and as we explicitly told you). Instead, it appears to be a case of a purely local misunderstanding. We remain fully willing to consider a reasonable geographic limitation on the Wells Fargo sales office employees that would receive such a notice.

What we are not willing to consider is going back on the clear agreement we reached that no discovery would be done until after the Motion was ruled. Again, this agreement was made at your suggestion, even after you filed your surprise motion – in a transparent attempt to hamper Wells Fargo's ability to respond appropriately.

In addition to our objection to the deposition notice and discovery as a whole, we have numerous objections to the timing of the notice and the topics on which the notice purports to require testimony. These objections encompass the entire reason we oppose any "nationwide" certification. The purported certification and discovery are wholly overbroad and improper.

First, even if we had agreed that discovery would be conducted, the amount of notice for such a massive deposition is inadequate. As mentioned above, the notice requests a corporate representative on 18 separate topics. The notice was sent by email at 5:33 p.m. on August 8, 2006 and purports to require attendance at a deposition at 9 o'clock a.m. on Thursday, August 17, 2006. Even if Wells Fargo was a small company with a handful of loan processors, this timing would be insufficient (you may recall an earlier such attempt to force an unreasonable amount of time on another corporation – this is no different). Wells Fargo is not a small organization. As explained in the opposition brief, Wells Fargo has hundreds of different locations and thousands of employees. Thus, even beginning to compile the vast quantity of information called for by your deposition notice would take far greater than the inadequate six business days your notice allows.

As to the specific topics, we have the following objections (at a bare minimum, given the limited amount of time we have to respond to your demands):

1.  The first topic seeks a corporate representative to testify as to the "organization, management, and geographic structure of any Wells Fargo office, division, branch or facility that employed loan processors from January 2003 until the present." This request is grossly overbroad, compliance is impossible. As already indicated, Wells Fargo has 2,600 locations in 8 divisions and 34 regions, plus 67 separate fulfillment centers under entirely different management. There is no way Wells Fargo could find any witness to testify as to the management and organizational structure of all of those incredibly different facilities, divisions, regions, and branches. Indeed, inasmuch as

WA 864251.2

SPENCER FANE
BRITT & BROWNE LLP
ATTORNEYS & COUNSELORS AT LAW

George A. Hanson, Esq.
August 10, 2006
Page 4

the facilities have different functions and different management, there would be no way to provide testimony about each facility without deposing someone from each facility.

    3.    The third topic seeks a corporate representative to testify about the job duties of loan processors and how such job duties changed, if at all, between January 2003 and the present. As the declarations that were attached to our opposition brief indicate, no one could testify as to such a broad topic. The duties of loan processors around the country vary dramatically from facility to facility depending on, among other things, geography, loan type, branch manager, responsible loan originator, and a myriad of other factors.

    4.    The fourth topic seeks a corporate representative to testify as to "any and all efforts to comply with the FLSA regarding *classification* of loan processors." Inasmuch as Wells Fargo has already provided a sworn declaration from a Human Resource consultant at Wells Fargo, along with documents for your own plaintiffs and the declarations of 45 separate loan processors who have sworn to their status as non-exempt employees during the entire time period you request, this topic is irrelevant. Such efforts do not matter, as the nonexempt classification was entirely lawful – plaintiffs' motion, in fact, makes this clear.

    6.    The sixth topic seeks a corporate representative to testify as to Wells Fargo's policies and practices regarding recording and tracking time worked by loan processors from January 2003 to the present. As demonstrated by your clients' declarations – and the numerous declarations already produced by Wells Fargo – timekeeping practices varied from office to office. In order for Wells Fargo to comply with the deposition notice, Wells Fargo would need to produce a separate witness from each and every location where loan processors were employed. Such information is not reasonably available to Wells Fargo, and a corporate representative on this topic is impossible to provide. As to policies, Wells Fargo has already produced policies regarding timekeeping for non-exempt employees and provided sworn testimony that loan processors were classified as non-exempt.

    7.    The seventh topic seeks a corporate representative to testify regarding Wells Fargo's policies and practices regarding the "creation, existence, retention, and preservation of records relating to hours worked, and overtime compensation paid, and any records required to be maintained pursuant to 29 U.S.C. § 211(c)." This topic is overbroad as to time and scope. It contains no time limitation or even a defined class of employee. Further, as demonstrated by your clients' declarations – and the numerous declarations already produced by Wells Fargo – timekeeping practices varied from office to office. In order for Wells Fargo to comply with the deposition notice, Wells Fargo would need to produce a separate witness from each and every location where loan processors were employed. Such information is not reasonably available to Wells Fargo, and a corporate representative on this topic is impossible to provide. As to policies,

WA 864251.2

SPENCER FANE
BRITT & BROWNE LLP
ATTORNEYS & COUNSELORS AT LAW

George A. Hanson, Esq.
August 10, 2006
Page 5


Wells Fargo has already produced policies regarding timekeeping for non-exempt employees (which are also publicly available online) and provided sworn testimony that loan processors were classified as non-exempt.

  8. The eighth topic seeks a corporate representative to testify regarding Wells Fargo's "recordkeeping systems and mechanisms used to record hours worked by loan processors, including the use of WebTime from January 2003 until the present." As demonstrated by your clients' declarations – and the numerous declarations already produced by Wells Fargo – timekeeping practices varied from office to office, and different offices began using Webtime at different times. In order for Wells Fargo to comply with the deposition notice, Wells Fargo would need to produce a separate witness from each and every location where loan processors were employed. Such information is not reasonably available to Wells Fargo, and a corporate representative on this topic is impossible to provide. As to policies, Wells Fargo has already produced policies regarding timekeeping for non-exempt employees (which are also publicly available online) and provided sworn testimony that loan processors were classified as non-exempt.

  10. The tenth topic seeks a corporate representative to testify about "any claims of wage and hour law violations or retaliation" filed against Wells Fargo in the last five years. This request is overbroad. Plaintiffs' Amended Complaint makes no allegation of retaliation or minimum wage violations. Thus, the existence of any such claims is wholly irrelevant to this matter. Moreover, the topic contains no restriction as to the type of employee involved in any such complaint. Inasmuch as this case is simply a localized claim of unpaid overtime by a few "loan processors," claims by other types of employees and claims involving exemption issues are simply irrelevant here.

  11. The eleventh topic seeks the same information on internal complaints of wage and hour law violations. This request suffers from the same defects as Request No. 10.

  13. The thirteenth topic seeks a corporate representative to testify as to any internal communications or discussions relating to whether loan processors are exempt or non-exempt and whether they should be compensated for overtime. As stated above, Wells Fargo has already provided sworn testimony that loan processors throughout the relevant time period were classified as **non-exempt employees** entitled to overtime compensation. Moreover, as written, this request would seemingly require Wells Fargo – on six business-days notice – to inventory every communication made in its thousands of offices and prepare a witness to testify about them. No witness would be capable of testifying to all such communications, and thus this information is not reasonably available to Wells Fargo.

  14. The fourteenth topic seeks a corporate representative to testify about insurance agreements. Insurance agreements would be wholly irrelevant to your reply brief, and preparation of

SPENCER FANE
BRITT & BROWNE LLP
ATTORNEYS & COUNSELORS AT LAW

George A. Hanson, Esq.
August 10, 2006
Page 6

a witness on six business days notice to testify about this topic is unnecessary, harassing, and irrelevant. Moreover, any such insurance agreement would be identified in Wells Fargo's initial disclosures – due after a class is actually defined.

15. The fifteenth topic seeks a corporate representative to testify about the factual support for the affirmative defenses asserted in Wells Fargo's Answer. Like topic 14, this topic has no relevance to your reply brief, and preparation of a witness to testify on six business-days notice on this scope of a topic is overbroad, unduly burdensome, unnecessary, harassing, and irrelevant.

16. The sixteenth topic seeks a corporate representative to testify regarding "the similarities and differences among the job descriptions, duties, compensation policies and structures and pay records of Wells Fargo's loan processors." As the declarations attached to our opposition brief indicate, no one could testify about such a broad topic. The duties of loan processors around the country vary from facility to facility depending on, among other things, geography, loan type, branch manager, responsible loan originator, and a myriad of other factors.

17. The seventeenth topic seeks a corporate representative to testify regarding "the similarities and differences among Wells Fargo's divisions, business lines, regions and locations employing loan processors." This request is grossly overbroad and impossible to comply with, as well as harassing. As already indicated, Wells Fargo has 2,600 locations in eight divisions with 34 regions, plus an additional 67 separate fulfillment centers. There is no possible way that Wells Fargo could find and prepare witnesses to testify as to the management and organizational structure of each of those facilities on six business days notice. Indeed, inasmuch as the facilities have different functions and different management, there would be no way to provide evidence as to each facility without deposing someone from each facility. This is a great example of why conditional certification must be denied. This is entirely unmanageable with your definition.

18. The eighteenth topic seeks information regarding "Wells Fargo's process (in detail) of interviewing current and former employees and obtaining declarations from them *for the purposes of defending this lawsuit* or otherwise." This request seeks information that is protected by the attorney-client privilege and the work product doctrine, and such information will be produced under no circumstances. All interviews and other communications were done in the conduct and anticipation of litigation – the very definition of attorney work product – as specifically contemplated by the language of your own description.

Given these numerous objections and our agreement that no formal discovery would be conducted until after some class was reasonably defined and the opt-in period expires, we respectfully object to conducting discovery the plaintiffs suggested as unnecessary, and we hereby request that plaintiffs live up to their agreement and withdraw the deposition notice and written

WA 864251.2

SPENCER FANE
BRITT & BROWNE LLP
ATTORNEYS & COUNSELORS AT LAW

George A. Hanson, Esq.
August 10, 2006
Page 7

discovery. Thus, as plaintiffs clearly expected when they filed their motion without conducting any discovery (and when plaintiffs suggested that no discovery was necessary), the court will be forced to rule with the evidence presented to it.

This letter is written pursuant to Rule 37 in a good faith effort to resolve our differences regarding discovery. Should you decline to withdraw your deposition notice and pending discovery, we will be forced to seek a Protective Order from the court. We trust that will not be necessary and look forward to receiving your reply brief.

Best regards,

Michael C. Leitch

MCL/bjh

WA 864251.2