# EXHIBIT E

1  George A. Hanson
   Norman E. Siegel
2  Eric L. Dirks
   Ashlea G. Schwarz
3  STUEVE SIEGEL HANSON LLP
   460 Nichols Road, Suite 200
4  Kansas City, MO 64112
   Telephone:    (816) 714-7100
5  Facsimile:    (816) 714-7101
   ATTORNEYS FOR PLAINTIFFS

6
7              IN THE UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF CALIFORNIA

8  IN RE WELLS FARGO LOAN PROCESSOR         MDL Docket No. 1841
   OVERTIME PAY LITIGATION
9                                            PLAINTIFFS' MEMORANDUM IN
                                             OPPOSITION TO DEFENDANTS'
10 THIS DOCUMENT RELATES TO ALL CASES        EXPEDITED MOTION TO
                                             STRIKE PLAINTIFFS'
11                                           CONSOLIDATED COMPLAINT,
                                             AND IN THE ALTERNATIVE,
12                                           MOTION FOR LEAVE TO
                                             AMEND COMPLAINT
13
14                                              REDACTED
15                                           Date: April 14, 2008
                                             Time: 2:00 PM
16                                           Dept: 15
                                             Judge: Hon. Marilyn Hall Patel
17

18            MEMORANDUM OF POINTS AND AUTHORITY

19        Plaintiffs, individually and behalf of the class, by and through their undersigned counsel,

20  for their response to Defendants' Motion to Strike Plaintiffs' Consolidated Complaint, and

21  Motion for Leave to Amend in the Alternative, state as follows:

22  I.    INTRODUCTION

23        Plaintiffs' Consolidated Complaint was timely and properly filed as soon as Wells Fargo's

24  initial testimony and documents revealed the scope of this litigation. It is undisputed that Wells

25  Fargo failed to pay vast numbers of non-exempt employees overtime hours. The *fact* of Wells

26  Fargo's admitted non-compliance has been known for some time. But the *scope* and *specific*

27
28

1  *cause* of the widespread violations were not apparent until Wells Fargo revealed that it paid all

2  non-exempt Team Members under an illegal compensation policy called "Standard Hours." The

3  Standard Hours policy was first brought to light on January 31, 2008, when Wells Fargo

4  produced its first witness for deposition. The full scope and impact of the Standard Hours policy

5  was not apparent until after February 20, 2008

12  Within several weeks of receiving the critical document, Plaintiffs' filed their

13  Consolidated Complaint as directed by the Court's November 13, 2007 Amended Case

14  Management Order. In light of this factual and procedural backdrop, the arguments in Wells

15  Fargo's Motion to Strike (Doc. 33) are without merit. The Consolidated Complaint is proper,

16

17  there has been no delay, and the only arguable "prejudice" Wells Fargo will encounter is being

18  required to answer for the consequences of its admittedly unlawful conduct. Accordingly, Wells

19  Fargo's Motion to Strike should be denied in its entirety. Alternatively, Plaintiffs request leave

20  to file the Consolidated Complaint under Fed.R.Civ.P. 15(a).

21  **II.    RELEVANT FACTS**

22  **A.    PROCEDURAL POSTURE AND CONSOLIDATED COMPLAINT**

23  This MDL proceeding brings together two actions brought against Wells Fargo on behalf

24  of current and former "non-exempt" "Team Members" seeking restitution, including backpay for

25  unpaid overtime and other wages. The first case was captioned *Bowne v. Wells Fargo Home*

26

27  *Mortgage*, D. Kan., No. 06-2020, and involved a limited class of 68 current and former "Loan

28

Processors" who joined a Fair Labor Standards Act ("FLSA") collective action. The second case was captioned *Basore v. Wells Fargo Home Mortgage, et al.,* N.D. Cal. No. 07-0461. In the *Basore* action, Plaintiffs, also "Loan Processors," claimed that Wells Fargo's compensation practices violate various California Labor Code sections, the FLSA, and Cal. Bus. & Prof. Code § 17200.

Wells Fargo moved for transfer and consolidation of both cases for pretrial purposes pursuant to 28 U.S.C. § 1407, and on June 22, 2007, the Judicial Panel on Multidistrict Litigation transferred *Bowne* and *Basore* to this Court and named the litigation *In re Wells Fargo Loan Processor Overtime Litigation.* After transfer of the cases, this Court entered a November 13, 2007 Case Management Order consolidating and coordinating the cases. The Order, among other things, instructed Plaintiffs' Counsel "shall have the following responsibilities and duties . . . file a consolidated complaint."

Plaintiffs filed their Consolidated Complaint on March 21, 2008. The Consolidated Complaint incorporates the facts learned through the initial stage of discovery. Importantly, Plaintiffs have learned through discovery that they were paid pursuant to an illegal "Standard Hours" policy that applied to all Wells Fargo non-exempt Team Members. It is the "Standard Hours" policy that resulted in the underpayment of Plaintiffs' wages. As a result of this recent discovery, Plaintiffs amended the class definition to include:

> All current and former Wells Fargo Bank, N.A. Team Members who were classified as non-exempt but who were subject to Wells Fargo's "Standard Hours" policy since January 2003.

**B.    THE *BOWNE* AND *BASORE* PROCEEDINGS AND THE RECENTLY-PRODUCED DISCOVERY.**

Plaintiffs filed *Bowne* on January 16, 2006 on behalf of a group of Loan Processors and all others similarly situated. Plaintiffs filed their motion for conditional collective action

3

certification on July 7, 2006. On August 3, 2006, Wells Fargo filed its opposition to collective action certification. In its brief, Wells Fargo made the following representations to the court:

- "Loan Processors at Wells Fargo are (and have been) paid for time and one-half for all hours worked over forty in a work week." Wells Fargo's August 3, 2006 Opposition to Conditional Certification, at 1 (Attached as Exhibit A to April 9, 2008 Declaration of George Hanson).

- "The evidence shows that Wells Fargo is in compliance with all FLSA requirements." *Id.* at 24.

- "This is not a case about a corporate wide policy that must be determined legal or illegal, applicable or inapplicable." *Id.* at 26

- "Wells Fargo's policy required accurate timekeeping and proper pay." *Id.* at 30.

On August 8, 2006, Plaintiffs served written discovery and noticed a 30(b)(6) deposition to learn more about Wells Fargo's policies and practices. Included in this discovery were several requests for information about Wells Fargo's pay policies. For example, Plaintiffs sought documents describing "Wells Fargo's compensation policies and procedures," and "records regarding or relating to any requirement that overtime hours worked by loan processors must be approved or pre-approved." *See* August 8, 2006 Request for Production of Documents (attached as Exhibit B to April 9, 2008 Declaration of George Hanson). Wells Fargo objected to the discovery and refused to produce documents related to its corporate compensation policies. Based on Wells Fargo's objections, Plaintiffs were left to rely upon Wells Fargo's representations made to counsel and to the Court. Accepting Wells Fargo's representations that the compensation problems were discreet and localized as candid, Plaintiffs stipulated to a limited class. The limited class included two subclasses:

1.      All current and former retail "loan processors" employed by Wells Fargo within the previous three years from the date of the filing of this stipulation who were employed in the United States whose records show they recorded overtime, but whose records also show they were not paid for in excess of five (5) hours of that overtime; and

2.    All current and former retail "loan processors" employed by Wells Fargo within the previous three years from the date of the filing of this stipulation who were employed in Region 10.

Specifically excluded from the class were Loan Processors working in Fulfillment Centers. At the time, Wells Fargo clearly understood that Plaintiffs intended to expand their class definitions in the event new evidence demonstrated additional injured persons may exist. *See, e.g.,* August 11, 2007 email from Wells Fargo counsel to Plaintiffs' counsel ("***You will not agree to be precluded from seeking to expand the class*** if you discover evidence of unpaid overtime in other regions and a reasonable level of similarity exists between the current class and any proposed addition to the class.") (emphasis added) (Attached as Exhibit C to April 9, 2008 Declaration of George Hanson).

With regard to sub-group 1, Wells Fargo provided (what it represented to be) a list of Loan Processors who recorded at least some overtime, but were not paid for it. Wells Fargo identified approximately 293 individuals. Notice was mailed to the stipulated classes in late 2006. Shortly after notice went out to the stipulated class, Plaintiffs' counsel received several communications from prospective clients and learned that the FLSA violations affected a broader class than Wells Fargo had previously represented. As even Wells Fargo now recognizes, individuals in Fulfillment Centers and regions across the country (that were previously excluded from the class) were similarly aggrieved by Wells Fargo's illegal practices. As a result, Plaintiffs Basore and McMillian filed a more expansive nationwide case on January 25, 2007. Shortly after Plaintiffs filed *Basore*, Wells Fargo moved for § 1407 transfer with the Judicial Panel on Multidistrict Litigation. After the case was transferred to this Court, the parties agreed to stay formal discovery in hopes that an early mediation would resolve the case. The mediation

5

failed on September 20, 2007 and Plaintiffs served renewed discovery requests on Wells Fargo four days later and served a 30(b)(6) deposition notice on October 17, 2007. Wells Fargo still has not completed its document production and still has not produced complete testimony on many of the topics identified in the 30(b)(6) deposition notice.

Plaintiffs had hoped to receive all responsive documents before conducting their Rule 30(b)(6) depositions and before they began briefing class certification and the nationwide application of § 17200. In the interest of meeting the initial briefing schedules, however, Plaintiffs went forward and conducted their initial 30(b)(6) depositions before Wells Fargo completed its document production. Specifically, Plaintiffs took their first 30(b)(6) deposition on January 31, 2008. At that deposition, *Plaintiffs learned for the first time about the Standard Hours policy and that all non-exempt Team Members – not just loan processors – were paid pursuant to the same corporate-wide policies*.

As a result of the recently-produced information, the scope of the case has expanded. It is now clear that *all* non-exempt Team Members, not just loan processors, were paid pursuant to Wells Fargo's illegal policy. It is now clear that since 2002 Wells Fargo knew its policy was illegal. And it is now clear that Wells Fargo knew its non-exempt Team Members, not just loan processors, were underpaid as a result of the Standard Hours policy. Despite all of this, Wells Fargo represented to Plaintiffs, and more importantly, represented to the Court in *Bowne* that

1   Loan Processors were paid properly and that the pay problems suffered by a few loan processors

2   were localized and not related to any corporate policy. A review of the PPI memorandum alone

3   demonstrates that Wells Fargo's representations were incorrect and had the effect of misleading

4   Plaintiffs. Plaintiffs only recently learned that Wells Fargo's representations were untrue. One

5   month after receiving the PPI document, Plaintiffs incorporated the new information into their

6   Consolidated Complaint, and predictably, Wells Fargo wants to avoid the consequences of its

7   admitted non-compliance by having the Consolidated Complaint stricken.

8

9   **C.    WELLS FARGO'S CORPORATE-WIDE POLICIES RESULTED IN WIDESPREAD UNDERPAYMENT OF THE CLASS.**

10      Until January 1, 2006, all Wells Fargo Team Members classified as non-exempt were

11   paid pursuant to the same illegal policy referred to as "Standard Hours." Under the Standard

12   Hours policy, non-exempt Team Members were (i) paid for assumed "Standard Hours" (e.g.,

13   forty hours per week) rather than actual hours worked, and (ii) paid twenty-four times per year

14   on a semi-monthly cycle. The Standard Hours policy systematically underpaid Team Members

15   because they were, as a rule, paid for the same standard hours every pay period regardless of the

16   actual number of days or hours worked.

17      While Team Members were formally classified as "non-exempt" hourly employees, the

18   Standard Hours policy treated them as salaried employees not entitled to overtime.

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26.
27
28

**III.    LEGAL ARGUMENT**

    **A.    WELLS FARGO'S MOTION IS MERELY AN ATTEMPT TO AVOID CLEAR LIABILITY.**

    Wells Fargo's Motion to Strike does not seriously dispute that there are vast numbers of Team Members who were underpaid as a result of the Standard Hours policy. And Wells Fargo does not dispute that it knew the Standard Hours policy was unlawful. Wells Fargo's sole strategy is to minimize its exposure by limiting the size and scope of the class. Wells Fargo seeks to limit the class in two ways: (1) by procedurally precluding a Consolidated Complaint expanding the class; and (2) by delaying class notice in order to facilitate the running of the statute of limitations. Because Wells Fargo admits that all non-exempt Team Members, not just loan processors, were paid pursuant to the Standard Hours policy, it results to tossing up procedural roadblocks in order to limit its significant exposure. Wells Fargo knows that the longer it can delay these proceedings and class notice in particular, the more FLSA claims of its injured Team Members will expire. Because Wells Fargo transitioned from its illegal Standard Hours policy to a Positive Pay policy in January 2006, injured Team Members will not be able to

1  recover unless they learn of, and are able to join this case, immediately.  Wells Fargo knows this

2  and is intent on delaying the filing of a Consolidated Complaint so that the limitations period on

3  these claims continues to run.

**B.    PLAINTIFFS' PROPERLY FILED THEIR CONSOLIDATED COMPLAINT PURSUANT TO COURT ORDER AND COMMONLY-USED MDL PROCEDURES.**

6      After the JPML transferred *Bowne* and *Basore*, this Court issued a November 13, 2007

7  Case Management Order.  That Order specifically stated that Plaintiffs' counsel shall file a

8  consolidated complaint.  *See* November 13, 2008 Case Management Order (Doc. 12).  This case

9  involves two underlying lawsuits involving the same defendant, the same counsel, similar classes

10  and the same legal theories.  Because of this dynamic and the unique context of the MDL

11  proceedings, Plaintiffs' counsel filed what is analogous to a first operative complaint in this

12  MDL proceeding.  In this context, Plaintiffs do not believe the Consolidated Complaint is subject

13  to the amendment requirements of Rule 15(a).  Such consolidated complaints are routinely filed

14  in the MDL context.  *See, e.g.,* Manual for Complex Litigation § 20.132, n. 668; *Solis v. Lincoln*

15  *Electric Co.*, No. 04-cv-17363, 2006 WL 266530, *4 (N.D. Ohio Feb. 1, 2006).  Because

16  Plaintiffs were not only permitted to file a consolidated complaint, but specifically instructed to

17  do so, Wells Fargo's Motion to Strike should be denied in its entirety.

**C.    EVEN IF THE CASE MANAGEMENT ORDER DID NOT GRANT PLAINTIFFS LEAVE TO MAKE AMENDMENTS TO THE CLASS DEFINITION IN THEIR CONSOLIDATED COMPLAINT, LEAVE TO AMEND SHOULD NEVERTHELESS BE GRANTED.**

22      Even if this Court were to determine that Plaintiffs' Consolidated Complaint was not

23  permitted by the Case Management Order, there is no question that leave should be granted for

24  Plaintiffs to file their Consolidated Complaint.  Fed.R.Civ.P. 15(a) states that leave to amend

25  "shall be freely given when justice so requires."  A district court is presumptively required to

26  allow amendment of a complaint unless the defendant can prove bad faith, undue delay,

9

prejudice to the opposing party, or futility. *Griggs v. Pace Am. Group*, 170 F.3d 877, 880 (9th Cir. 1999). The policy of permitting amendment "is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon*, 316 F.3d 1048, 1051 (9th Cir. 2003). The party opposing the amendment bears the burden of showing prejudice. *DCD Programs Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). And courts routinely permit the amendment of class definitions and always have the discretion to modify a class definition pursuant to Rule 23. *See* Fed.R.Civ.P 23(c)(1); *Perez v. Tilton*, No. 05-05241, 2008 WL 686723, *4 (N.D. Cal. 2008) (court has discretion to amend class definition before final judgment); *Prado-Steiman v. Bush*, 221 F.3d 1266 (11th Cir. 2001) (Rule 23(c)(1) grants broad discretion to district court to amend class definition any time through the litigation, prior to a final decision on the merits); *Shin v. Cobb County Bd. Of Educ.*, 248 F.3d 1061 (11th Cir. 2001) (courts certify amendments to class definitions that arise well after plaintiffs submit certification motions); *Intratex Gas co. v. Beeson*, 22 S.W.3d 398 (Tex. 2000) ("the contours of the case may change after discovery is completed and as the parties prepare for trial, necessitating modification of the class definition"); *McPhail v. First Command Financial Planning, Inc.*, 247 F.R.D. 598, 608 (S.D. Cal. 2007) (granting motion to amend class definition to conform to the court's certification decision).

Here, there is no reason that leave should not be granted for Plaintiffs to file their Consolidated Complaint. Plaintiffs diligently filed the Consolidated Complaint after obtaining the crucial Standard Hours discovery. Wells Fargo demonstrates little, if any, prejudice that would result from filing the updated pleading. The prejudice Wells Fargo attempts to assert (that Plaintiffs waited too long to make the amendment) is a direct result of its own cover up and failure to produce key documents and testimony in this case in a timely manner. Under the circumstances, leave to amend should be granted because as soon as Plaintiffs received the

1    critical documents and deposition discovery that shed light on the Standard Hours policy,

2    Plaintiffs filed their Consolidated Complaint. This is not a case where the discovery cut-off is

3    nearing or where Plaintiffs unfairly delayed in making amendments. While Wells Fargo may

4    find it inconvenient that Plaintiffs discovered the overarching corporate policy that caused the

5    widespread underpayment of wages, additional exposure to liability is not the kind of undue

6    prejudice that weighs against leave to amend.

7
         Wells Fargo also claims that it will need more time to mount a defense to class
8
9    certification. But the Standard Hours policy underlying the Loan Processors' underpayment is

10   the identical policy affecting all non-exempt Team Members. Thus, the relevant discovery is

11   already in place. In any event, had Wells Fargo produced the requested documents in a timely

12   fashion, it would not be in this position – Wells Fargo's alleged timing predicament is a result of

13   its own choice to conceal the true nature of this case from Plaintiffs.

14
         Wells Fargo disingenuously claims that Plaintiffs had over two years to amend the
15
16   Complaint – this argument borders on the absurd.[1] A case management order was not even

17   entered in this case until November 2007. And importantly, Wells Fargo did not produce the

18   documents or provide the testimony going to the very heart of the litigation until several weeks

19   ago. For the most part, the litigation has been delayed because of the lengthy MDL transfer

20   process and Wells Fargo's document production that has now lasted more than six months.

21   Plaintiffs cannot be taken to task for now seeking to incorporate the recently-learned facts that

22
     _____
23        [1] One of Wells Fargo's most frivolous arguments is that Plaintiffs' amendment is
     untimely because the initial case management order set in the *Bowne* case required amendments
24   to be filed by now. Had the case proceeded as planned in *Bowne* – without Wells Fargo moving
     for transfer pursuant to § 1407 and without Wells Fargo taking two years to produce the relevant
25   documents in this case – then perhaps the *Bowne* order would have some significance. But the
     *Bowne* order is a legal nullity that is clearly superseded by the transfer of *Bowne* to this Court
26   and this Court's most recent Case Management Order. Indeed, *Bowne* has been administratively
     dismissed in favor of this litigation.
27

28
                                              11

are central to the case.

Wells Fargo also claims that it will be prejudiced by the Consolidated Complaint because Wells Fargo was not on notice of the expanded class definition.

While Plaintiffs initially focused on loan processors who were paid improperly, Wells Fargo cannot claim it was prejudiced simply because Plaintiffs now know the complete truth. Further, from the beginning, Plaintiffs defined the class broadly to include other people who were "similarly situated." *See, e.g.,* Initial *Basore* Complaint ("The class of employees on behalf of whom Plaintiffs bring this "opt-in" collective action is similarly situated because they have been or are employed in the same or similar position as individually-named Plaintiffs and were subject to the same or similar unlawful practices as the individually-named Plaintiffs.").

Plaintiffs now know that *all* non-exempt Team Members are similarly situated because they were all paid pursuant to the same illegal policy. While Plaintiffs' early focus was on loan processors, Wells Fargo was on notice that similarly situated employees could become part of the case. Wells Fargo knew that loan processors were no different than other job classifications governed by the Standard Hours policy and it knew it was only a matter of time before Plaintiffs learned the truth. But even if Wells Fargo was actually surprised that the class definition expanded to include persons other than loan processors, it is still not unduly prejudiced because merits discovery has not yet commenced and the Court has not even set a discovery cut-off or trial date. Further, there are no new claims or legal theories at issue. The issue before the Court, for loan processors and other Team Members alike, is whether Standard Hours was illegal and resulted in underpayment to class members. And as the documents that Wells Fargo has

12

produced to date make clear, Wells Fargo did not have separate compensation policies and practices for loan processors versus other non-exempt Team Members – they were all paid pursuant to Standard Hours. Thus, the key discovery that has been completed in this case applies uniformly to the new class members. Wells Fargo will not, therefore, be required to duplicate its efforts as the documents relevant to loan processors should be identical to the documents relevant to other non-exempt Team Members.

Wells Fargo also objects that Plaintiffs formally add Wells Fargo & Company to the new Complaint. But there can be no prejudice since Wells Fargo itself recognizes that Wells Fargo Bank, N.A. and Wells Fargo & Company are one and the same. *See* Wells Fargo & Company Annual Report 2006, p.5 (Attached as Exhibit E to April 9, 2008 Declaration of George Hanson) ("we're changing the way we think and act--as one company, not 80+ separate businesses. Among ourselves, we call this way of thinking and acting 'one Wells Fargo.' We're asking ourselves, 'what are the most significant ways we can present ourselves to our customers as *one* company?' We want our customers to see us as one organization. . .."). Because (1) the operations of Wells Fargo Bank, N.A. are interrelated with Wells Fargo & Company, and (2) the companies share common management, including a common human resources department, a common legal department and a common compliance function, Wells Fargo Bank, N.A. and Wells Fargo and Company are joint employers of non-exempt Team Members and are jointly and severally liable for violations of the FLSA. *See Torres-Lopez v. May*, 111 F.3d 633, 639 (9th Cir. 1997) (noting "the concept of joint employment should be defined expansively under the FLSA"). Further, once they discovered that the corporate entities are one and the same, Plaintiffs have made it consistently clear that they were seeking discovery from both Wells Fargo Bank, N.A. and Wells Fargo & Company. *See, e.g.,* August 8, 2006 Request for Production of

13

Documents (attached as Exhibit B to April 9, 2008 Declaration of George Hanson) (defining Wells Fargo broadly to include all divisions). There is nothing prejudicial to Wells Fargo about clarifying the parties participating in this case and Wells Fargo can articulate no prejudice as a result of the amendment.

Wells Fargo also claims that amending the class definition frustrates the policy underlying the MDL mechanism because the Consolidated Complaint does not help streamline and economize the proceedings so as to avoid duplication of effort. First, consolidating the cases is the most efficient way of proceeding. But in any event, the alternative to amendment would be far more complex and inefficient. If Plaintiffs' Consolidated Complaint is stricken and Plaintiffs are not granted leave to amend, Plaintiffs will be required to file a new lawsuit. The result would have the very opposite effect of furthering the policies underlying the MDL mechanism. The Consolidated Complaint promotes efficiency and judicial economy.

Finally, Wells Fargo vehemently opposes Plaintiffs' tolling and limitations period allegations. Wells Fargo wants to procedurally block as many potential plaintiffs from joining this case as possible. But Wells Fargo's limitations period arguments are premature. The Court will determine issues relating to tolling and relation back in the future and on their full merits. Wells Fargo cites no authority for the proposition that the Court may deny leave to amend on the basis that the amendment may not relate back or that equitable tolling may not be available. To the contrary, those issues are not ripe for disposition at this juncture. *See, e.g., Reynov v. ADP Claims Services Group, Inc.,* 2006 WL 3782837, 4 (N.D. Cal. 2006) (distinguishing relation back under Rule 15(c) from leave to amend under Rule 15(a) and ruling that "the only standard" in determining whether leave to amend should be granted is found in Rule 15(a), not Rule 15(c)). *See also Adams v. Inter-Con Security Systems, Inc.,* 242 F.R.D. 530 (N.D. Cal. 2007)

1  (determining issues of tolling and statute of limitations in FLSA lawsuit when addressing class

2  notice).

3  **IV.    CONCLUSION**

4      Wells Fargo's claims of prejudice are disingenuous and constitute thinly-veiled attempts

5  to limit its liability for clear FLSA and California law violations.  The Consolidated Complaint

6  was authorized by the Case Management Order and was filed as an immediate response to the

7  recently-produced discovery and as an attempt to streamline the litigation.  Plaintiffs could not

8  possibly have filed a consolidated and updated pleading until they received at least some initial

9  documents and testimony.  This can be no surprise as Wells Fargo has been on notice for years

10 that the violations in this case were not limited to loan processors, but rather affect all non-

11 exempt Team Members subject to the Standard Hours compensation policy.  The Court should

12 deny Wells Fargo's Motion to Strike.  In the alternative, the Court should grant leave for

13 Plaintiffs to amend the Complaint for the reasons stated above.

14 **Dated: April 9, 2008**

15                       Respectfully submitted,

16                       **STUEVE SIEGEL HANSON LLP**

17

18                       By:_____/s/ George A. Hanson_____
                            George A. Hanson
19                          hanson@stuevesiegel.com
                            Norman E. Siegel
20                          siegel@stuevesiegel.com
                            Eric L. Dirks
21                          dirks@stuevesiegel.com
                            Ashlea G. Schwarz
22                          ashlea@stuevesiegel.com
                            460 Nichols Road, Suite 200
23                          Kansas City, Missouri 64112
                            Telephone:    (816) 714-7100
24                          Facsimile:    (816) 714-7101

25                       **LEAD COUNSEL FOR PLAINTIFFS**

26

27                              15

28

1

### CERTIFICATE OF SERVICE

2    The undersigned hereby certifies on the 9th day of April, 2008, I emailed the foregoing to the

3    following:

4

5              Denise K. Drake
               ddrake@spencerfane.com
6              Eric P. Kelly
               ekelly@spencerfane.com
7              Spencer Fane Britt & Browne
               1000 Walnut, Suite 1400
8              Kansas City, MO 64106
               PH:    816-474-8100
9              FAX:  816-474-3216

10             ATTORNEYS FOR DEFENDANT

11

12                                    _____/s/ George A. Hanson_____
                                      Attorney for Plaintiffs
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____16_____