Denise K. Drake (KS 15800)
ddrake@spencerfane.com
Eric P. Kelly (KS 22503)
ekelly@spencerfane.com
SPENCER FANE BRITT & BROWNE LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106
Telephone:    816-474-8100
Facsimile:    816-474-3216

Joan B. Tucker Fife (SBN: 144572)
jfife@winston.com
Robert Spagat (SBN: 157388)
rspagat@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5894
Telephone:    415-591-1000
Facsimile:    415-591-1400

Attorneys for Defendants Wells Fargo Home
Mortgage, a Division of Wells Fargo Bank, N.A.
and Wells Fargo Bank, N.A.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE WELLS FARGO LOAN PROCESSOR OVERTIME PAY LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL CASES | MDL No. 07-CV-1841 (MHP)<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' 17200 CLAIMS**<br><br>Date:    April 28, 2008<br>Time:    2:00 p.m.<br>Ctrm:    15<br>Judge:   Hon. Marilyn Hall Patel |

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT AND AUTHORITIES....................................................................................2

    A. Plaintiffs Have Had A Full and Fair Opportunity For Discovery On The 17200 Issues That The Parties Agreed To Address Prior To Discovery On The Merits..........2

    B. The Alleged Misconduct Did Not Emanate From California; Plaintiffs Contrary Assertions Simply Ignore The Record. .......................................................................4

        1. Section 17200 Claims Based On The Emanation Theory Must Be Based On Allegedly Unlawful Conduct Emanating From California. .......................4

        2. Plaintiffs Do Not Present Any Evidence That A Decision Was Made By Anyone In California To Leave Any Unlawful Policy In Place. ..............5

        3. Any Deviations From Wells Fargo's Policies Were, By Definition, Local In Nature And Did Not Emanate From California. .......................................6

    C. Application Of Section 17200 To Thousands Of Employees With No Reasonable Expectation That California Law Governs Or Governed Their Employment Relationship With Wells Fargo Does Not Survive Due Process Scrutiny.....................7

    D. Courts Have Not Uniformly Held That The Fair Labor Standards Act Does Not Preempt Section 17200 Claims. ...................................................................................9

    E. Giving Extraterritorial Effect To Section 17200 In This Case Violates the Commerce Clause. .....................................................................................................11

    F. Plaintiffs Effectively Ask This Court To Dismiss The Rules Enabling Act................11

III. CONCLUSION....................................................................................................................11

CERTIFICATE OF SERVICE .........................................................................................................12

EXHIBIT A......................................................................................................................................13

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003) ................................................................6

*Bahramipour v. Citigroup Global Markets, Inc.*, No. 04-4440, 2006 WL 449132 (N.D. Cal. Feb. 22, 2006) ................................................................9, 10

*Barnett v. Washington Mutual Bank*, No. 03-00753, 2004 WL 2011462 (N.D. Cal. Sep. 9, 2004) .......10

*DeCanas v. Bica*, 424 U.S. 351 (1976) ................................................................9

*Doo Nam Yang v. ACBL Corp.*, 427 F.Supp.2d 327 (S.D.N.Y 2005) ................................................................6

*Edgar v. MITE Corp.*, 457 U.S. 624, 642-43 (1982) ................................................................11

*Edwards v. City of long Beach*, 467 F.Supp.2d 986 (C.D. Cal. 2006) ................................................................9, 10

*Ellis v. Edward D. Jones & Co.*, 527 F.Supp.2d 439 (W.D. Pa. 2007) ................................................................11

*In re Wells Fargo Home Mortgage Overtime Pay Litigation*, MDL Case No. MDL-1770 (N.D. Cal. Aug. 13, 2007) ................................................................5

*Leuthold v. Destination America, Inc.*, 224 F.R.D. 462 (N.D. Cal. 2004) ................................................................9, 10

*Local 246 Util. Workers Union of Am. v. Southern Cal. Edison Co.*, 83 F.3d 292 (9th Cir. 1996) ........6

*NCAA v. Miller*, 10 F.3d 633 (9th Cir. 1993) ................................................................11

*Standfacts Credit Servs., Inc. v. Experian Info. Solutions, Inc.*, 405 F.Supp.2d 1141 (C.D. Cal. 2005) ................................................................4

**FEDERAL STATUTES**

29 U.S.C. §§ 201 *et seq.* ................................................................6

29 U.S.C. § 2072(b) ................................................................6

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................2

Fed. R. Civ. P. 23(c) ................................................................2

Fed. R. Civ. P. 56 ................................................................2

**UNITED STATES CONGRESSIONAL RECORD**

S.Rep. No. 109-14, *reprinted in* 2005 U.S.C.C.A.N 3 ..........................................................10, 11

**STATE CASES**

*Harris v. Investor's Business Daily, Inc.*, 138 Cal.App.4th 28 (2006) ......................................10

*Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214 (1999) ....................................4

**STATE STATUTES**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ....................................................................................1

## I. INTRODUCTION

Under Plaintiffs' worldview, any conduct by an employer allegedly connected to California entitles employees nationwide – even those who never worked in California – to seek remedies pursuant to California law. The fallacies inherent in such a view are manifest. Nonetheless, after months and even years of formal and informal discovery, Plaintiffs cannot point to any evidence indicating that Wells Fargo engaged in *misconduct* that has any connection with California sufficient to sustain Plaintiffs' claims brought pursuant to Cal. Bus. & Prof. Code §§ 17200 et seq. ("Section 17200"). Furthermore, Plaintiffs cannot point to any evidence indicating that those who never worked in California (hereinafter, "Non-California Plaintiffs") had any reasonable basis to believe that their employment with Wells Fargo was or would be governed by California law – a critical requirement to comport with due process. These claims should be dismissed accordingly.

Moreover, despite their repeated representations, Plaintiffs did not "very recently" discover Wells Fargo's Standard Hours time reporting system for loan processors and other non-exempt employees of Wells Fargo.[1] Pl. Memo. In Opp. At 9:9. Wells Fargo disclosed this information in *August 2006*. Plaintiffs spurious accusations and implicit requests for additional discovery (and assertion that this Court should consider their arguments in their certification moving papers) in response to Wells Fargo's Motion to Dismiss are unavailing and should be set aside. The parties have engaged in more than ample discovery to decide the Section 17200 issues before the Court; Plaintiffs' attempt to discredit Wells Fargo's conduct in this litigation is disingenuous and wholly unsupported by the record.

Accordingly, for the reasons set forth in its Motion, Memorandum in Support, and the analyses set forth below in this Reply, Wells Fargo respectfully requests that this Court dismiss Plaintiffs' Section 17200 claims.

---

[1] One day after Wells Fargo filed its Motion to Dismiss, Plaintiffs—without leave of Court—filed a "Consolidated Complaint" that, by Plaintiffs admission, vastly amends the class definition alleged in these proceedings. [Doc. 31]. Wells Fargo further notes that Plaintiffs' own description in their opposition to Wells Fargo's Motion to Dismiss refers to their "amended" class definition. Pl. Memo. in Opp. at 2:15-16. Wells Fargo has addressed this filing in a separate Motion to Strike before the Court. [Docs. 33-35, 44-46].

## II. ARGUMENT AND AUTHORITIES

Wells Fargo presents its Motion to Dismiss pursuant to Fed. R. Civ. P 23(c), whereby this Court must decide "at an early practicable time" whether it might ultimately certify a class consisting of claims of Non-California Plaintiffs pursuant to Section 17200. *See* WF Mtn. to Dismiss at 4:2-8, n.7 [Doc. 26]. Furthermore, Wells Fargo presents bases for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief may be granted. Under either of these analyses, Plaintiffs have failed to satisfy their burden to demonstrate that the Section 17200 claims of loan processors (or any other non-exempt employee) are properly included and have failed to state claims upon which relief may be granted.

In the alternative, and because the parties agreed to conduct a period of discovery specifically regarding claims brought by Plaintiffs pursuant to Section 17200, Wells Fargo also presents its Motion pursuant to Fed. R. Civ. P. 56. *See* WF Mtn. to Dismiss at 4 n.7. After a full opportunity for discovery, there is no genuine issue of material fact that the allegedly unlawful conduct did not emanate from California. Wells Fargo is, therefore, entitled to judgment as a matter of law on Non-California Plaintiffs' Section 17200 claims. *See* Fed. R. Civ. P. 56(c).

### A. Plaintiffs Have Had A Full and Fair Opportunity For Discovery On The 17200 Issues That The Parties Agreed To Address Prior To Discovery On The Merits.

At the outset, Plaintiffs assert that the record developed to date is "more than sufficient" to evaluate Wells Fargo's Motion to Dismiss Plaintiffs' 17200 Claims. *See* Pl. Memo. in Opp. at 8:21-22. Nonetheless, only one sentence later, Plaintiffs assert that discovery in this matter is "ongoing and far from complete." *See* Pl. Memo. in Opp. at 8:23. In particular, Plaintiffs represent that they initially served discovery regarding Wells Fargo's compensation policies in August 2006. Plaintiffs then misrepresent that Wells Fargo did not provide "documentation or testimony" about the Standard Hours time reporting system "until very recently" and "[o]nly several weeks ago." *Id.* at 9:2-3. This accusation is patently false. *See* WF Reply for Mtn. to Strike [Doc. 44-46, incorporated herein by reference]. This Court should ignore such inflammatory, baseless accusations.[2]

---

[2] Wells Fargo also objects to various representations in Plaintiffs' "Summary of Facts" included in their opposition memorandum. *See* Pl. Memo. in Opp. at 2:19-8:6. Wells Fargo has compiled its

On July 25, 2006, and August 1, 2006, **Plaintiffs** represented to the court in *Bowne* that no formal discovery was necessary prior to the court's ruling on Plaintiffs' motion for conditional certification of a collective action. *See* Declaration of Denise K. Drake in Support of Wells Fargo's Motion to Strike Consolidated Complaint (Drake Decl., ¶¶8-9; Ex. 1) [Doc. 45].³ After Wells Fargo filed its brief opposing class certification on August 3, 2006, Plaintiffs had a change of heart. On August 8, 2006, Plaintiffs served a notice of deposition pursuant to Fed. R. Civ. P. 30(b)(6) regarding 18 topics, 17 interrogatories, and 21 requests for production of documents and things. (Drake Decl., ¶11). After Wells Fargo objected to Plaintiffs' "about face" – which violated the Court's express order – **Plaintiffs** proposed to limit the production of documents to "four discrete categories of information" and suspend formal discovery. (Drake Decl., ¶¶13-15, ; Ex. 3-4).

Wells Fargo agreed to Plaintiffs' proposal. As a result, on August 14, 2006, Wells Fargo **voluntarily** produced personnel files and job descriptions for Plaintiffs. (Drake Decl., ¶18); Supplemental Declaration of Eric P. Kelly in Support of Defendants Wells Fargo Mortgage, a Division of Wells Fargo, N.A., and Wells Fargo, N.A.'s Motion to Strike Consolidated Complaint and/or Portions of Consolidated Complaint (Supp. Kelly Decl., ¶4, Ex. 1-4) [Doc. 46]. Wells Fargo also **voluntarily** produced three iterations of its "Handbook for Wells Fargo Team Members" (the "Handbook"), which Plaintiffs had not even requested in their "four discrete categories." (Supp. Kelly Decl., ¶4, Ex. 4); *see also* Declaration of Elise Reiser in Support of Motion to Dismiss (Reiser Decl., ¶¶7-9, Ex. 3-5) [Doc. 28]. By August 20, 2006, Wells Fargo produced the compilations of records of time worked and compensation received by each Plaintiff, as requested by Plaintiffs. (Drake Decl., ¶¶19-20).

The personnel files produced to Plaintiffs contained at least one "Employee Profile" for each Plaintiff, which expressly identified the Standard Hours allocated to each of them and explained that "Standard Hours" are "[t]he number of hours the position is regularly paid for each week." (Supp. Kelly Decl., ¶4, Ex. 1); (Reiser Decl., ¶5, Ex. 1). The three iterations of the Handbook also explicitly

---

objections in Exhibit A ("Responses Plaintiffs' Summary of Facts"), attached hereto and incorporated herein by reference.

³ Plaintiffs in *Bowne* filed their motion for conditional certification of a collective action on July 7, 2006. (Drake Decl., ¶5).

addressed Standard Hours and Wells Fargo's overtime policies. (Supp. Kelly Decl., ¶4, Ex. 1); (Reiser Decl., ¶¶7-9, Ex. 3-5). In particular, the 2001 and 2004 versions of the Handbook define Standard Hours differently than the 2006 version, because Wells Fargo had changed its time reporting and payroll processing protocols by September 2005. (Supp. Kelly Decl., ¶4, Ex. 2-4 at W000844, W001025); (Reiser Decl., ¶7, Ex. 3, at W001175); Deposition of Teresa Swanson ("Swanson Dep.") at 126:10-127:11 (regarding timing of changes).[4]

### B. The Alleged Misconduct Did Not Emanate From California; Plaintiffs Contrary Assertions Simply Ignore The Record.

Despite years of informal discovery and months of formal discovery – a procedure that Plaintiffs proposed and agreed to in *Bowne* and these consolidated proceedings – Plaintiffs assert that they can rest upon mere allegations to avoid dismissal of their Section 17200 claims. Pl. Memo. in Opp. At 10:8-10. That Plaintiffs take such an untenable position is, in some respects, not surprising. The record established in over two years of litigation is devoid of any evidence that the alleged *misconduct* had any connection with California sufficient to afford California remedies to employees nationwide. As a result, Plaintiffs' Section 17200 claims are not properly before this Court and must be dismissed.

#### 1. Section 17200 Claims Based On The Emanation Theory Must Be Based On Allegedly Unlawful Conduct Emanating From California.

Claims under Section 17200 cannot be grounded in *any* alleged conduct. It is essential that the conduct must be unlawful, unfair, or fraudulent. *See* Cal. Bus. & Prof. Code § 17200 (prohibiting "unlawful, unfair or fraudulent business act or practice"). Further, the fact that a company is headquartered or incorporated in California is insufficient to maintain Section 17200 claims. *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214, 226 (1999). Similarly, the wrongful conduct itself, beyond merely related activities, must occur in California. *See, e.g., Standfacts Credit Servs., Inc. v. Experian Info. Solutions, Inc.*, 405 F.Supp.2d 1141, 11147-48 (C.D. Cal. 2005) (granting motion to dismiss for failure to state a claim).

---

[4] Portions of the transcript of the Deposition of Teresa Swanson are attached as Exhibit 15 to the Declaration of Eric P. Kelly submitted in Support of Motion to Dismiss [Doc. 27].

In challenging the Standard Hours time reporting system, Plaintiffs assert that the "authority over the Standard Hours policy resided in California." Pl. Memo. in Opp. at 11:16. Plaintiffs' basis is that the decision to transition *from* that policy to another was ultimately approved by executives in California. *See id.* at 11:16-22. Plaintiffs, however, do not allege that the decision to make such a transition was in any way unlawful. Indeed, based on their allegation that the Standard Hours time reporting system was "illegal" in the first instance (which Wells Fargo denies), the decision to transition from that policy was, by Plaintiffs' own definition, a wholly lawful decision that did not violate Section 17200. *Id.* at 11:18.

### 2.     Plaintiffs Do Not Present Any Evidence That A Decision Was Made By Anyone In California To Leave Any Unlawful Policy In Place.

Plaintiffs base their concept of misconduct on the allegation that Wells Fargo did not implement changes to the Standard Hours time reporting system before 2005, despite "knowing" that the system was "illegal" in 2002. *Id.* at 11:24-13:9. After months and years of discovery, Plaintiffs' allegation is baseless. First, Wells Fargo did not have such knowledge. As explained in Wells Fargo's Reply Brief in Support of its Motion to Strike, Plaintiffs reliance upon references to an opinion letter from the California State Labor Commissioner – which was neither directed at Wells Fargo nor legally binding – is of no consequence. *See* WF Reply for Mtn. to Strike at 10:1-14, Ex. A. There is nothing inherently unlawful about a Standard Hours time reporting system.

Second, Plaintiffs' allegation that "the Standard Hours policy was maintained and authorized from California" is baseless. *See* Pl. Memo. in Opp. at 10:5-6. Plaintiffs do not provide a single citation to the record to support this broad assertion. *See id.* at 10:5-6 (citing only to the "Summary of Facts," which Wells Fargo has separately responded to, *see supra* Part II). Rather, Plaintiffs refer to Wells Fargo's headquarters, various executives, and a single document to assert that "authority over the Standard Hours policy resided in California," a document that was not properly authenticated in a signed declaration pursuant to Civil Local Rule 7-5(a) and provides no insight as to who had such authority. Pl. Memo. in Opp. at 11:15-23.

Equally important, in *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, MDL Case No. MDL-1770 (N.D. Cal. Aug. 13, 2007), this Court based its order permitting Section 17200 claims to

proceed on evidence that a *decision* had been made regarding the classification of loan processors, irrespective of whether the decision affected a change. See Mem. & Order at 6:25-8:4. Here, despite Plaintiff's knowledge of the Standard Hours time reporting system since at least August 2006, Plaintiffs fail to offer any evidence that a decision "to continue" the system emanated from California. Pl. Memo. in Opp. at 13:3.

Furthermore, contrary to Plaintiffs' assertion, Wells Fargo has provided discovery establishing that the system originated with Wells Fargo's Minnesota-based predecessor, Norwest. *See* Swanson Dep. at 75:19-81:20, 83:7-84:16; *see also* WF Mtn. to Dismiss at 14:1-16:19. In fact, the system had been utilized since 1993 – long before the Minnesota entity acquired Wells Fargo. Swanson Dep. at 81:12-16, 20; *see also* WF Mtn. to Dismiss at 14:3-9. Thus, there is simply no evidence that the Standard Hours system itself emanated from California. The evidence substantiated through Wells Fargo's Motion clearly establishes that any decision related to this issue emanated from Minnesota.

Finally, Plaintiffs' analysis of "willful conduct" under applicable wage and hour laws is equally unfounded. Pl. Memo. in Opp. at 12:7-13:4. Plaintiffs' authorities simply do not support their suggestion that "willful conduct" alone under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* – without an analysis of where it occurred – may somehow sustain claims under Section 17200. Pl. Memo. in Opp. at 12:7-13:4; *see, e.g., Alvarez v. IBP, Inc.*, 339 F.3d 894, 908 (9th Cir. 2003) (addressing the FLSA and Washington wage and hour law, with no assertion of claims under Section 17200).[5] Indeed, after months and years of discovery, the only decision that "necessarily emanated" from California was that to transition from the Standard Hours system that Plaintiffs challenge. Pl. Memo. in Opp. at 13:4.

### 3. Any Deviations From Wells Fargo's Policies Were, By Definition, Local In Nature And Did Not Emanate From California.

Rather than addressing the inherently localized nature of any alleged violations of Wells Fargo's policies, Plaintiffs present unfounded rhetoric that "Wells Fargo refuses to take responsibility" and aims

---

[5] *See also Doo Nam Yang v. ACBL Corp.*, 427 F.Supp.2d 327 (S.D.N.Y 2005) (applying the FLSA any New York wage and hour law); *Local 246 Util. Workers Union of Am. v. Southern Cal. Edison Co.*, 83 F.3d 292 (9th Cir. 1996) (applying only the FLSA).

1  to "pin any blame" on and "sell out" its managers and loan processors. *Id.* at 16:21-17:15. Plaintiffs
2  again ignore the record in this case. To the extent that any loan processor has not yet been paid for
3  worked and recorded overtime, Wells Fargo decided to pay any and all overtime owed. *See* WF Mtn. to
4  Dismiss at 16:20-17:15 (citing Reiser Dep. 29:20-30:4, 38:19-39:1).

5      Plaintiffs' assertion that reliance on Wells Fargo's Handbooks "does nothing to shed light on
6  where Wells Fargo's illegal conduct occurred" is similarly misplaced. Pl. Memo. in Opp at 15:13-25.
7  The Handbooks illustrate lawful policies requiring non-exempt employees, such as loan processors, to
8  record all hours worked. *See* 2006 Employee Handbook, Section 5.7; 2004 Employee Handbook,
9  Section 5.7; 2001 Employee Handbook, Section 5.7.[6] Further, there is nothing unlawful about
10 incorporating a Standard Hours time reporting system within this policy. *See* WF Reply for Mtn. to
11 Strike at 8:16-9:8. Likewise, there is nothing unlawful about requiring non-exempt employees to seek
12 manager approval before working overtime. *See, e.g.*, 2004 Employee Handbook. As a result, to the
13 extent any failure to pay overtime occurred, it was not pursuant to any policy or because of any time
14 reporting system. *See* Pl. Memo. in Opp. at 13:15-16, 14:9-22 (noting Plaintiffs' conclusory *post hoc*
15 *ergo propter hoc* fallacy). Rather, it resulted from a ***violation*** of Wells Fargo's policies, *i.e.*, the failure
16 of a manager and non-exempt employee to follow policies and procedures outlined in Handbooks all
17 Plaintiffs received.

    C.    **Application Of Section 17200 To Thousands Of Employees With No Reasonable Expectation That California Law Governs Or Governed Their Employment Relationship With Wells Fargo Does Not Survive Due Process Scrutiny.**

21     Plaintiffs rest upon what they deem a "significant nexus" with California that "survives Due
22 Process scrutiny." Pl. Memo. in Opp. at 18:3-4. Setting aside that such a nexus does not exist, *see* WF
23 Mtn. to Dismiss at 18:11-19:10, Plaintiffs offer nothing to suggest that any Plaintiff outside of California
24 could have reasonably believed, or in fact believed, that California law governed their employment

---

[6]   The cited portions of each version of the Employee Handbook cited herein are available at Reiser Decl., ¶¶7-9, Ex. 3-5 [Doc. 28].

relationship with Wells Fargo – a critical consideration in the due process analysis that Plaintiffs overlook. See WF Mtn. to Dismiss at 19:11-20:7. Indeed, no such belief exists or could exist:

> All employment agreements with loan processors note that *Iowa law* applies. (Reiser Decl., ¶5, Ex. 1).

> The 2001 Employee Handbook provides:

> Daily – **Some states** also have provisions for paying nonexempt overtime pay based on daily work hours – for example, if you work more than 12 hours in one day. Check with your supervisor or HR consultant to see if this applies in *your area*.

See 2001 Employee Handbook, Section 5.7 (emphases added).

> The 2004 Employee Handbook provides:

> Daily – **Some states** also have provisions for paying nonexempt overtime pay based on daily work hours – for example, if you work more than 12 hours in one day. Check with your supervisor or HR consultant to see if this applies in *your area*. Overtime requirements for *your state* are also posted in your workplace.

See 2004 Employee Handbook, Section 5.7 (emphases added).

> The 2006 Employee Handbook provides:

> *Several states* also have specific regulations requiring that nonexempt team members take paid rest breaks. Check with your supervisor and follow the appropriate practice for *your state* or business.

> In some locations, there may also be *state laws* governing overtime pay.

> Daily – **Some states** also have provisions for paying nonexempt overtime pay based on daily work hours – for example, if you work more than 12 hours in one day. Check with your supervisor or HR consultant to see if this applies in *your area*. Overtime requirements for *your state* are also posted in your workplace.

See 2006 Employee Handbook, Sections 5.5-5.7 (emphases added).[7]

---

[7] The cited portions of each version of the Employee Handbook cited herein are available at Reiser Decl., ¶¶7-9, Ex. 3-5 [Doc. 28].

1  Significantly, each Plaintiff received an Employee Handbook (or a subsequent version) with many of the excerpts noted above (depending on the time they worked for Wells Fargo). *See* WF Mtn. to Dismiss at 7:1-6. Under these circumstances, Non-California Plaintiffs, let alone the thousands of loan processors and other non-exempt employees outside of California, could not have reasonably believed that California law afforded them any rights. Consequently, nationwide application of Section 17200 does not comport with due process.

**D.    Courts Have Not Uniformly Held That The Fair Labor Standards Act Does Not Preempt Section 17200 Claims.**

As an initial matter, while it is true that "[t]here is a presumption against implied preemption of State law in areas traditionally regulated by the States," *Bahramipour v. Citigroup Global Markets, Inc.*, No. 04-4440, 2006 WL 449132, *2 (N.D. Cal. Feb. 22, 2006), Plaintiffs fail to note an important distinction. "States possess broad authority under their police powers to regulate the employment relationship to protect workers *within the State*." *DeCanas v. Bica*, 424 U.S. 351, 356 (1976) (emphasis added).[8] Thus, this presumption does not apply in cases like the present, where Plaintiffs are attempting to use one state's laws to regulate the employment relationships of out-of-state employees (*i.e.*, Non-California Plaintiffs).

Furthermore, Plaintiffs' contention that "California state and federal courts have *uniformly* held that the FLSA does *not* preempt §17200 claims for restitution for unpaid wages" is simply not true. Pl. Memo. in Opp. 19:1-2 (emphasis added, in part); *see also* WF Mtn. to Dismiss at 22 n.32. For example, the courts in both *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462 (N.D. Cal. 2004), and *Edwards v. City of long Beach*, 467 F.Supp.2d 986 (C.D. Cal. 2006) have refused to certify both a FLSA opt-in collective action and a Rule 23 class action based on California state wage and hour law because doing so: (1) allows individuals to be the master of their own claims; (2) avoids confusion of requiring potential plaintiffs to both opt-in and opt-out; (3) avoids jurisdictional concerns that state claims would

---

[8]   Indeed, Plaintiffs own authorities recognize the critical distinction between applying Section 17200 to in-state versus out-of-state employees. "By allowing 'opt-out' class actions and longer statute of limitations for UCL claims, California provides increased protections for *its* workers, furthering the central purpose of the FLSA." *Bahramipour*, 2006 WL 449132, *7.

predominate due to the sheer number of members in the opt-out state action; and (4) does not frustrate the purpose of requiring plaintiffs to affirmatively opt-in to FLSA collective actions.

In addition, the primary cases cited by Plaintiffs do not implicate the issues addressed by Wells Fargo. The plaintiffs in *Barnett v. Washington Mutual Bank*, No. 03-00753, 2004 WL 2011462, *5 (N.D. Cal. Sep. 9, 2004) "[did] not expressly argue conflict preemption; instead…they contended that the FLSA is the exclusive remedy for claims that duplicate or are equivalent of rights protected by the FLSA." Similarly, *Bahramipour v. Citigroup Global Markets, Inc.*, 2006 WL 449132, *1, *6, and *Harris v. Investor's Business Daily, Inc.*, 138 Cal.App.4th 28, 31-32 (2006), only concerned Section 17200 class actions and did not also include a stand-alone FLSA opt-in collective action, as in the present case. Indeed, in *Bahramipour*, the court expressly noted that it was not considering the issues addressed in *Leuthold* and *Edwards* because they were not at issue in the case. *Bahramipour*, 2006 WL 449132, at *5 ("Because there will only be one class in this case, the court's concerns in *Leuthold* are not present here." "[A] request for an 'opt-in' and an 'opt-out' class presents unique concerns which do not apply here.")

Finally, Plaintiffs' discussion of a 2005 Senate Report deliberations presents a primrose path. In particular, Plaintiffs ignore the Senate's precise concern for "false federalism" – *i.e.*, certification of nationwide class actions based on the application of one state's laws. S. Rep. No. 109-14, at 63, *reprinted in* 2005 U.S.C.C.A.N. 3, 59.[9] "The effect of class action abuses in state courts is being exacerbated by the trend toward "nationwide" class actions, which invite one state court to dictate to 49 others what their laws should be on a particular issue, thereby undermining basic federalism principles." *Id.* at 24, *reprinted in* 2005 U.S.C.C.A.N. 3, 24. "The most egregious of such cases are those in which one state court issues nationwide rulings that actually contradict the laws of other states." *Id.* at 24, *reprinted in* 2005 U.S.C.C.A.N. 3, 24. Although the Senate discussed this concern in the context of state courts, the precise issue is implicated here: a nationwide class action pursuant to Section 17200 will trample wage and hour remedies available in sister states across the country. As the Senate noted,

---

[9] The February 28, 2005 Senate Report on the Class Action Fairness Action of 2005 is also available at 2005 WL 627977.

the Supreme Court "has repeatedly warned that courts should not attempt to apply the laws of one state to behaviors that occurred in other jurisdictions." *Id.* at 62, *reprinted in* 2005 U.S.C.C.A.N. 3, 58.

### E. Giving Extraterritorial Effect To Section 17200 In This Case Violates the Commerce Clause.

Plaintiffs agree that Section 17200 may not be applied to conduct that takes place wholly outside of California. Pl. Memo. in Opp. 23:5-6. As discussed above, *see supra* Part II.B.2-3, there is nothing unlawful about any of Wells Fargo's overtime policies – which Plaintiffs assert (without support) emanated from California. Consequently, any decision to deviate from Wells Fargo's lawful overtime policies would have been made by a local manager. As such, the only misconduct that Non-California Plaintiffs might have been subject to in this case (which Wells Fargo does not concede) would have taken place "wholly outside of the State's borders." *Edgar v. MITE Corp.*, 457 U.S. 624, 642-43 (1982). Giving Section 17200 such "extraterritorial effect" is prohibited by the Commerce Clause. *NCAA v. Miller*, 10 F.3d 633, 639 (9th Cir. 1993).

### F. Plaintiffs Effectively Ask This Court To Dismiss The Rules Enabling Act.

Courts have not "squarely rejected" the argument that permitting a Section 17200 class action to proceed under Fed. R. Civ. P. 23, based solely on alleged FLSA violations, violates the Rules Enabling Act, 29 U.S.C. § 2072(b). Pl. Memo. in Opp. 23:25-24:24. In *Ellis v. Edward D. Jones & Co.*, 527 F.Supp.2d 439 (W.D. Pa. 2007), for example, the court recently gave the REA argument its due analysis to bar a class action stipulated by the parties. This Court should follow suit and dismiss the Section 17200 claims for Non-California Plaintiffs.

## III. CONCLUSION

For the reasons set forth in its Motion, Memorandum in Support, and the analyses set forth below in this Reply, Wells Fargo respectfully requests that this Court dismiss Plaintiffs' Section 17200 claims.

Dated: April 14, 2008

Respectfully submitted,

SPENCER FANE BRITT & BROWNE LLP

*/s/ Eric P. Kelly*
_____
Denise K. Drake        (KS 15800)
ddrake@spencerfane.com
Eric P. Kelly          (KS 22503)
ekelly@spencerfane.com
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106
Telephone:    (816) 474-8100
Facsimile:    (816) 474-3216

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2008, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

George A. Hanson
hanson@stuevesiegel.com
Norman _. Siegel
siegel@stuevesiegel.com
Eric L. Dirks
dirks@stuevesiegel.com
Ashlea Schwarz
ashlea@stuevesiegel.com
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112

*Attorneys for Plaintiff*

*/s/ Eric P. Kelly*
_____
*Attorney for Defendant*

# EXHIBIT A

## RESPONSES TO PLAINTIFFS' "SUMMARY OF FACTS"

Plaintiffs' present a "Summary of Facts." *See* Pl. Memo. in Opp. at 2-8. Wells Fargo presents these responses and objections where necessary and appropriate. Wells Fargo reserves the right to respond and object further where appropriate, including to any of portion of Plaintiffs' summary for which responses are not presented below.

1. *Response to Plaintiffs* ¶1. Wells Fargo & Company has not been named as a party in either of the operative Complaints in the *Bowne* and *Basore* actions consolidated for pretrial proceedings. Further, Wells Fargo & Company has neither been served pursuant to Fed. R. Civ. P. 4(h) nor waived service pursuant to Fed. R. Civ. P. 4(d).

2. *Response to Plaintiffs* ¶2. These consolidated proceedings, in over two years of litigation, have implicated only Wells Fargo Home Mortgage, a single division of Wells Fargo Bank, N.A.

3. *Response to Plaintiffs* ¶3. As defined in its Motion to Dismiss and continued in this Reply, "Wells Fargo" collectively refers to the only Defendants named or implicated by the two operative Complaints in these proceedings – Wells Fargo Bank, N.A., and Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A.

4. *Response to Plaintiffs* ¶4. Wells Fargo objects to the unsigned Declaration of George Hanson in Support of Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiffs § 17200 Claims. Further, Plaintiffs cite to Deposition of Todd Hauer here and throughout their memorandum. Plaintiffs did not file or authenticate any copy of the cited portions of the deposition, as required by Civil Local Rule 7-5(a). Finally, Plaintiffs did not appropriately authenticate the documents cited as WF011475 through WF011498 pursuant to Civil Local Rule 7-5(a).

5. *Response to Plaintiffs* ¶5. In addition to Wells Fargo's human resources and legal departments, Wells Fargo's compensation, human resources data services ("HRDS"), and employee relations groups are responsible for compliance with applicable wage and hour laws. *See* Deposition of Swanson Dep. at 34:34:2-35:12.

---

WF REPLY ON MOTION TO DISMISS 17200 CLAIMS      13      WA 958596.2

6.      *Response to Plaintiffs* ¶7. Wells Fargo objects to the unsigned Declaration of George Hanson in Support of Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiffs § 17200 Claims. Further, Plaintiffs did not file or authenticate any copy of the cited portion of the Deposition of Teresa Swanson as required by Civil Local Rule 7-5(a). Accordingly,

7.      *Response to Plaintiffs* ¶8. Wells Fargo objects to the unsigned Declaration of George Hanson in Support of Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiffs § 17200 Claims. Further, Plaintiffs did not properly submit and authenticate the documents cited as WF011479 and WF011492 pursuant to Civil Local Rule 7-5(a).

8.      *Response to Plaintiffs* ¶9. Plaintiffs unqualified assertion that all Plaintiffs "believed they were paid on a salary and not entitled to overtime pay" distorts the record. Pl. Opp. Plaintiff Brenda McMillian – the named Non-California Plaintiff in *Basore* – clearly understood that she was a non-exempt employee entitled to overtime pay. *See* WF Motion to Dismiss at 8, 12-13 (citing deposition of Plaintiff McMillian).

9.      *Response to Plaintiffs* ¶11. Plaintiffs reference to "compliance efforts" is vague, undefined, and overly broad. Further, to the extent that it might be understood, Plaintiffs unqualified assertion that "Wells Fargo's management made no compliance efforts" distorts the record developed to date. Wells Fargo has produced thousands of pages of records related to "compliance efforts," including but not limited to employee handbooks, training materials, and internal investigations and resolutions.

10.     *Response to Plaintiffs* ¶12. Rather than providing a statement of fact, Plaintiffs state a conclusory, unqualified legal conclusion that Wells Fargo prior compensation process for non-exempt employees "did not comply with applicable state wage an hour law." Wells Fargo further objects to the unsigned Declaration of George Hanson in Support of Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiffs § 17200 Claims. In addition, Plaintiffs did not properly submit and authenticate the documents cited as WF011481 pursuant to Civil Local Rule 7-5(a).

11.     *Response to Plaintiffs* ¶13. Rather than providing a statement of fact, Plaintiffs state a conclusory, unqualified legal conclusion that Wells Fargo prior compensation process for non-exempt employees "was illegal." Wells Fargo further objects to the unsigned Declaration of George Hanson in Support of Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiffs § 17200

1 | Claims. In addition, Plaintiffs did not properly submit and authenticate the documents cited as
2 | WF011482 pursuant to Civil Local Rule 7-5(a).
3 |         12.    *Response to Plaintiffs* ¶15. On October 23, 2006, Wells Fargo and the *Bowne* Plaintiffs
4 | stipulated to the conditional certification of a class of retail loan processors with recorded but unpaid
5 | overtime. Wells Fargo subsequently produced a list of the approximately 293 loan processors meeting
6 | the definition stipulated by the parties. Wells Fargo has never acknowledged "it [sic] non-compliance
7 | for several years."