# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

TRUDY BOWNE, et al.,                    )
                                        )
              Plaintiffs,               )
                                        )
v.                                      )        Case No. 06-2020-JAR-GLR
                                        )
WELLS FARGO BANK, N.A.,                 )
                                        )
              Defendant.                )

## PROTECTIVE ORDER

    Plaintiffs Trudy Bowne, *et al.* ("Plaintiffs"), and Defendant Wells Fargo Bank, N.A., ("Defendant"), by their respective counsel, having stipulated to the terms of this Order, and the Court being fully advised in the premises, it is hereby **ORDERED**:

    1.    **Purpose of Order.** The purpose of this Order is to prevent the disclosure of matters deemed confidential under the terms of this Order to persons or entities other than those involved in the prosecution or defense of this litigation and to facilitate the exchange of information between the parties. The Order is necessary to protect both the parties and other persons from annoyance, embarrassment, and undue burden. Discovery in this case may seek private information concerning both parties and nonparties, including: records of Plaintiffs' compensation as current or former employees of Defendant; records of nonparties' compensation as current or former employees of Defendant; personnel and/or human resources files regarding Plaintiffs, as maintained by Defendant; personnel and/or human resources files regarding nonparties, as maintained by Defendant; proprietary information regarding Defendant's personnel and/or human resources policies, procedures, and training; and proprietary information regarding Defendant's business practices. The privacy interests in such information substantially outweigh the public's right of access to judicial

records.

Good cause exists for the issuance of a protective order under Federal Rule of Civil Procedure 26(c)—including the fact that if the confidential information, especially regarding compensation and personnel and/or human resources records for each Plaintiff and nonparties, as current or former employees of Defendant—were known in the general community, such knowledge could lead to embarrassment, humiliation, loss of status and reputation, and could potentially impact upon certain persons' personal and/or work relationships.

2.    **Confidential Information.** The parties have agreed that certain categories of documents and information, if produced or disclosed during this litigation, shall be used only for purposes of this lawsuit and will be treated as confidential. The parties have further agreed that this shall include information relating to the following topics: records of Plaintiffs' compensation as current or former employees of Defendant; records of nonparties' compensation as current or former employees of Defendant; personnel and/or human resources files regarding Plaintiffs, as maintained by Defendant; personnel and/or human resources files regarding nonparties, as maintained by Defendant; proprietary information regarding Defendant's personnel and/or human resources policies, procedures, and training; and proprietary information regarding Defendant's business practices.

3.    **Designating Documents and Interrogatory Answers as Confidential Information.**  · Any party to this action may designate as "Confidential Information" a document or interrogatory answer produced after entry of this Order by conspicuously stamping or labeling the document or interrogatory answer with the word "Confidential." Documents or information produced by either party shall not be treated as confidential pursuant to this Order unless they are stamped or labeled in such a fashion except as provided in this Order. The inadvertent failure to designate material as "Confidential" does not preclude a party from subsequently making such a designation, and, in that case, the material is treated as confidential only after being properly designated. Unless otherwise

WA 910166.1

ordered by the Court or stipulated by the parties, only documents, interrogatory answers, or deposition testimony relating to the subjects enumerated in paragraph 1 may be designated as Confidential Information. Parties to this action may also designate deposition testimony relating to the subjects enumerated in paragraph 1 above as "Confidential Information" by advising opposing counsel of record, in writing, within 15 days after receipt of a copy of the transcript, or such other time period as may be mutually agreed upon by the parties, of the pages and lines of the deposition which the party believes fall under paragraph 1. Alternatively, any party may, on the record at the deposition, designate deposition testimony as Confidential by advising all persons present that the party believes that the portion of the deposition in question falls under the scope of this Order.

4.    **Disclosure of Confidential Information.** Any documents or interrogatory answers which are marked as Confidential are to be treated as such by the party receiving the discovery and shall be utilized by such party only for the prosecution or defense of this case. Except as agreed upon by the parties, or ordered by the Court, disclosure of such material or information contained therein is limited to:

(a)    The parties;

(b)    Their counsel, counsel's legal and clerical assistants and staff;

(c)    Persons with prior knowledge of the documents or the Confidential Information contained therein;

(d)    Witnesses at trial or at depositions;

(e)    The jury;

(f)    Court personnel, including court reporters, persons operating video recording equipment at depositions, and any special master or mediator appointed by the Court;

(g)    Any independent document reproduction services or document or video recording and retrieval services; and

(h)    Any expert witness or outside consultant retained or consulted by the parties.

3

Counsel shall advise all persons to whom discovery materials are disclosed pursuant to this paragraph of the existence of this Order, and they shall agree to be bound prior to sharing this Confidential Information with them.

     5.    **Disputes Concerning Designation(s) of Confidential Information.** In the event that any party to this action disagrees at any stage of the proceedings with the designation of information as confidential, the party shall first try to resolve the matter on an informal basis. If the dispute cannot be resolved informally, the party posing the confidentiality of the information may apply for appropriate relief from this Court.

     6.    **Binding Effect of this Order.** This Order is binding upon the parties, agents and employees of the parties, counsel for the parties, and agents and employees of counsel for the parties. This Order also binds non-parties to whom disclosure of discovery materials or testimony is permitted pursuant to the terms of this Order, so long as those persons have agreed to and signed the Declaration attached hereto as Exhibit A.

     The terms of this Order shall continue unless and until modified and/or terminated by further Order of this Court or by agreement of the parties.

     7.    **Use of Confidential Information.** The parties and their counsel shall exercise reasonable care not to disclose information contained in these confidential documents by placing them in the public record in this case. If a party wishes to use any confidential information in any affidavit, brief, memorandum, oral argument, or other paper filed in this Court in this case, such paper or transcript may be filed under seal only upon separate, specific motion and later order of the Court. The parties and their counsel, however, have the right to use any such information contained in these documents, or the documents themselves, in depositions and the trial of this case. The parties do not waive any right to object at trial to the admissibility of any document, which falls under the scope of this Order, or portion thereof, or the right to file a motion in limine regarding the use of any such documents.

4

8.    **Return of Confidential Information.**  At the conclusion of this litigation, including all appeals, the parties' respective counsel shall, within thirty days, and upon written request by the other party, return all documents which fall under the scope of this Order.  The parties, however, may retain any documents for purposes of preserving a file in this matter or those admitted as exhibits in this case.

**IT IS SO ORDERED**.

s/ Gerald L. Rushfelt
Gerald L. Rushfelt
United States Magistrate Judge

Dated: June 19th, 2007

5                                      WA 910166.1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **TRUDY BOWNE, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 06-2020-JAR-GLR** |
| | ) | |
| **WELLS FARGO BANK, N.A.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>DECLARATION AND EXHIBIT "A" TO STIPULATED PROTECTIVE ORDER</u>

I, _____, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

My signature below indicates that I have read the Protective Order which is dated _____ and marked with the caption of this case, and I understand and agree to its terms.

                                            _____

                                            Signature

                                            _____

                                            Address

                                            Phone

WA 910166 1

# EXHIBIT B

1  George A. Hanson
   Eric L. Dirks
2  STUEVE SIEGEL HANSON LLP
   460 Nichols Road, Suite 200
3  Telephone:  816-714-7100
   Facsimile:   816-714-7101
4  ATTORNEYS FOR PLAINTIFFS

5  Denise K. Drake
   Eric P. Kelly
6  SPENCER FANE BRITT & BROWNE LLP
   1000 Walnut, Suite 1400
7  Kansas City, MO 64106
   Telephone:  816-474-8100
8  Facsimile:   816-474-3216

9

10            **IN THE UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**

11

12  IN RE WELLS FARGO LOAN PROCESSOR       MDL Docket No. 1841
    OVERTIME PAY LITIGATION
13                                          **STIPULATED PROTECTIVE**
                                            **ORDER**
14  THIS DOCUMENT RELATES TO ALL CASES

15

16              **STIPULATED PROTECTIVE ORDER**

17       Plaintiffs and Defendant, by their respective counsel, having stipulated to the terms of

18  this Order, and the Court being fully advised in the premises, it is hereby **ORDERED**:

19       1.      **Purpose of Order.**  The purpose of this Order is to prevent the disclosure of

20  matters deemed confidential under the terms of this Order to persons or entities other than those

21  involved in the prosecution or defense of this litigation and to facilitate the exchange of

22  information between the parties.   The Order is necessary to protect both the parties and other

23  persons from annoyance, embarrassment, and undue burden.  Discovery in this case may seek

24  private information concerning both parties and nonparties, including: records of Plaintiffs'

25  compensation as current or former employees of Defendant; records of nonparties' compensation

26  as current or former employees of Defendant; personnel and/or human resources files regarding

27  Plaintiffs, as maintained by Defendant; personnel and/or human resources files regarding

28

1  nonparties, as maintained by Defendant; proprietary information regarding Defendant's

2  personnel and/or human resources policies, procedures, and training; and proprietary information

3  regarding Defendant's business practices. The privacy interests in such information substantially

4  outweigh the public's right of access to judicial records.

5        Good cause exists for the issuance of a protective order under Federal Rule of Civil

6  Procedure 26(c)—including the fact that if the confidential information, especially regarding

7  compensation and personnel and/or human resources records for each Plaintiff and nonparties, as

8  current or former employees of Defendant—were known in the general community, such

9  knowledge could lead to embarrassment, humiliation, loss of status and reputation, and could

10  potentially impact upon certain persons' personal and/or work relationships.

11        2.    **Confidential Information.** The parties have agreed that certain categories of

12  documents and information, if produced or disclosed during this litigation, shall be used only for

13  purposes of this lawsuit and will be treated as confidential. The parties have further agreed that

14  this shall include, but is not necessarily limited to, information relating to the following topics:

15  records of Plaintiffs' compensation as current or former employees of Defendant; records of

16  nonparties' compensation as current or former employees of Defendant; personnel and/or human

17  resources files regarding Plaintiffs, as maintained by Defendant; personnel and/or human

18  resources files regarding nonparties, as maintained by Defendant; proprietary information

19  regarding Defendant's personnel and/or human resources policies, procedures, and training; and

20  proprietary information regarding Defendant's business practices.

21        3.    **Designating Documents and Interrogatory Answers as Confidential**

22  **Information**. Any party to this action may designate as "Confidential Information" a document

23  or interrogatory answer produced after entry of this Order by conspicuously stamping or labeling

24  the document or interrogatory answer with the word "Confidential." Documents or information

25  produced by either party shall not be treated as confidential pursuant to this Order unless they are

26  stamped or labeled in such a fashion except as provided in this Order. The inadvertent failure to

27                    2

28

1  designate material as "Confidential" does not preclude a party from subsequently making such a

2  designation, and, in that case, the material is treated as confidential only after being properly

3  designated. Unless otherwise ordered by the Court or stipulated by the parties, only documents,

4  interrogatory answers, or deposition testimony relating to the subjects enumerated in paragraph 1

5  may be designated as Confidential Information. Parties to this action may also designate

6  deposition testimony relating to the subjects enumerated in paragraph 1 above as "Confidential

7  Information" by advising opposing counsel of record, in writing, within 15 days after receipt of a

8  copy of the transcript, or such other time period as may be mutually agreed upon by the parties,

9  of the pages and lines of the deposition which the party believes fall under paragraph 1.

10  Alternatively, any party may, on the record at the deposition, designate deposition testimony as

11  Confidential by advising all persons present that the party believes that the portion of the

12  deposition in question falls under the scope of this Order.

13      4.    **Disclosure of Confidential Information.**  Any documents or interrogatory

14  answers which are marked as Confidential are to be treated as such by the party receiving the

15  discovery and shall be utilized by such party only for the prosecution or defense of this case.

16  Except as agreed upon by the parties, or ordered by the Court, disclosure of such material or

17  information contained therein is limited to:

18  (a)    The parties;

19  (b)    Their counsel, counsel's legal and clerical assistants and staff;

20  (c)    Persons with prior knowledge of the documents or the Confidential Information

21         contained therein;

22  (d)    Witnesses at trial or at depositions;

23  (e)    The jury;

24  (f)    Court personnel, including court reporters, persons operating video recording equipment

25         at depositions, and any special master or mediator appointed by the Court;

3

(g)     Any independent document reproduction services or document or video recording and retrieval services; and

(h)     Any expert witness or outside consultant retained or consulted by the parties.

Counsel shall advise all persons to whom discovery materials are disclosed pursuant to this paragraph of the existence of this Order, and they shall agree to be bound prior to sharing this Confidential Information with them.

        5.      **Disputes Concerning Designation(s) of Confidential Information.** In the event that any party to this action disagrees at any stage of the proceedings with the designation of information as confidential, the party shall first try to resolve the matter on an informal basis. If the dispute cannot be resolved informally, the party posing the confidentiality of the information may apply for appropriate relief from this Court.

        6.      **Binding Effect of this Order.** This Order is binding upon the parties, agents and employees of the parties, counsel for the parties, and agents and employees of counsel for the parties.   This Order also binds non-parties to whom disclosure of discovery materials or testimony is permitted pursuant to the terms of this Order, so long as those persons have agreed to and signed the Declaration attached hereto as Exhibit A.

        The terms of this Order shall continue unless and until modified and/or terminated by further Order of this Court or by agreement of the parties.

        7.      **Use of Confidential Information.** The parties and their counsel shall exercise reasonable care not to disclose information contained in these confidential documents by placing them in the public record in this case.   If a party wishes to use any confidential information in any affidavit, brief, memorandum, oral argument, or other paper filed in this Court in this case, such paper or transcript may be filed under seal only upon separate, specific motion and later order of the Court. The parties and their counsel, however, have the right to use any such information contained in these documents, or the documents themselves, in depositions and the trial of this case.   The parties do not waive any right to object at trial to the admissibility of any

4

1  document, which falls under the scope of this Order, or portion thereof, or the right to file a

2  motion *in limine* regarding the use of any such documents.

3      8.    **Return of Confidential Information.**    At the conclusion of this litigation,

4  including all appeals, the parties' respective counsel shall, within thirty days, and upon written

5  request by the other party, return all documents which fall under the scope of this Order.  If

6  respective counsel fails to make a written request for the return of documents within thirty days

7  of the conclusion of this litigation, their right to do so is waived, and other counsel will destroy

8  such records, and all duplicates thereof, produced by another party.  The parties, however, may

9  retain any documents for purposes of preserving a file in this matter or those admitted as exhibits

10 in this case.

11      **IT IS SO ORDERED.**

12

13

14

15  _____

16                United States District Judge

17

18

19

20 Dated:_____

21

22

23

24

25

26

27                           5

28

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE WELLS FARGO LOAN PROCESSOR OVERTIME PAY LITIGATION | MDL Docket No. 1841 |
| | **DECLARATION AND EXHIBIT A TO PROTECTIVE ORDER** |
| THIS DOCUMENT RELATES TO ALL CASES | |

## DECLARATION AND "EXHIBIT A" TO STIPULATED PROTECTIVE ORDER

I, _____, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

My signature below indicates that I have read the Protective Order which is dated _____ and marked with the caption of this case, and I understand and agree to its terms.

_____
Signature

_____
_____
_____
Address

_____
Phone

6

**APPROVED AS TO FORM AND CONTENT**

Date: September 5, 2007

Respectfully Submitted,

**STUEVE SIEGEL HANSON LLP**

_s/ Eric L. Dirks_
George A. Hanson
hanson@stuevesiegel.com
Eric L. Dirks
dirks@stuevesiegel.com
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, Missouri, 64112
Telephone:  (816) 714-7100
Facsimile:  (816) 714-7101

**ATTORNEYS FOR PLAINTIFFS**

**SPENCER FANE BRITT & BROWNE LLP**

_s/ Eric P. Kelly_
Denise K. Drake
ddrake@spencerfane.com
Eric P. Kelly
ekelly@spencerfane.com
Spencer Fane Britt & Browne LLP
1000 Walnut, Suite 1400
Kansas City, MO 64106
Telephone:  816-474-8100
Facsimile:  816-474-3216

**ATTORNEYS FOR DEFENDANT**

7

# EXHIBIT C

1

2

3

4

5

6

George A. Hanson
Norman E. Siegel
Eric L. Dirks
Ashlea G. Schwarz
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone:    (816) 714-7100
Facsimile:    (816) 714-7101
ATTORNEYS FOR PLAINTIFFS

7

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

8

9

10

11

12

13

14

15

| | |
|---|---|
| IN RE WELLS FARGO LOAN PROCESSOR OVERTIME PAY LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL CASES | MDL Docket No. 1841<br><br>**PLAINTIFFS' MOTION, NOTICE OF MOTION, AND POINTS AND AUTHORITIES IN SUPPORT OF CLASS AND CONDITIONAL COLLECTIVE ACTION CERTIFICATION [REDACTED]**<br><br>**Date: May 19, 2008<br>Time: 2:00 PM<br>Dept: 15<br>Judge: Hon. Marilyn Hall Patel** |

16

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

17

**NOTICE IS HEREBY GIVEN** that on May 19, 2008 at 2:00 p.m., a hearing on matters raised

18

in this Motion will take place before the Honorable Marilyn Hall Patel, District Court Judge for

19

the Northern District of California.  The hearing will be at Courtroom 15 in the United States

20

Courthouse located at 450 Golden Gate Avenue, San Francisco, California.

21

Plaintiffs will move the Court for an Order:

22

23

- Certifying a class action on behalf of California residents pursuant to Fed. R. Civ. P. 23;

24

25

- Certifying a class action on behalf of non-California residents pursuant to Fed. R. Civ. P. 23;

26

- Certifying a nationwide collective action pursuant to § 216(b) of the Fair Labor Standard Act;

27

28

- Approving the designation of Trudy Bowne, Mary Basore, and Brenda McMillian as class representatives;

- Approving the designation of the law firm of Stueve Siegel Hanson, LLP as Class Counsel; and

- Authorizing notice to be sent to the classes.

This motion is based upon this Notice, the Memorandum of Points and Authorities, pleadings and other exhibits in support thereof, as well as any documents or testimony presented at the time of hearing.

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................ 1

II.    RELEVANT FACTS ................................................................................... 2

III.   LEGAL ARGUMENT ................................................................................. 6
       A.     THE RULE 23 CLASSES SHOULD BE CERTIFIED ...................... 6
       B.     The Rule 23(a) Prerequisites Are Satisfied....................................... 7
              1.     Plaintiffs Meet the Requirement of Numerosity. ..................... 7
              2.     Plaintiffs Meet the Commonality Requirement. ...................... 7
              3.     Plaintiffs Meet the Typicality Requirement............................. 9
              4.     Plaintiffs Meet the Adequacy Requirement. ........................... 9
       C.     Plaintiffs also satisfy Rule 23(b)(3). ................................................ 9
              1.     Common Questions Predominate. ........................................... 10
              2.     A Class Action is the Superior Method of Adjudication. .......... 13

IV.    THE FLSA CLAIMS OF The Class SHOULD BE CERTIFIED AS A COLLECTIVE
       ACTION PURSUANT TO 29 U.S.C. § 216(b)............................................. 14

       A.     COURT NOTICE, CONSENT FORMS & DISCOVERY ................... 15

V.     CONCLUSION............................................................................................ 15

CERTIFICATE OF SERVICE ................................................................................. 17

1

**TABLE OF AUTHORITIES**

2

3   <u>Federal Cases</u>

4   *Adams v. Inter-Con Security Systems, Inc.,* No. 06-05428, 2007
    WL 1089694 (N.D. Cal. April 11, 2007)................................................................ 15
5
    *Alba v. Papa John's, Inc.,* No. 05-7487, 2007 WL 953849,
6   at *10 (C.D. Cal. Feb 7, 2007)..................................................................... 12, 13

7   *Beauperthuy v. 24 Hour Fitness USA, Inc.,* No. 06-0715-SC,
    2007 WL 707475(N.D. Cal. March 6, 2007)................................................. 15
8
    *Blackie v. Barrack,* 24 F.2d 891 (9th Cir. 1975)................................................. 10
9
    *Centurioni v. City and County of San Francisco,* No. 07-01016,
10  2008 WL 295096 (N.D. Cal. Feb. 1, 2008) .......................................... 15

11  *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-178 (1974) ........................ 7

12  *Gambo v. Lucent Technologies, Inc.,* No. 05-C-3701,
    2005 WL 3542485 (N.D. Ill, Dec. 22, 2005) ............................................ 15
13
    *General Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147 (1982).................. 9
14
    *Gerlach v. Wells Fargo & Co.,* No. 05-0585-CW,
15  2006 WL 824652(N.D. Cal. March 28, 2006) ............................................ 15

16  *Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) ........................ 9, 11

17  *Hanon v. Dataproducts Corp.,* 976 F.2d 497 (9th Cir. 1985)........................ 9

18  *Harris v. Palm Spring Alpine Estates, Inc.,* 329 F.2d 909 (9th Cir. 1964).......... 8

19  *In re Wells Fargo Home Mortgage Overtime Litigation,* No. MDL 1770,
    Order Certifying California Class, 2007 WL 3045995
20  (N.D. Cal October 18, 2007)......................................................... 8, 12, 13

21  *Krzesniak v. Cendant Corp.,* No. 05-05156,
    2007 WL 1795703 (N.D. Cal. June 20, 2007) ........................................ 12
22
    *Kurihara v. Best Buy Co.,* No. 06-01884,
23  2007 WL 2501698, (N.D. Cal. Aug 30, 2007) ............................... 12, 13

24  *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v.*
    *Las Vegas Sands,* Inc., 244 F.3d 1152 (9th Cir. 2001) ...................... 10, 11
25
    *Mateo v. M/S Kiso,* 805 F. Supp. 761(N.D. Cal. 1991) ............................... 10
26
    *Mowdy v. Beneto Bulk Transport,* No. 06-05682,
27  2008 WL 901546 (N.D. Cal. March 31, 2008)................................... 15

28

*Savaglio v. Wal-Mart Stores, Inc.*, No. 835687,
  2004 WL 2034092 (Cal.Sup. July 20, 2004) ........................................................ 13

*Staton v. Boeing Co.* 327 F.3d 938 (9th Cir. 2001) ...................................... 10

*Tierno v. Rite Aid Corp.*, No. 05-02520,
  2006 WL 2535056 (N.D. Cal. Aug. 31, 2006) .......................................... 12

*Wang v. Chinese Daily News*, 231 F.R.D. 602 (C.D. Cal. 2005) ................................. 12

*Wells Fargo Home Mortgage*, 527 F. Supp. 2d 1053 (N.D. Cal. 2007)........................ 13

*Zinser v. Accufix Research Institute*, 253 F.3d 1180 (9th Cir. 2001) .................................... 11, 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

This MDL proceeding involves the claims of all non-exempt Wells Fargo Team Members who were paid pursuant to Wells Fargo's Standard Hours policy.  Plaintiffs seek certification of three classes, one pursuant to § 216(b) of the FLSA and two pursuant to Rule 23.  The three classes are defined as follows:

The Nationwide FLSA Class -

> All current and former Wells Fargo Bank, N.A. Team Members who were classified as non-exempt but who were subject to Wells Fargo's "Standard Hours" policy since January 2003.

The California Rule 23 Class -

> All current and former Wells Fargo Bank, N.A. Team Members who were employed by Wells Fargo in California and who were classified as non-exempt but were subject to the "Standard Hours" policy since January 2003.

The Nationwide Rule 23 Class -

> All current and former Wells Fargo Bank, N.A. Team Members who were employed by Wells Fargo nationwide, excluding California, and who were classified as non-exempt but were subject to the "Standard Hours" policy since January 2003.

All class members are bound together by a single illegal Wells Fargo policy called "Standard Hours."  The Standard Hours policy applied to all non-exempt Team Members through at least January 2006.  Recognizing that Standard Hours was illegal and that it did not pay Team Members for their actual time worked, Wells Fargo switched to a new policy called "Positive Pay" in January 2006.  There is no dispute that Standard Hours resulted in widespread underpayment and violation of wage and hour laws.  Although Wells Fargo attempts to point the finger at its so-called "rogue managers," the facts are clear that the cause of the pervasive non-compliance was Standard Hours.



Because the class is bound by a single illegal policy, class certification should be readily granted.

## II.    RELEVANT FACTS

1.    Until January 1, 2006, all non-exempt Wells Fargo Team Members were subject to and paid pursuant to a uniform compensation policy called Standard Hours. Notable features of the Standard Hours policy include:



2.    The Standard Hours policy effectively paid all Team Members on a salary basis and not on an hourly basis. In fact, Plaintiffs believed they were paid on a salary and not entitled to overtime pay. *See, e.g.,* Deposition of Mary Basore at  48:14-49:6; Deposition of Trudy

1    Bowne at 23:3-5, 24:15-25:4; Deposition of Jeni Fisher at  15:18-21; Deposition of Elisha

2    Hesterberg at 35:16-36:14.

3           3.     The Standard Hours policy required a two-step "exception" and "approval"

4    process that effectively guaranteed underpayment of overtime loans.  A Team Member could

5    only be paid for his or her actual hours worked above and beyond Standard Hours, if (1) an

6    "exception" was submitted and (2) the exception was "approved" by his or her manager.  *See*

7    Swanson 30(b)(6) Dep., at 84:12-16.  If a manager, for any reason, (i.e. intending to reduce

8    payroll costs or through mere oversight) did not approve his or her Team Member's actual time

9    worked, the Team Member only received pay for his or her Standard Hours.  *See* 30(b)(6)

10   Deposition of Teresa Swanson (hereafter "Swanson 30(b)(6) Dep.") at 117:21-118:20, 174:8-14;

11   *see also* 30(b)(6) Reiser 30(b)(6) Dep. at 135:11-136:3.  Team Members consistently worked

12   additional hours, including overtime, that were not routinely paid because "exceptions" to

13   Standard Hours were not "approved."  *See* Plaintiffs' Consolidated Complaint at ¶ 27 (Docket

14   No. 31).

15
16
17          4.     Wells Fargo's management made no compliance efforts to ensure that Team

18   Members were paid for all their time.  *See generally* Swanson 30(b)(6) Dep. at 83:9-13.  Wells

19   Fargo had no training, policy, or procedure in place to oversee whether Team Members were

20   recording all hours worked, whether managers were approving all hours worked, or even

21   whether Team Members were being paid for all hours recorded.  *See* Reiser 30(b)(6) Dep. at

22   136:12-138:9; *see also* Swanson 30(b)(6) Dep. at 86:12-15.  Wells Fargo conducted no self-

23   audits or reviews of branch managers to ensure they were approving overtime hours.  *See*

24   Swanson 30(b)(6) Dep. at 87:8-12.  Instead, Wells Fargo's policy was that it was an employee's

25
26
27
28

responsibility to make sure his or her supervisor approved exceptions to Standard Hours in order to be paid his or her actual hours worked. *See Id.*

5.    Standard Hours underpaid class members in several ways, including for example:

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████

Standard Hours underpaid class members even though they recorded their actual time. Even at this early stage, Wells Fargo has identified 583 non-exempt Team Members who were not paid overtime even though their time records reflect overtime hours (i.e. more than 40 hours per week). *See, e.g.,* Bowne Time Records of Recorded (WF001268-001285) (attached as Exhibit B to Hanson Declaration). Wells Fargo's failure to pay occurred because class members' actual hours, although recorded, were not "approved." Even Wells Fargo admits these individuals are entitled to back pay. *See* Wells Fargo Motion to Dismiss Plaintiffs' 17200 Claims, at 17 (Doc. 26).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████. Because the policy pre-populated time sheets and defaulted to Standard Hours (e.g., 8 hours per day and 40 hours per week), non-exempt Team Members were consistently

1  shorted the time they actually worked. *See, e.g.,* Basore Time Records (attached as Exhibit C to

2  Hanson Declaration).[1]

3      6.    The Standard Hours compensation policy did not comply with applicable federal

4  and state wage and hour law. Wells Fargo has been aware that Standard Hours was illegal since

5  at least 2002. Specifically, Wells Fargo's own research revealed:



18      7.    Beginning in 2005, a full three years after the company was on notice that its

19  Standard Hours was illegal, Wells Fargo began the process of changing its compensation policy.

20  Specifically, effective January 2006, Wells Fargo transitioned from Standard Hours to a policy

21  referred to as "Positive Pay." Wells Fargo's corporate representative aptly described the concept

22  of changing from Standard Hours to Positive Pay as "it's being paid for what you worked versus

23  being paid what you were assumed to have worked." *See* Swanson 30(b)(6) Dep. at 144:22-

---

[1] Time records that reflect 8 hour workday day-in and day-out are strong evidence that actual time was not being recorded. The time records, read in context with the facts of this case, leave little doubt that time was not accurately recorded.

145:3.  The change from Standard Hours to Positive Pay was corporate-wide, affecting all non-exempt employees.  Notable features of the Positive Pay policy include:



III.   **LEGAL ARGUMENT**

A.     **THE RULE 23 CLASSES SHOULD BE CERTIFIED**

The Standard Hours policy applied to all class members.  As a result, all class members are similarly situated.  Plaintiffs seek certification of two separate Rule 23 classes – the California Class and the Nationwide Class.  The California class seeks remedies for unpaid overtime (including daily overtime); meal and rest period violations; waiting time penalties; failure to provide accurate itemized statements of time worked; and failure to make straight time payments. It is undisputed that Standard Hours violated California law.  The Nationwide class is composed of Team Members from all states other than California.  Plaintiffs allege that based on Wells Fargo's willful violation of the FLSA, Wells Fargo has also violated Cal. Bus. & Prof. Code § 17200.  Plaintiffs allege § 17200 applies to the Nationwide class because Wells Fargo's conduct at issue emanated from California.

6

**B.     THE RULE 23(A) PREREQUISITES ARE SATISFIED.**

Plaintiffs easily meet the four threshold requirements of Rule 23(a): numerosity, commonality, typicality and adequacy of representation. If these prerequisites are met, together with one of the three provisions of Rule 23(b), a court must certify the suit as a class action without regard to the underlying merits of the claims. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-178 (1974).

**1.     Plaintiffs Meet the Requirement of Numerosity.**

. Under these circumstances, numerosity is clearly met. *See, e.g., In re Wells Fargo Home Mortgage Overtime Litigation,* No. MDL 1770, Order Certifying California Class, 2007 WL 3045995 (N.D. Cal October 18, 2007) (numerosity met in case involving approximately 5,000 California class members).

**2.     Plaintiffs Meet the Commonality Requirement.**

To fulfill the commonality prerequisite of Rule 23(a)(2), plaintiff must establish that there are questions of law or fact common to the class as a whole. Rule 23(a)(2) does not mandate that each member of the class be identically situated, but only that there be substantial questions of law or fact common to all. *See Harris v. Palm Spring Alpine Estates, Inc.,* 329 F.2d 909, 914 (9th Cir. 1964). Common questions relevant to the class and that pervade in this case include, among others:

- Whether Wells Fargo created and enforced a compensation policy called Standard Hours;

- Whether paying on an assumption of hours worked (rather than actual hours worked) violates the FLSA;

- Whether Wells Fargo knew the Standard Hours policy was illegal;

- Whether the Standard Hours policy led to a failure of Wells Fargo to keep accurate time records of the class;

- Whether the Standard Hours policy deprived class members of being paid for their actual time worked;

- Whether Wells Fargo knew the Standard Hours policy was not compensating the class for all hours worked;

- Whether Wells Fargo's conduct was willful; and

- Whether Wells Fargo's conduct is a basis for the tolling of the FLSA statute of limitations.

Additional common questions relevant to the California class include:

- Whether Wells Fargo's policies failed to afford requisite meal and rest periods to the California class;

- Whether Wells Fargo had a policy of paying California class members for missed meal and rest periods;

- Whether the Wells Faro willfully failed to pay all wages due upon discharge or termination; and

- Whether Wells Fargo failed to provide accurate itemized statements of all hours worked.

Additional common questions relevant to the Nationwide class include:

- Whether Cal. Bus. & Prof. Code § 17200 should apply to the Nationwide class based on Wells Fargo's conduct occurring in California; and

- Whether the Nationwide class may bring FLSA and § 17200 claims concurrently.

These common issues and questions, among others, pervade the Rule 23 Classes. The overriding common legal theory here is that Standard Hours was unlawful and that it led to widespread pay violations. The evidence shows that Wells Fargo paid all Team Members pursuant to the same policy and also evaluated the consequences of its policy on a classwide basis. Rule 23(a)(2) is satisfied.

### 3. Plaintiffs Meet the Typicality Requirement.

Representative claims "are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). To be considered typical for purposes of class certification, the named plaintiff need not have suffered an identical wrong. *See Hanlon*, 150 F.3d at 1020. Rather, the claims of the putative class must be "fairly encompassed by the named plaintiff's claims." *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotation omitted). The typicality requirement tests "whether other members have the same or similar injuries, whether the action is based on conduct that is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1985). Here, Plaintiffs and the Classes of Team Members they intend to represent were all covered by the identical illegal policy. Plaintiffs and other class members' underpayment was caused by the same Wells Fargo conduct – and as a result, the Plaintiffs' claims are typical of the class claims. Rule 23(a)(3) is satisfied.

### 4. Plaintiffs Meet the Adequacy Requirement.

Rule 23(a)(4) requires that the named representatives and their counsel will adequately represent the interests of the class. Adequacy is satisfied here because the named plaintiffs have no known conflicts with members of the class and will fairly and adequately protect the interests of the class. Further, Plaintiffs' counsel will adequately represent the class and prosecute their claims for unpaid wages. *See Staton v. Boeing Co.* 327 F.3d 938, 957 (9th Cir. 2001). Stueve Siegel Hanson LLP has extensive experience prosecuting class and collective actions all over the country, including wage and hour cases raising similar issues. (*See* Stueve Siegel Hanson LLP firm resume, a true and correct copy of which is attached as Exhibit E of Hanson Decl.). Accordingly, all requirements of Rule 23(a) are satisfied.

### C. PLAINTIFFS ALSO SATISFY RULE 23(B)(3).

Plaintiffs seek certification under Rule 23(b)(3) because common questions predominate and class action treatment is superior to individual adjudication of the claims. Fed. R. Civ. Proc.

1    23(b)(3). Under this provision, "[i]n determining whether plaintiffs have carried their burden,

2    the Court may not consider the merits of plaintiffs' claims. Instead, 'the court is bound to take

3    the substantive allegations of the complaint as true, thus necessarily making the class order

4    speculative in the sense that plaintiff may be altogether unable to prove his allegations.'" *Mateo*

5    *v. M/S Kiso*, 805 F. Supp. 761, 771 (N.D. Cal. 1991) (citing *In re Unioil Securities Litigation*,

6    107 F.R.D. 615, 618 (1985)); *see also Blackie v. Barrack*, 24 F.2d 891, 901 n. 17 (9th Cir. 1975).

7    ### 1.    Common Questions Predominate.

8        The predominance inquiry "focuses on the relationship between the common and

9    individual issues." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas*

10   *Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Consequently, the presence of common issues

11   of fact or law sufficient to satisfy the requirements of Rule 23(a)(2) is not by itself sufficient to

12   show that those common issues predominate. *Hanlon*, 150 F.3d at 1022. Nonetheless, "[w]hen

13   common questions present a significant aspect of the case and they can be resolved for all

14   members of the class in a single adjudication, there is clear justification for handling the dispute

15   on a representative rather than on an individual basis." *Id.* (internal quotations omitted); *see also*

16   *Culinary/Bartender Trust Fund*, 244 F.3d at 1162. To establish predominance of common

17   issues, a party seeking class certification is not required to show that the legal and factual issues

18   raised by the claims of each class member are identical. Rather, the predominance inquiry

19   focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by

20   representation." *Culinary/Bartender Trust Fund*, 244 F.3d at 1162 (quoting *Amchem Products,*

21   *Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Among the considerations that are central to this

22   inquiry is "the notion that the adjudication of common issues will help achieve judicial

23   economy." *Zinser v. Accufix Research Institute*, 253 F.3d 1180, 1189 (9th Cir. 2001) (quoting

24   *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)).

25       As noted above, common issues include: (a) whether the Standard Hours policy was

26   lawful, (b) whether Wells Fargo knew the Standard Hours policy was illegal, (c) whether Wells

27   Fargo's policies failed to afford requisite meal and rest periods to the California class; (d)

28

1    whether Wells Fargo had a policy of paying California class members for missed meal and rest

2    periods; (e) whether § 17200 should apply to the Nationwide class, (f) whether Wells Fargo's

3    conduct was willful; and (g) whether Wells Fargo's conduct is a basis for equitable tolling of the

4    FLSA statute of limitations.  These are the central issues to the lawsuit and resolution of these

5    issues advances the litigation and will further the interest of judicial economy.

6         Despite Wells Fargo's characterization of this litigation as an individualized "off the

7    clock" case, the facts demonstrate that the legality of Wells Fargo's uniform Standard Hours

8    policy is the overriding issue.  An "off the clock" case, on the one hand, typically involves

9    facially compliant policies and individualized illegal practices, while this case involves a facially

10   non-compliant policy that is the source of the widespread violations.  Courts routinely certify

11   cases involving companywide policies or procedures that result in underpayment of wages to

12   employees.  "In the context of overtime pay litigation, courts have often found that common

13   issues predominate where an employer treats the putative class members uniformly with respect

14   to compensation, even where the party opposing class certification presents evidence of

15   individualized variations." *Wells Fargo Home Mortgage,* 2007 WL 3045995 at *6.  *See also*

16   *Wang v. Chinese Daily News,* 231 F.R.D. 602 (C.D. Cal. 2005); *Tierno v. Rite Aid Corp.*, No.

17   05-02520, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006); *Krzesniak v. Cendant Corp.,* No. 05-

18   05156, 2007 WL 1795703 (N.D. Cal. June 20, 2007); *Kurihara v. Best Buy Co.,* No. 06-01884,

19   2007 WL 2501698, *9-10 (N.D. Cal. Aug 30, 2007). *See also Alba v. Papa John's, Inc.,* No. 05-

20   7487, 2007 WL 953849, at *10 (C.D. Cal. Feb 7, 2007) ("some variation among the individual

21   employees, as well as some potential difficulty in proof – including as to damages – do not

22   defeat predominance").  The lesson of these cases is that while some damages questions (e.g. did

23   the individual work overtime, and how much) may remain individualized, questions regarding

24   the legality of the overriding corporate policy nonetheless predominate.

25        Common questions clearly predominate in this case.  Important common legal questions

26   that must be determined for each and every class member include questions about the legality of

27   the Standard Hours policy, whether Wells Fargo's conduct was "willful" or in "good faith," and

28

1   whether Wells Fargo's conduct results in equitable tolling of the statute of limitations. Similarly,

2   for each member of the Nationwide class, a key threshold question includes whether Wells

3   Fargo's conduct sufficiently emanated from California so as to make the nationwide application

4   of § 17200 appropriate. This issue has already consumed considerable time and resources. If

5   this case were not certified to proceed as a class action, every one of the Nationwide Plaintiffs

6   throughout the country would be likewise required to take the depositions of the same high-

7   ranking corporate executives in order to resolve this issue. This threshold issue should be

8   properly resolved for all class members and it demonstrates clearly why common questions

9   predominate. And for the California class, questions about whether Wells Fargo's policy

10  violated the California-specific daily overtime, meal and rest period, waiting time, and itemized

11  statement regulations are common to all California class members. Cases involving such issues

12  are regularly certified in California. *See, e.g., Wells Fargo Home Mortgage,* 2007 WL 3045995,

13  at *2; *Alba v. Papa John's, Inc.,* No. 05-7487, 2007 WL 953849 (C.D. Cal. Feb 7, 2007);

14  *Kurihara v. Best Buy Co.,* No. 06-01884, 2007 WL 2501698 (N.D. Cal. Aug 30, 2007); *Savaglio*

15  *v. Wal-Mart Stores, Inc.,* No. 835687, 2004 WL 2034092 (Cal.Sup. July 20, 2004) (ordering

16  meal period class action claims to trial).

17        Wells Fargo's own conduct also demonstrates that common issues predominate. ▮

18  ▮

19  ▮

20  ▮

21  ▮        And with regard to the 583 indentified loan processors who recorded

22  overtime that was not paid, Wells Fargo claims it has decided to pay all of them. If Wells Fargo

23  finds it appropriate to treat the Team Members as a class, then clearly class treatment is

24  appropriate in this lawsuit. *See Wells Fargo Home Mortgage,* 527 F. Supp. 2d 1053, 1068 (N.D.

25  Cal. 2007) ("As numerous courts have recognized, it is manifestly disingenuous for a company

26  to treat a class of employees as a homogenous group for the purposes of internal policies and

27  compensation, and then assert that the same group is too diverse for class treatment in overtime

28

litigation. This is particularly true in a situation such as this, where the difficulty of proving hours worked and compensation received is exacerbated by defendant's complete failure to maintain pertinent records.").



Likewise, the individuals who kept accurate Webtime hours, but simply were not paid for those hours, can be readily identified – as Wells Fargo has already done with 583 loan processors. Further, individuals with missing or inaccurate time records can also be easily identified. Simply put, Plaintiffs want to use the methodology already adopted and used by Wells Fargo, and apply it to the entire class. The class is bound together by a common policy and damages are readily ascertainable. As a result, the common questions in this case by far predominate over any potential individual issues.

### 2.    A Class Action is the Superior Method of Adjudication.

The final prerequisite for certification of a class under Rule 23(b)(3) requires the plaintiff to show that a class action is superior to other methods available for the adjudication of the parties' dispute. "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino,* 97 F.3d at 1234. In considering whether a class action is superior, the court must focus on whether the interests of "efficiency and economy" would be advanced by class treatment. *Zinser,* 253 F.3d at 1189 (internal quotations omitted).

Here, economy and efficiency are served by class treatment. More than 100,000 class members were all paid pursuant to the identical pay policy. It would be impractical and entirely inefficient to require every individual to pursue his or her own relatively low-value individual

13

1    case in order to recover earned wages.  And there is no indication that class members have an

2    interest in individually pursuing their claims.  Wells Fargo suggested that it would be inefficient

3    for multiple lawsuits to proceed separately in seeking consolidation of *Bowne* and *Basore*.  The

4    fact that these cases have already been sent to this Court for consolidated pre-trial purposes

5    demonstrates the desirability of concentrating the litigation into a single case where discovery

6    and legal decisions can be determined on a classwide basis.  This case involves complex factual

7    and legal issues.  The only efficient way to proceed is as a class action.

8    **IV.    THE FLSA CLAIMS OF THE CLASS SHOULD BE CERTIFIED AS A
         COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(B).**

9         Plaintiffs also seek conditional certification of their FLSA claims pursuant to § 216(b) of

10   the Fair Labor Standards Act ("FLSA") on behalf of:

11             All current and former Wells Fargo Bank, N.A. Team Members
              who were classified as non-exempt but who were subject to Wells
12             Fargo's "Standard Hours" policy since January 2003.

13   Plaintiffs and other similarly situated Team Members were paid under the Standard Hours

14   policy.  As discussed above, paying class members pursuant to the Standard Hours policy

15   effectively treated the class members as salaried employees.   This led to widespread

16   underpayment of wages and a failure to keep accurate records of time worked.  Under these

17   circumstances, FLSA certification is appropriate.

18        Like the majority of federal courts, courts within the Ninth Circuit, including this Court,

19   have adopted a "lenient" standard for issuing conditional certification and notice under § 216(b),

20   requiring only that plaintiffs make a modest factual showing that employees were "subject to a

21   single illegal policy, plan or decision."  *See, e.g., Adams v. Inter-Con Security Systems, Inc.,* No.

22   06-05428, 2007 WL 1089694 (N.D. Cal. April 11, 2007); *Mowdy v. Beneto Bulk Transport*, No.

23   06-05682, 2008 WL 901546 (N.D. Cal. March 31, 2008); *Gerlach v. Wells Fargo & Co.,* No. 05-

24   0585-CW, 2006 WL 824652, at *2 (N.D. Cal. March 28, 2006).  "Courts usually grant class

25   certification at this stage." *Centurioni v. City and County of San Francisco,* No. 07-01016, 2008

26   WL 295096 (N.D. Cal. Feb. 1, 2008); *Adams,* at *4.  This is because Plaintiffs are merely

27   required to make a modest threshold showing that "the putative class members were subject to a

28

1    single illegal policy, plan or decision." *Adams,* at *4.  To meet this modest burden, Plaintiffs

2    need only make "substantial allegations." *Id.*  Indeed, courts in the Ninth Circuit have required

3    very little for plaintiffs to make the requisite threshold showing.  *See, e.g., Adams,* at *4-5

4    (requiring "some" factual basis beyond the allegations in the complaint).

5        Here, Plaintiffs have gone above and beyond the modest threshold standard by pointing

6    to a specific illegal policy and by providing detailed allegations in their Complaint, along with

7    the deposition testimony of numerous witnesses and, most importantly, Wells Fargo's own

8    documents and admissions.    There can be no serious question that Plaintiffs have made the

9    requisite modest factual showing and provided this Court a reasonable basis for their allegation

10   that a class of similarly situated persons exists under § 216(b).    Accordingly, Plaintiffs

11   respectfully request that the Court authorize notice.

12        **A.    COURT NOTICE, CONSENT FORMS & DISCOVERY**

13        Plaintiffs respectfully suggest that the parties confer within 10 days after the Court rules

14   on the issue of class certification to propose a court-authorized notice to be mailed to the class.

15   If the parties cannot agree on the form of the notice, then Plaintiffs suggest that they be required

16   to submit their respective proposed notices with 14 days of the Court's certification ruling.  In

17   furtherance of the notice, Plaintiffs request the Court order Defendant to produce the names,

18   addresses, phone numbers and social security numbers of the class to facilitate notice to potential

19   plaintiffs of this pending lawsuit within 14 days.  Finally, Plaintiffs request that the Court order a

20   90-day period (after the mailing of the court-authorized notice) for those persons receiving notice

21   to opt-in to the FLSA component of the case and/or to opt-out of the Rule 23 class component of

22   the case.

23   **V.    CONCLUSION**

24        Plaintiffs have satisfied the requirements of Rule 23 in addition to the requirements of the

25   FLSA's "similarly situated" standard under § 216(b).  Class Members were all paid pursuant to

26   the identical illegal pay policy called "Standard Hours."  Accordingly, Plaintiffs respectfully

27   request that the Court: (1) authorize Plaintiffs' FLSA claim to proceed as a collective action; (2)

28

15

1   certify the California and Nationwide classes under Rule 23; (3) order Wells Fargo to identify all

2   current and former non-exempt Team Members who were paid pursuant to the Standard Hours

3   policy and who have worked for Wells Fargo at any time since January 2003; (4) order Wells

4   Fargo to provide the names, addresses, phone numbers and social security numbers of the class

5   to Plaintiffs within eleven (11) days; and (5) appoint Trudy Bowne, Mary Basore and Brenda

6   McMillian, and their counsel of Stueve Siegel Hanson LLP to represent the class.

7   **Dated:  April 15, 2008**

8                                   Respectfully submitted,

9                                   **STUEVE SIEGEL HANSON LLP**

10

11                                  By:_____/s/ George A. Hanson_____
12                                       George A. Hanson
                                         hanson@stuevesiegel.com
13                                       Norman E. Siegel
                                         siegel@stuevesiegel.com
14                                       Eric L. Dirks
                                         dirks@stuevesiegel.com
15                                       Ashlea G. Schwarz
                                         ashlea@stuevesiegel.com
16                                       460 Nichols Road, Suite 200
                                         Kansas City, Missouri 64112
17                                       Telephone:    (816) 714-7100
                                         Facsimile:    (816) 714-7101

18                                  **LEAD COUNSEL FOR PLAINTIFFS**

19

20

21

22

23

24

25

26

27

28

16

1

2 **<u>CERTIFICATE OF SERVICE</u>**

3 The undersigned hereby certifies on the 15th day of April, 2008, I emailed the foregoing to the

4 following:

5

6         Denise K. Drake
        ddrake@spencerfane.com

7         Eric P. Kelly
        ekelly@spencerfane.com

8         Spencer Fane Britt & Browne
        1000 Walnut, Suite 1400

9         Kansas City, MO 64106
        PH:   816-474-8100

10         FAX:  816-474-3216

11         ATTORNEYS FOR DEFENDANT

12

13                       /s/ George A. Hanson
                Attorney for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28