# EXHIBIT A

George A. Hanson
Norman E. Siegel
Eric L. Dirks
Ashlea G. Schwarz
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone:    (816) 714-7100
Facsimile:    (816) 714-7101
ATTORNEYS FOR PLAINTIFFS

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE WELLS FARGO LOAN PROCESSOR OVERTIME PAY LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL CASES | MDL Docket No. 1841<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND COMPLAINT**<br><br>Date: June 2, 2008<br>Time: 2:00 PM<br>Dept: 15<br>Judge: Hon. Marilyn Hall Patel |

REDACTED

**MEMORANDUM OF POINTS AND AUTHORITY**

**TABLE OF CONTENTS**

I.      Procedural Posture ........................................................................................ 1

II.     Introduction.................................................................................................... 2

III.    Relevant Facts ............................................................................................... 3

        1.      The *Bowne* and *Basore* Proceedings and the Recently-Produced
                Discovery. ..................................................................................3

        2.      Wells Fargo's Corporate-wide Policies Resulted in Widespread
                Underpayment of the Class. .........................................................3

IV.     Legal Argument ............................................................................................ 4

        1.      Leave to Amend Should Be Granted Pursuant to Rule 15(a). ...............4

                a.      Legal Standard ................................................................4

                b.      Plaintiffs Timely Sought to Amend the Complaint. ....................6

                c.      Wells Fargo's "Tactical Advantage" Argument is Without Merit. ............6

                d.      Plaintiffs Only Recently Obtained Discovery and Learned the
                        Crucial Facts Regarding the Cause of the Non-Compliance in
                        Addition to the True Size and Scope of this Case. ........................7

                e.      Wells Fargo Will Not Be Prejudiced By the Amendment............................7

                f.      Plaintiffs' Claims Are Far From Futile. ........................................9

                        (1)     Plaintiffs Theory of the Case is Not Futile. ......................9

                        (2)     Plaintiffs' Itemized Time Statements Claim is Not Futile.............10

                        (3)     Plaintiffs' Straight Time Pay Claim is Not Futile..........................10

                        (4)     Plaintiffs' Class Period is not Futile. ...............................10

        2.      Wells Fargo's Miscellaneous Arguments Also Fail. ...........................12

                a.      Plaintiffs' Consolidated Complaint is an Appropriate Mechanism
                        for this MDL Proceeding. ........................................................12

                b.      The Scheduling Order in the Dismissed *Bowne* Case Does Not
                        Control. ..................................................................................13

V.      Conclusion ................................................................................................... 14

CERTIFICATE OF SERVICE ...................................................................................... 15

i

**TABLE OF AUHTORITIES**

Federal Cases

*Adams v. Inter-Con Security Systems, Inc.*, 242 F.R.D. 530 (N.D. Cal. 2007) ...........................11

*DCD Programs Ltd. v. Leighton*, 833 F.2d 183 (9th Cir. 1987)........................................5

*Dogen v. Globalware Solutions, Inc.*, No. 06-00797, 2006 WL 3827545 (N.D. Cal. Dec. 28, 2006) ......................................................................................................5, 6

*Eminence Capital, LLC v. Aspeon*, 316 F.3d 1048 (9th Cir. 2003) ..................................5

*Griggs v. Pace Am. Group*, 170 F.3d 877 (9th Cir. 1999)..............................................5

*IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005) ......................................................................8

*Immigrant Assistance Project of the Los Angeles County Federation of Labor, et al. v. Immigration and Naturalization Service, et al.*, 306 F.3d 842 (9th Cir. 2002) ........................12

*In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 536 F.Supp.2d 1129 (N.D. Cal. 2008).......................................................................................................9

*In re Glacier Bay*, 746 F. Supp. 1379 (D. Alaska 1990) ...........................................5, 12

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 1133 (1999).........................13

*McPhail v. First Command Financial Planning, Inc.*, 247 F.R.D. 598 (S.D. Cal. 2007) ...............5

*Perez v. Tilton*, No. 05-05241, 2008 WL 686723 (N.D. Cal. March 10, 2008) ...........................5

*Reynov v. ADP Claims Services Group, Inc.*, No. 06-2056, 2006 WL 3782837 (N.D. Cal. 2006)..................................................................................................................11

*Sandoval v. TCI Cablevision*, No. C-94-20785, 1995 WL 39444 (N.D. Cal. 1995) ....................9

*Shin v. Cobb County Bd. Of Educ.*, 248 F.3d 1061 (11th Cir. 2001)...............................5

*Solis v. Lincoln Electric Co.*, No. 04-cv-17363, 2006 WL 266530 (N.D. Ohio Feb. 1, 2006) .........................................................................................................12-13

*Torres-Lopez v. May*, 111 F.3d 633 (9th Cir. 1997).................................................9

State Statutes

Cal. Labor Code § 226 .........................................................................................10

Federal Rules

Manual for Complex Litigation § 20.132 ......................................................12, 13

ii

1    Plaintiffs, individually and on behalf of a class of similarly situated individuals, by and
2    through their undersigned counsel, for their reply in support of their Motion for Leave to Amend
3    their Complaint state as follows:

4    ## I.    PROCEDURAL POSTURE

5    Plaintiffs filed their "Consolidated Complaint" on March 21, 2008 (Doc. 31). Wells
6    Fargo filed an expedited Motion to Strike the Consolidated Complaint on March 31, 2008 (Doc.
7    33). On April 9, 2007, Plaintiffs filed (under seal) an Opposition to Wells Fargo's Motion to
8    Strike, and in the alternative moved to amend the Complaint (under seal). Wells Fargo filed its
9    Reply in Support of its Motion to Strike and Opposition to Plaintiffs' Motion to Amend on April
10    11, 2008 (Doc. 44). Plaintiffs filed a Reply in Support of Their Motion to Amend on April 21,
11    2008 (Doc. 53).

12    Subsequent to this extensive briefing, the Court held a hearing on Wells Fargo's Motion
13    to Strike and Plaintiffs' alternative Motion to Amend on April 28, 2008. At the hearing, counsel
14    for Wells Fargo asked for an additional opportunity to respond in more detail to Plaintiffs'
15    Motion to Amend. Wells Fargo submitted its most recent brief on May 12, 2008 (under seal)
16    and Plaintiffs now submit their Reply in support of their Motion to Amend.

17    At issue before the Court is whether Plaintiffs should be granted leave to file an amended
18    complaint. Plaintiffs' motion for leave to amend does not ask for an adjudication on the merits.
19    Yet Wells Fargo's brief in opposition to Plaintiffs' motion to amend is replete with premature
20    merits-based arguments. Further, the entire premise for this additional round of briefing is based
21    on Wells Fargo's counsel's representation that Wells Fargo needed more time to raise additional
22    arguments. Wells Fargo's May 12, 2008 opposition brief, however, raises the same "undue
23    delay" and "prejudice" arguments as those raised in its previous Motion to Strike/Motion to
24    Amend briefing. Although Plaintiffs have already responded to these arguments in their
25    previous briefing, Plaintiffs will again respond for the convenience of the Court.

26
27
28

## II.    INTRODUCTION

The sole issue before the Court is whether Plaintiffs should be permitted to amend their Complaint. Wells Fargo's main argument against amendment is that Plaintiffs delayed in seeking to amend their Complaint. This argument, however, is contrary to the facts, the law, and common sense. Plaintiffs attempted to amend their Complaint as soon as Wells Fargo's initial testimony and

The importance of the Standard Hours policy was first brought to light on January 31, 2008, when Wells Fargo produced its first witness for deposition.

Plaintiffs filed their Consolidated Complaint. As a result of this recent discovery, Plaintiffs amended the class definition to include:

> All current and former Wells Fargo Bank, N.A. Team Members who were classified as non-exempt but who were subject to Wells Fargo's "Standard Hours" policy since January 2003.[1]

In light of this factual and procedural backdrop, the arguments in Wells Fargo's Opposition Brief are without merit. There has been no delay, and Wells Fargo is unable to allege any undue prejudice. Accordingly, Plaintiffs' Motion to Amend should be granted pursuant to the liberal standards of Fed. R. Civ. P. 15(a).

---

[1] Plaintiffs have stipulated that the class shall not include individuals whose claims were validly released in *Osinga v. Wells Fargo & Company*.

### III.    RELEVANT FACTS

**1.    The *Bowne* and *Basore* Proceedings and the Recently-Produced Discovery.**

Plaintiffs first served discovery seeking information about Wells Fargo's compensation policies and practices on August 8, 2006. Due to several procedural complexities and by agreement of the parties, this discovery was delayed. Before discovery recommenced, Plaintiffs filed the *Basore* action and Wells Fargo initiated the MDL process. The lengthy MDL process further delayed Plaintiffs' discovery efforts. After the litigation was transferred to this Court, the parties agreed to stay formal discovery in hopes that an early mediation would resolve the case. The mediation failed in September 2007 and Plaintiffs immediately served renewed discovery requests on Wells Fargo. As a result of this procedural posture, Plaintiffs were unable to take their first deposition until January 31, 2008. At that deposition, *Plaintiffs learned for the first time about the Standard Hours policy and that all non-exempt Team Members – not just Loan Processors – were paid pursuant to the same corporate-wide policy.*

As a result of the recently-produced information, the scope of the case has expanded. It is now – for the first time – clear that *all* non-exempt Team Members, not just Loan Processors, were paid pursuant to Wells Fargo's "Standard Hours" policy.

**2.    Wells Fargo's Corporate-wide Policies Resulted in Widespread Underpayment of the Class.**

Until January 1, 2006, all Wells Fargo Team Members classified as non-exempt were paid pursuant to the Standard Hours policy.

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.  LEGAL ARGUMENT

Plaintiffs have already responded to the large bulk of Wells Fargo's legal arguments in prior briefing, but will, for the convenience of the Court, respond to Wells Fargo's arguments.

### 1.  Leave to Amend Should Be Granted Pursuant to Rule 15(a).

#### a.  Legal Standard

Fed. R. Civ. P. 15(a) states that leave to amend "shall be freely given when justice so requires." A district court is presumptively required to allow amendment of a complaint unless the defendant can prove bad faith, undue delay, prejudice to the opposing party, or futility.

1    *Griggs v. Pace Am. Group,* 170 F.3d 877, 880 (9th Cir. 1999). The policy of permitting

2    amendment "is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon,* 316

3    F.3d 1048, 1051 (9th Cir. 2003); *Dogen v. Globalware Solutions, Inc.,* No. 06-00797, 2006 WL

4    3827545, *1 (N.D. Cal. Dec. 28, 2006) ("all inferences should be drawn in favor of granting

5    leave to amend"). The party opposing the amendment bears the burden of showing prejudice.

6    *DCD Programs Ltd. v. Leighton,* 833 F.2d 183, 187 (9th Cir. 1987).

7        Similarly, courts routinely permit the amendment of class definitions and always have the

8    discretion to modify a class definition pursuant to Rule 23. *See* Fed.R.Civ.P 23(c)(1). This is

9    because "the contours of the case may change after discovery is completed and as the parties

10    prepare for trial, necessitating modification of the class definition." *Intratex Gas Co. v. Beeson,*

11    22 S.W.3d 398 (Tex. 2000); *see also Perez v. Tilton,* No. 05-05241, 2008 WL 686723, *4 (N.D.

12    Cal. March 10, 2008) (court has discretion to amend class definition before final judgment); *Shin*

13    *v. Cobb County Bd. Of Educ.,* 248 F.3d 1061 (11th Cir. 2001) (courts certify amendments to

14    class definitions that arise well after plaintiffs submit certification motions); *McPhail v. First*

15    *Command Financial Planning, Inc.,* 247 F.R.D. 598, 608 (S.D. Cal. 2007) (granting motion to

16    amend class definition to conform to the court's certification decision).

17        Here, there is no reason that leave should not be granted for Plaintiffs to file their

18    Consolidated Complaint. Plaintiffs diligently filed the Consolidated Complaint soon after

19    obtaining                                                  Wells Fargo demonstrates little, if any,

20    prejudice that would result from filing the updated pleading. Under these circumstances, leave to

21    amend should be granted. This is not a case where the discovery cut-off is nearing or where

22    Plaintiffs unfairly delayed in making amendments. While Wells Fargo may find it inconvenient

23    that Plaintiffs discovered the overarching corporate policy that caused the widespread

24    underpayment of wages, additional exposure to liability is not the kind of undue prejudice that

25    weighs against leave to amend. *See e.g. In re Glacier Bay,* 746 F. Supp. 1379, 1391 (D. Alaska

26    1990).

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### b.    Plaintiffs Timely Sought to Amend the Complaint.

Wells Fargo's primary argument against amendment is that Plaintiffs unduly delayed in amending their Complaint. As an initial matter, undue delay alone is not sufficient to deny a motion for leave to amend. *Dogen,* 2006 WL at *1. But the point is moot as Plaintiffs did not delay in amending their Complaint. As discussed in detail above, Plaintiffs sought to make their amendments as soon as they received the initial discovery that first identified the size and scope of the case.[2] The initial Case Management Order was not issued until November 13, 2007 and the parties have engaged in only preliminary discovery. Wells Fargo's suggestion that this MDL litigation is in an advanced stage is simply incorrect. If there has been any delay, it has been a result of the lengthy MDL transfer process and Wells Fargo's lengthy document production. Plaintiffs cannot be taken to task for seeking to incorporate the recently-learned facts that are central to the case at this early stage.

### c.    Wells Fargo's "Tactical Advantage" Argument is Without Merit.

Wells Fargo's argument that Plaintiffs somehow received a tactical benefit by stipulating to a narrow class in *Bowne* is not only without merit – it is completely unintelligible. The fact that a stipulation was reached in *Bowne* has no effect on whether leave to amend should be granted.

---

[2]  Wells Fargo argues that Plaintiffs long ago should have known and understood: (1) the cause of Wells Fargo's non-compliance; and (2) the scope of this case. Wells Fargo bases its argument on previously-produced personnel files and handbooks containing vague references to "standard hours" that are unintelligible and without context. These generic references did not put Plaintiffs on notice of the context and the impact of Standard Hours.

    Plaintiffs did not delay in amending their Complaint, and filed their amendment within weeks of the salient facts coming to light. As a result, and because this case is still in its early stages, leave to amend should be freely granted.

1

2

                    **d.    Plaintiffs Only Recently Obtained Discovery and Learned the**
                    **Crucial Facts Regarding the Cause of the Non-Compliance in**
                    **Addition to the True Size and Scope of this Case.**

3       Wells Fargo recycles its "undue delay" argument in asserting that Plaintiffs knew about

4   Standard Hours and its scope. But as discussed above, Plaintiffs did not know or understand the

5   Standard Hours policy

6       Wells Fargo argues that Plaintiffs' previous allegation of a uniform and company-wide

7   compensation policy suggests that Plaintiffs understood the Standard Hours policy and its reach

8   from the start of the case. This is simply not true. Plaintiffs, in alleging a uniform policy, did

9   not yet know what the policy was and the scope of who it affected. Plaintiffs had not yet

10  discovered the cause of the underpayment of Loan Processors (let alone the other similarly

11  situated job categories). It was not until recently that Plaintiffs uncovered the Standard Hours

12  policy that resulted not only in the underpayment of Loan Processors, but also all non-exempt

13  Team Members.

                    **e.    Wells Fargo Will Not Be Prejudiced By the Amendment.**

14

15

16

17

18

19       Wells Fargo also knew that Plaintiffs fully intended to expand the scope of the

20  class if discovery so warranted. *See* August 11, 2007 email from Wells Fargo counsel to

21  Plaintiffs' counsel ("*You will not agree to be precluded from seeking to expand the class* if you

22  discover evidence of unpaid overtime in other regions and a reasonable level of similarity exists

23  between the current class and any proposed addition to the class.") (emphasis added) (Attached

24  as Exhibit B to May 19, 2008 Declaration of Eric Dirks).

25       In any event, Plaintiffs have always defined the class broadly to include other people who

26  were "similarly situated." *See, e.g.,* Initial *Basore* Complaint ("The class of employees on behalf

27

28

                                            7

1  of whom Plaintiffs bring this "opt-in" collective action is similarly situated because they have

2  been or are employed in the same or similar position as individually-named Plaintiffs and were

3  subject to the same or similar unlawful practices as the individually-named Plaintiffs."").

4  Plaintiffs now know that *all* non-exempt Team Members are "similarly situated"

5  .                                                          While Plaintiffs' early focus was on Loan

6  Processors, Wells Fargo was on notice that similarly situated employees (paid pursuant to the

7  same compensation policy) could become part of the case.[3]  But even if Wells Fargo was

8  actually surprised that the class definition expanded to include persons other than Loan

9  Processors, it is still not unduly prejudiced because merits discovery has not yet commenced and

10 the Court has not even set a discovery cut-off, class certification hearing, or a trial date.  For this

11 reason, Plaintiffs are agreeable to providing Wells Fargo as much time as it needs to respond to

12 Plaintiffs' class certification motion in exchange for an agreement to toll the FLSA limitations

13 period for all class members.

14      Finally, Wells Fargo claims prejudice from the addition of Wells Fargo & Company to

15 the new Complaint.  But there can be no prejudice since Wells Fargo itself recognizes that Wells

16 Fargo Bank, N.A. and Wells Fargo & Company are one and the same.  *See* Wells Fargo &

17 Company Annual Report 2006, p.5 (Attached as Exhibit C to May 19, 2008 Declaration of Eric

18 Dirks) ("we're changing the way we think and act--as one company, not 80+ separate businesses.

19 Among ourselves, we call this way of thinking and acting 'one Wells Fargo.'  We're asking

20

21 [3]      Wells Fargo cites several inapposite cases in support of its prejudice argument.  In each
   of those cases, however, the plaintiffs were well aware of the additional class members, but
22 inexplicably waited to expand the class until late stages of the litigation.  Here, Plaintiffs filed
   their Consolidated Complaint as soon as they learned of the true scope of the class in discovery.
23

24      Wells Fargo also suggests that an FLSA case involving many job classifications is
   improper.  But when there are many classifications that are united by a common pay policy, the
25 case appropriately proceeds as a class or collective action.  Indeed, the United States Supreme
   Court recently affirmed a judgment in a case involving a class consisting of approximately 258
26 different job classifications because all of the job categories were subject to the same alleged
   illegal compensation policy.  *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 30 (2005).
27

28

1 ourselves, 'what are the most significant ways we can present ourselves to our customers as *one*
2 company?' We want our customers to see us as one organization. . .").  Because (1) the
3 operations of Wells Fargo Bank, N.A. are interrelated with Wells Fargo & Company, and (2) the
4 companies share common management, including a common human resources department, a
5 common legal department and a common compliance function, Wells Fargo Bank, N.A. and
6 Wells Fargo & Company are joint employers of non-exempt Team Members and are jointly and
7 severally liable for violations of the FLSA. *See Torres-Lopez v. May*, 111 F.3d 633, 639 (9th
8 Cir. 1997) (noting "the concept of joint employment should be defined expansively under the
9 FLSA").  There is nothing prejudicial to Wells Fargo about clarifying the parties participating in
10 this case and Wells Fargo can articulate no prejudice as a result of the amendment.

           f.    **Plaintiffs' Claims Are Far From Futile.**

12       Courts within this Circuit routinely reject futility arguments and permit the amendment of
13 complaints due to the extremely liberal standard for amendment.  "The standard for denying
14 leave to amend based on futility is very difficult to meet.  A proposed amendment is "futile" only
15 if no set of facts could be proved under the amendment which would constitute a valid claim or
16 defense or where the amendment's theory is completely lacking in legal foundation."  *See*
17 *Sandoval v. TCI Cablevision*, No. C-94-20785, 1995 WL 39444, *7 (N.D. Cal. 1995) (quotations
18 omitted).  Further, in most cases "the court waits until a motion to dismiss has been filed to pass
19 upon the viability of substantive allegations." *See, e.g., In re Dynamic Random Access Memory*
20 *(DRAM) Antitrust Litigation*, 536 F.Supp.2d 1129, 1136 (N.D. Cal. 2008).

21       Here, Wells Fargo's futility arguments rest on disputed factual allegations and the legal
22 application of those facts.  As a result, Wells Fargo's arguments are premature and do not satisfy
23 the difficult burden of showing futility.

           (1)    **Plaintiffs Theory of the Case is Not Futile.**

25       Wells Fargo's first futility argument is that its Standard Hours policy is lawful.  This is a
26 merits-based argument that is more appropriate for a jury, or at minimum, for summary

                                         9

1    judgment.

2

3

4                          (2)     **Plaintiffs' Itemized Time Statements Claim is Not**
                                    **Futile.**
5

6          Wells Fargo suggests that Plaintiff Basore's claim based on Wells Fargo's failure to

7    provide itemized statements is barred by a one-year statute of limitations.  Plaintiffs agree that a

8    claim for a *penalty* under § 226 is governed by a one-year limitations period, but § 226 also

9    permits a claim for a non-penalty recovery – which is what Plaintiffs seek and pleaded in the

10   Consolidated Complaint.  *See* Cal. Labor Code § 226 (e) ("an employee suffering injury . . . is

11   entitled to recover the greater of actual damages or . . . [a penalty]"); *see also* Consolidated

12   Complaint at ¶ 110 (seeking restitution, but not a penalty).  As a result, the one-year limitations

13   period is inapplicable to Plaintiffs' claims.  But even if the one-year limitations period applies in

14   this case, Plaintiff's claim is not barred because Plaintiff could not have reasonably discovered

15   Wells Fargo's failure to provide accurate itemized statements by January 2006 because she was

16   provided misleading statements that kept her from understanding that she was being underpaid.

17                          (3)     **Plaintiffs' Straight Time Pay Claim is Not Futile.**

18         Wells Fargo's next futility argument is that Plaintiff Basore may not make a "straight

19   time" pay argument because she testified that she thought she was on salary.  But Wells Fargo

20   has previously admitted that although Loan Processors such as Basore *thought* they were on a

21   salary, they were nevertheless non-exempt employees who were entitled to be paid for all hours

22   worked.  *See e.g.* Wells Fargo Team Members Handbook (attached as Exhibits 2-4 to "Kelly

23   Supp. Dec." (Doc. 46)) ("If you're in a non-exempt position, you are entitled to pay for all hours

24   actually worked").

25                          (4)     **Plaintiffs' Class Period is not Futile.**

26         Finally, Wells Fargo's limitations period arguments are premature.  Plaintiffs are merely

27   seeking to amend their Complaint at this juncture.  Issues relating to tolling and relation back

28
                                                10

1  should be determined in the future and on their full merits. At this stage, Plaintiffs have

2  adequately made allegations of tolling and relation back. Wells Fargo cites no authority for the

3  proposition that the Court may deny leave to amend on the basis that the amendment may not

4  relate back or that equitable tolling may not be available on the merits. To the contrary, those

5  issues are not ripe for disposition at this juncture. *See, e.g., Reynov v. ADP Claims Services*

6  *Group, Inc.,* No. 06-2056, 2006 WL 3782837, *4 (N.D. Cal. 2006) (distinguishing relation back

7  under Rule 15(c) from leave to amend under Rule 15(a) and ruling that "the only standard" in

8  determining whether leave to amend should be granted is found in Rule 15(a), not Rule 15(c)).

9  *See also Adams v. Inter-Con Security Systems, Inc.,* 242 F.R.D. 530 (N.D. Cal. 2007)

10  (determining issues of tolling and statute of limitations in FLSA lawsuit when addressing class

11  notice).[4]

12        Wells Fargo's argument appears to be that the claims of newly-added class members (i.e.

13  class members who are not Loan Processors) can never be tolled and can never relate back.

14  Equitable tolling and relation back, however, are routinely applied to new class members when

15  the defendant is on notice of a potentially larger class than what was pled in the original

16  Complaint.

17        And as noted above, the *Bowne* and *Basore* complaints, were

18  specifically brought on behalf of "similarly situated" employees of Wells Fargo and were not

19  limited to Loan Processors. *Bowne Amended Complaint,* ¶ 13 (Case No. 06-2020, D. Kan. Doc.

20  9); *Basore Complaint,* ¶ 12 (Case No. 07-0461, N.D. Cal. Doc. 1). Further, Plaintiffs only

21  recently learned that all non-exempt Team Members are similarly situated. Under these

22  circumstances, the newly added class members' claim relate back to the filing of *Basore.*

23  Indeed, the Ninth Circuit has specifically stated that when new class members are added to a

---

25  [4]    Accepting all of Plaintiffs' allegations as true, this is the exact type of case in which

26  equitable tolling is available. *See* Consolidated Complaint at ¶¶ 32-42 (alleging that Wells Fargo actively covered up its illegal conduct in an attempt to keep non-exempt Team Members from learning the truth).

11

1    complaint, their claims relate back when they are "similarly situated" to the original class

2    members. *See Immigrant Assistance Project of the Los Angeles County Federation of Labor, et*

3    *al. v. Immigration and Naturalization Service, et al.,* 306 F.3d 842, 858 (9th Cir. 2002). In

4    *Immigrant Assistance Project*, the Ninth Circuit noted that there is no prejudice to the defendant

5    when newly-added class members were governed by the same regulations and practices as the

6    original class members. *Id. See also In re Glacier Bay*, 746 F. Supp. at 1391 (addition of

7    different categories of plaintiffs who are, nevertheless, similarly situated relates back to original

8    complaint). That is precisely the case here.

9         In any event, even if the claims of the new class members are not tolled and/or do not

10   relate back, that is no reason for leave to amend to be denied. Plaintiffs should be permitted to

11   file the Consolidated Complaint regardless of what decision the Court makes regarding the

12   applicable limitations period.

13                    **2.    Wells Fargo's Miscellaneous Arguments Also Fail.**

14        Wells Fargo makes two additional arguments in its opposition brief that do not fall under

15   the Rule 15(a) standard. Plaintiff briefly responds to those arguments.

16                        **a.    Plaintiffs' Consolidated Complaint is an Appropriate**

17                             **Mechanism for this MDL Proceeding.**

18        Wells Fargo's argues that the Consolidated Complaint is inappropriate under the MDL

19   statute. But Consolidated Complaints are routinely used in MDL proceedings and should be

20   used here. Tellingly, it was Wells Fargo who sought to have the *Bowne* and *Basore* cases

21   transferred and coordinated. After the JPML transferred *Bowne* and *Basore*, this Court issued a

22   November 13, 2007 Case Management Order, agreed to by the parties, that specifically stated

23   that Plaintiffs' counsel shall file a consolidated complaint. *See* November 13, 2008 Case

24   Management Order (Doc. 12). Wells Fargo now seeks to undo the consolidation of these cases.

25   In any event, consolidated complaints are routinely utilized in the MDL context. *See, e.g.,*

26   Manual for Complex Litigation § 20.132, n. 668; *Solis v. Lincoln Electric Co.,* No. 04-cv-17363,

27

28

                                                    12

1   2006 WL 266530, *4 (N.D. Ohio Feb. 1, 2006).

2       Wells Fargo also takes issue with the *Bowne* plaintiffs asserting venue in this Court in the

3   Consolidated Complaint. First, because Wells Fargo is subject to the jurisdiction of this Court,

4   the *Bowne* Plaintiffs are free to effectively "refile" in the Northern District of California. Indeed,

5   their case in the District of Kansas has been dismissed. The *Bowne* plaintiffs' assertion of venue

6   in this Court is appropriate under these circumstances. And the filing of a Consolidated

7   Complaint is not inconsistent with the holding in *Lexecon Inc. v. Milberg Weiss Bershad Hynes*

8   *& Lerach,* 523 U.S. 1133 (1999) because the *Bowne* plaintiffs have properly asserted venue and

9   because Wells Fargo is subject to jurisdiction in this District. *See* Manual for Complex

10  Litigation § 20.132 (expressly stating that transferee courts may "resolve multidistrict litigation

11  through trial while remaining faithful to the *Lexecon* limitations" by permitting the plaintiffs to

12  "file an amended complaint asserting venue in the transferee district."). In any event, even if this

13  Court were to determine that *Bowne* must be remanded to the District of Kansas upon the

14  completion of pretrial proceedings,[5] this does not mean that a Consolidated Complaint is

15  inappropriate in this MDL context or that Plaintiffs should not be permitted to amend their

16  Complaint. It merely means that remand may occur at the completion of pretrial proceedings.

17  Regardless of whether the Bowne claims are ultimately remanded to another judicial district, a

18  Consolidated Complaint makes pretrial proceedings more efficient and should be permitted here.

19          b.    **The Scheduling Order in the Dismissed *Bowne* Case Does Not
                  Control.**

20

21      Wells Fargo argues that because the scheduling order entered by the District of Kansas in

22  *Bowne* (an order pre-dating transfer to this court) would have required an amendment to the

23  pleadings before now, Plaintiffs have missed the cut-off for amending the Complaint in ***this***

24  MDL proceeding. Following this line of reasoning, however, would lead to the absurd result that

25  discovery is now closed, no more motions whatsoever may be filed, and trial is to be held in July

26  _____
    [5] Wells Fargo suggests that Plaintiff Bowne is somehow abandoning the class of FLSA opt-ins
27  she represents. This is untrue, Plaintiff Bowne continues to represent the FLSA opt-in class –
    regardless of whether the class claims are tried in California or Kansas.

28
                                          13

1   2008. *See Bowne* May 15, 2007 Scheduling Order (Doc. 99). Neither party has adhered to the

2   *Bowne* scheduling order because it is obvious that it does not control. Simply put, the *Bowne*

3   scheduling order is a nullity and, in any event, is superseded by this Court's November 13, 2007

4   Case Management Order setting out different dates for proceedings in this case.[6]

5                                   **V.    CONCLUSION**

6          Wells Fargo's claims of prejudice are disingenuous and constitute thinly-veiled attempts

7   to limit its liability for clear FLSA and California law violations. The Consolidated Complaint is

8   an immediate response to the recently-produced discovery and is an attempt to streamline the

9   litigation. The amendments can be no surprise as Wells Fargo has been on notice for years that

10  the violations in this case were not limited to Loan Processors, but rather affect all non-exempt

11  Team Members subject to the Standard Hours compensation policy. The Court should grant

12  leave for Plaintiffs to amend the Complaint for the reasons stated above.

13

14  **Dated: May 19, 2008**

15                              Respectfully submitted,

16                              **STUEVE SIEGEL HANSON LLP**

17

18                              By:_____/s/ George A. Hanson_____
                                   George A. Hanson
19                                 hanson@stuevesiegel.com
                                   Norman E. Siegel
20                                 siegel@stuevesiegel.com
                                   Eric L. Dirks
21                                 dirks@stuevesiegel.com
                                   Ashlea G. Schwarz
22                                 ashlea@stuevesiegel.com
                                   460 Nichols Road, Suite 200
23                                 Kansas City, Missouri 64112
                                   Telephone:    (816) 714-7100
24                                 Facsimile:    (816) 714-7101

25                              **LEAD COUNSEL FOR PLAINTIFFS**

26  _____

27  [6] Wells Fargo's insistence that the underlying *Bowne* and *Basore* cases should proceed on
    separate tracks defies the fundamental purpose of the MDL mechanism.

28
                                          14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on the 19th day of May, 2008, I emailed the foregoing to the following:

> Denise K. Drake
> ddrake@spencerfane.com
> Eric P. Kelly
> ekelly@spencerfane.com
> Spencer Fane Britt & Browne
> 1000 Walnut, Suite 1400
> Kansas City, MO 64106
> PH:    816-474-8100
> FAX:  816-474-3216

ATTORNEYS FOR DEFENDANT


_____ /s/ George A. Hanson _____
Attorney for Plaintiffs

15