George A. Hanson
Norman E. Siegel
Eric L. Dirks
Ashlea G. Schwarz
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone:     (816) 714-7100
Facsimile:      (816) 714-7101
ATTORNEYS FOR PLAINTIFFS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE WELLS FARGO LOAN PROCESSOR OVERTIME PAY LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL CASES | MDL Docket No. 1841 (MHP)<br><br>**PLAINTIFFS' UNOPPOSED MOTION AND POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY CLASS SETTLEMENT APPROVAL**<br><br>**Date: May 17, 2010**<br>**Time: 2:00 PM**<br>**Dept: 15**<br>**Judge: Hon. Marilyn Hall Patel** |

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

**NOTICE IS HEREBY GIVEN** that on May 17, 2010 at 2:00 p.m., a hearing on matters raised in this Motion will take place before the Honorable Marilyn Hall Patel, District Court Judge for the Northern District of California.  The hearing will be at Courtroom 15 in the United States Courthouse located at 450 Golden Gate Avenue, San Francisco, California.

Plaintiffs will move the Court for an Order:

- Granting Preliminary Settlement Approval;
- Certifying the Classes for Settlement Purposes;
- Appointing Stueve Siegel Hanson LLP as Class Counsel;
- Ordering Notice of Settlement Be Sent to the Class; and

- Issuing a Scheduling Order for Settlement Administration.

This Motion is based upon this Notice, the Memorandum of Points and Authorities, affidavits, pleadings and other exhibits in support thereof, as well as any documents or testimony presented at the time of hearing.

## INTRODUCTION

Plaintiffs Trudy Bowne, Mary Basore, and Brenda McMillian ("Plaintiffs") and Wells Fargo Bank, N.A. and Wells Fargo & Co. ("Wells Fargo") have reached a settlement in the above-captioned lawsuit. For the reasons set forth below, the class settlement is fair, reasonable and adequate and meets the standards for approving a class and collective action settlement. The settlement is memorialized in the Settlement Agreement attached to the April 26, 2010 Declaration of Eric L. Dirks ("Dirks Decl.") as Exhibit A.

The parties request that this Court: (i) certify the class action for settlement purposes; (ii) appoint Trudy Bowne, Mary Basore, and Brenda McMillian as class representatives; (iii) approve the designation of the law firm of Stueve Siegel Hanson, LLP as Class Counsel; (iv) grant preliminary approval of the settlement; (v) authorize notice of the settlement to be sent to the classes; and (vi) issue a schedule for the notice period and for a final settlement approval hearing.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... ii

TABLE OF CONTENTS............................................................................................ ii

TABLE OF AUTHORITIES ...................................................................................... v

ARGUMENT ............................................................................................................. 1

I. PROCEDURAL BACKGROUND..................................................................... 1

    A. Wage and Hour Class and Collective Action. ........................................... 1

II. SUMMARY OF THE PROPOSED SETTLEMENT ......................................... 5

III. APPROVAL OF THE RULE 23 CLASS SETTLEMENT ................................ 7

    A. The Proposed Settlement Enjoys an Initial Presumption of Fairness. ...... 8

    B. Analysis of the Applicable Factors Favors the Settlement. ...................... 9

        1. The Amount Offered in Settlement. ................................................. 9

        2. The Extent of Discovery and the Stage of the Proceedings. ................ 10

        3. The Expense, Complexity, and Duration of Further Litigation. ........... 10

        4. The Experience and Views of Counsel. ........................................... 11

        5. The Strength of the Plaintiffs' Case. ............................................... 12

        6. The Risk of Maintaining a Class Action Throughout Trial.................... 12

    C. The Proposed Settlement Class Satisfies Rule 23.................................... 13

        1. Plaintiffs Meet the Requirement of Numerosity. ................................ 13

        2. Plaintiffs Meet the Commonality Requirement.................................... 13

        3. Plaintiffs Meet the Typicality Requirement. ..................................... 14

        4. Plaintiffs Meet the Adequacy Requirement. ..................................... 15

    D. Plaintiffs Satisfy the Requirements of Rule 23(b)(3). ........................... 15

        1. Common Questions Predominate. ................................................... 15

        2. A Class Action is the Superior Method of Adjudication........................ 17

IV. APPROVAL OF THE FLSA CLAIMS ........................................................... 17

V. THE COURT SHOULD APPROVE THE PROPOSED NOTICE ................... 18

    A. The Proposed Rule 23 Class Notice Provides the Highest Level of Notice. ........ 18

VI. THE ACTIVE PLAINTIFFS ARE ENTITLED TO INCENTIVE AWARDS .............. 19

VII. PLAINTIFFS' COUNSEL ARE ENTITLED TO REASONABLE FEES AND EXPENSES ......................................................................................................... 21

VIII.   SCHEDULE OF EVENTS ................................................................................. 24

IX.     CONCLUSION ............................................................................................... 24

CERTIFICATE OF SERVICE ......................................................................................... 26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**TABLE OF AUTHORITIES**

2

3   *Adams v. Inter-Con Sec. Sys., Inc.,* No. C-06-5428, 2007 WL 3225466
        (N.D. Cal. Oct. 30, 2007) ................................................................................ 8

4   *Alba v. Papa John's USA, Inc.,* No. 05-7487, 2007 WL 953849 (C.D. Cal. Feb. 7, 2007) ......... 16

5   *Amchem Prods. v. Windsor,* 521 U.S. 591 (1997 ................................................... 13

6   *Bellows v. NCO Fin. Sys., Inc.,* No. 3:07-cv-01413-W-AJB, 2008 WL 5458986
        (S.D. Cal. Dec. 10, 2008) ................................................................................ 9

7   *Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir. 1975) .......................................... 15

8   *Boyd v. Bechtel Cor*p., 485 F. Supp. 610 (N.D. Cal. 1979) .................................... 9

9   *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697 (1945) ........................................ 17

10  *Cruz v. Dollar Tree Stores, Inc.,* No. 07-2050SC, 2009 WL 1458032
        (N.D. Cal. May 26, 2009) ................................................................................ 13

11  *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974) ........................................ 19, 20

12  *Erie Cty. Retirees Ass'n v. County of Erie, Pennsylvania,* 192 F. Supp. 2d 369
        (W.D. Pa. 2002) .............................................................................................. 10

13
    *Fleury v. Richemont North Am., Inc.,* No. C-05-4525, 2009 WL 1010514
14      (N.D. Cal. April 14, 2009) ............................................................................. 21

15  *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147 (1982) ........................... 14

16  *Glass v. UBS Fin. Serv., Inc.,* No. C-06-4068, 2007 WL 221862
        (N.D. Cal. Jan. 26, 2007) ........................................................................... 10, 21

17  *Gribble v. Cool Transports Inc.,* No. 06-04863, 2008 WL 5281665
        (C.D. Cal. Dec. 15, 2008) ........................................................................... 7, 11
18
    *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998) ..................... passim
19
    *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992) ...................... 14

20  *Harris v. Palm Spring Alpine Estates, Inc.,* 329 F.2d 909 (9th Cir. 1964) ............. 13

21  *Hensley v. Eckerhart,* 461 U.S. 424 (1983) ......................................................... 21

22  *In re Austrian & German Bank Holocaust Litig.,* 80 F.Supp.2d 164 (S.D.N.Y. 2000) .......... 9

23  *In re M.L. Stern Overtime Litigation,* No. 07-cv-118, 2009 WL 3272872
        (S.D. Cal. Oct. 9, 2009) ................................................................................ 21

24  *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454 (9th Cir. 2000) ........................... 8

25  *Jacobs v. California State Auto Ass'n Inter-Ins. Bereau,* No. 07-00362, 2009 WL
        3562871 (N.D. Cal. Oct. 27, 2009) ............................................................... 21
26
    *Krzesniak v. Cendant Corp.,* No. 05-05156, 2007 WL 1795703 (N.D. Cal. June 20, 2007) ....... 16

27

28

*Kurihara v. Best Buy Co. Inc.,* No. 06-01884, 2007 WL 2501698
(N.D. Cal. Aug. 30, 2007).................................................................................. 16

*Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507 (9th Cir. 1978) ....................................... 17

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*
244 F.3d 1152 (9th Cir. 2001) .................................................................... 15, 16

*Lynn's Food Stores, Inc. v. U.S.,* 679 F.2d 1350 (11th Cir. 1982)............................................ 17, 18

*Mateo v. M/S Kiso,* 805 F. Supp. 761 (N.D. Cal. 1991) ........................................................ 15

*Misra v. Decision One Mortgage Co.,* No. SA CV 07-0994, 2009 WL 4581276
(C.D. Cal. April 13, 2009) .................................................................................. 20

*Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982 ............................... 8

*Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1149 (8th Cir. 1999) ............................................. 8

*Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 963 (9th Cir. 2009 ......................................... 9

*Sandoval v. Tharaldson Employee Mgmt.,* No. EDCV 08-00482-VAP, 2009 WL
3877203 (C.D. Cal. Nov. 17, 2009) ................................................................. 10

*Singer v. Becton Dickinson and Co.,* No. 08-CV-821-IEG, 2009 WL 4809646
(S.D. Cal. Dec. 9, 2009) ................................................................................... 10

*Six (6) Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301 (9th Cir. 1990) .................... 22

*Stalnaker v. Novar Corp.,* 293 F. Supp. 2d 1260, 1262 (M.D. Ala. 2003) .................................. 17

*Tarlecki v. bebe Stores, inc.,* No. C05-1777, 2009 WL 3720872 (N.D. Cal. Nov. 3, 2009) ........ 24

*Tierno v. Rite Aid Corp.,* No. 05-02520, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006)....... 16, 17

*Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 299 (N.D. Cal. 1995 ............................... 20

*Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002)........................................... 22

*Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 306 (7th Cir. 1986) ............................. 18

*Yue Zhou v. Wang's Restaurant,* No. C05-0279, 2007 WL 2298046
(N.D. Cal. Aug. 8, 2007 ................................................................................... 18

*Zinser v. Accufix Research Inst.,* 253 F.3d 1180, 1189 (9th Cir. 2001 ................................. 16, 17

**Federal Statutes**

28 U.S.C. § 140................................................................................................ passim

**Federal Rules**

Fed. R. Civ. Proc. 23(b)(3) ............................................................................ 15

Fed.R.Civ.P. 23(e)(2)...................................................................................... 8

# ARGUMENT

## I.   PROCEDURAL BACKGROUND

### A.   Wage and Hour Class and Collective Action.

On January 19, 2006, Plaintiff Trudy Bowne filed a complaint captioned *Bowne v. Wells Fargo Home Mortgage*, D. Kan. No. 06-2020 ("*Bowne*"). *Bowne* was a Fair Labor Standards Act collective action on behalf of 75 Loan Processors[1] who opted into the case. On January 21, 2007, Plaintiffs Mary Basore and Brenda McMillian filed a complaint captioned *Basore v. Wells Fargo Home Mortgage*, et al., N.D. Cal. No. 07-0461 ("*Basore*"). *Basore* was a class action on behalf of Loan Processors seeking certification pursuant to Rule 23 under several legal theories, including failure to pay overtime wages, meal and rest period wages, straight time wages, and all wages due and owing at termination.

Wells Fargo moved for transfer and consolidation of both cases for pretrial purposes pursuant to 28 U.S.C. § 1407, and on June 22, 2007, the Judicial Panel on Multidistrict Litigation transferred *Bowne* and *Basore* to this Court. On November 13, 2007, the Court entered its initial case management order and consolidated and coordinated the *Bowne* and *Basore* cases, now referred to as the *In re Wells Fargo Loan Processor Overtime Pay Litigation,* MDL Docket No. 1841 (the "Lawsuit"). The Plaintiffs filed their Amended Consolidated Complaint in this Court (the "Complaint") on June 16, 2008. Plaintiffs' Complaint is on behalf of a California Class and a Nationwide UCL Class of non-exempt Wells Fargo team members. The California Class seeks remedies for unpaid overtime (including daily overtime); meal and rest period violations; waiting time penalties; failure to provide accurate itemized statements of time worked; and failure to make straight time payments. The Nationwide UCL Class is composed of team members from all states other than California. Plaintiffs allege that Wells Fargo violated the California UCL

---

[1]   A "Loan Processor" is any employee who held any of the following positions from January 21, 2003 through the date of Preliminary Approval: mortgage loan specialist, mortgage sales assistants, mortgage assistants, mortgage sales associates, mortgage associates, loan document specialists and loan documentation specialists.

1   through its unfair, unlawful, and deceptive use of its Standard Hours policy and they seek

2   remedies for unpaid overtime and straight time.

3   **B.   Class Certification and Mediation.**

4   Plaintiffs filed their first motion for Class and Collective Action Certification on April

5   15, 2008.   Dirks Decl. at ¶5.   After additional discovery, however, Plaintiffs moved to amend

6   their Complaint, and the original motion for class certification was set aside to allow Wells Fargo

7   to conduct additional discovery.   *Id.*   The parties conducted additional discovery and Plaintiffs

8   filed a new motion for class certification under seal on April 13, 2009.   *Id.*   Plaintiffs' motion

9   was replete with record citations and included an expert report from Dr. Ted Anderson.   Dr.

10  Anderson evaluated the records and data produced by Wells Fargo and concluded, among other

11  things, that Wells Fargo maintains records that can be easily used to conduct an analysis of the

12  issues in this case and that damages can be readily ascertained for all employees.   Wells Fargo

13  strenuously objected to class certification arguing that the alleged violations at issue had no

14  merit, and that even if they did, the alleged harm was individualized and not susceptible to class

15  treatment.   After the briefing was completed, the Court held an August 10, 2009 hearing on

16  Plaintiffs' motion for class certification.   *Id.*   At the hearing, the Class Representatives agreed to

17  suspend the motion for class certification with respect to the Nationwide UCL Class until after a

18  decision from the California Supreme Court in the case of *Sullivan v. Oracle Corp.*, Cal. S. Ct.

19  No. S170577 (4/22/09).   *Id.*   After the hearing on class certification, the parties requested that the

20  Court stay the case to permit the parties to participate in mediation in an attempt to settle the

21  Lawsuit.   *Id.*   The case has been stayed since September 8, 2009.   *Id.*

22  On October 27, 2009, the parties participated in a mediation with Jeffrey A. Ross of

23  Dickstein – Ross LLP.[2]   Dirks Decl. at ¶ 6.   At all times, the parties' negotiations were

24  adversarial, non-collusive, and at arm's length.   *Id.*   Although the mediation did not result in a

25  settlement on that day, Mr. Ross made a mediator's proposal which the parties ultimately

26

27  [2]   This was the second mediation of this case.   The first mediation was conducted in 2007.

28

1    accepted. *Id.* When material terms were finally agreed upon, the parties executed the written

2    Settlement Agreement. *Id.*

3    Counsel for the Plaintiffs and Wells Fargo are experienced in wage and hour and

4    complex litigation, and effectively represented their respective clients' interests throughout the

5    course of negotiations. Dirks Decl. at ¶ 7. During the mediation, and following negotiations,

6    counsel for the parties vigorously advocated their respective positions, and reached a

7    compromise only after spirited and arms-length negotiations. *Id.* Thereafter, over the next

8    several months, the parties negotiated and entered into a formal settlement agreement. *Id.* The

9    settlement reached in this complex wage and hour case constitutes a fair, adequate and

10   reasonable compromise of a *bona fide* dispute involving a plethora of vigorously contested legal

11   and factual issues. *Id.*

12   **C.    Claims and Defenses.**

13   Plaintiffs argued that all class members were subject to a uniform compensation policy

14   called "Standard Hours." *See* Amended Complaint at ¶26. Plaintiffs claimed that class members

15   routinely received pay for their pre-assigned "Standard Hours" regardless of the actual amount of

16   time they worked and that Wells Fargo did not require class members to keep accurate records of

17   their time until 2006. *Id.* at ¶28-34.

18   Plaintiffs argued that full time team members received pay for 86.67 hours of pay on each

19   and every semi-monthly paycheck regardless of the amount of straight time hours they actually

20   worked, but that in most pay periods, team members worked more than 86.67 semi-monthly

21   straight time hours. *Id.* at ¶ 29-30. Plaintiffs argued that throughout the class period class

22   members were mechanically underpaid by operation of the Standard Hours policy. *Id.*

23   While class members were paid for 86.67 hours as a general rule, they were eligible for

24   "exception pay." *See* Plaintiffs' April 13, 2009 Motion for Class Certification at 5. For

25   example, a class member working overtime hours could be eligible to receive overtime if his or

26   her branch manager approved the overtime "exception." *Id.* But if the manager did not approve

27   "exception pay," then the team member's pay would remain Standard Hours. *Id.* Plaintiffs

28

claimed that as a result of this pay policy, many class members who actually worked overtime hours did not record the actual amount of time they worked. *Id.* Plaintiffs alleged this resulted in a failure, among other things, to record and receive overtime pay. *Id.* at ¶¶ 5-6. Further, for the individuals who did record their time accurately, some received overtime pay, but others did not. *Id.* at 6-7. This is because under the Standard Hours policy, class members could only receive overtime pay if their manager affirmatively "approved" the overtime and created an "exception" to Standard Hours. *Id.* If a manager, for any reason (*i.e.* intending to reduce payroll costs or through mere oversight) did not approve his or her Team Member's actual time worked, the Team Member only received pay for Standard Hours. Because of this alleged flaw in the Standard Hours system, some Team Members allegedly worked overtime hours that were not paid because they were not "approved." *Id.* Wells Fargo has identified 592 Loan Processors who were not paid overtime even though their time records actually reflect overtime hours. *Id.*

Wells Fargo denied it was liable under any of Plaintiffs' claims. First, Wells Fargo noted that any alleged underpayment of overtime hours was an individual issue incapable of class treatment because whether "exceptions" were approved depended on each manager. Second, Wells Fargo claimed that "Standard Hours" was a lawful way of paying its Loan Processors because it paid them on a salary basis. Third, Wells Fargo argued that all of its pay policies were facially compliant with the FLSA and state law.

Wells Fargo also denied that class treatment of the California state law claims was proper because of the individualized inquiries necessary to resolve the California class claims for unpaid wages, overtime, meal and rest period premiums, waiting time penalties, and wage statement penalties. Wells Fargo denied any liability to Plaintiffs and the class on these state law claims.

**D.     Discovery.**

Beginning in 2006, the parties initiated the discovery process. Dirks Decl. at ¶8. Among other things, the *Bowne* Plaintiffs served interrogatory requests, document requests and noticed a 30(b)(6) deposition while the case was pending in the District of Kansas. *Id.* Wells Fargo produced documents responsive to these requests. *Id.* Plaintiffs filed their motion for collective

action certification on July 7, 2006.  *Id.*  Thereafter, the parties stipulated to certification of a limited collective action class of loan processors.  *Id.*  A total of 68 loan processors opted in to the *Bowne* action.  *Id.*  Shortly after the parties stipulated to a limited collective action class in *Bowne*, a new case, *Basore*, was filed.  *Id.*  The parties exchanged their Rule 26 disclosures on June 15, 2007 and June 18, 2007.  *Id.*  The parties then participated in a mediation on September 20, 2007.  *Id.*  In preparation for the mediation, the parties informally exchanged payroll and employment data.  *Id.*  After the mediation failed, Plaintiffs served a second set of interrogatories and document requests on Wells Fargo in the consolidated lawsuit captioned *In re Wells Fargo Loan Processor Overtime Pay Litigation*.  *Id.*  Wells Fargo also issued document requests and interrogatories on several individual plaintiffs and took the depositions of Mary Basore, Elisia Hesterberg, Jamie Hejlik, Jeni Fisher, Nicole Gering, Trudy Bowne, Brenda McMillian, Barbara Powell, and Amie Lovrein in the winter of 2007 into the beginning of 2008.  *Id.*  Plaintiffs conducted several 30(b)(6) and fact depositions in early 2008 and served a third set of interrogatories and document requests on December 22, 2008.  *Id.*  After Plaintiffs amended their Complaint in June 2008, Wells Fargo took second depositions of Plaintiffs Mary Basore and Brenda McMillian.  *Id.*  Wells Fargo also took the deposition of Plaintiffs' expert, Dr. Ted Anderson, on May 21, 2009.  *Id.*

In addition to the extensive formal discovery, Plaintiffs' Counsel also conducted in-depth interviews with class members and opt-in plaintiffs.  *Id.* at ¶9.  In addition, the parties exchanged a multitude of documents and information, including a significant sample of personnel, payroll, and compensation data relating to Plaintiffs' claims and Wells Fargo's' defenses, including dates of employment, pay records, time records, job descriptions, and company policies regarding timekeeping and the payment of overtime.  *Id.*  Plaintiffs' Counsel conducted a detailed analysis of all these documents in order to evaluate and quantify the scope of the claims and the damages claimed by Plaintiffs, as well as to evaluate the merits of Wells Fargo's defenses.  *Id.*

## II.   SUMMARY OF THE PROPOSED SETTLEMENT

The parties have executed a settlement agreement on behalf of the following groups:

1      - Class A: The 75 individuals who opted into the *Bowne* and *Basore* litigation.

2      - Class B: The approximately 592 individuals who have not joined the litigation, but who

3  recorded 5 hour more hours of overtime that was not approved in WebTime by a manager during

4  the time that manager approval in WebTime was required for the payment of overtime, from

5  January 21, 2003 through the date of Preliminary Approval.

6      - Class C: A California class of approximately 2,373 Loan Processors employed by Wells

7  Fargo from January, 21 2003 through the date of Preliminary approval.

8  Settlement Agreement at ¶3.

9      A total of $6,660,000 is allocated to settle the claims of these individuals (the "Total

10 Settlement Fund").  *Id.* at ¶4.  From this total, a non-reversionary fund of $3,000,000 is to be

11 distributed to all class members and a claims made fund of $2,200,000 million is to be

12 distributed to the California Class C Members for "off the clock" overtime claims.  *Id.*  Finally,

13 Wells Fargo has agreed to pay $1,460,000 to Class Counsel in attorneys' fees and litigation costs

14 from the Total Settlement Fund.  *Id.*

15     The $3,000,000 fund compensates Class A and Class B for all wage and hour claims,

16 including "off-the-clock" overtime.  *Id.*  For these classes there is record evidence of overtime

17 that was worked, but not paid.  Class C Members will also be compensated from the $3,000,000

18 fund for claims other than "off-the-clock" overtime claims.   Because Wells Fargo paid

19 significant amounts of overtime payments to Class C members during the class period; there is

20 no dispute that at least some Class C members worked overtime for which they were paid.  Thus,

21 Plaintiffs recognize that a mechanism to identify those who claim that they worked off-the-clock

22 overtime is necessary.  As a result, the parties created a $2,200,000 fund for California "off-the-

23 clock" violations.  *Id.*  Class C Members who worked overtime, but were not paid, may claim

24 from the $2,200,000 fund by completing a straightforward claim form.  *Id.*  The Claim Form is

25 attached to the Dirks Decl. as Exhibit B.

26     Members of each class will be sent notice by first-class mail explaining the terms of the

27 settlement, their respective rights under the settlement, and the procedure to opt-out or object to

28

the settlement.  Agreement at ¶6.  Each individual's settlement amount will be determined by a formula taking into account: (i) the number of Class Member Compensable Workweeks worked by each Class Member; (ii) the Class Member's average rate of pay; (iii) the state in which the Class Member is/was employed by Wells Fargo; (iv) the amount (if any) of recorded but unapproved time for the Class B Members; (v) the Class Member's participation in the case as an opt-in Plaintiff; and (vi) whether the Class Member's Compensable Workweeks occurred during the period of January 21, 2003 through December 31, 2005 (workweeks prior to the first full workweek after January 1, 2006 will be valued three times greater than workweeks after December 31, 2005).  *Id.*  Additionally, each Class C Member who submits a Claim Form shall receive a *pro rata* allocation from the $2,200,000 fund designated for California "off the clock overtime" claims which takes into account (i) the total number of Class Member Compensable Workweeks (ii) the individual's number of Class Member Compensable Workweeks; and (iii) the Class Member's average rate of pay.  *Id.*

On a *per capita* average, class members are eligible to receive approximately $1,714 free and clear of attorneys' fees.  Class members who worked for a large portion of the class period will be eligible for payments significantly larger than the average.

Class members who do not opt out of the settlement will release certain legal claims.  The release is limited to "wage and hour" claims that were pled or arose from the same facts giving rise to the Complaint.  *Id.* at 9.  The released claims are limited to claims related to class members' employment as a Loan Processor.  *Id.*  All Class Members have the opportunity to opt-out.  *Id.* at 6.  Any individual opting out will not be paid any amount and will not release any claims.  *Id.*  The notice period for individuals to opt-out and for California Class C Members to file a claim form will be 60 days.  *Id.*

## III.   APPROVAL OF THE RULE 23 CLASS SETTLEMENT

The standard for approval of the settlement is that it must be "fundamentally fair, adequate and reasonable." *Gribble v. Cool Transports Inc.*, No. 06-04863, 2008 WL 5281665, at *6-7 (C.D. Cal. Dec. 15, 2008) (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th

Cir. 1993)). Federal Rule of Civil Procedure 23(e) requires the Court to determine whether a final settlement binding upon class members is "fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(2). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998). The settlement may not be the product of collusion among the negotiating parties. *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 458 (9th Cir. 2000).

Approval of a Rule 23 class settlement involves a two-step process. *Manual for Complex Litigation*, § 21.632 (4th ed. 2004); 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.25, at 38-39 (4th ed. 2002); *see also Adams v. Inter-Con Sec. Sys., Inc.*, No. C-06-5428, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) (preliminarily approving settlement during first step and saving final approval for the second step). During the first step, counsel submits the proposed terms of settlement and the Court makes a preliminary fairness evaluation. If the settlement does not contain obvious deficiencies or grounds to doubt its fairness, the Court should grant preliminary approval and direct that notice under Rule 23(e) be given to class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to final approval of the settlement (the second step). *See Manual* § 21.633. At this first step of the process, the parties request that the Court grant preliminary approval of the Rule 23 settlement.

### A.    The Proposed Settlement Enjoys an Initial Presumption of Fairness.

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

1   Courts adhere to "an initial presumption of fairness when a proposed class settlement,

2   which was negotiated at arm's length by counsel for the class, is presented for court approval." 4

3   *Newberg on Class Actions* § 11.41.  After the parties' arm's length negotiations, "it is not for the

4   Court to substitute its judgment as to a proper settlement for that of such competent counsel." *In*

5   *re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 173-74 (S.D.N.Y. 2000)

6   (quoting *In re Warner Comm. Sec. Lit.,* 618 F. Supp. 735, 746 (S.D.N.Y. 1985)); *Bellows v. NCO*

7   *Fin. Sys., Inc.*, No. 3:07-cv-01413, 2008 WL 5458986, *8 (S.D. Cal. Dec. 10, 2008) ("it is the

8   considered judgment of experienced counsel that this settlement is a fair, reasonable, and

9   adequate settlement of the litigation, which should be given great weight."); *Boyd v. Bechtel*

10  *Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel

11  should be given a presumption of reasonableness.").

12  **B.    Analysis of the Applicable Factors Favors the Settlement.**

13  The Court's evaluation of the settlement should consider (1) the amount offered in

14  settlement; (2) the extent of discovery completed and the stage of the proceedings; (3) the risk,

15  expense, complexity, and likely duration of further litigation; (4) the experience and views of

16  counsel; (5) the strength of the plaintiffs' case; and (6) the risk of maintaining class action status

17  throughout the trial.  *Hanlon*, 150 F.3d at 1026.  The Class's reaction to the settlement should

18  also be considered at the final approval stage.  *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948,

19  963 (9th Cir. 2009).

20  **1.    The Amount Offered in Settlement.**

21  By any objective measure, the compensation this settlement makes available to class

22  members is favorable and provides class members reasonable consideration for their alleged

23  claims.  The settlement brings class members significant monetary value *now*, not years from

24  now, and provides certainty about the outcome.  Further, the average amount of compensation

25  free and clear of legal fees – approximately $1,714 per class member – is a significant recovery

26  and indicates a hard fought and fair settlement.  This is not a case where the benefit to the class is

27  largely injunctive or of modest value.  Although the maximum possible award at trial could be

28

1   larger than the settlement amount, the inquiry as to whether a settlement is reasonable examines

2   the benefits of the settlement in light of the risks of establishing liability and damages. *See, e.g.,*

3   *Singer v. Becton Dickinson and Co.*, No. 08-CV-821, 2009 WL 4809646 (S.D. Cal. Dec. 9,

4   2009) (finding the amount offered in settlement to be adequate "in light of the uncertainties

5   involved"); *Sandoval v. Tharaldson Employee Mgmt.*, No. EDCV 08-00482, 2009 WL 3877203

6   (C.D. Cal. Nov. 17, 2009) (settlement amount was reasonable considering, among other factors,

7   the risk of proving liability and damages at trial); *Glass v. UBS Fin. Serv., Inc.*, No. C-06-4068,

8   2007 WL 221862, *4 (N.D. Cal. Jan. 26, 2007) (finding settlement of wage and hour class action

9   for a percentage of the claimed damages to be reasonable in light of uncertainties involved in the

10  litigation).

11              **2.       The Extent of Discovery and the Stage of the Proceedings.**

12          The nature and scope of pre-settlement discovery strongly favors the settlement.  The

13  parties undertook substantial investigative efforts and discovery of class information.  Both

14  parties propounded and responded to numerous interrogatories and requests for production of

15  documents over a period of three years.  Twenty depositions were taken in this litigation.  Eleven

16  Plaintiff depositions were taken, seven corporate representative depositions were taken and two

17  third-party depositions were taken.  Wells Fargo produced electronic time, pay and employment

18  records for hundreds of class members.  These time records were analyzed in great detail by

19  Plaintiffs' expert.  Finally, the parties conducted a significant amount of briefing in this Lawsuit,

20  including two motions to dismiss and two separate rounds of class certification briefing.  Based

21  on the significant deposition and document discovery, in addition to expert analyses and legal

22  arguments, the parties were able evaluate the value of class members' claims and negotiate a fair

23  settlement.

24              **3.       The Expense, Complexity, and Duration of Further Litigation.**

25          This case is complex and carries significant risks for the parties as to both legal and

26  factual issues, and litigating the case to trial would likely consume great time and expense.  In

27  the event the Court were inclined to certify the case as a class action, Wells Fargo would likely

28

seek a Rule 23(f) appeal.  Further, the issues in *Sullivan v. Oracle* (relating to application of California law to non-residents) and *Brinker v. Superior Court* (relating to meal period violation claims) promise delay and uncertainty.  With regard to further discovery, more merits depositions would need to be taken and additional documents would need to be produced and reviewed.  And although Plaintiffs' Counsel dedicated a large amount of their own resources to pay their expert for a class certification analysis, an expert's final and full review of all class members' time records would have been lengthy and extremely costly.  All of these factors make it highly likely that a trial would not be on the near horizon, even absent a Rule 23(f) appeal. Finally, it is very likely that in the event Plaintiffs were to prevail at trial, Wells Fargo would appeal such a result.  It is safe to say that trial preparation, trial and post-trial litigation could consume at least another three years before there would be finality and payment in this case that dates back to early 2006.

### 4.    The Experience and Views of Counsel.

The experience of Class Counsel in litigating and negotiating complex wage and hour disputes likewise strongly favors approving the settlement.  "The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery ha[s] taken place create[s] a presumption that the agreement is fair." *Linney v. Alaska Cellular P'ship*, No. C-96-3008, 1997 WL 450064, *5 (N.D. Cal. July 18, 1997).  Although the Court is not bound by counsels' opinion, their opinion is nonetheless entitled to great weight. *Gribble*, 2008 WL 5281665, at *9.  The putative class had the benefit of attorneys who are highly experienced in complex litigation and familiar with the facts and law in the case, and who have negotiated many such class and collective action settlements. *See* Stueve Siegel Hanson LLP Firm Resume, Attached to Dirks Decl. as Exhibit C. This Court will recall the litigation was at all times hard-fought.  The negotiations in this case were likewise hard-fought and at arm's length.  In Plaintiffs' Counsels' view, the settlement provides substantial benefits to the Class, especially when one considers, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial

proceedings.  Further, in Plaintiffs' Counsels' experience, when compared with similar litigation, the relief to the class is substantial.

### 5.    The Strength of the Plaintiffs' Case.

After thorough investigations of the facts and law, the parties have gained a comprehensive knowledge of Plaintiffs' claims and Wells Fargo's defenses.  Consequently, the parties have sufficient evidence to make an informed assessment of the merits of their positions.  Based on their knowledge of the case and applicable law, as well as their experience in similar actions, the parties' counsel believe the settlement is fair, reasonable and adequate.

The parties naturally dispute the strength of the Plaintiffs' case, and the settlement reflects the parties' compromise of their assessments of the worst-case and best-case scenarios, weighing the likelihood of various potential outcomes.  Plaintiffs' best-case scenario is class certification and recovery on the merits.  Plaintiffs' worst-case scenario is that the class is not certified and/or they lose at trial.  At the class certification hearing, this Court had questions about whether class members were barred by a previous settlement and had difficult questions for Plaintiffs' Counsel regarding class certification.  Further, Wells Fargo has several merits arguments that it has already previewed in its class certification briefing.  The fact is that this case is no slam dunk for either side.  Even after the mediator's proposal prompted an eventual agreement in principle, it took the parties several months to reach a written agreement.  The details of the settlement involved extensive further negotiation and compromise.  This reflects the parties' zealous representations of their respective positions on the claims and defenses, and the difficulties and risks associated with protracted litigation.

### 6.    The Risk of Maintaining a Class Action Throughout Trial.

Wells Fargo strenuously argued against class certification.  It is unknown how the Court would rule on the class certification question that has been fully briefed, but the parties presented arguments both in favor of and against class certification.  Even if Plaintiffs were to obtain class certification, the risks of a Rule 23(f) appeal and the constantly-evolving law of class actions in this Circuit makes the risk of maintaining a certified class a very real concern for Plaintiffs.

In sum, the settlement brings substantial and certain monetary value to class members now, rather than uncertain value to an uncertain number of people at an uncertain time after protracted litigation involving complex and changing law.   While both sides believe the facts support their respective positions, Plaintiffs and Wells Fargo reached this proposed compromise after extended settlement discussion facilitated by a mediator.   The parties therefore request that the Court preliminarily approve the Rule 23 settlement and authorize notice to be sent to the respective class members.

### C.      The Proposed Settlement Class Satisfies Rule 23.

When granting preliminary approval of a Rule 23 settlement, the Court should determine whether the proposed class is a proper class for settlement purposes.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litig.*, § 21.632.   In certifying a settlement class, however, the Court is not required to determine whether the action would be manageable if tried, "for the proposal is that there be no trial."  *Amchem*, 521 U.S. at 620; s*ee also* Fed. R. Civ. P. 23(b)(3)(D).   Because class certification was recently briefed and argued, Plaintiffs refer this Court to their class certification briefing (filed under seal).   The record fully supports a finding of class certification.   In sum, the requirements of Rule 23 are met, as follows:

#### 1.      Plaintiffs Meet the Requirement of Numerosity.

The settlement class includes approximately 3,033 individuals.   Under these circumstances, numerosity is clearly met.  *See, e.g., Cruz v. Dollar Tree Stores, Inc.*, No. 07-2050, 2009 WL 1458032 (N.D. Cal. May 26, 2009) (numerosity met when class totaled in the hundreds).

#### 2.      Plaintiffs Meet the Commonality Requirement.

To fulfill the commonality prerequisite of Rule 23(a)(2), plaintiff must establish that there are questions of law or fact common to the class as a whole.   Rule 23(a)(2) does not mandate that each member of the class be identically situated, but only that there be substantial questions of law or fact common to the class.  *See Harris v. Palm Spring Alpine Estates, Inc.*, 329 F.2d 909, 914 (9th Cir. 1964).   Common questions include, among others:

- Whether paying on an assumption of hours worked (rather than actual hours worked) violates the FLSA;

- Whether paying workers the same amount per paycheck, but docking hourly pay for missed worked equates to a permissible salary;

- Whether requiring manager approval of pay for overtime hours worked is a lawful policy;

- Whether failure to record accurate time on California employees' pay stubs violates California law;

- Whether Wells Fargo had a policy to never pay its California non-exempt Team Members for missed meal periods;

- Whether Wells Fargo willfully failed to pay all wages due upon discharge or termination;

- Whether Wells Fargo's conduct emanated from California, such that California's UCL may apply to the Nationwide UCL Class; and

- Whether Wells Fargo's conduct was willful.

### 3. Plaintiffs Meet the Typicality Requirement.

Representative claims "are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020. To be considered typical for purposes of class certification, the named plaintiff need not have suffered an identical wrong. *See id.* Rather, the claims of the putative class must be "fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 156 (1982) (internal quotation omitted). The typicality requirement tests "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Here, Wells Fargo admits Plaintiffs and the Class were all covered by the identical policy that is central to this case. Plaintiffs claim the Standard Hours policy was the root cause of the underpayment – and as a result, the Plaintiffs' claims are typical of the class claims. Rule 23(a)(3) is satisfied.

### 4.     Plaintiffs Meet the Adequacy Requirement.

Rule 23(a)(4) requires that the named representatives and their counsel will adequately represent the interests of the class.  Adequacy is satisfied here because the named Plaintiffs have no known conflicts with members of the class and will fairly and adequately protect the interests of the class.  The three named Plaintiffs have made themselves available for a total of five depositions, have responded to written discovery, and have worked closely with Plaintiffs' Counsel since the filing of this case.  Further, Plaintiffs' Counsel adequately represented the class and prosecuted their claims for unpaid wages.  Stueve Siegel Hanson LLP has extensive experience prosecuting class and collective actions all over the country, including wage and hour cases raising similar issues.

### D.     Plaintiffs Satisfy the Requirements of Rule 23(b)(3).

Plaintiffs seek certification under Rule 23(b)(3) because common questions predominate and class action treatment is superior to individual adjudication of the claims.  Fed. R. Civ. P. 23(b)(3).  Under this provision, "[i]n determining whether plaintiffs have carried their burden, the Court may not consider the merits of plaintiffs claims.  Instead, 'the court is bound to take the substantive allegations of the complaint as true, thus necessarily making the class order speculative in the sense that plaintiff may be altogether unable to prove his allegations.'"  *Mateo v. M/S Kiso*, 805 F. Supp. 761, 771 (N.D. Cal. 1991) (citing *In re Unioil Sec. Litig.*, 107 F.R.D. 615, 618 (1985)); *see also Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir. 1975).

### 1.     Common Questions Predominate.

The predominance inquiry "focuses on the relationship between the common and individual issues."  *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir. 2001).  Consequently, the presence of common issues of fact or law sufficient to satisfy the requirements of Rule 23(a)(2) is not by itself sufficient to show that those common issues predominate.  *Hanlon,* 150 F.3d at 1022.  Nonetheless, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute

on a representative rather than on an individual basis." *Id.* (internal quotations omitted); *see also Culinary/Bartender Trust Fund,* 244 F.3d at 1162. To establish predominance of common issues, a party seeking class certification is not required to show that the legal and factual issues raised by the claims of each class member are identical. Rather, the predominance inquiry focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund,* 244 F.3d at 1162 (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997)). Among the considerations that are central to this inquiry is "the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Inst.,* 253 F.3d 1180, 1189 (9th Cir. 2001) (quoting *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996)).

As noted above, there are numerous common questions that apply to all class members and resolution of these issues advances the litigation and will further the interest of judicial economy. Plaintiffs allege this case involves a facially *non-compliant* policy that is the source of the categorical and systemic pay violations. Plaintiffs argue that courts routinely certify cases involving alleged companywide policies or procedures that result in underpayment of wages to employees. *Tierno v. Rite Aid Corp.*, No. 05-02520, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006); *Krzesniak v. Cendant Corp.,* No. 05-05156, 2007 WL 1795703 (N.D. Cal. June 20, 2007); *Kurihara v. Best Buy Co. Inc.,* No. 06-01884, 2007 WL 2501698, *9-10 (N.D. Cal. Aug. 30, 2007). *See also Alba v. Papa John's USA, Inc.,* No. 05-7487, 2007 WL 953849, *10 (C.D. Cal. Feb. 7, 2007) ("some variation among the individual employees, as well as some potential difficulty in proof – including as to damages – do not defeat predominance"). It is Plaintiffs' position that the lesson of these cases is that while some damages questions (*e.g.* did the individual work overtime, and how much) may remain individualized, questions regarding the legality of the overriding corporate policy nonetheless predominate.

Plaintiffs allege that the class is bound together by a common policy. According to the Plaintiffs, identifying the harm caused to each class member as a result of Wells Fargo's

1  common policy can be done on an efficient, objective and reliable basis.  As a result, Plaintiffs

2  argue that common questions in this case by far predominate over any potential individual issues.

3        **2.**    **A Class Action is the Superior Method of Adjudication.**

4       The final prerequisite for certification of a class under Rule 23(b)(3) requires the plaintiff

5  to show that a class action is superior to other methods available for the adjudication of the

6  parties' dispute.

7       "Where classwide litigation of common issues will reduce litigation costs and promote

8  greater efficiency, a class action may be superior to other methods of litigation." *Valentino,* 97

9  F.3d at 1234.  Courts focus on whether the interests of "efficiency and economy" would be

10  advanced by class treatment. *Zinser*, 253 F.3d at 1189.  In the unpaid wage context, it is often

11  the case that "numerous individual actions would be expensive and time-consuming and would

12  create the danger of conflicting decisions as to persons similarly situated." *Lerwill v. Inflight*

13  *Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) (finding the trial court's determination

14  concerning the superiority of class action procedure is an area in which that court has wide

15  discretion).

16       Here, economy and efficiency are served by class treatment.  The thousands of settlement

17  class members were paid pursuant to the identical pay policy of Standard Hours.  It would be

18  impractical and entirely inefficient to require every individual to pursue his or her own separate

19  case.  Such a requirement could also risk conflicting results among class members prosecuting

20  their own cases separately.  Finally, there is no indication that class members have an interest in

21  pursuing their claims on an individualized basis.  This case involves common factual and legal

22  issues that can be efficiently resolved in the class context.

23  **IV.**    **APPROVAL OF THE FLSA CLAIMS**

24       Proposed settlements under the FLSA generally require court approval because private

25  settlements will not effectuate a valid release.  *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260,

26  1262 (M.D. Ala. 2003) (*citing Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697 (1945)); *see also*

27  *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982).  Pursuant to a private

28

enforcement action under § 16(b) of the FLSA, the district court may approve a settlement reached as a result of contested litigation to resolve a *bona fide* dispute between the parties. *Lynn's Food.*, 679 F.2d at 1353; *Yue Zhou v. Wang's Restaurant*, No. C05-0279, 2007 WL 2298046, *1 (N.D. Cal. Aug. 8, 2007) ("The proper procedure for obtaining court approval of the settlement of FLSA claims is for the parties to present to the court a proposed settlement, upon which the district court may enter a stipulated judgment only after scrutinizing the settlement for fairness.").

Thus, the court's inquiry as to the fairness of this FLSA settlement is two-staged. First, the court must be satisfied that the settlement was the product of "contested litigation." Second, the court must inquire as to whether the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties over FLSA coverage. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness. *Lynn's Food Stores*, 679 F.2d at 1354. If the proposed settlement reflects a reasonable compromise over contested issues, the court may approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*; *see also Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986).

There can be no dispute that the litigation was strongly contested. The motion practice was hard-fought and the parties strenuously argued their positions. Further, as noted above, Wells Fargo claimed numerous defenses to Plaintiffs' claims, including that Class Members were paid on a lawful salary basis, that a class action could not be certified, and that the pay practices varied from location to location. For all the same reasons as noted above, the settlement is fair and adequate, is a result of a compromise in hard fought litigation, and it should be approved.

## V.  THE COURT SHOULD APPROVE THE PROPOSED NOTICE

### A.  The Proposed Rule 23 Class Notice Provides the Highest Level of Notice.

Under Rule 23(c)(2), courts "shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all class members who can be

1    identified through reasonable effort." Fed. R. Civ. P. 23(c)(2); *see also Eisen v. Carlisle &*

2    *Jacquelin*, 417 U.S. 156, 173 (1974).  Here, the Notice, attached to Dirks Decl. as Exhibit B,

3    follows the template approved by the Federal Judicial Center, and will be mailed to Class

4    Members at either (1) their last known addresses in Wells Fargo's records; or (2) an updated

5    address after a third party administrator runs a change of address search, complying with the

6    highest level of notice recognized by law.  The notice must also "concisely and clearly state in

7    plain, easily understood language" the nature of the action; the definition of the class certified;

8    the class claims, issues, and defenses; that the class member may appear through counsel if the

9    class member wishes; that the Court will exclude class members who request exclusion and the

10   process for doing so; and the binding effect of a class judgment on class members.  *See* Fed. R.

11   Civ. P. 23(c)(2).  The proposed Class Notice complies with these requirements.

12       The Rule 23 Notice explains in laymen's terms, among other things: the terms and

13   provisions of the Settlement Agreement; the relief the Settlement will provide; the date, time and

14   place of the final approval hearing; and the procedures and deadlines for opting out or submitting

15   comments or objections, and the procedure by which Class C Class Members may submit a

16   Claim Form for "off the clock" claims.  Additionally, the proposed Class Notice advises Class

17   Members that Plaintiffs' Counsel will apply to the Court for an award of fees in an amount of

18   $1,460,000.  The Notice also discloses the proposed Incentive Awards to be paid from the

19   settlement funds.  The Class Notice is accurate and fully informs Class Members of the material

20   terms of the settlement and their rights pertaining to it.  The Court should approve the proposed

21   form and method of Class Notice.

22   **VI.    THE ACTIVE PLAINTIFFS ARE ENTITLED TO INCENTIVE AWARDS**

23       In recognition of their service to the Classes, their assistance in prosecuting the case, and

24   their participation in written discovery and appearing for depositions, the Plaintiffs will ask the

25   Court to approve incentive awards of $7,500 to the named Plaintiffs.  Further, the Plaintiffs will

26   seek incentive awards of $1,000 each for the opt-in plaintiffs who responded to written discovery

27   and were deposed.

28

Plaintiff Bowne worked closely with Plaintiffs' Counsel and met with them in person on at least four occasions, traveled from Garden City, Kansas (a seven hour drive) to be deposed by Wells Fargo and communicated routinely with Class Counsel regarding the case and regarding the mediation and settlement in this case.  Dirks Decl. at 10.  Similarly, Ms. Basore and Ms. McMillian worked closely with Class Counsel and were concerned about the risks of being Plaintiffs.  *Id.*  Ms. Basore met in person with Class Counsel on at least three occasions and was deposed twice.  *Id.*  Ms. Basore even traveled from California to Kansas City, Missouri for one of her depositions.  *Id.*  Ms. McMillian traveled from Atlanta to Kansas City for her first deposition, and then from Atlanta to Charlotte, North Carolina for her second deposition.  *Id.* For each of these five depositions, the Plaintiffs met with Class Counsel the day before their depositions.  *Id.*  Bowne, Basore, and McMillian also responded to written interrogatories and document requests.  *Id.*  Further, they worked closely with Class Counsel in managing the settlement process and in reviewing and approving the settlement agreement.  *Id.*  Eight other loan processors responded to interrogatories, document requests, met in person with counsel and sat for depositions in this case.[3]  These depositions were used to evaluate the case and were used in support of class certification.

"When determining incentive awards, courts may consider a variety of factors, including risks to Plaintiffs in commencing the suit, personal difficulty encountered by Plaintiffs, the amount of time and effort spent by Plaintiffs, and the personal benefit enjoyed by representatives as a result of the litigation." *Tarlecki v. bebe Stores, Inc.,* No. C05-1777, 2009 WL 3720872, *5 N.D. Cal. Nov. 3, 2009) (citing *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)); *Misra v. Decision One Mortgage Co.*, No. CV 07-0994, 2009 WL 4581276, *8 (C.D. Cal. April 13, 2009) ("It is appropriate for courts to award enhancements to representative plaintiffs who undertake the risk of personal or financial harm as a result of litigation.").  In the *Glass* case, this Court approved $25,000 incentive awards to each of four class representatives in

---

[3]    Plaintiffs/deponents Powell and Fisher were not served with written discovery.

1  a case where no formal discovery was conducted.  2007 WL 221862, at *16-17.  Further, an

2  award of $7,500 is warranted when the Plaintiffs have spent a significant amount of time

3  assisting counsel and participating in the discovery process.  *See Jacobs v. California State Auto*

4  *Ass'n Inter-Ins. Bureau,* No. 07-00362, 2009 WL 3562871, *5 (N.D. Cal. Oct. 27, 2009)

5  (awarding $7,500 to class representative who spent "somewhat more time assisting counsel than

6  occurs in the average case"); *In re M.L. Stern Overtime Litig.*, No. 07-cv-118, 2009 WL

7  3272872, *3-4 (S.D. Cal. Oct. 9, 2009) (awarding class representatives $15,000 each); *Fleury v.*

8  *Richemont North Am., Inc.*, No. C-05-4525, 2009 WL 1010514, *1 (N.D. Cal. April 14, 2009)

9  (approving incentive awards to the class representatives in the amount of $10,000 each).  The

10  requested incentive awards total less than one half of one percent of the total $6,660,000 million

11  Total Settlement Fund in this case.  Without the active Plaintiffs' participation in this case, the

12  settlement would not have been possible.  The Total Settlement Fund of $6,660,000 here easily

13  demonstrates the substantial benefits the active plaintiffs have brought to the class as a whole,

14  justifying incentive awards.

15

16  **VII.   PLAINTIFFS' COUNSEL ARE ENTITLED TO REASONABLE FEES AND
        EXPENSES**

17          Wells Fargo has agreed to pay Plaintiffs' Counsel $1,460,000 in fees and costs.  Pursuant

18  to the UCL, the California Labor Code and the FLSA, plaintiffs are entitled to reasonable

19  attorneys' fees spent in recovering unpaid wages.  Plaintiffs will request that the Court give final

20  approval to the parties' agreement on fees and costs in conjunction with Plaintiffs' motion for

21  final settlement approval.

22          In cases involving a fee-shifting statute, the Supreme Court has expressed a preference

23  that the parties agree to the amount of the fee:  "A request for attorney's fees should not result in

24  a second major litigation.  Ideally, of course, litigants will settle the amount of a fee."  *Hensley v.*

25  *Eckerhart*, 461 U.S. 424, 437 (1983).  Here, Plaintiffs' Counsels' fee request is fair and

26  reasonable and there is no reason the Court should disturb the agreement of the parties.

27

28

Moreover, trial courts often analyze the reasonableness of a fee by using the percentage-of-the-fund or the lodestar method. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002). Plaintiffs' fee request is reasonable under either standard.

In applying the percentage of the fund methodology, the Ninth Circuit has held that 25% of the total settlement fund is the benchmark fee award, *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990), and the usual range is 20-30%, *Vicaino,* 290 F.3d at 1047. Here, the agreed-upon attorneys' fees and costs account for approximately 22% of the total settlement fund. This alone supports an award of the agreed-upon fees and costs.[4]

Finally, the Ninth Circuit sets out a non-exhaustive list of factors which may be relevant to the district court's determination of the percentage ultimately awarded: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048-50. Each of these factors also supports the agreed-upon attorney fee request:

(1) The settlement is a good result for the class – This class settlement puts meaningful relief into the hands of the class. The *per capita* settlement amount is approximately $1,714 per plaintiffs, exclusive of attorneys' fees.

(2) The litigation was risky – As evidenced by other wage and hour cases involving loan processors and the same defendant, this litigation had significant risks. These risks included the risk that the class would not be certified, the risk that claims have been released, the risk of appeal, and the risk that a court or jury could find that class members were properly paid.

---

[4] Plaintiffs' fee request is also reasonable under the loadstar method, Plaintiffs' Counsel have already expended approximately 4,000 hours and $200,000 in costs. Dirks Decl. at ¶ 11. Before final approval of this settlement, Class Counsel will have more time and expenses in this case.

(3) <u>The litigation required significant skill</u> – Class Counsel effectively and diligently prosecuted this challenging case. The class has survived two motions to dismiss, an argument that claims were released, and strenuous arguments against class certification. Class Counsel also discovered many of the most important documents through the laborious discovery process. Class Counsel prepared and produced clients for multiple depositions and took several corporate depositions – twenty depositions in all. Class Counsel also engaged and worked with an expert to make sense of Wells Fargo's pay policy and pay and time records.

(4) <u>Plaintiffs' Counsel took the case on a contingency fee arrangement and expended a great deal of their own resources in prosecuting the case</u> – Class Counsel have prosecuted this case since early 2006 and have paid significant costs and expenses up front. They have expended a great deal of time in the case as well. As of this filing, Plaintiffs' Counsel have expended approximately 4,000 hours and $200,000 in costs. Before final approval of this settlement, Plaintiffs' Counsel will certainly have more time and expenses in this case.

(5) <u>The requested fee award is in line with similar cases</u> – The two most similar class settlements are from cases involving wage and hour claims on behalf of nonexempt Wells Fargo team members. In *Garnica, et al. v. Wells Fargo Bank, N.A.*, Case No. 01264187, the total fund for a class of approximately 50,000 people was $6,525,000 wherein class counsel was awarded $2,209,883.52 – accounting for 33.9 % of the fund. In *Osinga v. Wells Fargo* Case No. BC305453, the settlement for a class of approximately 38,956 people was in the amount of $8,589,935 wherein class counsel was awarded $2,119,317 in fees and $42,117 in costs. Thus, the attorneys' fees awarded in *Osinga* accounted for 25% of the fund. Compared to similar recent settlements with Wells Fargo, there is no question that the agreed-upon fees here are reasonable.

For all these reasons, Class Counsel's fee request will be fair and reasonable.

## VIII.   SCHEDULE OF EVENTS

Entry of the proposed preliminary approval order involves setting dates and deadlines governing the settlement process, including the date for the final fairness hearing.  Upon this Court's granting of preliminary settlement approval, the parties request that the Court adopt the following schedule:

- Wells Fargo to provide all necessary class information to claims administrator and Class Counsel within 20 days of the order granting preliminary approval;

- Third Party administrator to mail class notice within 15 days of receiving data from Wells Fargo;

- Close of Class Notice Period shall be 60 days after the mailing of Class Notice – all requests for exclusion and Claims Forms to be postmarked by this date;

- Final approval paperwork due to court within 30 days of the close of the Class Notice Period; and

- Final Approval Hearing as soon as practicable for the Court after the final approval paperwork is filed.

The parties anticipate these deadlines will take approximately 125 days after an entry of a preliminary approval order and request that the Court set a hearing within approximately 150 days after its preliminary approval order.

## IX.   CONCLUSION

For the reasons set forth above, the parties respectfully request that the Court grant their Joint Motion for Preliminary Approval of Class Settlement, for Certification of Settlement Classes, and for Permission to Disseminate Notice to Class, and grant any other relief the Court deems just and proper.

Dated:  April 26, 2010

Respectfully submitted,


By:_____/s/ Eric L. Dirks_____
    George A. Hanson
    hanson@stuevesiegel.com
    Norman E. Siegel
    siegel@stuevesiegel.com
    Eric L. Dirks
    dirks@stuevesiegel.com
    Ashlea G. Schwarz
    ashlea@stuevesiegel.com
    460 Nichols Road, Suite 200
    Kansas City, Missouri 64112
    Telephone:    (816) 714-7100
    Facsimile:    (816) 714-7101

    **LEAD COUNSEL FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies on the 26th day of April, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

> Eric P. Kelly
> ekelly@spencerfane.com
> Spencer Fane Britt & Browne
> 1000 Walnut, Suite 1400
> Kansas City, MO 64106
> PH:    816-474-8100
> FAX:  816-474-3216
>
> Joan B. Tucker Fife
> jfife@winston.com
> Winston & Strawn LLP
> 101 California Street
> San Francisco, CA 94111-5894
> PH:    415-591-1000
> FAX:  415-591-1400
>
> ATTORNEYS FOR DEFENDANTS

> _____/s/ Eric L. Dirks_____
> Attorney for Plaintiffs