George A. Hanson, Esq.
Eric L. Dirks, Esq.
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
816-714-7115 tel
816-714-7101 fax
Email: hanson@stuevesiegel.com
Email: dirks@stuevesiegel.com
LEAD COUNSEL FOR PLAINTIFFS

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

In re:

WELLS FARGO LOAN PROCESSOR OVERTIME PAY LITIGATION

This document relates to ALL CASES

**MDL-1841**

**DECLARATION OF ERIC L. DIRKS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY CLASS SETTLEMENT APPROVAL**

Date: May 17, 2010
Time: 2:00 PM
Dept: 15
Judge: Hon. Marilyn Hall Patel

I, Eric L. Dirks, declare as follows:

1. I am an attorney with the law firm of Stueve Siegel Hanson LLP, counsel of record to the Plaintiffs in this action. This declaration is based on my own personal knowledge and if called to testify I could and would testify to the matters stated herein.

2. Attached hereto as Exhibit A is a true and correct copy of the parties' settlement agreement.

3. Attached as Exhibit B is a true and correct copy of the parties' proposed notice and claims form.

4. Attached hereto as Exhibit C is a true and correct copy of the firm resume of Stueve Siegel Hanson LLP.

5. Plaintiffs filed their first motion for Class and Collective Action Certification on April 15, 2008. After additional discovery, however, Plaintiffs moved to amend their Complaint and the original motion for class certification was set aside to allow Wells Fargo to conduct

additional discovery. The parties conducted additional discovery and Plaintiffs filed a new motion for class certification under seal on April 13, 2009. After the briefing was completed, the Court held an August 10, 2009 hearing on Plaintiffs' motion for class certification. At the hearing, the Class Representatives agreed to suspend the motion for class certification with respect to the Nationwide UCL Class until after a decision from the California Supreme Court in the case of *Sullivan v. Oracle Corp.*, Cal. S.Ct. No. S170577 (4/22/09). After the hearing on class certification, the Parties requested that the Court stay the case to permit the Parties to participate in mediation in an attempt to settle the Lawsuit. The case has been stayed since September 8, 2009.

6. On October 27, 2009 the Parties participated in a mediation with Jeffrey A. Ross of Dickstein – Ross LLP. At all times, the Parties' negotiations were adversarial, non-collusive, and at arm's length. Although the mediation did not result in a settlement on October 27, 2009, Mr. Ross made a mediator's proposal following the mediation which was ultimately accepted by the parties. When material terms were finally agreed upon, the parties executed the written Settlement Agreement.

7. Counsel for the Plaintiffs and Wells Fargo are experienced in wage and hour and complex litigation. During the mediation, and following negotiations, counsel for the parties vigorously advocated their respective positions, and reached a compromise only after spirited and arms-length negotiations. Thereafter, over the next several months, the parties negotiated and entered into a formal settlement agreement. The Settlement reached in this complex wage and hour case constitutes a fair, adequate and reasonable compromise of a *bona fide* dispute involving a plethora of vigorously contested legal and factual issues.

8. Beginning in 2006, the parties initiated the discovery process. Among other things, the *Bowne* Plaintiffs served interrogatory requests, document requests and noticed a 30(b)(6) deposition while the case was pending in the District of Kansas. Wells Fargo produced documents responsive to these requests. Plaintiffs filed their motion for collective action certification on July 7, 2006. Thereafter, the parties stipulated to certification of a limited class

of loan processors. A total of 68 loan processors opted in to the *Bowne* action. Shortly after the parties stipulated to a limited collective action class in *Bowne*, a new case, *Basore*, was filed. The parties exchanged their Rule 26 disclosures on June 15, 2007 and June 18, 2007. The parties then participated in a failed mediation on September 20, 2007. In preparation for the mediation, the parties informally exchanged payroll and employment data. After the mediation failed, Plaintiffs served a second set of interrogatories and document requests on Wells Fargo in the consolidated lawsuit caption *In re Wells Fargo Loan Processor Overtime Pay Litigation.* Wells Fargo also issued document requests and interrogatories on several individual plaintiffs and took the depositions of Mary Basore, Elisia Hesterberg, Jamie Hejlik, Jeni Fisher, Nicole Gering, Trudy Bowne, Brenda McMillian, Barbara Powell, and Amie Lovrein in the winter of 2007 into the beginning of 2008. Plaintiffs conducted several 30(b)(6) and fact depositions in early 2008 and served a third set of interrogatories and document requests on December 22, 2008. After Plaintiffs amended their Complaint in June 2008, Wells Fargo took the second depositions of Plaintiffs Mary Basore and Brenda McMillian. Finally, Wells Fargo took the deposition of Plaintiffs' expert, Dr. Ted Anderson, on May 21, 2009.

9. In addition to the extensive formal discovery, Plaintiffs' counsel also conducted in-depth interviews with class members and opt-in plaintiffs. In addition, the parties exchanged a multitude of documents and information, including a significant sample of personnel, payroll, and compensation data relating to Plaintiffs' claims and Wells Fargo's' defenses, including dates of employment, pay records, time records, job descriptions, and company policies regarding timekeeping and the payment of overtime. Plaintiffs' counsel conducted a detailed analysis of all these documents in order to evaluate and quantify the scope of the claims and the damages claimed by Plaintiffs, as well as to evaluate the merits of Wells Fargo's defenses.

10. Trudy Bowne worked closely with Plaintiffs' counsel and met with them in person on at least four occasions, traveled from Garden City, Kansas (a seven hour drive) to be deposed by Wells Fargo and communicated routinely with Class Counsel regarding the case and regarding the mediation and settlement in this case. Similarly, Mary Basore and Brenda

McMillian worked closely with Class Counsel. Ms. Basore met in person with class counsel on at least three occasions and was deposed twice. Ms. Basore even traveled from California to Kansas City, Missouri for one of her depositions. Ms. McMillian traveled from Atlanta to Kansas City for her first deposition and then from Atlanta to Charlotte, North Carolina for her second deposition. For each of these five depositions, the Plaintiffs met with Class Counsel the day before their depositions. Bowne, Basore, and McMillian also responded to written interrogatories and document requests. Further, they worked closely with Class Counsel in managing the settlement process and in reviewing and approving the settlement agreement.

11. As of the time of this filing, Plaintiffs' counsel have expended approximately 4,000 hours and over $200,000 in costs. Before final approval of this settlement, Class Counsel will have more time and expenses in this case.

I declare under penalty of perjury under the laws of the United States and pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on this 26th day of April, 2010.

Eric L. Dirks

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies on the 26th day of April, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Denise K. Drake
ddrake@spencerfane.com
Eric P. Kelly
ekelly@spencerfane.com
Spencer Fane Britt & Browne
1000 Walnut, Suite 1400
Kansas City, MO 64106
PH: 816-474-8100
FAX: 816-474-3216

Joan B. Tucker Fife
jfife@winston.com
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894
PH: 415-591-1000
FAX: 415-591-1400

ATTORNEYS FOR DEFENDANTS

/s/ Eric L. Dirks
Attorney for Plaintiffs

# EXHIBIT A

JOAN B. TUCKER FIFE (SBN: 144572)
jfife@winston.com
EMILIE C. WOODHEAD (SBN: 240464)
ewoodhead@winston.com
WINSTON & STRAWN LLP
101 California Street, Suite 3900
San Francisco, CA 94111
Telephone: 415-591-1000
Facsimile: 415-591-1400

Attorneys for Defendants
WELLS FARGO BANK, N.A. and
WELLS FARGO & CO.

GEORGE A. HANSON
NORMAN E. SIEGEL
ERIC L. DIRKS
ASHLEA G. SCHWARZ
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7191

Attorneys for Plaintiffs

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

IN RE WELLS FARGO LOAN PROCESSOR OVERTIME PAY LITIGATION

THIS DOCUMENT RELATES TO ALL CASES

**MDL Docket No. 1841 (MHP)**

**JOINT STIPULATION OF SETTLEMENT OF CLASS ACTION**

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

## CLASS ACTION SETTLEMENT AGREEMENT

This Agreement of Class Action Settlement ("Agreement" or "Stipulation") is entered into by and between plaintiffs Mary Basore, Brenda McMillian, and Trudy Bowne (the "Class Representatives"), on behalf of themselves and as representatives of the Settlement Class described herein, and defendants Wells Fargo Bank, N.A. and Wells Fargo & Co. ("Defendants"). The Class Representatives and Defendants are collectively referred to herein as "the Parties."

This Agreement is made for the sole purpose of attempting to consummate settlement of this action on a class-wide basis. As detailed below, in the event that the Court does not execute and file an Order Granting Final Approval of Settlement, or in the event that the associated Judgment does not become final for any reason, this Stipulation shall be deemed null and void and shall be of no force or effect whatsoever. The parties agree to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to execution of such documents and taking such other action as may be reasonably necessary to implement the terms of this Agreement.

## FACTUAL BACKGROUND AND RECITALS

1. On January 19, 2006, Class Representative Trudy Bowne ("Class Representative Bowne") filed a complaint captioned *Bowne v. Wells Fargo Home Mortgage*, D. Kan. No. 06-2020 ("*Bowne*").

2. On January 21, 2007, Class Representatives Mary Basore and Brenda McMillian ("Class Representatives Basore and McMillian, respectively") filed a complaint captioned *Basore v. Wells Fargo Home Mortgage*, et al., N.D. Cal. No. 07-0461 ("*Basore*").

3. Defendants moved for transfer and consolidation of both cases for pretrial purposes pursuant to 28 U.S.C. § 1407. On June 22, 2007, the Judicial Panel on Multidistrict Litigation transferred *Bowne* and *Basore* to the Northern District of California. On November 13, 2007, the Court entered its initial case management order and consolidated and coordinated the *Bowne* and *Basore* cases, now referred to as the *In re Wells Fargo Loan Processor Overtime Pay Litigation,* MDL Docket No. 1841 (the "Lawsuit"). On June 16, 2008, the Class Representatives filed their Amended Consolidated Complaint ("ACC") in this Court (the Bowne Complaint referred to in

paragraph 1, the Basore Complaint referred to in paragraph 2, and the ACC are collectively referred to as the "Complaints.") The ACC was brought on behalf of: (1) a class of non-exempt employees, including Loan Processors, employed by Wells Fargo in California ("California Class"); and (2) a class of non-exempt employees, including Loan Processors, employed outside of California ("Nationwide Class"). The California Class seeks remedies for unpaid overtime (including daily overtime), meal and rest period violations, waiting time penalties, failure to provide accurate itemized statements of time worked, and failure to make straight time payments. The Nationwide Class alleges that Wells Fargo violated the California UCL through an unfair and unlawful payroll policy and seeks remedies for unpaid overtime, straight time, and minimum wage predicated on violation of the Fair Labor Standards Act ("FLSA").

4. On April 13, 2009, the Class Representatives filed a motion for class certification. On August 10, 2009, the Court held a hearing on Plaintiffs' motion for certification. At the hearing on the motion for class certification, the Class Representatives agreed to suspend the motion for class certification with respect to the Nationwide Class until after an anticipated decision from the California Supreme Court in the case of *Sullivan v. Oracle Corp.*, Cal. Sup. Court Case No. S170577 (4/22/09). After the hearing on class certification, but before the Court ruled on class certification, the Parties requested that the Court stay the case to permit the Parties to participate in mediation in an attempt to settle the Lawsuit. The case has been stayed since September 8, 2009.

5. On October 27, 2009 the Parties participated in a mediation with Jeffrey A. Ross of Dickstein – Ross LLP. At all times, the Parties' negotiations were adversarial, non-collusive and at arm's length.

6. The Class Representatives and Class Counsel (as defined hereafter) believe that the claims asserted in the Lawsuit have merit. The Class Representatives and Class Counsel, however, recognize and acknowledge the significant expense and length of continued proceedings necessary to prosecute the litigation against Defendants through trial and possible appeal. The Class Representatives and Class Counsel are also mindful of the inherent problems of proof and possible defenses to the Alleged Claims (as defined hereafter). After careful consideration and mediation, the

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Class Representatives and Class Counsel have concluded that it is desirable that this class action lawsuit be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation. Both the Class Representatives and Class Counsel believe that the settlement set forth in this Stipulation is fair, reasonable and adequate and confers substantial benefits upon the Settlement Class (as defined hereafter) and each of the Class Members (as defined hereafter).

7. The Parties are sufficiently familiar with the facts of the Lawsuit and the applicable law so as to warrant settlement at this time. The parties have engaged in significant discovery in order to evaluate the relative strength of the Parties' claims and defenses including the exchange of documents, three sets of interrogatories and three sets of requests for the production of documents. The Parties also conducted twenty depositions of Plaintiffs, corporate representatives and two third-party witness over a period of three years. Through the discovery process, Plaintiffs obtained, among other documents and testimony, a substantial amount of electronic payroll, time and employment records of a cross section of class members. Plaintiffs engaged a well-respected expert who analyzed the electronic data and issued a comprehensive report in support of class certification. The parties also conducted significant briefing in this case, including dispositive motions, motions to amend the pleadings and two rounds of class certification briefing. The parties mediated the case on two occasions, first in September 2007, which was unsuccessful, and the more recent successful mediation on October 27, 2009. In furtherance of both mediations, the parties exchanged additional information, data and documents necessary to fully and fairly evaluate the claims of existing and putative class members. Further, Plaintiffs' counsel obtained a significant amount of relevant information regarding the compensability and value of class claims through written correspondence, internal surveys, as well as telephone and in-person interviews with the numerous opt-in Plaintiffs throughout the litigation.

8. The Parties are represented by competent counsel and have had the opportunity to consult with counsel prior to the submission of this Stipulation to the Court.

9. Nothing in this Stipulation, nor the fact of the Stipulation itself, shall be construed or deemed an admission of liability, culpability, negligence or wrongdoing of any kind on the part of

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Defendants with respect to the Alleged Claims. Defendants deny all the claims and contentions alleged by the Class Representatives in the Lawsuit. Nonetheless, Defendants have concluded that further litigation would be protracted and expensive, and would also divert management and employee time. Defendants have taken into account the uncertainty and risks inherent in litigation, especially in multi-party cases. Defendants therefore have concluded that it is desirable that the Lawsuit be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation.

10. Pursuant to Federal Rules of Evidence 408 and California Evidence Code Sections 1119 and 1152, this Stipulation and any related documents filed or created in connection with it shall be inadmissible in evidence in any proceeding, except as necessary to approve, interpret or enforce this Stipulation.

**TERMS OF AGREEMENT**

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and between the Class Representatives, for themselves and the Class (as defined hereafter), and Defendants that, subject to the conditions precedent set forth in Paragraph 2 below, the Lawsuit and the Released Claims (as defined hereafter) shall be finally and fully compromised, released, resolved, relinquished, discharged and settled, and the Lawsuit shall be dismissed in accordance with Paragraph 2 of this Agreement, and without any adverse findings or conclusions against Defendants or anyone else, upon and subject to the terms and conditions of this Stipulation, as follows:

**1. DEFINITIONS**

As used in this Stipulation, the following terms shall have the meanings specified below:

1.1 "Alleged Claims" shall mean the claims that were alleged in the *Basore v. Wells Fargo Home Mortgage*, et al., N.D. Cal. No. 07-0461 complaint, the *Bowne v. Wells Fargo Home Mortgage*, D. Kan. No. 06-2020 complaint and/or the ACC (Doc. No. 89), including, but not limited to, claims that the Class Members were not paid all wages, including straight time and overtime wages earned, were not paid wages earned at the time of discharge, were not provided with legally compliant meal periods, were not provided with legally compliant rest periods, and did not receive

proper itemized wage statements, entitling them to damages, statutory penalties, restitution, penalties, interest, attorneys' fees, costs, injunctive and other equitable relief under state and federal law.

1.2 "Attorneys' Fees" shall have the meaning set forth in Paragraph 4.1 of this Stipulation.

1.3 "Class Counsel" means the law offices of Stueve Siegel Hanson LLP.

1.4 "Class A Member" means all current and former employees who previously filed a consent to join the *Bowne* or *Basore* actions as described above, pursuant to Section 16 of the FLSA, 29 U.S.C. §216(b), which is a group of approximately 75 individuals.

1.5 "Class B Member" means all current and former Loan Processor employees of Defendants who recorded five or more hours of overtime, which was not approved in WebTime by a manager, during the time that manager approval in WebTime was required for the payment of overtime at any time from January 21, 2003 through the date of Preliminary Approval, which is a group of approximately 592 individuals previously identified by Defendants, including individuals who filed consent to join forms in the *Bowne* or *Basore* actions.

1.6 "Class C Member" means the approximately 2,373 current and former Loan Processors who worked for Defendants in California at any time from January 21, 2003, through the date of Preliminary Approval, as defined below.

1.7 The term "Class Members" shall be used to describe all members of Class A, Class B and Class C, collectively, who have not Opted-Out of the Settlement after Notice, and who are therefore in the Class that is certified for purposes of Settlement only. Current and former employees who were members of the settlement classes certified in *Garnica, et al. v. Wells Fargo Bank, N.A.*, Case No. 01264187 ("*Garnica* Settlement Class") and *Osinga v. Wells Fargo* Case No. BC305453 ("*Osinga* Settlement Class") are excluded from the Settlement Class and are not Class Members, unless they meet the definition of a Class A Member, Class B Member, or Class C Member. Any individual who was a member of the *Garnica* or *Osinga* Settlement Class shall not receive a double recovery for days or weeks worked and compensated during the *Garnica* and

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

*Osinga* class periods, but is eligible to recover for workweeks in Class A Period, Class B Period or Class C Period, depending on the Class of which the individual is a member, that do not overlap with workweeks compensated pursuant to the *Garnica* and *Osinga* settlements.

1.8 The "Class A Period" shall mean January 21, 2003 through the date of Preliminary Approval.

1.9 The "Class B Period" shall mean the period of January 21, 2003 through the date of Preliminary Approval.

1.10. The "Class C Period" shall mean January 21, 2003, through the date of Preliminary Approval.

1.11 The "Class Period" shall mean the Class A and B period and the Class C period, collectively.

1.12 "Class Member Compensable Workweeks" means, for each Class Member, the number of Workweeks in which he or she worked at least 3 days during the Class Period. If a Class A member is also a member of Class B or Class C, the Class Period that is most beneficial to the Class Member shall apply.

1.13 "Court" means the United States District Court, for the Northern District of California, the Honorable Marilyn Hall Patel, currently presiding, or any other court that obtains competent jurisdiction of the Lawsuit.

1.14 "Date of Final Approval" means the date the Court enters an order granting final approval of the Settlement.

1.15 "Date of Preliminary Approval" means the date the Court enters an order granting preliminary approval of the Settlement.

1.16 "Defendants" means Wells Fargo Bank, N.A. and Wells Fargo & Co.

1.17 "Effective Date" means the later of: (1) if no objection to the Settlement is filed, the Date of Final Approval; (2) if an objection to the Settlement is filed, but no appeal is timely filed, then 30 days following the order granting Final Approval; or (3) if an appeal is timely filed with respect to the order granting Final Approval, the expiration of five days after such an appeal shall

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

have been fully determined by the highest court before which appeal is sought, is not subject to further judicial review, and is resolved in favor of enforcement of the Settlement.

1.18 "Final Approval Hearing" means the hearing at which the Court considers whether to grant Final Approval of the Settlement. "Final Approval" means final approval of the Settlement by the Court.

1.19 "Class Information Spreadsheet" means an electronic file with the Social Security number, employee identification number, telephone number, last known address of Class A Members, Class B Members, and Class C Members in the Class Period, along with: (1) the number of Class Member Compensable Workweeks for each Class Member; and (2) the final rate of pay for each Class Member while in a Loan Processor position. Additionally, for Class B Members, the number of recorded but unapproved hours, as defined in paragraph 1.5 shall be included.

1.20 "Individual Payment" shall have the meaning set forth in Paragraph 6.5 of this Stipulation.

1.21 "Judgment" means the judgment or order to be rendered and entered by the Court in the Lawsuit.

1.22 "Lawsuit" means the action styled *In re Wells Fargo Loan Processor Overtime Pay Litigation,* MDL Docket No. 1841, the Honorable Marilyn Hall Patel presiding.

1.23 "Loan Processors" means current and former mortgage loan specialists, mortgage sales assistants, mortgage assistants, mortgage sales associates, mortgage associates, loan document specialist and loan documentation specialists, employed by Defendants who are members of Class A, B or C.

1.24 "Notice of Class Action Settlement" or "Notice" shall have the meaning set forth in Paragraph 6.1 of this Stipulation.

1.25 "Notice Period" shall have the meaning set forth in Paragraph 6.2 of this Stipulation.

1.26 To "Opt-Out" shall mean, with respect to Class A Members, to withdraw from the Lawsuit, and with respect to Class B Members and Class C Members, to opt-out of the Class certified for purposes of this Settlement, as provided in Paragraph 6 below.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1.27 The "Parties" mean the Class Representatives and the Defendants.

1.28 "Released Claims" shall have the meaning set forth in Paragraph 9 below.

1.29 "Released Entities" means Wells Fargo Bank, N.A., Wells Fargo & Co. and each and all of their respective past and present parents, subsidiaries, affiliated companies and corporations, and each and all of their respective past and present directors, officers, managers, employees, general partners, limited partners, principals, agents, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, joint venturers, assigns, or related entities, and each and all of their respective executors, successors, assigns and legal representatives.

1.30 "Settlement" means the terms and conditions set forth in this Stipulation.

1.31 "Settlement Class" means all Class A Members, Class B Members, and Class C members of the classes certified for purposes of Settlement only, following the entry of an appropriate Order by the Court, but excluding the *Osinga* Settlement Class and *Garnica* Settlement Class unless they meet the definition of a Class A Member, Class B Member, or Class C Member.

1.32 "Total Settlement Fund" and "Class Member Settlement Consideration" shall have the meanings set forth in Paragraph 4.1 of this Stipulation.

1.33 "Stipulation" means this Stipulated Class Action Settlement.

1.34 "Third Party Administrator" means a mutually-agreeable independent third party Claims Administrator.

1.35 "Workweek" is the 7 calendar day period starting on each Monday morning at 12:00 a.m. and ending on the following Sunday at 11:59 p.m.

**2. <u>CONDITIONS PRECEDENT TO EFFECTIVENESS OF STIPULATION</u>**

This Stipulation will become final and effective only upon the occurrence of all of the following events:

(A) The Court enters an order granting preliminary approval of the Settlement;

(B) The Court enters an order granting Final Approval of the Settlement;

(C) The Lawsuit is dismissed. The dismissal is with prejudice for individuals covered by Class A, Class B and Class C. The dismissal is without prejudice for all other individuals; and

(D) The Effective Date, defined in Section 1.17, occurs.

Unless the Court orders otherwise, this Stipulation shall be deemed void *ab initio* upon the failure of any of these four conditions to occur.

**3. CERTIFICATION OF SETTLEMENT CLASSES**

3.1 For the sole and limited purpose of Settlement only, the Parties stipulate to and request that the Court certify Class A pursuant to the FLSA and Rule 23, as follows:

> The approximately 75 individuals who opted in to the *Bowne* action.

3.2 For the sole and limited purpose of Settlement only, the Parties stipulate to and request that the Court certify Class B pursuant to the FLSA and Rule 23 as follows:

> All current and former employees of Defendants who recorded five (5) or more hours of overtime at any time from January 21, 2003 through the date of Preliminary Approval while employed as a Loan Processor for Defendants, and the five (5) or more hours of overtime was not approved by a manager in WebTime, and who have previously been identified by Wells Fargo as 592 individuals.

3.3 For the sole and limited purpose of Settlement only, the Parties stipulate to, and request that the Court certify Class C pursuant to the FLSA and Rule 23, as follows:

> The approximately 2,373 current and former employees of Defendants who were employed as Loan Processors and who worked for Defendants in California at any time from January 21, 2003 through the date of Preliminary Approval.

**4. SETTLEMENT CONSIDERATION**

4.1 Notwithstanding any other provision in this Stipulation, in no event shall Defendants be obligated to pay more than $6,660,000.00 in total settlement of the Lawsuit (excluding its share of employer payroll taxes), including all class member payments, litigation costs, service awards, and attorneys' fees and any other amounts whatsoever ("Total Settlement Fund"). The Total Settlement Fund shall be allocated as follows: (i) $5,200,000.00 for the Class Member Settlement Consideration and (ii) $1,460,000.00 for Attorneys' Fees and Costs.

4.2 The Class Member Settlement Consideration shall be allotted as follows:



Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

(A) $3,000,000.00 of the Class Member Settlement Consideration shall be allotted to (i) the Class A and B Members in settlement of all claims, and (ii) to the Class C Members in settlement of all claims other than the "off the clock" overtime claims. The $3,000,000.00 of the Class Member Settlement Consideration will also include all service awards and all costs and fees incurred by the Third Party Administrator. No amount of the $3,000,000.00 of the Class Member Settlement Consideration will be subject to a reversion.

(B) Up to $2,200,000.00 of the Class Member Settlement Consideration shall be allotted to settle the Class C Members' "off the clock" overtime claims. This sum is reserved for only those Class C Members who submit a Claim Form pursuant to Paragraph 6.3 below. Any unclaimed portion of this allotment will revert back to Defendants.

4.3 Defendants will pay $1,460,000.00 of the Total Settlement Fund to Class Counsel as compensation for Attorneys' Fees and Costs as defined by Paragraph 5.1 below.

4.4 The Total Settlement Fund will constitute adequate consideration for this Settlement and will be made in full and final settlement of:

(A) The Released Claims during the Class Period;

(B) Claims for Attorneys' Fees, costs and service awards; and

(C) Any other obligation of the Parties under this Stipulation.

**5. ATTORNEYS' FEES AND COSTS AND CLASS MEMBER SERVICE AWARDS**

5.1 Class Counsel will submit an application for an award of Attorneys' Fees and costs in the total amount of $1,460,000.00, which shall constitute complete consideration for all work performed and all expenses and costs incurred to date and for all work to be performed and expenses and costs to be incurred through the completion of the litigation and its settlement. Class Counsel will request Court approval of this payment which Defendants do not oppose and agree that the request is fair and reasonable under the circumstances of this case.

5.2 Defendants will not oppose a request for service awards for the Class Representatives in an amount not to exceed $7,500 each, and service awards for Class Members who were deposed during the course of the Lawsuit in an amount not to exceed $1,000 each.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

5.3 The Third Party Administrator will issue Class Counsel an IRS Form 1099 for the attorneys' fees and costs that the Court awards.

5.4 If the Court does not approve any portion of the Attorneys' Fees and costs agreed-upon in this Paragraph, such funds that are not approved shall be distributed to the Class Member Settlement Consideration (the distribution will divided on a *pro rata* basis to the $3,000,000.00 fund and the $2,200,000.00 fund).

**6. NOTICE PROCEDURE**

6.1 Notice to Class Members

Not later than thirty-five (35) calendar days following the Date of Preliminary Approval, the Third Party Administrator shall send, via U.S. Mail, to each of the Class Members a "Notice of Pendency of Class Action Settlement" (hereafter, "Notice"), attached hereto as Exhibit A. Additionally, each Notice sent to a Class C Member shall contain a Claim Form, attached hereto as Exhibit B. The Third Party Administrator shall mail the Notice and, where applicable, Claim Form to each Class Members' last known address as reflected in the Class Information Spreadsheet or a more recent address identified after a change of address search is run by the Third Party Administrator. The Class Information Spreadsheet shall be delivered to the Third Party Administrator no later than 20 days after the Date of Preliminary Approval. It shall also be provided to Class Counsel no later than 20 days after the Date of Preliminary Approval, but with any names, addresses and phone numbers redacted.

6.2 Class Members shall have sixty (60) days from the date that the Notice is mailed to them in which to consider the terms of the Settlement and Opt-Out of the Class (the "Notice Period"). The date of delivery of the Notice is deemed to be the date the Notice is deposited in the U.S. Mail, postage prepaid, as evidenced by the post-mark.

6.3 Additionally, Class C Members must complete and return their Claim Form during the Notice Period to receive payment for the settlement of their "off the clock" overtime claims. Any Class C member who does not complete and return a Claim Form during the Notice Period will not receive payment with respect to their "off the clock" overtime claims, however such Class C

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Member will be bound by the Release of Claims in Paragraph 9 unless he or she timely opts out of the class. Class C Members sending in a defective Claim Form shall be given a reasonable opportunity (i.e. 10 days after notice of the defect) to cure the defect. Any Class C Member who opts out of the class and sends in a Claim Form shall be presumed to have opted out in error and will participate fully in the Settlement and shall be advised of this presumption in the Class Notice.

6.4 Within ten (10) days of the expiration of the Notice Period, the Third Party Administrator shall notify Class Counsel and Defendants' counsel (by employee identification number) of the total number of Class Members who have Opted-Out of the Class.

6.5 Calculation of Claims

(A) As a condition of receiving any Individual Payment under this Stipulation, Class Members must not Opt-Out of the Class. Within thirty (30) days after the Date of Preliminary Approval, the Third Party Administrator shall provide Defendants' counsel and Class Counsel with a spreadsheet of the estimated Individual Payments due to each Class Member (by identification number). For Class C Members, the Third Party Administrator shall provide the amount of Individual Payments from the $3,000,000. fund separately from the Individual Payments from the $2,200,000. claims made fund. Each Class Member who does not Opt-Out of the Class shall be entitled to a payment (the "Individual Payment"). Within 20 days of the close of the Notice Period, The Third Party Administrator shall provide Defendants' counsel and Class Counsel with a final spreadsheet of the Individual Payments due to each Class Member (by identification number).

The Individual Payment will be determined by using an equitable formula taking into account: (i) the number of Class Member Compensable Workweeks worked by each Class Member; (ii) the final rate of pay for each Class Member while in a Loan Processor position.; (iii) the state in which the Class Member is/was employed by Defendants; (iv) the amount (if any) of recorded but unapproved time for the Class B Members; (v) the Class Member's participation in the case as an opt-in Plaintiff; and (vi) whether the Class Member Compensable Workweeks occurred during the period of January 21, 2003 through December 31, 2005 (workweeks prior to the first full workweek after January 1, 2006 will be valued three times greater than workweeks after December 31, 2005).

Additionally, each Class C Member who submits a Claim Form shall receive the *pro rata* allocation from the $2,200,000.00 fund designated for California "off the clock overtime" claims which takes into account the individual's (i) number of Class Member Compensable Workweeks; and (ii) the final rate of pay for the Class Member while in a Loan Processor position. Each Class C Member's pro rata share of the $2,200,000.00 fund will be based on his or her eligible workweeks as a percentage of overall Class C eligible workweeks. Class Counsel, working with the Third Party Administrator, will determine the final allocation formula consistent with the variables identified under this Paragraph.

(B) Not later than ten (10) days following the Effective Date, Defendants shall wire to Class Counsel the fees and costs approved by the Court and shall wire to the Third Party Administrator the $3,000,000.00 portion of the Class Member Settlement Consideration as well as that portion of the $2,200,000.00 portion of the Class Member Settlement Consideration that is claimed by the Class Members of Class C.

(C) No sooner than twenty (20) days and no more than thirty (30) days following the Effective Date, and only after being advised in writing by the Parties that the Lawsuit has been dismissed pursuant to Paragraph 8, the Third Party Administrator shall mail to each Class Member a check in the amount(s) calculated pursuant to Paragraph 6.5(A) of this Stipulation. The Third Party Administrator will calculate payroll tax withholdings and Defendants' payroll tax contributions for each Individual Payment, and will advise Defendants of such amount within 10 days following the Effective Date, pursuant to Paragraphs 6.6 and 6.7 below.

6.6 Because the Alleged Claims included claims for liquidated damages, penalties, and interest, the parties hereby agree that 50% of all amounts paid to the Settlement Class (though calculated as described below for the purpose of arriving at an equitable distribution of funds among Class Members) shall be designated as non-wage payments, and the remaining 50% shall be considered wage payments. Service Awards will be designated as non-wage payments.

6.7 Wage payments to Class Members shall be reported on an IRS Form W-2, and non-wage payments shall be reported on an IRS Form 1099. The Third Party Administrator shall prepare

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

such IRS Form W-2 and IRS Form 1099 statements and provide them to the Class Members and applicable governmental authorities.

6.8 From the portion of any distribution to a Class Member characterized as wage payments, the Third Party Administrator shall timely and properly withhold from such distribution all applicable federal, state and local income taxes to be withheld, and cause the appropriate deposits of withholding taxes and informational and other tax return filing to occur.

6.9 If a Class Member fails to cash his/her settlement check within 180 days of its issuance, and there is no request for a new check within one year of issuance, the money allocated to him/her will be sent to the California Unclaimed Property Division if permitted, and if not permitted, it will be reallocated to a charity of the Parties' choosing. The Parties will exercise their best efforts to ensure that all Class Members receive their checks and that new checks are reissued when appropriate.

6.10 Objections

(A) Any Class Member who wishes to object to the Settlement must file and deliver a written objection with the Court, and serve copies of the written objection to Class Counsel and counsel for Defendants, no later than the close of the Notice Period. The date of delivery of the written objection is deemed to be the date the objection is deposited in the U.S. Mail, postage pre-paid, as evidenced by the postmark. The objection must set forth, in clear and concise terms, the legal and factual arguments supporting the objection. Unless otherwise ordered by the Court, Class Members shall not be entitled to speak at the final approval hearing unless they have submitted a timely written objection pursuant to this subsection.

(B) If more than 10% of Class Members object to and/or Opt-Out from the action, Defendants shall reserve the right to declare null and void this Settlement within ten (10) business days of being advised in writing by the Third Party Administrator of the total number of objectors or opt-outs following the close of the Notice Period.

## 7. ADMINISTRATION

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

7.1 The Third Party Administrator shall administer the Settlement. All "Costs of Administration" shall be paid for out of the $3,000,000.00 portion of the Class Member Settlement Consideration. The Third Party Administrator will be selected by mutual agreement of the Parties after submission and approval of a "not to exceed" bid.

7.2 The Third Party Administrator shall be responsible for all aspects of administering the Settlement, including, but not limited to: creating any accounts necessary to administer the Settlement; mailing the Notice and Claim Forms, receiving the Claim Forms from Class C Members; answering phone calls from Class Members regarding the Settlement; calculating tax withholdings and payments; distributing checks to Class Members; ensuring tax payments to appropriate government authorities; providing for the release of Court-approved attorneys' fees and costs to Class Counsel; communicating with Class Counsel and Defense Counsel as any issues arise; and any other duties as necessary to carry out the administration of the Settlement.

7.3 Counsel for both parties shall be allowed to communicate freely with the Third Party Administrator regarding the status of Settlement administration.

**8. <u>DISMISSAL WITH PREJUDICE</u>**

The Class Representatives agree to file a joint stipulation of dismissal dismissing the Lawsuit with prejudice in accordance with Paragraph 2 within twenty (20) days of the Effective Date. The Court will retain jurisdiction over the Settlement to the extent permitted by law.

**9. <u>RELEASE OF CLAIMS</u>**

The Class Representatives and the Class A and B Members who do not Opt-Out during the Notice Period, on behalf of themselves, and each of their heirs, representatives, successors, assigns, and attorneys, hereby compromise, release, resolve, relinquish, discharge and settle each and all of the Released Entities from each of the Alleged Claims and any claims related to or arising out of the same factual predicate of the Lawsuit, the *Basor*e Complaint, the *Bowne* Complaint, or the ACC, whether known or unknown claims, that exist in their favor through the Date of Preliminary Approval. The Class C Members who submit a Claim Form during the Notice Period, or who do not submit a Claim Form and do not Opt-Out during the Notice period, on behalf of themselves, and

each of their heirs, representatives, successors, assigns, and attorneys, hereby compromise, release, resolve, relinquish, discharge and settle each and all of the Released Entities from each of the Alleged Claims and any claims related to or arising out of the same factual predicate of the Lawsuit, the *Basore* Complaint, the *Bowne* Complaint or the ACC, whether known or unknown claims that exist in their favor through the Date of Preliminary Approval. Collectively, the claims released by the Class Members shall be known as the "Released Claims."

The Released Claims include all claims, asserted or unasserted, by Class Members arising before or during the Class Period, whether in the nature of claims for damages, liquidated damages, punitive damages, unpaid wages and/or overtime pay, premium pay, pay for non-compliant meal or rest periods, waiting-time penalties, wage statement penalties, interest, attorney's fees, costs or injunctive relief or other penalties or remedies that were or could have been asserted out of, relating to, or in connection with any type of actual or alleged violation of any wage and hour laws asserted in the Lawsuit, the *Basore* Complaint, the *Bowne* Complaint or the ACC or that arise from the same factual predicate of the Lawsuit, the *Basore* Complaint, the *Bowne* Complaint or the ACC, whether known or unknown claims, including but not limited to claims for unpaid wages, overtime, non-compliant meal periods, non-compliant rest periods, waiting time penalties, and wage statement penalties. The Released Claims include all claims that were or could have been alleged in this Lawsuit, the *Bowne* Complaint, the *Basore* Complaint or the ACC under the Fair Labor Standards Act (to the extent permitted by law, and specifically, to the extent an individual has already filed a consent to join form, or does so as part of this Settlement), California Labor Code sections 210, 202, 203, 204, 226, 226.3, 226.7, 510, 558, 1194, 1198, and 2699, the California Wage Orders, and California Business and Professions Code section 17200.

"Unknown Claims" means any Released Claims which the Class Representatives or any Class Member does not know or suspect to exist in his or her favor at the time of the Released Claims which, if known by him or her, might have affected his or her Settlement with and Release of the Released Entities or might have affected his or her decision not to object to this Settlement.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, the Class Representatives, the Released Entities, and the Class Members shall and have, by operation of the judgment, waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of §1542 of the California Civil Code, which provides:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

The Parties and the Class Members shall and have, upon the Effective Date and by operation of the Judgment, waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principal of common law which is similar, comparable or equivalent to §1542 of the California Civil Code with respect to the Released Claims. The Class Representatives or any Class Member may hereafter discover facts in addition to or different from those which he or she now knows or believes to be true with respect to the subject matter of the Released Claims, but hereby stipulate and agree that the Class Representatives and each Class Member, upon the Effective Date, fully, finally and forever settles and releases any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule without regard to the subsequent discovery or existence of such different or additional facts.

Claims related to employment at Wells Fargo in job categories other than Loan Processors, as defined in paragraph 1.23, are not released by this Settlement.

Defendants agree that they will bear their own attorneys' fees and costs arising from the Lawsuit.

**10. <u>MOTION FOR COURT APPROVAL</u>**

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Within 30 days after the close of the Notice Period, Class Counsel shall submit to the Court a noticed motion seeking the Court's Final Approval of this Settlement, a proposed order granting such approval and setting hearing for Final Approval, and any other documents consistent with the Settlement reasonably necessary to obtain the Court's approval of the Settlement. The Parties will ask the Court to maintain jurisdiction of this matter for the purpose of monitoring compliance with and performance under this Stipulation and any and all orders and judgments, including the Judgment, entered by the Court.

## 11. MISCELLANEOUS PROVISIONS

11.1 All of the Parties have been represented by counsel throughout all negotiations that preceded the execution of this Stipulation, and this Stipulation is made with the consent and advice of counsel.

11.2 The Parties and Class Members waive their right to seek any form of appellate review over any order or judgment that is consistent with the terms of this Stipulation.

11.3 This Stipulation may not be modified or amended, except in a writing that is signed by the respective counsel of record for the Parties and approved by the Court.

11.4 This Stipulation and the exhibits attached hereto constitute the entire agreement between the Parties concerning the subject matter hereof, and supersede and replace all prior negotiations, understandings, memoranda of understanding and proposed agreements, written and oral, relating thereto. No extrinsic oral or written representations or terms shall modify, vary or contradict the terms of the Stipulation unless made in writing and signed by duly authorized representatives of all Parties and approved in writing by a final order of the Court. No waiver of any term, provision or condition of this Agreement, whether by conduct or otherwise, in any one or more instance shall be deemed to be or construed as a further or continuing waiver of any such term, provision or condition.

11.5 This Stipulation shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of California, without giving effect to the principles of conflict of laws and shall be subject to the continuing jurisdiction of the Court. This

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Stipulation shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Stipulation or any specific term or condition thereof.

11.6 This Stipulation may be executed in one or more counterparts, each of which shall be deemed an original and together shall constitute one and the same instrument. When each of the Parties has signed at least one such counterpart, this Stipulation shall become effective and binding as to all of the Parties as of the day and year last written. Fax signatures shall be deemed as effective as originals.

11.7 In the event that legal action arises out of this Stipulation or is necessary to enforce any of the terms or provisions of this Stipulation, the prevailing party in the action shall be entitled to recover its reasonable attorneys' fees and costs.

11.8 The Parties and their counsel agree that they will not issue or initiate any press releases or press statements, post any internet disclosures, or have or initiate any communications with the press or media about the Lawsuit or this Stipulation, which result in the Parties' or their counsel's disclosure or publication of the amount and/or terms of this Settlement. Notwithstanding the foregoing, the Parties shall have the right to disclose the Settlement as part of the settlement approval process and as may be required under federal or state securities laws or under generally accepted accounting principles.

11.9 Each individual signing this Stipulation warrants that he or she has the authority and is expressly authorized to enter into this Stipulation on behalf of the party for which that individual signs.

**12. COOPERATION**

The Parties shall cooperate fully with one another in seeking approval of the Court of this Stipulation (including its Exhibits) and to use their respective best efforts to consummate the Settlement and cause the Judgment to be entered and to become final. No Party to this Stipulation shall seek to evade his, her or its good faith obligations to seek approval and implementation of this Settlement by virtue of any ruling, order, governmental report or other development, whether in the

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Lawsuit, in any other litigation or otherwise that hereafter might occur and might be deemed to alter the relative strengths of the Parties with respect to any claims or defenses or their relative bargaining power with respect to negotiating, and their respective counsel of record deem this Settlement to be fair and reasonable and have arrived at this Settlement in arms-length negotiations taking into account all relevant factors, present or potential.

IN WITNESS WHEREOF, each of the undersigned has agreed to and accepted the foregoing terms and conditions by executing this Stipulation as of the date indicated below.

DATED: APRIL 15, 2010

By: ______________________

WELLS FARGO BANK, N.A. and
WELLS FARGO & CO.

DATED: APRIL ___, 2010

______________________
Trudy Bowne

______________________
Mary Basore

______________________
Brenda McMillian

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Lawsuit, in any other litigation or otherwise that hereafter might occur and might be deemed to alter the relative strengths of the Parties with respect to any claims or defenses or their relative bargaining power with respect to negotiating, and their respective counsel of record deem this Settlement to be fair and reasonable and have arrived at this Settlement in arms-length negotiations taking into account all relevant factors, present or potential.

IN WITNESS WHEREOF, each of the undersigned has agreed to and accepted the foregoing terms and conditions by executing this Stipulation as of the date indicated below.

DATED: APRIL 15, 2010

By: ______________________

WELLS FARGO BANK, N.A. and
WELLS FARGO & CO.

DATED: APRIL 15, 2010

______________________
Trudy Bowne

______________________
Mary Basore

______________________
Brenda McMillian

Lawsuit, in any other litigation or otherwise that hereafter might occur and might be deemed to alter the relative strengths of the Parties with respect to any claims or defenses or their relative bargaining power with respect to negotiating, and their respective counsel of record deem this Settlement to be fair and reasonable and have arrived at this Settlement in arms-length negotiations taking into account all relevant factors, present or potential.

IN WITNESS WHEREOF, each of the undersigned has agreed to and accepted the foregoing terms and conditions by executing this Stipulation as of the date indicated below.

DATED: APRIL 15, 2010

By: ______________________

WELLS FARGO BANK, N.A. and
WELLS FARGO & CO.

DATED: APRIL 15, 2010

______________________
Trudy Bowne

______________________
Mary Basore

______________________
Brenda McMillian

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Lawsuit, in any other litigation or otherwise that hereafter might occur and might be deemed to alter the relative strengths of the Parties with respect to any claims or defenses or their relative bargaining power with respect to negotiating, and their respective counsel of record deem this Settlement to be fair and reasonable and have arrived at this Settlement in arms-length negotiations taking into account all relevant factors, present or potential.

IN WITNESS WHEREOF, each of the undersigned has agreed to and accepted the foregoing terms and conditions by executing this Stipulation as of the date indicated below.

DATED: APRIL 15, 2010

By: ____________________

WELLS FARGO BANK, N.A. and
WELLS FARGO & CO.

DATED: APRIL ___, 2010

____________________
Trudy Bowne

____________________
Mary Basore

____________________
Brenda McMillian

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894



04/16/2010 15:46 6788426875 CAMPBELL MS PAGE 01

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

# If you worked as a loan processor, mortgage loan specialist, mortgage sales assistant, mortgage assistant, mortgage sales associate, mortgage associate, loan document specialist or loan documentation specialist ("Loan Processor") for Wells Fargo between the dates of January 21, 2003 and the present you are entitled to benefits under this settlement.

**THIS NOTICE AFFECTS YOUR LEGAL RIGHTS. PLEASE READ IT CAREFULLY.**

***This is not a solicitation from a lawyer. A Federal Court has authorized this Notice.***

## NOTICE OF CLASS ACTION SETTLEMENT:

TO: **«First_Name» «Last_Name»**

RE: Settlement of Claims for Alleged Unpaid Wages and Related Claims for Relief

- Loan Processors sued Wells Fargo for allegedly failing to properly pay wages, including overtime, straight time, meal and rest period violations, and for other related violations of federal and California labor law.
- For settlement purposes, the Court certified this case as a class action on behalf of current and former Loan Processors employed by Wells Fargo between January 21, 2003 and the present.
- This Notice is to inform you about the status of the lawsuit, including your potential right to receive a share of the settlement funds. **Your legal rights are affected and you have a choice to make in this action now**:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | If you do nothing, you will receive your minimum allocation under the settlement. |
| **CALIFORNIA ONLY -- FULLY PARTICIPATE IN THE SETTLEMENT** | **If you were employed by Wells Fargo as a Loan Processor in California between January 21, 2003 and the present, you may be entitled to an additional settlement allocation.** To secure your maximum settlement allocation, you must complete, sign and return the enclosed Claim Form which must be postmarked no later than **[60 days from mailing].**<br><br>**If you were employed in a state other than California, no further action is necessary on your part to receive your allocation under the settlement.** |
| **EXCLUDE YOURSELF BY "OPTING-OUT"** | You will be unable to participate in the settlement if you choose this option but will retain any rights you may have against Wells Fargo over the claims in this |

| | |
|---|---|
| | case. |
| **OBJECT** | Write to the Court about why you do not like the settlement and speak to the Court about the fairness of the settlement. |

Your options are explained in this Notice. Please read it carefully. To fully participate in the settlement or to exclude yourself from the Settlement you must act before **[60 days from mailing]**.

1. **The Lawsuit:** Beginning in 2006, two lawsuits were filed by Loan Processors against Wells Fargo *Basore v. Wells Fargo Home Mortgage*, et al., N.D. Cal. No. 07-0461, and *Bowne v. Wells Fargo Home Mortgage*, D. Kan. No. 06-2020. The two cases were consolidated and are currently pending in the United States District Court for the Northern District of California. The Lawsuit is captioned *In re Wells Fargo Loan Processor Overtime Pay Litigation*, MDL 1841. The Lawsuit is on behalf of a class of Loan Processors employed by Wells Fargo between January 21, 2003 and the present. The lawsuit alleges that Loan Processors were not paid for all of the time they worked in violation of the Fair Labor Standards Act ("FLSA") as well as violations of California state law and seeks back pay for non-payment of wages (including overtime), interest, liquidated damages, attorneys' fees, and various penalties for untimely payment of wages and meal and rest period violations. A copy of the controlling complaint, the Amended Consolidated Complaint, can be obtained from the Claims Administrator or Class Counsel.

Wells Fargo denies the allegations in the Lawsuit and contends that its policies and practices regarding compensation were proper and in compliance with the law at all times. Wells Fargo wishes to settle this litigation, however, to avoid costly, disruptive, and time-consuming litigation but does not admit to any wrong-doing or liability.

2. **Purpose of the Notice**: This Notice is designed to inform members of the Settlement Class of the pendency of this Litigation and of the proposed settlement and to describe your rights and options if you are a member of the Settlement Class.

3. **The Settlement Classes**: The following Settlement Classes have been certified, and you have been identified as a member of one or more of Settlement Classes:

   **a.** Class A: All current and former employees who previously filed a consent to join the *Bowne* action, pursuant to Section 16 of the FLSA, 29 U.S.C. §216(b), which is a group of 75 individuals

   **b.** Class B: All current and former Loan Processor employees of Wells Fargo who recorded five or more hours of overtime, which was not approved in WebTime by a manager, during the time that manager approval in WebTime was required for the payment of overtime at any time from January 21, 2003 through _____________ [the date of Preliminary Approval]

   **c.** Class C: All current and former Loan Processors who worked for Wells Fargo in California at any time from January 21, 2003 through the present.

4. **Class Counsel:** The Court appointed Stueve Siegel Hanson LLP, 460 Nichols Road, Suite 200, Kansas City, Missouri 64112 as Class Counsel.

5. **Benefits and Terms of the Settlement:** To settle this case, which includes the California class consisting of approximately 2,373 current and former Loan Processors and a group of approximately 631 Loan Processors who worked outside of California, Wells Fargo agreed to pay up to

a total of $6,660,000.00, inclusive of all alleged unpaid wages, liquidated damages, penalties, interest, costs and attorneys' fees.

All class members who do not exclude themselves from this settlement are entitled to receive a portion of the settlement. Unless you opt out of the settlement, your minimum allocation of the settlement is approximately $__________. [Additionally, if you are part of the California Settlement Class, you may claim additional benefits under this settlement. In order to receive additional benefits from the settlement, you must timely submit a Claim Form. If you properly complete the enclosed Claim Form, your total allocation of the settlement will be approximately $____________.]

Fifty percent of your settlement payment is considered wages and shall be subject to the withholding of all applicable local, state, and federal taxes. The remaining fifty percent of your settlement payment is considered interest, penalties and other damages. Please consult with your accountant or other tax advisor regarding the tax consequences of the settlement payment.

6. **Attorneys' Fees, Expenses and Service Award to the Class Representative**: Class Counsel has pursued the Lawsuit on a contingent basis and has not received any payment of fees or any reimbursement of their out-of pocket expenses related to the recovery on behalf of the Settlement Class. As part of the settlement, subject to Court approval, Class Counsel will apply for fees and expenses in an amount not to exceed $1,460,000.00, which is approximately 22% of the total class settlement amount and compensates them for time worked on the case and out-of-pocket expenses. Under this settlement, Class Counsel will recover compensation from the Settlement Fund. Participating Class Members will not be required to make any payments to Class Counsel for attorneys' fees or other litigation costs from their individual settlement amounts. Further, the three Class Representatives intend to seek a service award in an amount not to exceed $7,500.00 each for their active prosecution of the case, including participation in depositions and written discovery. Plaintiffs may also seek an award in an amount not to exceed $1,000.00 each for the eight plaintiffs who were deposed in this case. Class Members may object to the terms of the settlement and/or to the Class Counsels' request for attorneys' fees and expenses, and/or to the service award to the Class Representatives and deposed plaintiffs. The process for making an objection is described below at Paragraph 10(c).

7. **Result if Court Approves Settlement:** If the Court approves the proposed settlement, it will enter a judgment that will dismiss the Litigation with prejudice on the merits as to all members of the Settlement Class. This means that members of the Settlement Class will be barred from bringing their own lawsuits for recovery on any Released Claims against the Released Parties. The following definitions apply to this Settlement:

- "Released Claims" means all claims asserted or unasserted, by Class Members arising before or during the Class Period, whether in the nature of claims for damages, liquidated damages, punitive damages, unpaid wages, and/or overtime pay, premium pay, pay for non-compliant meal or rest periods, waiting-time penalties, wage statement penalties, interest, attorney's fees, costs or injunctive relief or other penalties or remedies that were or could have been asserted out of, relating to, or in connection with any type of actual or alleged violation of any wage and hour laws asserted in the Lawsuit, the *Basore* Complaint, the *Bowne* Complaint or the Amended Consolidated Complaint or that arise from the same factual predicate of the Lawsuit, the *Basore* Complaint, the *Bowne* Complaint or the Amended Consolidated Complaint, whether known or unknown claims, including but not limited to claims for unpaid wages, overtime, non-compliant meal periods, non-compliant rest periods, waiting time penalties, and wage statement penalties. The Released Claims include all claims that were or could have been alleged in this Lawsuit, the Bowne Complaint, the Basore

Complaint or the Amended Consolidated Complaint under the Fair Labor Standards Act (to the extent permitted by law, and specifically, to the extent an individual has already filed a consent to join form, or does so as part of this Settlement), California Labor Code sections 210, 202, 203, 204, 226, 226.3, 226.7, 510, 558, 1194, 1198, and 2699, the California Wage Orders, and California Business and Professions Code section 17200.

- "Released Parties" means Wells Fargo Bank, N.A., Wells Fargo & Co. and each and all of their respective past and present parents, subsidiaries, affiliated companies and corporations, and each and all of their respective past and present directors, officers, managers, employees, general partners, limited partners, principals, agents, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, joint venturers, assigns, or related entities, and each and all of their respective executors, successors, assigns and legal representatives.

**8. If the Court Does Not Approve Settlement:** If the Court does not approve the proposed settlement, the case will proceed as if no settlement has been attempted. In that event, Wells Fargo retains the right to contest whether this case should be maintained as a class action and to contest the merits of the claims being asserted by the Plaintiffs in this action. If the settlement is not approved, there can be no assurance that the class will recover more than is provided for in this settlement, or indeed, anything.

**9. When is the Fairness Hearing:** A hearing will be held before the Honorable Marilyn Hall Patel in the United States District Court for the Northern District of California on [INSERT DATE] at ______ _.m. The purpose of the hearing is for the Court to decide whether the proposed settlement is fair, reasonable, and adequate and should be approved and, if so, to determine what amount of attorneys' fees and expenses should be awarded to Class Counsel. The time and date of this hearing may be continued or adjourned without further notice.

**10. Your Options Regarding the Settlement**: If you are a member of the Settlement Class, you have the following options:

**a. Do Nothing:** If you choose to do nothing and fail to timely return the Claim Form, then you will be entitled to receive your minimum allocation of approximately $_________ if the settlement is approved.

**b. CALIFORNIA ONLY: Fully Participate in the Settlement:** **<u>If you wish to fully participate in the settlement, you must complete, sign and return the enclosed "Claim Form."</u>** A postage pre-paid envelope is enclosed for your convenience. This form must be postmarked no later than **[INSERT 60 days from mailing].** If you lose your envelope, the Claim Form should be returned by **[INSERT 60 days from mailing]** to **[INSERT SETTLEMENT ADMINISTRATOR'S ADDRESS].** Thereafter, if the Court approves the Settlement you will receive the benefits described above.

**c. Request to be Excluded:** **<u>If you wish to be excluded from the settlement, you must send a letter to the Settlement Administrator.</u>** This letter must clearly state your name and your wish to be excluded from participating in the settlement, and state that you understand that you will not receive any money from the settlement. The letter must be postmarked no later than **[INSERT 60 days from mailing] and mailed** to **[INSERT SETTLEMENT ADMINISTRATOR'S ADDRESS]. If you exclude yourself, you will <u>not</u> receive any monies from the settlement.**

Failure to include the required information or to timely submit your request will result in your remaining a member of the Settlement Class and being bound by any final judgment. If you validly and timely request exclusion from the Settlement Class, you will not receive any payment under the settlement, you will not be bound by any final judgment, and you will not be precluded from instituting or prosecuting any individual claim you may otherwise have against Wells Fargo related to the subject matter of the Lawsuit.

d. **Object:** If you are a member of the Settlement Class and you do not request to be excluded, you may object to the terms of the settlement and/or to the Class Counsels' request for attorneys' fees and expenses, and/or to the service award for the Class Representatives and deposed plaintiffs. If you object and the settlement is approved, you will be barred from bringing your own individual lawsuit asserting claims related to the matters referred to in the Lawsuit, and you will be bound by the final judgment and release and all Orders entered by the Court. You may, but need not, enter an appearance through counsel of your choice. If you do, you will be responsible for your own attorneys' fees and costs.

If you object to the settlement and/or to the Class Counsels' request for attorneys' fees and expenses, and/or to the Service Award for the Class Representatives, you must, on or before [**60 days from mailing Notice**]: (1) file with the Clerk of the United States Court for the Northern District of California, and (2) serve upon Eric L. Dirks, Stueve Siegel Hanson LLP, 460 Nichols Road, Suite 200, Kansas City, MO 64112 (class counsel), and Joan Fife, Winston & Strawn, 101 California Street, Suite 3900, San Francisco, California, 94111 (counsel for Wells Fargo), a written objection including: (a) your full name, address and telephone number, (b) the approximate dates of your employment with Wells Fargo, and your job title(s) while employed with Wells Fargo, (c) a brief written statement of all grounds for the objection accompanied by any legal support for your objection, (d) copies of any papers, briefs or other documents upon which the objection is based, (e) a list of all persons who will be called to testify in support of the objection, (f) a statement of whether you intend to appear at the Fairness Hearing, and (g) your signature, even if you are represented by counsel. If you intend to appear at the Fairness Hearing through counsel, the objection must also state the identity of all attorneys representing you who will appear at the Fairness Hearing. Settlement Class members who do not timely make their objections in this manner will be deemed to have waived all objections and shall not be heard or have the right to appeal approval of the settlement.

11. **Your Responsibilities:** It is your responsibility to keep the claims administrator and Class Counsel informed of any change of address. You should also retain proof if you submit a Claim Form, such as certified mail receipt. You must act within the time periods set out in this Notice. The time periods will be strictly enforced. Failure to carry out any of these responsibilities could result in your failure to receive a settlement check.

12. **Additional Information:** For additional information you may contact the Settlement Administrator at **[INSERT CONTACT NUMBER]** or Class Counsel by (a) calling Stueve Siegel Hanson at **[INSERT TOLL FREE NUMBER]**, or (b) sending correspondence to Eric L. Dirks at Stueve Siegel Hanson LLP, 460 Nichols Road, Suite 200, Kansas City, MO 64112. **No inquiries should be directed to the Court.**

Dated: ______________

BY ORDER OF THE COURT
Clerk of the Court

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| In re: WELLS FARGO LOAN PROCESSOR OVERTIME PAY LITIGATION<br><br>This document relates to ALL CASES | **MDL 1841**<br><br>**SETTLEMENT CLAIM FORM**<br><br>DEADLINE TO RETURN THIS CLAIM FORM IS _______. |
|---|---|

**CLAIM FORM AND RELEASE**
**INSTRUCTIONS**

In order to fully participate in the settlement of this case, you MUST sign, date, and postmark the enclosed CLAIM FORM AND RELEASE on or before [DATE]. If your CLAIM FORM AND RELEASE is not postmarked on or before [DATE], you will not be eligible to receive your portion of the "off the clock overtime" settlement funds. For more information on the Settlement, how your share of the settlement funds will be calculated, and your rights, please see the attached NOTICE.

By signing, dating, and returning the CLAIM FORM AND RELEASE, you are also consenting to become a party to this action under the federal Fair Labor Standards Act 29 U.S.C. 216(b), and agreeing to the release of claims set forth below. (For further information, see the enclosed NOTICE.)

The Claim Form and Release must be personally filled out by the current or former employee who seeks to participate in the settlement or someone with a legal right to act on his or her behalf. If the Class Member is deceased, next of kin may appropriately complete the Claim Form and Release unless another person has been appointed as the representative of the decedent's estate.

If you are a Class Member and you did not opt out of the settlement, and if you properly complete the Claim Form and Release and timely mail it to the Claims Administrator, you will be eligible for a distribution from the Settlement in accordance with the formula described in section 5 of the Notice in the approximate amount of $________.

You may return the Claim Form and Release in the addressed, pre-paid envelope that has been enclosed. The Claim Form and Release must be sent to the address on that envelope:

*In Re Wells Fargo Loan Processor Overtime Pay Litigation* Claims Administrator
Name
Address

# CLAIM FORM AND RELEASE

**This Claim Form and Release must be properly and fully completed, signed, dated and mailed to the Claims Administrator at the following address via First Class United States Mail, postmarked on or before [INSERT DATE]: [INSERT ADDRESS]**

It **is your responsibility** to keep a current address on file with the Claims Administrator. Please make sure to notify the Claims Administrator of any change of address.

[To be pre-inserted by Claims Administrator:]

Claim Number:________________________
Name:_______________________________
Address:_____________________________
City, State ZipCode:___________________

[To be provided by employee:]

Name/Address Changes, if any

_______________________________
_______________________________
_______________________________
_______________________________
Telephone No.___________________

1. By signing below, I confirm that I was employed as a loan processor, mortgage loan specialist, mortgage sales assistant, mortgage assistant, mortgage sales associate, mortgage associate, loan document specialist, loan documentation specialist or similar position ("Loan Processor") for Wells Fargo in California at some point from January 21, 2003 through the present.

2. By signing below, I confirm that at some point during my employment as a Loan Processor or similar position for Wells Fargo, I worked overtime hours in California (more than 40 per week or more than 8 hours in a single day) but was not paid for that time.

I hereby consent to become a party plaintiff pursuant to the Fair Labor Standards Act and I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this ______ day of _________________, 2010.

_______________________________
Date

____________________________________
Signature

# EXHIBIT C

Stueve · Siegel · Hanson LLP

***Overview***

Stueve Siegel Hanson LLP was founded in 2001 by lawyers who formerly practiced at large national law firms with a single premise – clients should pay for results, not billable hours. The Firm now boasts seventeen lawyers between its offices in Kansas City and San Diego. The Firm is rated AV and its lawyers have accumulated several local, regional, and national awards for their successes and dedication to the practice. Stueve Siegel Hanson represents plaintiffs and defendants in complex business, class action, securities, wage and hour, environmental, and product liability litigation and trials.

***Our Results***

Since opening our doors in 2001, Stueve Siegel Hanson has obtained substantial results in a wide range of class and collective actions while serving as lead or co-lead counsel including:

- A $27.5 million settlement in a wage and hour lawsuit brought on behalf of loan originators;
- Obtaining in excess of $100 million in settlements of wage and hour claims on behalf of employees in the financial services, pharmaceutical, cosmetology and call center industries;
- Settlement of a nationwide class action involving GM automobiles equipped with "Dex-Cool" coolant;
- Obtaining $75-$125 million in relief for purchasers of Hyundai vehicles for Hyundai's overstatement of horsepower in vehicles;
- Obtaining $33 million in relief for owners of Mitsubishi and Chrysler owners related to defective wheel rims;
- Obtaining $7.2 million in relief for Sprint customers effected by Sprint's practice of improperly charging "casual caller" rates;
- Obtaining $35-50 million in relief for Volkswagen owners effected by VW's use of a faulty plastic part in the window mechanism of certain vehicles; and
- Obtaining a $7.7 million nationwide settlement after the Court certified a nationwide class of Cable & Wireless customers who had been overcharged PICC fees.

In addition to these cases, SSH currently acts as lead or co-lead counsel and represents plaintiffs in class and collective actions pending against The Dow Chemical Company, Wells Fargo Bank, Dell, RJ Reynolds, Tyson Foods, Merck, DaimlerChrysler and TeleTech Holdings, Inc. Our firm has defended class actions as well, including defending the Allstate Insurance Company in a class action brought by policyholders claiming Allstate improperly discounted medical reimbursements.

SSH has also obtained substantial results in non-class cases, including numerous successes at trial. Some of our recent courtroom victories include:

- A $20 million jury verdict on behalf of independent contractor agents against State Farm in a breach of contract and tortious interference case;
- A $4.2 million jury verdict against one of the country's largest securities brokers, A.G. Edwards & Sons, in a breach of contract and fraud case;
- A $3.5 million jury verdict and attorneys' fee award against the world's largest manufacturer of recreational boats in a fraud and breach of contract case;
- A $1.6 million jury verdict against a major paint and coating supplier in a negligent misrepresentation case;
- A defense verdict for a client defending a multi-million dollar tort claim; and
- A defense verdict in a high-profile white collar criminal price fixing case following an eight week trial.

## *Our Partners*

Our lawyers have a breadth of experience that is national in scope. We have appeared before state and federal courts nationwide, and have successfully litigated cases across the country.

### Patrick J. Stueve

Patrick J. Stueve started his career clerking for the late United States District Court Judge John W. Oliver in the Western District of Missouri, Kansas City. He then joined the trial department of Stinson, Mag & Fizzell where he became partner in 1994. He was the youngest of six partners to leave Stinson, Mag in 1996 to found Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve. Patrick had various management responsibilities at Stinson and then Berkowitz before leaving to found SSH. Pat received his B.A. in Economics, with distinction, from Benedictine College in 1984, and his J.D. from the University of Kansas (Order of the Coif) in 1987 where he served as an Editor of both the Kansas Law Review and the Criminal Justice Review.

Patrick has extensive complex business litigation and class action experience. He has both defended and prosecuted claims in federal and state courts (as well as AAA arbitrations) in the areas of Antitrust, Trademark and Patent Infringement, Unfair Competition, Business Torts,

Product Liability, Non-Compete, Securities Fraud, Telecommunications, Franchise, and Health Care.

Most recently Patrick successfully prosecuted violations of a franchise agreement in a New York Arbitration against a Fortune 500 company that resulted in an eight figure settlement for a Kansas City franchisee. Patrick also recently represented a London based company in Federal Court in California prosecuting antitrust claims and defending trademark and cyber squatting claims that also resulted in an eight figure settlement. This past year Patrick has successfully prosecuted several license violation cases for a small Kansas City software developer resulting in settlements exceeding $1 million dollars.

Patrick has successfully tried to verdict cases in federal and state courts across the country and in several AAA and NASD arbitrations. He recently obtained a defense verdict in a $7 million dollar business tort claim for his client in the Western District of Missouri (Aftermarket vs. Gulf). This past year Patrick was selected by his peers as a "Super Lawyer" for Missouri and Kansas and the "Best of the Bar" in Kansas City. He is a member of the Million Dollar Advocates Forum, limited to trial lawyers who have won multi-million dollar cases.

Patrick also has extensive class action experience. Patrick has been lead or co-lead counsel in three large nationwide consumer class actions that have settled over the past two years. In Lewin v. Volkswagen, Patrick successfully obtained relief totaling $50 million dollars for one million Volkswagen customers in a deceptive trade practices class action that required Volkswagen to provide full reimbursement for past product defect repairs and to replace all window regulators on theses vehicles at no cost to the customer. In Cromwell v. Sprint, Patrick obtained relief totaling $7.2 million for over 100,000 Sprint customers who were wrongfully charged casual caller fees in violation of the Federal Communications Act. In Powers v. Cable & Wireless, Patrick obtained and order certifying a nationwide class of consumers who were overcharged PICC fees and then reached a nationwide settlement of $7.7 million for the approximately 40,000 customers who had been wrongfully charged PICC fees.

Prior to founding Stueve Siegel Hanson LLP, Patrick represented Ford Motor Company and other Fortune 100 companies in major litigation across the country, including the defense of several class action claims involving a variety of industries.

Patrick previously served as President of the Lawyers Association of Kansas City. Patrick is a three term past president of the board of Habitat for Humanity Kansas City and the recent recipient of the first John and Mary Pritchard Founders Award from Habitat. He has served on the Visitation School Board, is the past PTO president for Visitation School, and has coached youth baseball, football, basketball, and track. Patrick has also served as an Adjunct Instructor of Trial Advocacy at the University of Kansas Law School and published articles on a wide variety of legal issues. He also is a member of the ABA's Antitrust section and its Private Enforcement Committee.

**Norman E. Siegel**

Norman E. Siegel started his career as an Assistant Attorney General for the State of Missouri. In 1995, he joined the litigation department of Blackwell Sanders. In 1998, Norm joined

Sonnenschein Nath & Rosenthal and was promoted to partner in 2000. Norm also served on the hiring committee of Sonnenschein. Norm received a degree in political science from Tufts University, and his J.D. from Washington University in St. Louis where he was Articles Editor of the *Journal of Urban and Contemporary Law*.

Norm's current cases include acting as lead counsel in several securities cases brought against sellers of so called auction rate securities or ARS. The cases generally allege that the broker-dealers involved in the sale of ARS materially misrepresented the liquidity and risks of the securities to individual investors and corporations by labeling these securities as cash equivalents in press releases, monthly account statements, individual communications with investors, and other investment guidance material. The claims, brought under the securities laws on the United States, allege that the promised liquidity of the auction rate securities was created through artificial intervention in the auctions by the broker-dealers. The litigation was initiated when the market for auction rate securities collapsed when all of the major broker-dealers announced that they will no longer purchase auction rate securities for their own accounts to ensure that the securities would remain liquid. In the past several months, thousands of auctions run by the broker-dealers failed and over $300 billion in auction rate securities that were once offered as cash equivalents are now illiquid, resulting in economic losses and severe hardships for investors.

Norm also currently represents a putative class consisting of the land owners and residents of Hartford, Illinois who are living on top of a 4 million gallon underground gasoline plume. Residents of Hartford, which is located between the refineries to the East and the Missouri River to the West, have experienced severe gas fumes in their homes, fires in water wells, and a substantial impairment to their living environment. In July 2008, the plaintiffs reached a deal with Premcor and Shell, two of the defendants, to settle the case for $16 million. In early 2009, a second settlement was reached with BP North America for $19.5 million. The litigation is continuing against the remaining defendants, which include Apex Oil Co. and Sinclair Oil.

Norm is lead counsel in a certified class action pending against Monsanto and two of its sister companies, Solutia and Pharmacia, alleging that the companies violated the pension laws by terminating a certain interest credit at age 55, rather than at normal retirement age of 65. The case is currently being litigated in the Southern District of Illinois.

Norm recently completed prosecuting Sherman Act I and state law tort claims on behalf of Heartland Surgical Specialty Hospital, a physician owned specialty acute care hospital (Heartland Surgical Specialty Hospital v. HCA, Inc.). Heartland claimed that the dominant hospital systems in the Kansas City conspired among themselves and with the dominant managed care organizations in the region to prevent Heartland from obtaining in-network provider contracts. After 3 years of intense litigation, including winning a landmark summary judgment order, Heartland entered confidential settlements with all 11 defendants.

Norm recently won a $20 million jury verdict for five State Farm agents who had accused State Farm of violating their agents' agreements (Kelly v. State Farm). The verdict came after a three-week trial in Independence Missouri. The agents argued that they were improperly terminated after publicly criticizing management's policies as unfair to policyholders. The agents, who

collectively had over 115 years service with State Farm, spoke out following a series of substantial verdicts and settlements against State Farm that revealed improper claims handling, fraudulent use of medical utilization reviews, specification of non-OEM replacement parts, and other practices considered harmful to policyholders. Norm delivered the closing argument at trial, and the jury returned a verdict in the amount sought by the agents.

Norm also recently served as co-lead counsel in In re Hyundai Horsepower Litigation, which netted class relief for 800,000 Hyundai owners totaling $125 million. The case was aggressively litigated over nearly two years and was fought on numerous fronts. The nationwide litigation began in September 2002 when Hyundai announced it had overstated horsepower ratings in more than 1 million vehicles sold in the United States over a 10 year period. Norm took the lead in discovery, processing more than 80,000 pages of Hyundai documents and taking the depositions of top Hyundai management, including the CEO of Hyundai Motor America, and a corporate representative of HMA's parent company in Seoul, South Korea. Norm was also instrumental in the settlement that followed, which brought high praise from Hyundai owners across the country. Norm is still serving as lead counsel in the related horsepower litigation against Hyundai's sister company Kia Motors America.

Norm has also recently litigated an eight figure case to settlement on behalf of a franchisee against a nationwide franchisor (case name confidential), and won a jury verdict in excess of $1.5 million for a local business (Weld v. Graggs Paint).

Norm has also obtained outstanding results in criminal cases. In October of 2001, Norm's client was acquitted of federal price fixing charges before a federal jury in Houston, Texas (U.S. v. Supreme Insulation). In late February of 2002, Norm's client, who had pleaded guilty to criminally violating the federal RICO statute, was granted probation despite the government's request for a lengthy prison term (U.S. v. McCarthy).

Norm has substantial litigation and class action experience. He currently holds leadership positions in class cases against Premcor Refining Co., H&R Block Inc., Monsanto, Solutia, and Pharmacia. He has extensive intellectual property and domain name dispute litigation experience. Norm was responsible for the intellectual property expert issues in the recently settled Formula 1 litigation. And Norm recently defended Aquila Inc., a Fortune 100 Company, in defense of numerous securities class actions alleging that Aquila's board failed to take appropriate steps in response to a tender offer from its parent Utilicorp United. In early January 2002, a Delaware Chancery Judge denied plaintiffs' claims for immediate injunctive relief, paving the way for the successful tender offer and merger of the two companies.

As an Assistant Attorney General, Norm also served as a special prosecutor for the State, investigating and prosecuting cases involving gambling and election fraud. He also was instrumental in the investigation and civil prosecution of those accused of bilking the State's Second Injury Fund, which resulted in settlements totaling nearly $1 million. Since entering private practice, Norm has served as special counsel for the State, having been named a Special Assistant Attorney General in 1997. In December 2003, Attorney General Jay Nixon appointed Norm to the Community Action Committee charged with overseeing The Healthcare Foundation of Kansas City, the $500 million public health foundation created with the public health asset

sale of Health Midwest. Norm served as Chairman of the CAC and now sits on the Foundation's Board of Directors.

**George A. Hanson**

George A. Hanson started his career with Blackwell Sanders in the Labor and Employment Department. He was elected partner in 1999. George served as Chair of Blackwell's Hiring Committee in 2001. George received his B.A. from Oberlin College, with high honors, in 1988, and his J.D. from the University of Minnesota, *cum laude*, in 1992. For the past seven consecutive years, George has been named "Best of the Bar" by the *Kansas City Business Journal*. In 2006, George was selected by his peers as a "Super Lawyer" for Missouri and Kansas. George is also rated AV - the highest designation a lawyer can achieve from publisher Martindale-Hubbell.

George has had extensive litigation and trial experience in a broad array of business and employment cases brought in both federal and state courts across the country. In August 2005, George (along with partner Norman Siegel) won a $20 million jury verdict for five State Farm agents who had accused State Farm of violating their agents' agreements (Kelly v. State Farm). The verdict came after a three-week trial in Independence Missouri. In 2003, George was lead trial counsel and won a $3.5 million judgment and attorney fee award on behalf of Horizon Holdings against Genmar, the world's largest manufacturer of recreational boats, in a fraud and breach of contract case in federal court in Kansas. (Horizon Holdings v. Genmar) George has also won verdicts in a breach of contract and fraud cases tried before juries in Johnson County, Kansas and Jackson County, Missouri. In addition to trial practice, George has developed an active appellate practice and has successfully argued numerous cases before federal and state appellate panels, including federal appellate courts in the Eighth, Ninth and Tenth Circuits.

In addition to trial work, George's practice currently focuses on the representation of employees in large wage and hour class and collective actions, including workers in the financial services, meat processing, pharmaceutical and call center industries. In Perry v. National City, George was lead counsel and represented a certified class of current and former loan officers employed by National City Bank in a wage and hour collective action pending in the Southern District of Illinois. In 2007, the Honorable David H. Herndon certified a collective action consisting of approximately 4,500 current and former National City loan officers. After extensive summary judgment and related briefing, the parties reached a Court-approved class settlement in the amount of $27.5 million. In Garner v. Regis Corporation, George was lead counsel on behalf of approximately 1,300 current and former salon managers and stylists in a certified wage and hour collective action against Regis Corporation, the world's largest owner and operator of hair and retail product salons. In August 2004, the trial judge for the Western District of Missouri certified the case as a collective action pursuant to the Fair Labor Standards Act. The parties subsequently reached a Court-approved confidential settlement of the case in June of 2006. In Qualls v. sanofi-aventis, George was lead counsel in a wage and hour collective action filed in the United States District Court for the Western District of Missouri against sanofi-aventis. The class consisted of current and former manufacturing and packaging operators employees at defendant's facility in Kansas City, Missouri. In 2006, the trial court approved a confidential settlement on behalf of all class members.

In addition to these cases, over the past five years, George has been lead or co-lead counsel on approximately 50 wage and hour actions filed in state and federal courts in Kansas, Missouri, California, Illinois, Texas, Minnesota, Louisiana, New York, Oregon and Washington. George is also a frequent speaker regarding trial practice and wage and hour matters nationwide.

**Todd M. McGuire**

Todd M. McGuire was born and raised in Elgin, Illinois. In 1996, Todd received his B.A. in Rhetoric and Communications Studies from Drake University, *summa cum laude*, where he was a member of Phi Beta Kappa, Mortar Board and Omicron Delta Kappa. Todd was also an active member of the Sigma Alpha Epsilon Fraternity. In 1999, Todd obtained his J.D., with highest honors, from Drake. Todd served as Editor in Chief of the *Drake Law Review* and was a member of the Order of the Coif.

After graduating from law school, Todd began his legal career in the Kansas City office of Sonnenschein Nath & Rosenthal, one of the largest law firms in the country, in the litigation department, specializing in antitrust, white collar criminal defense and commercial litigation. In October 2001, Todd joined Stueve Siegel Hanson LLP. In January 2005, Todd was elected to the Firm's partnership.

During the past 6 years, Todd has successfully represented a variety of clients in complex civil and criminal matters at both the trial court and appellate levels. He has both defended and prosecuted claims in the areas of Antitrust, RICO, Contract Disputes, Environmental Contamination, Business Torts, White Collar Crime, Employment Discrimination, Wage and Hour Violations, Insurance Coverage and Bad Faith, Copyright Infringement and Class Actions. Todd is admitted to practice in federal and state courts in Missouri and Kansas as well as before the United States Court of Appeals for the Tenth Circuit. Todd has represented clients in Courts across the country including New York, Texas, California, Illinois, Pennsylvania, Kansas, Missouri and Michigan.

Todd is a member of the American Bar Association, Lawyers' Association of Kansas City and Kansas City Metropolitan Bar Association. Todd has been recognized as a philanthropic leader at Drake University through membership in the President's Circle. Todd is also a member of the Steering Committee for the Donald V. Adams Leadership Institute at Drake.

**Todd E. Hilton**

Todd E. Hilton received his B.A. in English and Philosophy, cum laude, from the University of Miami in 1996, where he was President of the International Philosophy Honor Society and Vice President of the International English Honor Society. He received his J.D., with honors, from George Washington University in 1999. Todd was a member of The George Washington Journal of International Law and Economics. Todd joined Lathrop & Gage out of law school where he specialized in products liability, personal injury, wrongful death, and consumer

protection litigation. Todd was recently honored by the Missouri Lawyers Weekly as having obtained the fifth highest verdict in Missouri in 2001.

**Virginia Stevens Crimmins**

Virginia Stevens Crimmins received a B.A. in 1998 from Agnes Scott College in Decatur, Georgia in International Relations and French, where she was a member of Phi Beta Kappa. Ginnie subsequently attended Georgetown University Law Center in Washington, D.C. During law school Ginnie was a member of Georgetown's Journal on Poverty Law and Policy and represented clients in Georgetown's Domestic Violence Clinic.

After graduation from law school in 2001, Ginnie returned to Kansas City where Ginnie began practicing with the law firm of Spencer Fane Britt and Browne in Spencer Fane's general litigation group. While at Spencer Fane, Ginnie's practice focused on education and business litigation, involving business torts, contract disputes, and insurance issues. In 2004, Ginnie joined the law firm of Stueve Siegel Hanson LLP and in July 2008, Ginnie was elected to the Firm's partnership.

Since beginning the practice of law, Ginnie has represented both individual and corporate clients in many different forums across the country and has experience prosecuting and defending cases at both the trial court and appellate court levels. She has defended and prosecuted claims in the areas of Antitrust, Contract Disputes, Business Torts, Wage and Hour Violations, and Class Actions. In 2004, Ginnie successfully defended Countrywide at trial in Missouri State Court against claims that included a fraud claim seeking punitive damages. Judgment was rendered in favor of Countrywide on all claims. (American Family Mutual Insurance Company v. Countrywide Home Loans, Inc., et al.). Additionally, Ginnie recently represented Heartland Spine and Specialty Hospital in Sherman Act I and state law tort claims against insurance companies and hospitals in the Kansas City metropolitan area. (Heartland Spine & Specialty Hospital v. HCA Midwest Division, et. al.). Ginnie played a key role in discovery on this case, including extensively reviewing and analyzing thousands of pages of document discovery, taking the depositions of several of Defendants' witnesses and defending Heartland's employees at depositions during the discovery phase of the case. After hard-fought litigation, this case ultimately settled in 2008.

Since 2005, Ginnie has also represented hundreds of employees in actions to recover unpaid minimum and overtime wages. Examples of these cases, include Carson v. Bank of Blue Valley, Davis v. Novastar, Gieseke v. First Horizon Home Loan Corporation, Hernandez v. Texas Capital Bank, Perry v. National City, and West v. First Franklin. In Davis v. NovaStar, the Honorable Judge Gaitan certified a Fair Labor Standards Act collective action against NovaStar Mortgage Company. The case was filed in the Western District of Missouri and included class members throughout the United States. See 408 F.Supp.2d 811 (W.D. Mo. 2006). Ultimately, a court-approved settlement was reached in 2006. In Gieseke v. First Horizon Home Loan Corporation, loan originator plaintiffs filed an FLSA collective action case against First Horizon alleging that First Horizon failed to pay them minimum and overtime wages. The United States District Court for the District of Kansas conditionally certified the case as a collective action; class members extended throughout the United States. See 408 F.Supp.2d 1164 (D.Kan. 2006).

A court-approved settlement was reached in 2008. In Perry v. National City, the United States District Court for the Southern District of Illinois conditionally certified an FLSA collective action case on behalf of approximately 4,500 loan originators employed by National City. See 2007 WL 1810472 (S.D. Il. 2007). A court-approved settlement was reached in 2008. After significant discovery and extensive summary judgment briefing, the parties reached a Court-approved class settlement in the amount of $27.5 million.

Ginnie is licensed to practice law in Missouri, Kansas and Illinois and is a member of the ABA, Lawyers Association of Kansas City, KBA, KCMBA, Illinois Bar Association and the Association for Women Lawyers of Greater Kansas City. Ginnie currently serves as the President of KBA Employment Law Section.

**Rachel E. Schwartz**

Rachel E. Schwartz was born in Morton Grove, Illinois and raised in Lawrence, Kansas. In 1998, Rachel received her B.A. with honors in Political Science, Economics and American Studies from the University of Kansas. In 2001, Rachel obtained her J.D. from the University of Michigan Law School, where she served on the University of Michigan Journal of Law Review. Rachel is a member of the Lawyers' Association of Kansas City and the Texas Bar Association. She has a Life Membership in the University of Kansas Alumni Association. Since 2007, Rachel has served on the Board of Directors of DEBATE Kansas City, an organization dedicated to providing debate opportunities to schools located in Kansas City's urban core.

After graduating from law school, Rachel began her legal career in the Dallas, Texas office of Gardere Wynne Sewell LLP on the complex litigation trial team, specializing in antitrust, securities, RICO and other business litigation. In 2004, Rachel joined Stueve Siegel Hanson, LLP and was elected to the Firm's partnership in July 2008.

Rachel has successfully represented a variety of clients in complex civil matters at both the district court and appellate levels. She has both defended and prosecuted claims in the areas of Securities, Antitrust, RICO, Business Torts, Employment Law, Intellectual Property and Contract Disputes. Rachel is admitted to practice in state and federal courts in Kansas, Missouri and Texas, as well as before the United Stated Court of Appeals for the Eighth Circuit and the United States Supreme Court.

**Richard M. Paul III**

Richard Paul began his legal career as a judicial law clerk at the Missouri Supreme Court and the Missouri Court of Appeals, Western District. In 1996, he began private practice with Shughart Thomson & Kilroy, a large Kansas City law firm with offices in Missouri, Kansas, Colorado, and Arizona. In 2002, the Board of Directors of Shughart Thomson elected him a Shareholder and Director. In May 2008, Rick moved his practice to Stueve Siegel Hanson. Rick has tried several cases, and also argued more than 40 appeals before a variety of appellate courts across the country, including the United States Court of Appeals for the Eighth and Ninth Circuits, the Missouri Supreme Court, the Missouri Court of Appeals for the Eastern, Southern, and Western Districts, the Kansas Court of Appeals, and the Arizona Court of Appeals.

Rick handled a variety of types of cases, including constitutional litigation, intellectual property, antitrust, franchise, oil and gas litigation, employment disputes, bankruptcy litigation, product liability, transportation law, and officer and director liability. Most of his practice focused on complex multi-district, class, derivative, and representative actions. Rick also worked on an interim basis as in-house litigation counsel for Gateway 2000. Rick has spent a significant portion of his practice representing bankruptcy trustees as court-appointed Trial Counsel in complex litigation, often on a contingent or modified fee arrangement. In this role, Rick has helped bankruptcy trustees collect more than $60 million for their bankruptcy estates. Rick has also served as Lead or Co-Lead Class Counsel in various class actions. In November 2007, after more than 4 years of vigorous litigation, Rick and his co-counsel settled the In re DexCool Products Liability Multi-District Litigation just days before a 3-week jury trial was set to begin in what is one of the largest automotive class action settlements ever.

Rick has been active in the local bar, including the Kansas City Metropolitan Bar Association and the Lawyers Association of Kansas City. In 2004, he served as the Chair of the Appellate Courts Committee of the KCMBA. He has also served on the Business Torts Committee, where he authored the Chapter on Fiduciary Duties for the Business Torts Handbook. Rick is a frequent speaker and moderator at seminars and presentations on handling appeals, electronic discovery, and the use of technology in the courtroom.

**Eric L. Dirks**

Eric began his career as an associate at Kansas City's largest law firm Shook, Hardy & Bacon. At Shook, Hardy & Bacon, Eric represented well-known corporate clients in the areas of products liability, class actions and complex litigation. Eric joined Stueve Siegel Hanson in 2005 where he now spends his time representing consumers, workers, retirees and small-to-mid size businesses. Eric's litigation practice includes: class actions, products liability, wage and hour, commercial litigation, trademark and copyright infringement and antitrust.

Eric attended the University of Iowa for law school where he received his J.D., with high distinction and was elected to the Order of the Coif. Eric received his B.A. in English from the University of Kansas in 1999. Before college, Eric enlisted in the United States Army Reserves where he was a medic and went on to obtain the rank of Sergeant.

Eric focuses his time representing consumers, workers, retirees and businesses. In 2008, Eric tried Overlap, Inc. v. A.G. Edwards & Sons, Inc. before a Jackson County, Missouri jury who awarded approximately $7.1 million dollars (pre-merger) to a computer software developer for breach of contract, fraud and negligent misrepresentation. Plaintiff Overlap, Inc. claimed that A.G. Edwards violated its software license agreement by loading the software on more than fifty computers and then making the reports from the software available to all of its stock brokers. Plaintiff further alleged that the defendant had misrepresented the nature and extent of its use of the software. At trial, Overlap, Inc., argued that A.G. Edwards knew that it was prohibited from sharing the reports generated by the software with its brokers, but nevertheless continued to use it in such a manner without telling plaintiff. Defendant A.G. Edwards argued that the terms of the software license agreement permitted its use of the software. The trial lasted eight days and

after two hours of deliberation, the jury found in favor of plaintiff Overlap. Among the jury's awards was a punitive damages award for $2.3 million.

Since 2005, Eric has represented workers in wage and hour litigation. Eric currently represents a class of workers at Tyson's Emporia, Kansas and Holcomb, Kansas beef processing facilities in Garcia, et. al. v. Tyson Foods, Inc. et. al.. The plaintiffs allege they are not paid for the time they spend putting on and taking off protective clothing and gear and the time they spend walking throughout the huge meat processing facilities. The Garcia case comes on the heels of a recent decision -- Alvarez v. IBP, Inc, -- where the Supreme Court ruled that federal law requires employers to pay for the time their meat processing plant workers spend changing in and out of required protective clothing and for the time walking throughout the facility. The plaintiffs won a major victory in defeating Tyson's bid for summary judgment and the U.S. Tenth Circuit Court of Appeals recently dismissed Tyson's appeal after extensive briefing on the issue. Most recently, the trial court granted class and collective action certification of a class of approximately 13,000 workers.

Additionally, Eric has been co-lead counsel with George Hanson on two wage and hour MDL actions: In re Wells Fargo Home Mortgage Overtime Pay Litigation and In re Wells Fargo Loan Processor Overtime Litigation. These proceedings seek unpaid wages from Wells Fargo on behalf of various financial services employees.